**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**DAVENPORT DIVISION**

| | | |
|---|---|---|
| JOHN DOE #1,<br>JOHN DOE #2,<br>JOHN DOE #3,<br>JOHN DOE #4,<br><br>*Plaintiffs,*<br><br>v.<br><br>KRISTI NOEM, in her official capacity as<br>Secretary of Homeland Security; the<br>DEPARTMENT OF HOMELAND<br>SECURITY; and TODD LYONS, in his<br>official capacity as Acting Director of U.S.<br>Immigration and Customs Enforcement,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:<br><br>**COMPLAINT FOR DECLARATORY**<br>**AND INJUNCTIVE RELIEF** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

### Introduction

1.      Plaintiffs are students and graduates of the University of Iowa. Each of them was

admitted to the United States on an F-1 Student Visa, but the federal government has terminated

their student status without legal justification or explanation. Plaintiffs bring this lawsuit under the

Administrative Procedure Act and Due Process Clause of the Fifth Amendment to challenge the

federal government's unlawful termination of their student status. *See* 5 U.S.C. §§ 702, 706; U.S.

CONST. amend. V.

2.      Since beginning their studies, Plaintiffs have not violated or otherwise failed to

maintain their student statuses. They have not committed serious criminal offenses. They have

1

remained in good academic standing. Three Plaintiffs are currently studying Chemical Engineering, Economics, and Exercise Science, respectively. Another Plaintiff is working for the State of Iowa as an Epidemiologist.

3.      On or about April 10, 2025, U.S. Immigration and Customs Enforcement ("ICE") abruptly terminated Plaintiffs' Student and Exchange Visitor Information Systems ("SEVIS") records without explanation. That day, Plaintiffs each received emails from the University of Iowa's International Students and Scholars Services ("ISSS") informing them of the cancellation by the federal government, and that the university "did not take this action." The U.S. government did not communicate the SEVIS termination to any of the Plaintiffs.

4.      Four days later, three of the Plaintiffs' visas were revoked.  Again, they were given no explanation. Instead, they all received identical messages from U.S. embassies, warning them that, "Remaining in the United States can result in fines, detention, and/or deportation," and further warning that "deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin."

5.      Plaintiffs challenge the Department of Homeland Security's ("DHS") misuse of the SEVIS system to further unlawful ends. It appears that in the first two weeks of April, DHS engaged in a nationwide action to terminate student status unlawfully, trying to coerce Plaintiffs, along with hundreds of other students across the country, into "self-deporting."[1] To be clear, Plaintiffs are not challenging the revocation of their F-1 student *visas* in this action. They are challenging DHS' termination of their F-1 student *status*.

---

[1] Jaweed Kaleem, Caught off-guard, California Colleges Scramble to Determine Scope of Student Visa Cancellations, LOS ANGELES TIMES, (April 7, 2025) https://www.latimes.com/california/story/2025-04-07/ucla-california-universities-concerns-cancellations-student-visas.

6.      By terminating Plaintiffs' SEVIS records, DHS has effectively ended their student statuses. By forcing them out of status, DHS has created pretext for future adverse immigration actions against them. Plaintiffs are now experiencing intense mental and financial suffering because they cannot continue with their studies and fear being detained and removed if they do so.

7.      DHS' targeting and abuse of Plaintiffs is unlawful. SEVIS was created by Congress to be an administrative tool for oversight and compliance of international student visas.[2] SEVIS is not a discretionary enforcement tool or a weapon of immigration policy. Rather, the regulations prescribe three distinct circumstances in which DHS can terminate status, and none apply to plaintiffs. *See* 8 C.F.R. § 214.1(d). Nor have plaintiffs fallen out of status due to their own actions, such as engaging in unauthorized employment, providing false information to DHS, or committing a violent crime. *See* 8 C.F.R. § 214.2(e)–(g).

8.      The SEVIS terminations are without legal justification. They come without regard to constitutional guarantees of procedural due process. They are far beyond DHS' statutory authority, and they fail to comply with even DHS' own regulations. 8 C.F.R. §§ 214.1, 214.2. Accordingly, Plaintiffs bring this action under the Administrative Procedure Act ("APA"), the Fifth Amendment of the U.S. Constitution, and the *Accardi* doctrine.

## Jurisdiction and Venue

9.      This Court has jurisdiction over the present action based on 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346(b) (federal defendant), and 28 U.S.C. §§ 2201–2 (authority to issue declaratory judgment when jurisdiction already exists).

