## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## DAVENPORT DIVISION

|  |  |  |
|---|---|---|
| JOHN DOE #1, *et al.*, | ) | Case No.: 3:25-cv-00042-SMR-WPK |
|  | ) |  |
| *Plaintiffs*, | ) | **Brief in Support of Plaintiffs' Motion for** |
|  | ) | **Temporary Restraining Order and** |
| v. | ) | **Preliminary Injunction** |
|  | ) |  |
|  | ) | **Oral Argument Requested** |
| KRISTI NOEM, in her official capacity as | ) |  |
| Secretary of Homeland Security, *et al.*, | ) |  |
|  | ) |  |
| *Defendants*. | ) |  |
|  | ) |  |

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## Table of Contents

I.  Introduction ...................................................................................................................1

II.  Legal Background ..........................................................................................................3

III.  Factual Background .......................................................................................................5

    a.  Defendants' national pattern and practice of unlawfully terminating student status in SEVIS ...........................................................................................................................5

    b.  John Doe #1 ...............................................................................................................6

    c.  John Doe #2 ...............................................................................................................7

    d.  John Doe #3 ...............................................................................................................8

    e.  John Doe #4 .............................................................................................................10

IV.  Standard of Review ......................................................................................................10

V.  Argument .....................................................................................................................11

    a.  Plaintiffs are likely to succeed on the merits of their APA and Due Process Clause claims because Defendants' actions violated the immigration regulations. ................11

        1.  By failing to follow their own regulations, Defendants' actions were arbitrary, capricious, an abuse of discretion and not in accordance with law (Count I)....................................................................................................................11

        2.  Defendants blatantly disregarded their own procedures when they terminated Plaintiffs' SEVIS records (Count IV) ..............................................14

        3.  Defendants deprived Plaintiffs of their rights without the due process guaranteed by the Fifth Amendment and the APA (Counts II & III). .........15

    b.  Plaintiffs have suffered and will continue to suffer irreparable harm..........................16

    c.  The balance of equities favors Plaintiffs ......................................................................17

VI.  Conclusion ...................................................................................................................19

# I.    Introduction

Plaintiffs move for a temporary restraining order ("TRO") and preliminary injunction on Counts I, II, III, and IV of their Complaint. Since early April 2025, the Department of Homeland Security ("DHS"), via Immigration and Customs Enforcement ("ICE"), has been unlawfully terminating students' immigration statuses in the Student and Exchange Visitor System ("SEVIS"). Plaintiffs John Does #1, #2, #3, and #4 were all studying at the University of Iowa or working as authorized by their F-1 student status when ICE abruptly terminated their student status in the SEVIS system.

DHS' ability to terminate F-1 student status in SEVIS is limited by the immigration regulations, specifically 8 C.F.R. § 214.1(d). *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n.100 (3d Cir. 2019). Under § 214.1(d), DHS can terminate an F-1 student's status in the SEVIS system only in three circumstances, none of which apply to Plaintiffs. *See* 8 C.F.R. § 214.1(d) (discussed in detail in Part II). Plaintiffs have also maintained the conditions of their student status. A student "fails to maintain status" when they engage in unauthorized employment, provide false information to DHS, or are convicted of a crime of violence with a potential sentence of more than a year. 8 C.F.R. §§ 214.1(e)–(g). Plaintiffs have done none of those things. Furthermore, the revocation of an F-1 *visa* does not provide a basis to terminate F-1 *student status* in the SEVIS system. Rather, if the visa is revoked, the student is still permitted to pursue their course of study in school, and the SEVIS record is not terminated until the student departs from the United States. In sum, there is simply no explanation for ICE's termination of Plaintiffs' student status in the SEVIS system.

Plaintiffs are likely to succeed on their Administrative Procedure Act ("APA") claims because ICE blatantly failed to follow its own regulations in terminating Plaintiffs' student status. To compound these failures, Defendants did not provide notice to Plaintiffs of the terminations;

Plaintiffs only learned that their F-1 student status was terminated from the university's office of international students. Accordingly, Plaintiffs are also likely to succeed in showing that Defendants violated their Fifth Amendment procedural due process rights.

Each day they are out of school and out of status, Plaintiffs suffer irreparable harm: the risk of arrest and deportation, the accrual of unlawful presence, the interruption in their studies and work, and high levels of anxiety and worry. In contrast, the burden on Defendants is minimal—administrative restoration of Plaintiffs' SEVIS records. It is in the public interest to enjoin the termination of Plaintiffs' statuses as they contribute vital research and knowledge to the University of Iowa and, in some cases, life-saving, innovations. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

Plaintiffs ask this court to enter a TRO without notice under Federal Rule of Civil Procedure 65(b)(1) and set the matter for a preliminary injunction hearing. Fed. R. Civ. P. 65(a). Plaintiffs gave notice to Defendants of this motion on April 21, 2025, and conferred by telephone on April 22, 2025. Plaintiffs attach here declarations attesting to specific facts showing that "immediate and irreparable injury, loss, or damage." Fed. R. Civ. P. 65(b)(1)(A).

More than thirty district courts have already issued TROs in similar cases, granting injunctive relief similar to that requested here.[1] *See* Ex. 13 (compilation of recent district court orders). Plaintiffs urge this Court to do the same.