10.      Venue is proper with this Court under 28 U.S.C. § 1391(e) because this is a civil action in which Defendants are employees or officers of the United States, acting in their official

---

[2] Illegal Immigration Reform and Immigrant Responsibility Act of 1996 § 641, Pub. L. No. 104-208, 110 Stat. 3009-706 (codified as 8 U.S.C. 1372).

capacity. All Plaintiffs reside in this District. 28 U.S.C. § 1391(e)(1)(C).

11.　　Venue is also proper with this Court under 28 U.S.C. § 1391(e)(1)(B) because the events giving rise to this claim occurred in the Southern District of Iowa. Plaintiffs live and are present in this District; they study or have graduated from the University of Iowa; and their SEVIS records are updated and maintained by officials in this District.

**Parties**

12.　　Plaintiff John Doe #1 is an Indian national and fourth-year Ph.D. student at the University of Iowa studying chemical engineering. He resides in Iowa City, Iowa. Doe #1's SEVIS record was terminated on or about April 10, 2025.

13.　　Plaintiff John Doe #2 is a Chinese national and third-year undergraduate student at the University of Iowa. He resides in Tiffin, Iowa. Doe #2's SEVIS record was terminated on or about April 10, 2025.

14.　　Plaintiff John Doe #3 is a Chinese national and both a third-year undergraduate and pre-doctorate student at the University of Iowa. He resides in Iowa City, Iowa. Doe #3's SEVIS record was terminated on or about April 10, 2025.

15.　　Plaintiff John Doe #4 is an Indian national and a Master of Public Health graduate of the University of Iowa. He is a practicing Epidemiologist. He resides in Des Moines, Iowa, and works for the Iowa Department of Health and Human Services. Doe #4's SEVIS record was terminated on or about April 10, 2025.

16.　　Defendant Kristi Noem is the Secretary of Homeland Security and has ultimate authority over DHS. In that capacity and through her agents, Defendant Noem has broad authority over the operation and enforcement of the immigration laws. Defendant Noem is sued in her official capacity.

17.　　Defendant DHS is a cabinet-level department of the Executive Branch of the

federal government and is an "agency" within the meaning of 5 U.S.C. § 551(1). DHS includes
various component agencies, including ICE.

18.     Defendant Todd Lyons is the Acting Director of ICE and has authority over the
operations of ICE. In that capacity and through his agents, Defendant Lyons has broad authority
over the operation and enforcement of the immigration laws. Defendant Lyons is sued in his
official capacity. ICE is responsible for the termination of Plaintiffs' SEVIS records.

## Legal Framework

19.     A nonimmigrant visa controls a noncitizen's admission into the United States, not
their continued stay. Once admitted on F-1 nonimmigrant status, a student is granted permission to
remain in the United States for the duration of status as long as they continue to meet the
requirements established by the regulations governing their visa classification in 8 C.F.R. § 214.2(f),
such as maintaining a full course of study and avoiding unauthorized employment.

20.     SEVIS is a database managed by Defendant DHS' Student and Exchange Visitor
Program ("SEVP"). SEVIS is an administrative tool which collects information from Designated
School Officials ("DSOs") into one database which DHS uses to track nonimmigrant students'
compliance with the terms of their status.

21.     SEVIS termination is governed by SEVP policies and regulations. Termination must
be based on a student's failure to maintain status.

22.     DHS regulations distinguish between two separate ways a student may fall out of
status: (1) a student who "fails to maintain status," and (2) an agency-initiated "termination of
status."

23.     Under the first category, students fall out of status through some act or omission of
their own as described in 8 C.F.R. § 214.2. Under 8 C.F.R. §§ 214.2(e)–(g), nonimmigrant students
can fall out of status through conduct violations, such as engaging in unauthorized employment,

providing false information to DHS, or being convicted of a crime of violence with a potential

sentence of more than a year under 8 C.F.R. § 214.1(g). Minor misdemeanor offenses do not meet

this threshold for termination based on criminal history.

24.    Under the second category, DHS can terminate SEVIS records *only  if* one of three

conditions are met: (1) a previously granted waiver under [8 U.S.C. § 1182(d)(3) or (4)] is revoked;

(2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS

publishes a notification in the Federal Register identifying national security, diplomatic, or public

safety reasons for termination. 8 C.F.R. § 214.1(d); *see also Jie Fang v. Dir. U.S. Immigr. & Customs*

*Enf't*, 935 F.3d 172, 176 (3d Cir. 2019).