---

[1]    *See Chen v. Noem*, No. 1:25-cv-00733-TWP-MG, at 23 (S.D. Ind. Apr. 21, 2025) (attached as Ex. 13-1); *Doe v. Trump*, No. 25-cv-4188, at 1-2 (N.D. Ill. Apr. 21, 2025) (attached as Ex. 13-2); *Gong v. Noem*, No. 2:25-cv-02115-CSB-EIL, at 10-11 (C.D. Ill. Apr. 21, 2025) (attached as Ex. 13-3); *Okyem v. Noem*, No. 2:25-cv-02120-CSB-EIL (C.D. Ill. Apr. 21, 2025) (attached as Ex. 13-4); *Patel v. Bondi*, No. 1:25-cv-00103-SPB-WSH, 2025 WL 1158708, at *3 (W.D. Pa. Apr. 21, 2025); *Ajugwe v. Noem*, No. 8:25-cv-00982-MSS-AEP, 2025 WL 1148689, at *4 (M.D. Fla. Apr. 18, 2025); *Ariwoola v. Noem*, No. 3:25-cv-03313-JDA, 2025 WL 1148491, at *1 (D.S.C. Apr. 18, 2025); *Chen, et al. v. Noem, et al.*, No. 25-cv-03292-SI, 2025 WL 1150697, at *6 (N.D. Cal. Apr. 18, 2025); *Daou v. Noem*, No.

## II.    Legal Background

A nonimmigrant visa controls a noncitizen's admission into the United States, not their continued stay. Once admitted on F-1 nonimmigrant status, a student is granted permission to remain in the United States for the duration of status as long as they continue to meet the requirements established by the regulations governing their visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment.

SEVIS is a database managed by ICE's Student and Exchange Visitor Program ("SEVP").[2]

---

8:25-cv-00976-MSS-AEP, 2025 WL 1148687 (M.D. Fla. Apr. 18, 2025); *Doe #1 v. Trump, et al.*, No. 2:25-cv-02825-MCA-LDW, at 7 (D.N.J. Apr. 18, 2025) (attached as Ex. 13-5); *Doe 1, et al. v. Bondi, et al.*, No. 1:25-cv-01998-VMC, at 15 (N.D. Ga. Apr. 18, 2025) (attached as Ex. 13-6); *Dogan v. Noem*, No. 1:25-cv-01130-RBW, at 1-2 (D.D.C. Apr. 18, 2025) (attached as Ex. 13-7); Minute Order, *Nali v. Noem, et al.*, No. 1:25-cv-03969, at 1 (N.D. Ill. Apr. 18, 2025) (attached as Ex. 13-8); *Oruganti v. Noem*, No. 2:25-cv-00409-ALM-EPD, 2025 WL 1144560, at *7-8 (S.D. Ohio Apr. 18, 2025); *Saxena v. Noem*, No. 5:25-cv-05035-KES, 2025 WL 1149498, at *3 (D.S.D. Apr. 18, 2025); *Bejugam v. Lyons*, No. 2:25-cv-00537-MHH, at 3 (N.D. Ala. Apr. 17, 2025) (attached as Ex. 13-9); *Doe v. Noem, et al.*, No. 2:25-cv-01103-DAD-AC, 2025 WL 1134977, at *8-9 (E.D. Cal. Apr. 17, 2025); *Doe v. Noem et al.*, No. 2:25-cv-00633-DGE, 2025 WL 1141279, at *10 (W.D. Wash. Apr. 17, 2025); *Hinge v. Lyons*, No. 1:25-cv-01097-RBW, at 1-2 (D.D.C. Apr. 17, 2025) (attached as Ex. 13-10); *see also* Opinion, 2025 WL 1134966, at *6 (D.D.C. Apr. 15, 2025); *Jin v. Noem*, No. 0:25-cv-01391-PJS-DLM, at 7 (D. Minn. Apr. 17, 2025) (attached as Ex. 13-11); *Mashatti v. Lyons*, No. 1:25-cv-01100-RJL, at 5 (D.D.C. Apr. 17, 2025) (attached as Ex. 13-12); *Patel v. Bondi*, No. 1:25-cv-00101-SPB-WSH, 2025 WL 1134875, at *3 (W.D. Pa. Apr. 17, 2025); *S.Y., et al. v. Noem, et al.*, No. 5:25-cv-03244-NW, at 7 (N.D. Cal. Apr. 17, 2025) (attached as Ex. 13-13); Minute Order, *Chatvani v. Noem, et al.*, No. 1:25-cv-04024, at 1 (N.D. Ill. Apr. 16, 2025) (attached as Ex. 13-14); *C.S. v. Noem, et al.*, No. 2:25-cv-00477-WSS, at 1 (W.D. Pa. Apr. 15, 2025) (attached as Ex. 13-15); *Doe #2 v. Trump, et al.*, No. 4:25-cv-00175-TUC-AMM, 2025 WL 1115468, at *2 (D. Ariz. Apr. 15, 2025); *Isserdasani v. Noem*, No. 3:25-cv-00283-wmc, 2025 WL 1118626, at *6 (W.D. Wis. Apr. 15, 2025); *Roe v. Noem*, No. 2:25-cv-00040-DLC, 2025 WL 1115298, at *1 (D. Mont. Apr. 15, 2025); *Zhou v. Lyons*, No. 2:25-cv-02994-CV-SK, at 6 (C.D. Cal. Apr. 15, 2025) (attached as Ex. 13-16); *Wu, et al. v. Lyons*, No. 1:25-cv-01979-NCM, at 1-2 (W.D.N.Y. Apr. 11, 2025) (attached as Ex. 13-17); *Zheng v. Lyons*, No. 1:25-cv-10893-FDS, at 1 (D. Mass. Apr. 11, 2025) (attached as Ex. 13-18); *Liu v. Noem, et al.*, No. 1:25-cv-00133-SE-TSM, at 5 (D.N.H. Apr. 10, 2025) (attached as Ex. 13-19); *but see Deore, et al. v. Sec'y U.S. Dep't Homeland Sec.*, No. 2:25-cv-11038-SJM-DRG, ECF No. 20, at 16 (E.D. Mich. Apr. 17, 2025) (denied TRO) (attached as Ex. 13-20).