25.    Accordingly, the revocation of a visa does not constitute failure to maintain status

and cannot therefore be a basis for SEVIS termination. If a visa is revoked prior to a student's

arrival to the United States, then the student may not enter, and the SEVIS record is terminated.

But the SEVIS record may not be terminated as a result of a visa revocation *after* a student has been

admitted into the United States, because the student is permitted to continue the authorized course

of study.[3]

26.    ICE's own guidance confirms that "[v]isa revocation is not, in itself, a cause for

termination of the student's SEVIS record."[4] Rather, if the visa is revoked, the student is permitted

to pursue their course of study in school, but upon departure, the SEVIS record is terminated and

the student must obtain a new visa from a consulate or embassy abroad before returning to the

United States.[5]

---

[3] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), *available at* https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.

[4] *Id.*

[5] Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016), *available at* https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

27.     A student who has not violated their F-1 status, even if their visa is revoked, cannot have a SEVIS record terminated based on 8 U.S.C. § 1227(a)(1)(C)(i) (failure to maintain status) or any other deportability ground.

28.     The immigration courts have no ability to review the SEVIS termination here because the process is collateral to removal. *Jie Fang*, 935 F.3d at 183. There is no administrative appeal of a denial to reinstate F-1 status. The termination of a SEVIS record constitutes a final agency action for purposes of APA review.[6] Under Section 506 of the APA, courts must "hold unlawful and set aside" agency actions which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), "contrary to constitutional right," § 706(2)(B), or "without observance of procedure required by law," 5 U.S.C. § 706(2)(D).

## Factual Allegations

### A.  Defendants' national practice of terminating student status in SEVIS

29.     In April 2025, the U.S. government—principally through DHS, ICE, and the Department of State—initiated an unprecedented and sweeping campaign of student visa revocations and SEVIS status terminations, destabilizing the lives of hundreds of international students and universities across the country.[7]

30.     Reports from national and local media confirm that over 1,000 international students across at least 160 institutions lost their legal status in the span of mere weeks, often without prior

---

[6] *Id.* at 185.

[7] *See* Annie Ma, *supra* note 1. Plaintiffs do not challenge the revocation of their visas in this lawsuit; they only seek reinstatement of their student status in SEVIS.

notice, meaningful explanation, or opportunity to contest the decision.[8] These terminations were frequently triggered by minor criminal history.[9]

31.     Unlike prior agency practice, which involved some level of coordination with DSOs or institutional administrators,[10] these revocations were executed by DHS directly through SEVIS. The lack of transparency and procedural safeguards created chaos within educational institutions and upended the lives of lawful F-1 visa holders.[11]

32.     Universities scrambled to understand their responsibilities and whether they were authorized to assist affected students by reissuing I-20s or intervening with DHS.[12]

33.     Based on information and belief, the federal government has adopted a policy of coercing international students into self-deportation by leveraging ambiguous student status revocations in the SEVIS system, coupled with visa revocation notices and threatening language, rather than affording affected individuals constitutionally or statutorily guaranteed procedures.

### B. Plaintiff John Doe #1

34.     John Doe #1 is an Indian national and fourth-year Chemical Engineering Ph.D. student at the University of Iowa. He serves as both a teaching assistant and research assistant in his department.

---

[8] *See* Annie Ma, *supra* note 1; Rafael Romo, *New Lawsuit Alleges Traffic Stops, Dismissed Cases Used as Criteria to Revoke Student Visas*, CNN (Apr. 16, 2025), https://www.cnn.com/2025/04/16/us/international-visa-revocations-traffic-stops/index.html.

[9] Romo, *supra* note 9.

[10] U.S. Dep't of Homeland Sec., *Terminate a Student*, Study in the States (Nov. 7, 2024), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student.

[11] *Smashing the Student Visa System*, Inside Higher Ed (Apr. 3, 2025), https://www.insidehighered.com/news/global/international-students-us/2025/04/03/how-trump-wreaking-havoc-student-visa-system.

[12] *Id.*

35.     He and his colleagues are developing a new portable electrochemical oxygen concentrator. He believes this new technology will have a wide range of applications, such as in hospitals and airplanes.

36.     After his mother tragically died of COVID-19, he became inspired to work on these oxygen delivery systems. He wants his SEVIS restored so he can continue to work in his lab and develop these life-saving systems.

37.     He first came to study in the United States on an F-1 visa in 2021. He was issued a Form I-20 to enroll in his Ph.D. program and he has been engaged in a full course of study. He has never fallen out of his status.