[2]    ICE, SEVP Overview, https://www.ice.gov/sevis (last visited Apr. 22, 2025).

SEVIS is an administrative tool which collects information from Designated School Officials ("DSOs") into one database which ICE uses to track nonimmigrant students' compliance with the terms of their status.[3] Termination of a student's record in SEVIS is governed by SEVP policies and regulations. DHS regulations distinguish between two separate ways a student fails to comport with their student status: (1) a student who "fails to maintain status," 8 C.F.R. § 214.1(e)–(g), and (2) an agency-initiated "termination of status," 8 C.F.R. § 214.1(d).

Under the first category, a student falls out of status through some act or omission of their own as described in 8 C.F.R. § 214.1. Nonimmigrant students can fall out of status through conduct violations, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year. 8 C.F.R. §§ 214.1(e)–(g). Minor misdemeanor offenses do not meet this threshold for termination based on criminal history.

Under the second category, DHS can terminate a student's SEVIS records *only if* one of three conditions are met: (1) the student was a previously granted waiver under [8 U.S.C. § 1182(d)(3) or (4)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d); *see also Jie Fang*, 935 F.3d at 176.

The revocation of a F-1 visa does *not* constitute failure to maintain F-1 status and cannot therefore be a basis for SEVIS termination. If a visa is revoked prior to a student's arrival to the United States, then the student may not enter, and the SEVIS record is terminated. But the SEVIS record may not be terminated as a result of a visa revocation *after* a student has been admitted into

---

[3]    *Id.*; *see also* ICE, SEVIS Reporting Requirements for Designated School Officials, https://www.ice.gov/sevis/dso-requirements  (last visited Apr. 22, 2025).

the United States, because the student is permitted to continue the authorized course of study.[4]

ICE's own guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."[5] This is because "F-1 student status and F-1 student visas are not one in the same." *Doe 1, et al. v. Bondi, et al.*, No. 1:25-cv-01998-VMC, at 4 (N.D. Ga. Apr. 18, 2025) (attached as Ex. 13-6). The F-1 visa "refers only to the document that nonimmigrant students receive to enter the United States, whereas F-1 student status refers to the students' formal immigration classification once they enter the country." *Id.* Thus, if the student's F-1 visa is revoked, the student is still permitted to continue their course of study.

### III.   Factual Background

#### a.   Defendants' national pattern and practice of unlawfully terminating student status in SEVIS.

In early April 2025, the U.S. government—principally through DHS, ICE, and the Department of State—initiated an unprecedented and sweeping campaign of SEVIS status terminations and student visa revocations, destabilizing the lives of hundreds of international students and universities across the country.[6] Reports from national and local media confirm that over 1,000 international students across at least 160 institutions lost their legal status in the span of mere weeks, often without prior notice, meaningful explanation, or opportunity to contest the

---

[4]    ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), *available at* https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.
[5]    *Id.*
[6]    *See* Annie Ma, Makiya Seminera & Christopher L. Keller, *Visa Cancellation's Sow Panic for International Students, with More Than 1,000 Fearing Deportation*, YAHOO! NEWS, Apr. 15, 2025, https://www.yahoo.com/news/visa-cancellations-sow-panic-international; Rafael Romo, Nick Valencia & Chris Youd, *New Lawsuit Alleges Traffic Stops, Dismissed Cases Used as Criteria to Revoke Student Visas*, CNN, Apr. 16, 2025, https://www.cnn.com/2025/04/16/us/international-visa-revocations-traffic-stops/index.html.

decision.[7] These terminations were frequently triggered by minor criminal history.[8]

Unlike prior agency practice, which involved some level of coordination with DSOs or institutional administrators,[9] these revocations were executed by DHS/ICE directly through SEVIS. The lack of transparency and procedural safeguards created chaos within educational institutions and upended the lives of lawful F-1 visa holders like the Plaintiffs in this case.[10]

### b. John Doe #1

John Doe #1 is a doctoral student at the University of Iowa who has been studying chemical engineering since August 2021. Ex. 1, John Doe #1 Declaration, at ¶ 3. He is a citizen and national of India. *Id.* at ¶ 1. Doe #1 first came to the United States on August 4, 2021, as an F-1 student to pursue his Ph.D. *Id.* at ¶ 2. As a research and teaching assistant at the University of Iowa, he has applied his knowledge in chemical engineering and specialized software to support research and instruction. *Id.* at ¶¶ 4–6. Part of Doe #1's work includes research and development of high-quality electrochemical oxygen concentrators. *Id.* at ¶ 13. These will enhance the ability of hospitals to provide 99.9% pure oxygen to patients and will positively impact other fields such as air travel by providing more efficient oxygen in the event of cabin depressurization. *Id.* His work in electrochemistry is also focused on hydrogen, oxygen, fuel, and photovoltaic cells. *Id.* at ¶ 14. This work will likely help create cheaper energy generation, and more efficient batteries. *Id.*

On April 10, 2025, the University of Iowa informed Doe #1 that his SEVIS record had

---

[7]     Ma, et al., *supra* note 1. Plaintiffs do not challenge the revocation of their visas in this lawsuit; they only seek reinstatement of their student status in SEVIS.