38.     On April 10, 2025, Doe #1 received notice from ISSS that his SEVIS status was terminated. "This afternoon, while reviewing the University's SEVIS records I discovered that your records [have] been administratively cancelled by the federal government. The University of Iowa is not aware of any status violation you have committed and did not take this action."

39.     The U.S. Embassy in India has sent him two emails regarding revocation of his visa. The first came on March 13, 2025:

> This email is to inform you that your U.S. visa has been revoked pursuant to section 221(i) of the Immigration and Nationality Act (INA) and is no longer a valid travel document. This revocation is effective immediately as of March 13, 2025, unless you are physically present in the United States at this time, in which case the revocation will become effective immediately upon your departure from the U.S.

40.     A second email came on April 14, 2025, four days after Doe #1 received the SEVIS termination email from ISSS. It suggested that his visa was revoked effective immediately and included added language about deportation: "Remaining in the United States can result in fines, detention, and/or deportation …[D]eportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being

deported may be sent to countries other than their countries of origin." The email gave no explanation for his visa revocation.

41.    Doe #1 does not know the factual basis for either his SEVIS termination or his visa revocation. He has not violated the terms of his status. His only criminal history is a speeding ticket and a misdemeanor conviction for operating while intoxicated in violation of IOWA CODE § 321J.2, for which he attended a 12-hour OWI diversion course. Neither offense is a crime of violence. Neither offense is punishable by more than a year in prison.

42.    Since he received notice of his SEVIS termination, Doe #1 has been experiencing intense levels of stress, anxiety, and mental anguish. He cannot sleep and is having difficulty breathing and eating. He has ceased going to school and has stopped his teaching assistant and research assistant work. He is scared to lose his research.

**C.  Plaintiff John Doe #2**

43.    John Doe #2 is a Chinese national and in his final year of his Bachelor of Arts degree in Economics and is expected to graduate in December 2025. He first entered the United States on an F-1 Visa on September 5, 2017. The State Department issued him his most recent F-1 visa on June 7, 2024.

44.    Doe #2 received two emails regarding his status: one email from the ISSS office at the University of Iowa on April 10, 2025, and one email from the U.S. Consulate General in Vancouver on April 14, 2025.

45.    On April 10, 2025, Doe #2 received notice from ISSS that his SEVIS status was terminated. "This afternoon, while reviewing the University's SEVIS records I discovered that your records [have] been administratively cancelled by the federal government. The University of Iowa is not aware of any status violation you have committed and did not take this action."

46.    The U.S. Consulate General Vancouver email from April 14, 2025, said:

On behalf of the United States Department of State, the Bureau of Consular Affairs Visa Office hereby informs you that additional information became available after your visa was issued. As a result, your F-1 visa with expiration date 29-MAY-2029 has been revoked under Section 221(i) of the United States Immigration and Nationality Act, as amended. The Bureau of Consular Affairs Visa Office has alerted the Department of Homeland Security's Immigration and Customs Enforcement, which manages the Student Exchange Visitor Program and is responsible for removal proceedings. Remaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin.

47.     The email gave no explanation for his visa revocation and warned him that he could be deported at any time.

48.     Following his SEVIS termination, Doe #2 has stopped attending classes. With less than a year left before graduation, this termination prevents him from completing his degree and applying for Optional Practical Training, which is temporary work authorization to gain additional experience in his field of study.

49.     Doe #2 is unaware of the factual basis for the termination of his SEVIS status. His only interactions with law enforcement were for speeding tickets, driving without a valid driver's license and one disorderly conduct conviction from July 2024 under IOWA CODE § 723.4(1)(c), for which he paid a fine. Neither his traffic infractions nor his disorderly conduct conviction are crimes of violence, nor are they punishable by more than a year in prison.

50.     The unlawful termination of Doe #2's SEVIS record and status has jeopardized his ability to finish his degree in the United States. Further, the SEVIS record termination has caused Doe #2's depression and anxiety to worsen to the point that his doctor has felt it necessary to increase his depression prescription.

51.     As a result of the unlawful termination of his SEVIS record, Doe #2 has been

unable to sleep well and has remained in his apartment out of fear that he will be detained by ICE. He is worried that he won't be able to complete his degree and has less than one year left of his program.

**D. Plaintiff John Doe #3**

52.     John Doe #3 is a Chinese national and undergraduate at the University of Iowa. He is an Exercise Science and Kinesiology Major. He is expected to graduate in December 2026 and plans to continue his education by pursuing a doctoral degree in Physical Therapy.