[8]     Romo, *supra* note 1.

[9]     *Terminate a Student*, U.S. DEP'T OF HOMELAND SEC. (last updated Nov. 7, 2024), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (describing the role of DSOs in terminating SEVIS records).

[10]    Liam Knox, *Smashing the Student Visa System*, INSIDE HIGHER ED (Apr. 3, 2025), https://www.insidehighered.com/news/global/international-students-us/2025/04/03/how-trump-wreaking-havoc-student-visa-system.

been cancelled by the federal government. Ex. 2, John Doe #1 Email from Iowa ISSS; Doe #1 Decl. at ¶ 8. He also received emails from the U.S. Embassy in New Delhi on March 13 and April 14, 2025. Ex. 3, John Doe #1 Emails from Embassy; Doe #1 Decl. at ¶ 9. These informed him that his F-1 visa had been revoked as of March 13, 2025, under section 221(i) of the Immigration and Nationality Act. *See* Ex. 3. The Embassy warned that remaining in the United States without lawful immigration status could result in fines, detention, deportation, and/or make him ineligible for a future U.S. visa. *Id.*

Doe #1's only criminal background is an Operating While Intoxicated offense that he pled guilty to in March 2024. IOWA CODE 321J.2; Doe #1 Decl. at ¶ 10. He was sentenced to two days, which he served by attending an OWI diversion course. Doe #1 Decl. at ¶ 10.

ICE's termination of his student status has put Doe #1's education, research, and career trajectory at risk. He has stopped working as a research assistant and teaching assistant, which severely affects his ability to complete his studies and obtain a Ph.D. *Id.* at ¶ 11. Moreover, he expects to apply for and obtain Optional Practical Training ("OPT"), a temporary employment authorization directly related to his F-1 student status, which he can't do unless his student status is reinstated. *Id.* at ¶ 7. The termination of his status has put Doe #1 under great stress. *Id.* at ¶¶ 15–16. He has been afraid to leave his apartment, and he is living in constant fear of arrest, detention, and deportation. *Id.* at ¶ 17.

### c. John Doe #2

John Doe #2 is an Economics junior at the University of Iowa, where he has been studying since January 2024. Ex. 4, John Doe #2 Declaration, at ¶¶ 5–6. He is a citizen and national of the People's Republic of China. *Id.* at ¶ 1. Doe #2 first came to the United States as an F-1 student to study English as a second language at West Chester University in Pennsylvania in 2017. *Id.* at ¶¶ 3–4. Since then, he has studied economics, finance, and statistics in Iowa and Pennsylvania. *Id.* at

¶¶ 4–6. Doe #2 has paid $33,082 in tuition fees to the University of Iowa for the 2024-2025 academic year, and $49,623 in total tuition fees for his current program of study. *Id.* at ¶ 7. He plans to graduate in December 2025. *Id.* at ¶ 6.

On April 10, 2025, the University of Iowa informed Doe #2 that the federal government had cancelled his SEVIS record. *See* Ex. 5, John Doe #2 Email from Iowa ISSS; Doe #2 Decl. at ¶ 9. He also received an email from the U.S. Consulate General in Vancouver—where he last renewed his F-1 visa—on April 14, 2025 informing him that his F-1 visa had been revoked under section 221(i) of the Immigration and Nationality Act. *See* Ex. 6, John Doe #2 Email from Consulate; Doe #2 Decl. at ¶ 10. Remaining in the United States, the consulate warned, could result in fines, detention, and/or deportation, and make him ineligible for a future U.S. visa. *See* Doe #2 Email from Consulate.

Doe #2 has five speeding citations, a driving without a license violation, and a pending driving without a license charge. *See* Doe #2 Decl. at ¶ 11. In 2024, he was convicted of disorderly conduct and was sentenced to pay a $105.00 fine. IOWA CODE § 723.4(1)(c); *id.* at ¶ 11. He has completed all community service and paid all necessary fines.

ICE's termination of his student status has put Doe #2's health, education, and career trajectory at risk. Doe #2 Decl. at ¶¶ 12–13. His mental health has severely worsened, so much so that his doctor increased the dosage of his depression medication. *Id.* at ¶ 12. Doe #2 has not left his apartment since he learned of the SEVIS termination; he fears detention and deportation. *Id.* at ¶ 13. Moreover, he expects to apply for and obtain OPT, which he cannot do without F-1 student status. *Id.* at ¶ 8.

### d.  John Doe #3

Doe #3 has been an Exercise Science and Kinesiology student at the University of Iowa since August 14, 2022. Ex. 7, John Doe #3 Declaration, at ¶ 2. He is a citizen and national of the

People's Republic of China. *Id.* at ¶ 1. He first came to the United States on August 13, 2022, as an F-1 student to study Exercise Science and Kinesiology, and he plans to continue on to a doctoral program in physical therapy. *Id.* at ¶¶ 2, 4. Doe #3 has paid $31,602 in tuition fees to the University of Iowa for the 2024-2025 academic year, and $97,461 in total tuition fees for his current program of study. *Id.* at ¶ 6. He is expected to graduate in December 2026. *Id.* at ¶ 5.