53.     He first came to study in the United States on an F-1 Visa in 2022. He was issued a Form I-20 to enroll in his undergraduate program and he has been engaged in a full course of study since that time.

54.     On April 10, 2025, he received the same email from ISSS as Doe #1 and #2, stating his SEVIS status was revoked for unknown reasons and that the action was not taken by the university.

55.     On April 14, 2025, he received a similar email regarding visa revocation as the other Plaintiffs. This email came from the U.S. Consulate in Guangzhou, China, and had administrative information specific to him, such as his original visa expiration date, but it was otherwise identical to the emails sent to Doe #1 and #2. The email gave no explanation for his visa revocation and warned him that he could be deported at any time.

56.     Doe #3 is unaware of the factual basis for the termination of his SEVIS status. He has two speeding citations, one failure to yield citation, and one citation for driving without a valid driver's license. He has also pled guilty to one charge of operating while under the influence–first offense, in violation of IOWA CODE § 321J.2, for which the court is deferring judgement until he completes a one-year term of probation. He has no other criminal history. Neither his traffic infractions nor his disorderly conduct conviction is crimes of violence, nor are they punishable by

more than a year in prison.

57.     Since he received notice of his SEVIS termination, Doe #3 has been experiencing intense levels of stress, anxiety, and mental anguish. He feels constantly overwhelmed and worried about his ability to stay in the United States and finish his studies. While he has been able to attend class remotely, he does not know if he will be able to continue his studies. He is struggling to focus on school and daily tasks and has lost his appetite.

**E.  Plaintiff John Doe #4**

58.     John Doe #4 is an Indian national and Master of Public Health graduate from the University of Iowa with a concentration in Epidemiology. The State Department issued him an F-1 Visa on August 2, 2021.

59.     Doe #4 completed his degree in Epidemiology in August 2023.

60.     Until his SEVIS termination, Doe #4 was working for the Iowa Department of Health and Human Services as an Epidemiologist in compliance with his Optional Practical Training ("OPT") authorization.

61.     OPT is "temporary employment for optional practical training directly related to the student's major area of study." 8 C.F.R. § 214.2(f)(10)(ii). OPT typically occurs after completion of the academic program while the student is still in F-1 student status, and the ongoing validity of status is tracked through SEVIS. *See* 8 C.F.R. 214.2(f)(11)(ii) ("[T]he school assumes the added responsibility for maintaining the SEVIS record of the student for the entire period of authorized OPT. . . .").

62.     In his role at Iowa Department of Health and Human Services, Doe #4 was analyzing drug overdose death trends in Iowa and helping develop prevention strategies.

63.     Doe #4 received two emails regarding his status: one email from the ISSS office at the University of Iowa on April 10, 2025, and one email from the U.S. Embassy in India on April

14, 2025. The ISSS email indicated that the Director of ISSS, "while reviewing the University's SEVIS records," they "discovered that [Doe #4's] records [have] been administratively cancelled by the federal government."

64. The April 14, 2025, email from the U.S. Embassy in India explained that "additional information became available after your visa was issued. As a result, your F-1 visa was revoked." Like Does #1-3, the email gave no explanation for his visa revocation and warned him that he could be deported at any time.

65. Following his SEVIS termination, Doe #4 stopped working. He has been on unpaid leave since April 10, 2025.

66. Doe #4 is unaware of the factual basis for the termination of his SEVIS status. His only interaction with law enforcement was an arrest for operating a vehicle while intoxicated in violation of IOWA CODE § 321J.2, which was expunged. This offense is not a violent crime, and it is not punishable by more than a year in prison.

67. The unlawful termination of Doe #4's SEVIS record and status has put his own career and ability to continue studying and working in the United States at risk. Further, his data analysis efforts, which aimed to prevent future drug-related deaths across the state, have come to a halt.

68. As a result of the unlawful termination of his SEVIS record, Doe #4 has not been able to sleep due to feelings of constant worry and stress. He will be unable to pay his debts if he cannot get his job back. He also fears reprisal from DHS, which could result in removal, detention or other negative consequences relating to his immigration status.

**Joinder Statement**

69. Plaintiffs' cases are properly joined under FED. R. CIV. P. 20(a)(1). Plaintiffs assert that their claims that arise out of the same series of transactions, occurrences, or events—namely,

the unlawful and nationwide termination of SEVIS records by Defendants in the first two weeks of

April 2025. These terminations were based on similar or identical grounds, carried out through the

same government systems and policies, and resulted in nearly identical injuries across Plaintiffs,

including the loss of lawful immigration status, disruption of education and employment, personal

anxiety and worry, and the imminent risk of detention and removal, among numerous other adverse

consequences.