On April 10, 2025, the University of Iowa informed Doe #3 that the federal government had cancelled his SEVIS record. *See* Ex. 8, John Doe #3 Email from Iowa ISSS; Doe #3 Decl. ¶ 8. He also received an email from the U.S. Consulate General in Guangzhou on April 14, 2025. *See* Ex. 9, John Doe #3 Email from Consulate; Doe #3 Decl. ¶ 9. The Consulate informed him that his F-1 visa had been revoked under section 221(i) of the Immigration and Nationality Act and that remaining in the United States without lawful immigration status could result in fines, detention, and/or deportation, and make him ineligible for a future U.S. visa. *See* Doe #3 Email from Consulate.

Doe #3 has two speeding citations, one failure to yield citation, and one driving without a valid driver's license violation. Doe #3 Decl. ¶ 10. He also pleaded guilty to one charge of operating while under the influence for which the court is deferring judgment until he completes a one-year term of probation. IOWA CODE § 321J.2; *id.* at ¶ 10.

This termination has put Doe #3's health, education, and career trajectory at risk. Doe #3 Decl. ¶¶ 11–12. His mental health has seriously deteriorated which affects his ability to complete his studies and graduate on time to pursue a Ph.D. *Id.* at ¶ 11. The possibility of being detained and deported has intensified Doe #3's anxiety and stress, especially being a year away from graduation. *Id.* at ¶¶ 3, 11–12. The feeling of uncertainty has affected him both academically and mentally, and he fears retaliation or targeting from the DHS and ICE. *Id.* at ¶¶ 11–12.

### e. John Doe #4

Doe #4 is an Epidemiologist working for the Iowa Department of Health and Human Services. Ex. 10, John Doe #4 Declaration, at ¶ 1. He is a citizen and national of India. *Id.* He first came to the United States on August 12, 2021, as an F-1 student to pursue a Master of Public Health with a focus in Epidemiology at the University of Iowa, a critical STEM field. *Id.* at ¶ 4. Doe #4 graduated on August 4, 2023, and obtained an OPT extension of his F-1 Visa for three years, valid through September 2026. *Id.* at ¶¶ 4–5. He paid $60,254 in total tuition fees for his master's degree. *Id.* at ¶ 7.

OPT is "temporary employment for optional practical training directly related to the student's major area of study." 8 C.F.R. § 214.2(f)(10)(ii). OPT typically occurs after completion of the academic program while the student is still in F-1 student status, and the ongoing validity of status is tracked through SEVIS. *See* 8 C.F.R. 214.2(f)(11)(ii) ("[T]he school assumes the added responsibility for maintaining the SEVIS record of the student for the entire period of authorized OPT. . . .").

Upon graduating, Doe #4 began working at the Iowa Department of Health and Human Services ("DHHS") as an epidemiologist, researching drug overdose death trends and circumstances in Iowa to develop prevention strategies. *Id.* at ¶ 6. After completing his OPT, Doe #4 hopes to continue to gain experience in public health, ideally through ongoing work with the Iowa DHHS or by furthering his education in the field of epidemiology. *Id.* at ¶ 8.

On April 10, 2025, the University of Iowa informed Doe #4 that the federal government had cancelled his SEVIS record. *See* Ex. 11, John Doe #4 Email from Iowa ISSS; Doe #4 Decl. ¶ 9. He also received an email from the U.S. Embassy in New Delhi on April 14, 2025. *See* Ex. 12, John Doe #4 Email from Embassy; Doe #4 Decl. ¶ 10. Like the emails sent to Does #1-3, the Embassy informed him that his F-1 visa had been revoked under section 221(i) and that remaining in the

United States without lawful immigration status could result in fines, detention, and/or deportation, and make him ineligible for a future U.S. visa. *See* Doe #4 Email from Embassy.

Doe #4 has an expunged operating while intoxicated offense and deferred judgement from 2023. IOWA CODE § 321J.2; Doe #4 Decl. ¶ 11. He has no other criminal history.

This termination has put Doe #4's health, work, and career trajectory at risk. Doe #4 Decl. ¶¶ 12–15. Following his SEVIS termination he had to stop working. *Id.* at ¶ 12. All his data analysis efforts related to substance use and overdose death prevention has been halted. *Id.* Doe #4 had to request approximately two weeks of unpaid leave, and he is unsure whether he will be granted an extension of his leave. *Id.* The disruption of his work has directly affected his ability to financially support his family and pay student loans. *Id.* at ¶ 13. Furthermore, halting his considerable contributions to the prevention of substance abuse and overdose deaths in the state of Iowa has been personally and professionally difficult. *Id.* All this has caused him increased stress and anxiety. *Id.* Doe #4 has experienced nightmares and sleeplessness and has not been able to leave his apartment for days fearing detention and deportation. *Id.* at ¶ 14.

## IV.   Standard of Review

When considering a motion for a TRO and a preliminary injunction, courts consider the following four factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys.,* 640 F.2d at 114. The standard for a TRO is the same standard for motions for preliminary injunction. *See Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022). No single factor is dispositive; courts "flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (quoting *United Indus. Corp. v.*

*Clorox Co.*, 140 F.3d 1175, 1179 (8th.Cir. 1998)). When the government is the opposing party, the

balancing of equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The

moving party bears the burden to establish these factors. *See, e.g., Watkins Inc. v. Lewis*, 346 F.3d 841,

844 (8th Cir. 2003).

<h2 style="text-align:center">V.    Argument</h2>

### a. Plaintiffs are likely to succeed on the merits of their APA and Due Process Clause claims because Defendants' actions violated the immigration regulations.