70.     Plaintiffs' claims also involve common questions of law and fact, including:

    a.  Whether Defendants acted within the scope of their legal authority under 8 C.F.R.

        §§ 214.1(d) and 214.2(e)–(g);

    b.  Whether the SEVIS terminations violated Plaintiffs' rights under the Due Process

        Clause of the Fifth Amendment;

    c.  Whether Defendants failed to provide adequate notice and opportunity to be heard

        prior to terminating lawful student status; and

    d.  Whether the SEVIS terminations must be set aside under the APA as arbitrary,

        capricious, or contrary to law, and not in accordance with the agency's own

        procedure.

71.     Permissive joinder in this case will promote judicial efficiency, avoid unnecessary

duplication of proceedings, and ensure consistent adjudication of these shared legal and factual

issues. Minor factual differences among the Plaintiffs' circumstances are comparatively minimal

compared to the common questions these cases present. *See Mosely v. Gen. Motors Corp.*, 497 F.2d

1330, 1334 (8th Cir. 1974) (noting Rule 20(a) does not require all questions of law and fact raised by

the dispute be in common).

72.     Accordingly, joinder of Plaintiffs in this action is appropriate and warranted. All

plaintiffs assert the right to relief arising out of the defendants' termination of their SEVIS status on

or about April 10, 2025, and Plaintiffs share the common questions of law around the legality of

Defendants' actions under 8 C.F.R. § 214.1(d), the APA, and Fifth Amendment Due Process Clause.

### Causes of Action

### <u>COUNT I</u>

### Administrative Procedure Act
### Arbitrary and Capricious Agency Action – 5 U.S.C. § 706(2)(A)

73.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth

here.

74.    This court should set aside DHS' termination of Plaintiffs' student statuses in SEVIS

as arbitrary and capricious and not in accordance with law under 5 U.S.C. § 706(2)(A). Final agency

action can be set aside if it is arbitrary, capricious, an abuse of discretion or otherwise not in

accordance with law. *Id.* Final agency actions are arbitrary if they fail to make "a rational connection

between the facts found and the [determination] made." *Anderson v. U.S. Dep't Transp., Fed. Highway

Admin.*, 213 F.3d 422, 423 (8th Cir. 2000). DHS makes no rational connection between any facts

regarding Plaintiffs and termination of their SEVIS records.

75.    DHS' termination of a SEVIS record is a final agency action because it ends F-1

student status, and there is no avenue for review or appeal. The immigration courts have no ability

to review the SEVIS termination here because the process is collateral to removal. *See Jie Fang*, 935

F.3d at 182-183 ("[E]ven if the students attempt to pursue administrative procedures for

reinstatement, there is no mechanism to review the propriety of the original termination order.").

76.    DHS' terminations of Plaintiffs' SEVIS records were not in accordance with law,

specifically 8 C.F.R. §§ 214.1 and 214.2. There are two ways a student's F-1 status can be terminated:

(1) through the student's own actions or (2) through government-initiated termination. *See* 8 C.F.R.

§§ 214.2(e)–(g); 214.1(d). Conditions were not met for either type of termination.

77.     A nonimmigrant student visa holder can fail to maintain their status by: (1) engaging in unauthorized employment, (2) providing false information to DHS, or (3) being convicted of a crime of violence with a potential sentence of more than a year. 8 C.F.R. §§ 214.2(e)–(g).

78.     The record does not support, nor do Defendants allege through any communication, that Plaintiffs engaged in this type of impermissible conduct. None of the Plaintiffs engaged in unauthorized employment, nor have they provided false information to DHS. Their minor criminal history—non-violent misdemeanors—does not arise to the level contemplated in 8 C.F.R. § 214.2(g).

79.     Doe #1, Doe #3, and Doe #4 were convicted of Operating While Intoxicated in violation of IOWA CODE § 321J.2. Doe #1 was sentenced to a 12-hour OWI diversion course. Doe #3's conviction was deferred in exchange for one year of probation. Doe #4's conviction was expunged.

80.     Doe #2 was convicted of disorderly conduct under IOWA CODE § 723.4(1)(c), for which he was ordered to pay a fine.