Defendants' termination of Plaintiffs' F-1 student status in SEVIS was unlawful for several

reasons. First, ICE violated the APA. By failing to follow federal immigration regulations, ICE's

SEVIS terminations were arbitrary, capricious, an abuse of discretion, and otherwise not in

accordance with the law. *See* 5 U.S.C. § 706(2)(A). The agency also violated the APA by failing to

follow its own procedures at 8 C.F.R. § 214.1(d). *See* 5 U.S.C. § 706(2)(D). Finally, Defendants'

failure to notify Plaintiffs of the termination, nonetheless give an opportunity to respond, violates

the procedural component of the Due Process Clause. U.S. Const. amend. V; 5 U.S.C. § 706(2)(B).

### 1. By failing to follow their own regulations, Defendants' actions were arbitrary, capricious, an abuse of discretion and not in accordance with law (Count I).

Pursuant to 5 U.S.C. § 706(2)(A), a court reviewing an agency's action must "hold unlawful

and set aside" final agency actions that are "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law." ICE's SEVIS terminations are final agency action because

they "mark the 'consummation' of the agency's decision making process," from which "legal

consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotations and

citations omitted). There is "no other adequate remedy in a court" where, as here, there is no

administrative appeal process. 5 U.S.C. § 704; *see Jie Fang*, 935 F.3d at 183. Because there is no

mechanism to review the original termination order and these terminations are collateral to removal,

ICE's termination of SEVIS statuses is a final agency action subject to APA review.

Defendants' termination of Plaintiffs' student status in the SEVIS system was not done in accordance with the immigration regulations. As discussed above, the three circumstances that authorize ICE to terminate a nonimmigrant's status—termination of a particular immigration waiver, a private bill conferring permanent residency, or a termination notification in the Federal Register—do not apply to Plaintiffs. *See* 8 C.F.R. § 214.1(d). Nor have Plaintiffs "fail[ed] to maintain their status." 8 C.F.R. § 214.1(e)–(g) (listing unauthorized employment, disclosure of false information to DHS, and criminal activity as ways nonimmigrant students can fail to maintain their status). Under 8 C.F.R. § 214.1(g), the only type of crime mentioned as a "failure to maintain status" is "a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)."

None of the four plaintiffs have committed crimes of violence, and none of the crimes for which Plaintiffs have been charged or convicted meet the "for which more than a year of imprisonment may be imposed" requirement present in 8 C.F.R. § 214.1(g). Three of the plaintiffs committed first-time misdemeanor OWIs and one was convicted of disorderly conduct. Each of these crimes is a misdemeanor; each of these crimes is a non-violent crime; and each of these crimes carries a maximum penalty of less than one year. *See* IOWA CODE § 321J.2(a)(1) (prescribing "[i]mprisonment in the county jail for not less than forty-eight hours" for a misdemeanor OWI); *see also* IOWA CODE § 723.4(1)(c) (disorderly conduct is a simple misdemeanor for which "[t]he court may order imprisonment not to exceed thirty days," IOWA CODE § 903.1). Indeed, none of the Plaintiffs served any jail time for their low-level misdemeanor crimes. Thus, 8 C.F.R. § 214.1(g) cannot be the lawful basis for ICE's termination.

Finally, 8 C.F.R. § 214.2(f) provides a list of other reasons why a nonimmigrant student may have failed to maintain their status, such as engaging in unauthorized employment or failing to

maintain a full case of study, but ICE has not alleged any such failures, and Plaintiffs have each

complied with the terms of their F-1 student visas. Because ICE's actions are wholly untethered

from the regulations or any other law, Plaintiffs are likely to succeed in showing that ICE acted

arbitrarily, capriciously, and not in accordance with the law. Furthermore, ICE's decision to

terminate their SEVIS statuses shows no rational connection between their crimes or convictions

and ICE's 8 C.F.R. § 214.1(g)-based justification for terminating their statuses. Thus, Defendants

violated 5 U.S.C. § 706(2)(A) of the APA.

### 2. Defendants blatantly disregarded their own procedures when they terminated Plaintiffs' SEVIS records (Count IV).

A reviewing court shall hold unlawful and set aside agency action that does not follow

procedure required by law. *See* 5 U.S.C. § 706(2)(D). Government agencies are generally required to

follow their own regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954).

The conditions for terminating nonimmigrant student status, and the ways in which an F-1 student

fails to maintain status have been discussed extensively in the preceding section (Part V.A.1). *See also*

8 C.F.R. *See* 8 C.F.R. § 214.1(d)–(g). For the same reasons articulated above, Plaintiffs' argument

that Defendants failed to follow procedure required by law is likely to succeed on the merits. ICE

can point to no statute or regulation that prescribes the unilateral termination of Plaintiffs' student

status in SEVIS. Rather, the procedure set out in 8 C.F.R. § 214.1(d) has been blatantly disregarded.

Other district courts have already agreed that ICE has acted outside the scope of their regulations in

terminating SEVIS records. *See, e.g., Saxena v. Noem, et al.*, No. 5:25-CV-5035, 2025 WL 1149498, at

*3 (D.S.D. Apr. 18, 2025); *Jin v. Noem, et al.*, No. 25-CV-1391, at 7 (D. Minn. Apr. 17, 2025)

(attached as Ex. 13-11). Plaintiffs ask the Court to find the same and set aside ICE's SEVIS

terminations for their failure to follow procedure required by law. 5 U.S.C. § 706(2)(D).