81.     Defendants have no statutory or regulatory authority to terminate Plaintiffs' SEVIS records or student statuses. Government-initiated terminations may occur only under the circumstances detailed in 8 C.F.R § 214.1(d): (1) Previously granted waiver under 8 U.S.C. §§ 1182(d)(3) or (d)(4) is revoked; (2) Congress introduces a private bill to confer Legal Permanent Resident status; or (3) DHS publishes notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. No plaintiff included in this complaint has received a waiver under §§ 1182(d)(3) or (d)(4) (nonetheless had it revoked); no plaintiff has had a private bill introduced Congress on their behalf; and there has been no publication or notification in the Federal Register identifying national security, diplomatic, or public safety reasons for

termination of student statuses. Because none of the plaintiffs fulfill any one of these conditions at §

214.1(d), Defendants' actions were not supported by statute or regulation.

82.    Notably, DHS' visa revocation does not constitute failure to maintain status or a

reason for termination under § 214.1(d). ICE's own guidance confirms that "[v]isa revocation is not,

in itself, a cause for termination of the student's SEVIS record."[13]

83.    For these reasons, Defendants' termination of Plaintiffs' statuses in SEVIS was

arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. *See* 5 U.S.C. §

706(2)(A).

## COUNT II

### Violation of Fifth Amendment Due Process – U.S. Const. amend. V

84.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth

here.

85.    Plaintiffs have a constitutionally protected property interest in their SEVIS

registration. *See ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) (recognizing protected

property interest in participating in exchange visitor program); *Brown v. Holder*, 763 F.3d 1141, 1148

(9th Cir. 2014) (recognizing protected property interest in nondiscretionary application for

naturalization).

86.    Once a student is lawfully admitted to the United States in F-1 status and complies

with the regulatory requirements of that status, the continued registration of that student in SEVIS is

a statutorily conferred nondiscretionary government benefit, governed by specific and mandatory

regulations.

---

[13] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at
https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.

87. 8 C.F.R. § 214.2(f)(1)(iii) requires schools to "issue a form I-20 or successor form in SEVIS to any current student requiring extension of stay, practical training, and requests for employment authorization." For a student to amend or extend their stay, they must be able to present a properly endorsed Form I-20 or a new Form I-20. *See* 8 C.F.R. § 214.1(3)(iii)(b)(iv)(A). In other words, because SEVIS registration is necessary for a student to remain enrolled as an international student, Plaintiffs have a protected property interest in their SEVIS records. Termination of their SEVIS records deprive them of their student status property interest. Without a SEVIS record, students are deprived of their ability to receive I-20 forms and effectively their status as students.

88. Defendants did not afford Plaintiffs adequate procedural rights prior to depriving them of their property interests: (1) Defendants terminated Plaintiffs' SEVIS records based on improper grounds; (2) Defendants provided Plaintiffs no prior notice, (3) Defendants did not directly communicate the termination to Plaintiffs—Plaintiffs only found out through the University of Iowa's ISSS office; and (4) Defendants did not provide Plaintiffs an opportunity to respond.

89. Procedural due process typically requires the government to provide a person with notice and an opportunity for a hearing before such a deprivation. *Twining v. New Jersey*, 211 U.S. 78, 110 (1908); *Jacob v. Roberts*, 223 U.S. 261, 265 (1912). Defendants failed to do so here. In any event, "even if the students attempt to pursue the administrative procedures for reinstatement, there is no mechanism to review the propriety of the original termination." *Jie Fang*, 935 F.3d at 182.

90. DHS' failure to afford Plaintiffs adequate procedural rights prior to improperly terminating their SEVIS records is a violation of Plaintiffs' Fifth Amendment Due Process rights.

## COUNT III

**Administrative Procedure Act**
**Contrary to Constitutional Rights (Procedural Due Process) – 5 U.S.C. § 706(2)(B)**

91.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

92.    Under 5 U.S.C.§ 706(2)(B), this court should set aside DHS' SEVIS records termination for Plaintiffs because that termination was contrary to Plaintiffs' Fifth Amendment Due Process rights. "This court should hold unlawful and set aside agency action if it is . . . contrary to constitutional right. . . ." *United States v. Massey*, 380 F.3d 437, 440 (8th Cir. 2004) (quoting *Moore v. Custis*, 736 F.2d 1260 (8th Cir. 1984)). As Count II provides, Plaintiffs' Fifth Amendment Due Process rights have been violated.