3. **Defendants deprived Plaintiffs of their rights without the due process guaranteed by the Fifth Amendment and the APA (Counts II & III).**

ICE's abrupt termination of Plaintiffs' SEVIS records was done without the requisite due process. "The Due Process Clause applies to 'all persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 US 678, 693 (2001). An individual shall not be deprived of their property without due process of law. U.S. CONST. AMEND V. Procedural due process often requires the government to provide a person with notice and an opportunity for a hearing before such a deprivation. *Twining v. New Jersey*, 211 U.S. 78, 110 (1908); *Jacob v. Roberts*, 223 U.S. 261, 265 (1912).

ICE terminated Plaintiffs' SEVIS records without providing them any kind of notice, and at no point before or since those terminations has ICE afforded Plaintiffs an opportunity to be heard. *See generally* Ex. 1, 4, 8, 12 (detailing the manner in which Plaintiffs learned of their SEVIS termination—from the University international students' office). Plaintiffs have a constitutionally protected property interest in their SEVIS registration, yet no due process was afforded to them. *See ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) (recognizing protected property interest in participating in exchange visitor program); *Brown v. Holder*, 763 F.3d 1141, 1148 (9th Cir. 2014) (recognizing protected property interest in nondiscretionary application for naturalization). Accordingly, Plaintiffs' are likely to succeed on the merits of Counts II & III because Defendants' violated their Fifth Amendment Due Process rights by not giving them a hearing and meaningful opportunity to be heard. The Court should set aside ICE's terminations under the APA. 5 U.S.C. § 706(2)(B) ("[H]old unlawful and set aside agency action . . . (B) contrary to constitutional right, power, privilege, or immunity").

### b. Plaintiffs have suffered, and will continue to suffer irreparable harm

Plaintiffs will suffer irreparable harm if Defendants' termination of their F-1 student status in SEVIS is not restored and enjoined. *Dakotans for Health v. Noem*, 52 F.4th 381, 392 (8th Cir. 2022). "The loss of timely academic process alone is sufficient to establish irreparable harm." *Isserdasani v. Noem*, No. 25-CV-283-WMC, 2025 WL 1118626, at *5 (W.D. Wis. Apr. 15, 2025) (citing *Liu v. Noem*, No. 25-cv-133-SE, op. at 4 (D.N.H. Apr. 10, 2025) (finding school interruption to be irreparable harm)).

Plaintiffs also currently face the serious risk of immediate arrest and detention for deportation because they no longer have lawful status to remain in the United States. *See* Doe #2 Decl. at ¶ 14 ("I am afraid ICE will arrest me, and I fear detention and deportation."). Doe #4 Decl. at ¶ 14 (detailing the uncertainty of encountering ICE, "combined with the emotional stress of the situation, has made me stay indoors while my legal situation is being addressed."). "[D]eportation is a drastic measure and at times the equivalent of banishment of exile." *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948). Arrest and detention by ICE isn't a mere possibility; other similarly situated students have recently been arrested in the Midwest.[11]

These status terminations may result in the daily accrual of unlawful presence, which can play a critical role in the potential administrative reinstatement of Plaintiffs' F-1 student status and future immigration benefits. *See Jie Fang*, 935 F.3d at 176 (noting that a student cannot have been out of valid F-1 student status for more than five months in order to pursue a reinstatement application).

Plaintiffs also suffer unique, individual harm. Several plaintiffs report not being able to sleep

---

[11]    Ernesto Londoño and Alan Blinder, *Minnesota Student Detained by ICE Was Not an Activist, Lawsuit Says*, N.Y. TIMES (March 31, 2025), https://www.nytimes.com/2025/03/31/us/minnesota-student-immigration-arrest.html

well and have physical manifestations of the stress they are under. Doe #1 Decl. ¶ 16; Doe #2 Decl. ¶ 12; Doe #3 Decl. ¶ 11; Doe #4 Decl. ¶ 13. Doe #2 has had to increase his depression medication in response to the stress and fear he is under. Doe #2 Decl. ¶ 12. Three of the four plaintiffs aren't leaving their homes or are doing so only for basic necessities.

Plaintiffs have also ceased their academic-related work. Doe #4 is not able to work at the Iowa DHHS, where he is conducting research on substance abuse and overdose death prevention. Doe #4 Decl. ¶ 6. He is unsure how he will pay his bills without an income, including his student loans from his Ph.D. program. *Id.* at ¶ 13. Doe #1 has ceased his work on his research on high quality electrochemical oxygen concentrators which will greatly enhance the ability for hospitals to provide oxygen to patients. Doe #1 Decl. ¶ 13.

Plaintiffs also stand to lose their financial investment in their education. For example, Doe #3 has invested $97,461 in his total tuition for his current program, and he stands to lose $31,602 in tuition for the current semester. Doe #3 Decl. ¶ 6.

In sum, Plaintiffs have suffered—and will continue to suffer—irreparable harm in various forms due to their inability to study and work on F-1 status.

### c. Balance of equities favors Plaintiffs

The balance of equities tips strongly in Plaintiffs favor. The harm they suffer if Defendants' SEVIS termination determination is not set aside and enjoined is severe and potentially permanent.

First, this termination will result "in the loss 'of all that makes life worth living'" for Plaintiffs' academic studies and future career trajectory. *Bridges v. Wixon*, 326 U.S. 135, 147 (1945); *see also* Doe #1 Decl. ¶¶ 11–12 ("I have stopped going to my classes, and I have lost my work authorization, so I have been unable to work as a TA or RA, causing harm to my department. I have not been able to assist my professor in grading presentations . . . I am also worried that the termination of my TA role may make it difficult to become a professor in the future."). Doe #3 at

¶ 7 ("After graduation, I am committed to advancing my career in healthcare by pursuing a Doctor of Physical Therapy degree."). Doe #4 Decl. at ¶ 8 ("After completing my OPT in 2026, I hope to continue gaining experience in public health, ideally through ongoing work with the Iowa DHHS.").