93.    Plaintiffs have protected property interests in their SEVIS status and the government did not afford them adequate procedural rights prior to improperly terminating their SEVIS records in violation of Plaintiffs' Fifth Amendment Due Process rights. Because the government violated Plaintiffs' Fifth Amendment Due Process rights, the Court is entitled to set aside the SEVIS terminations under 5 U.S.C. § 706(2)(B).

## COUNT IV

**Administrative Procedures Act**
**Without Observance of Procedure Required by Law -- 5 U.S.C. § 706(2)(D)**

94.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

95.    Under the APA, courts must set aside agency actions taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D); *see also* § 706 ("The reviewing court shall . . . hold unlawful and set aside agency action[.]"(emphasis added)). This is a procedural challenge—not about what the agency decided, but how it made its decision.

96.     SEVIS records are controlled by DHS. Nevertheless, DHS cannot terminate records on a whim. They must observe procedures and meet the substantive conditions described in their own regulations. *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required.") (citing *Serv. v. Dulles*, 354 U.S. 363, 388 (1957); *Vitarelli v. Seaton*, 359 U.S. 535, 539–540 (1959)).

97.     DHS' actions regarding SEVIS are bound and limited by 8 C.F.R. § 214.1(d). Regulations are rules agencies write themselves. Once published, these agency rules are not merely optional guidance—they are commitments, binding on the agency as well as the public. Like a contract, they create mutual expectations and legally enforceable standards. *See Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954); *Vitarelli v. Seaton*, 359 U.S. 535, 539–40 (1959); *Serv. v. Dulles*, 354 U.S. 363, 372 (1957).

98.     The regulation at § 214.1(d) is very clear. DHS can unilaterally terminate SEVIS records when one of only three conditions are met: (1) a previously granted waiver under [8 U.S.C. § 1182(d)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d)*; see also Jie Fang*, 935 F.3d at 185.

99.     In this case, DHS never articulated why Plaintiffs' SEVIS records had to be terminated—which is itself a violation of the APA. But for the purposes of § 706(2)(D), Defendants' conduct is unlawful because none of the § 214.1(d) circumstances apply to Plaintiffs.

## COUNT V

### *Accardi* Claim

100.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

101.    Government agencies are bound to follow their own rules, even self-imposed procedural rules that limit otherwise discretionary decisions. *See U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954). Unilateral agency termination because of criminal activity requires a nonimmigrant's conviction of a crime of violence for which a sentence of more than one year imprisonment may be imposed. 8 C.F.R. § 214.1(g). None of the four plaintiffs meet this requisite condition. Therefore, Defendants failed to follow their own rules and procedures when they terminated Plaintiffs' SEVIS records.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

A.  Assume jurisdiction over this matter;

B.  Find the Plaintiffs properly joined under Federal Rule of Civil Procedure 20(a);

C.  Grant Plaintiffs a temporary restraining order and preliminary injunction, restoring their status in SEVIS and enjoining their removal;

D.  Declare that the termination of Plaintiffs' SEVIS status was unlawful;

E.  Vacate and set aside DHS' termination of Plaintiffs' SEVIS status;

F.  Order that Defendants restore Plaintiffs' SEVIS record and status;

G.  Award costs and reasonable attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(b); and

H.  Grant such further relief as the Court deems just and proper.

Dated: April 21, 2025

Respectfully submitted,

*/s/ Katherine Melloy Goettel*
KATHERINE MELLOY GOETTEL
MIKHAIL ACHERKAN*
JUDE HAGERMAN*
ANGELA PANDIT*
IAN REEVES*
JUSTIN REMPE*
ISABELLA SIRAGUSA*
University of Iowa College of Law
Clinical Law Programs
380 Boyd Law Building
Iowa City, IA 52242-1113
Telephone: (319) 335-9023
Email: kate-goettel@uiowa.edu

*Counsel for Plaintiffs*

* Motion to authorize law student
practitioner forthcoming

## CERTIFICATE OF SERVICE

I certify that on April 21, 2025, I served the forgoing document via CM/ECF and have directed that this document be mailed to the following via registered certified mail to each defendant, the U.S. Attorney General, and the U.S. Attorney's Office for the Southern District of Iowa. A copy of this pleading has also been provided to the U.S. Attorney's Office by electronic mail.

*/s/ Katherine Melloy Goettel*
KATHERINE MELLOY GOETTEL
University of Iowa College of Law
Clinical Law Programs
380 Boyd Law Building
Iowa City, IA 52242-1113
Telephone: (319) 335-9023
Email: kate-goettel@uiowa.edu

*Counsel for Plaintiffs*