Second, ICE's SEVIS terminations will result in extreme financial and academic hardship for Plaintiffs. Doe #3 Decl. at ¶ 6 ("I . . . have paid $97,461 in total tuition for my current program."). Doe #4 Decl. at ¶ 12 ("I requested approximately two weeks of unpaid leave on April 10, 2025, and my supervisor accepted this request. I am unsure whether my supervisor will grant any extensions of this unpaid leave."). Doe #2 Decl. at ¶ 13 ("I am so worried about my studies because I am almost finished with this semester, and I have less than one year left of my program."). Third, these terminations have already resulted and will continue to result in emotional and psychological harm to Plaintiffs. Fourth, Plaintiffs face the serious risk of immediate detention and deportation because they no longer have lawful status to remain in the United States, and their SEVIS status termination will likely result in the accrual of unlawful status with each day that passes, affecting future opportunities and immigration benefits, including OPT. *See Jie Fang*, 935 F.3d at 176 (noting that a student cannot have been out of valid F-1 student status for more than 5 months in order to pursue a reinstatement application). Doe #2 Decl. at ¶ 8 (discussing plans to pursue OPT); Doe #3 Decl. at ¶ 7 ("After graduation, I am committed to advancing my career in healthcare by pursuing a Doctor of Physical Therapy degree."). Public-facing guidance says, "[a] terminated record in the Student and Exchange Visitor Information System (SEVIS) could indicate that the nonimmigrant no longer maintains F or M status."[12]

On Defendants' side, the harm is minimal. Defendants merely must preserve the status quo

---

[12]    U.S. DEP'T HOMELAND SEC., Terminate a Student, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last updated Nov. 7, 2024).

that has been in place for the many years Plaintiffs have studied in the United States. Defendants

cannot credibly claim substantial harm in temporarily allowing four students to remain in the United

States under existing F-1 conditions that Plaintiffs have lawfully followed. Bureaucratically, there is

minimal burden on Defendants—if any. Within the SEVIS system, there are approximately six

steps to change a student's SEVIS termination in the database, a process that would likely take a

matter of minutes.[13]

Further, Defendants have no legitimate interest in enforcing this unconstitutional and

unlawful termination or in exceeding Defendants' statutory and regulatory authority by their SEVIS

termination determinations in a manner that is contrary to federal law. "[I]t is always in the public

interest to prevent the violation of a party's constitutional rights." *Brandt ex rel. Brandt v. Rutledge*, 47

F.4th 661, 672 (8th Cir. 2022) (quoting *D.M. ex rel. Bao Xiong v. Minn. State High Sch. League*, 917 F.3d

994, 1004 (8th Cir. 2019)). Thus, the balance of equities and the public interest both strongly favor a

TRO and preliminary injunction.

## VI.    Conclusion

Plaintiffs have demonstrated a strong likelihood of success on the merits, irreparable harm,

and the balance of equities in their favor. *Dataphase Sys.,* 640 F.2d at 114. Accordingly, Plaintiffs seek

an immediate TRO without notice under Rule 65(b)(1) ordering Defendants to:

(i)    Restore each Plaintiff's F-1 student status in SEVIS, backdated to the date of termination;

(ii)    Require Defendants to set aside the F-1 student status termination decisions as to

Plaintiffs;

(iii)    Prohibit Defendants from terminating Plaintiffs' F-1 student status absent a valid ground

---

[13]    U.S. DEP'T HOMELAND SEC., Correct Student SEVIS Status,
https://studyinthestates.dhs.gov/sevis-help-hub/student-records/corrections-and-correction-
requests/correction-requests/correct-1 (last updated Feb. 15, 2024).

as set forth in 8 C.F.R. § 214.1(d)–(g), and absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator;

(iv)    Prohibit all Defendants from arresting, detaining, or transferring Plaintiffs out of this Court's jurisdiction without first providing adequate notice to both this Court and Plaintiffs' counsel as well as time to contest any such action; and

(v)    Prohibit all Defendants from initiating removal proceedings against or deporting any Plaintiff on the basis of the termination of their F-1 student status.


Dated: April 23, 2025                    Respectfully submitted,

                                        */s/ Katherine Melloy Goettel*
                                        KATHERINE MELLOY GOETTEL
                                        MIKHAIL ACHERKAN*
                                        JUDE HAGERMAN*
                                        ANGELA PANDIT*
                                        IAN REEVES*
                                        JUSTIN REMPE*
                                        ISABELLA SIRAGUSA*
                                        University of Iowa College of Law
                                        Clinical Law Programs
                                        380 Boyd Law Building
                                        Iowa City, IA 52242-1113
                                        Telephone: (319) 335-9023
                                        Email: kate-goettel@uiowa.edu

                                        *Counsel for Plaintiffs*

                                        * Authorized law student practitioners

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 23, 2025, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF System, which will send notification of such filing to counsel for

Defendants. I also provided a copy of this pleading to the U.S. Attorney's Office by electronic mail.


<u>/s/ Katherine Melloy Goettel</u>
KATHERINE MELLOY GOETTEL
*Counsel for Plaintiffs*