**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**DAVENPORT DIVISION**

| | |
|---|---|
| JOHN DOE #1, *et al.*, | Case No. 3:25-cv-00042-RGE-WPK |
| *Plaintiffs*, | **Brief in Support of Plaintiffs' Motion to Proceed Under Pseudonym and Motion for Protective Order** |
| v. | |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*, | |
| *Defendants.* | |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO PROCEED UNDER PSEUDONYM AND MOTION FOR PROTECTIVE ORDER**

**I.   Introduction**

Plaintiffs John Does #1-4 submit this brief in support of their Motion for Leave to Proceed Under Pseudonyms and Motion for a Protective Order. Plaintiffs are three University of Iowa Students and one recently graduated University of Iowa graduate student who is working as epidemiologist as a part of his Optional Practical Training ("OPT") under the terms of his F-1 student status. Each Plaintiff abruptly learned that their student status was revoked in Defendants' computerized tracking system, Student and Exchange Visitor Information System ("SEVIS"). They have now each had their F-1 Student Visas revoked as well. Plaintiffs fear enforcement from the Department of Homeland Security by way of arrest, detention, and removal. They are under immense stress, which is affecting each of their daily lives, and they are concerned about sensitive, personal information being disclosed to the public. Accordingly, they seek leave to proceed under pseudonyms and seek a protective order limiting the means in which Defendants can use information about their identities. *See* Fed. R. Civ. P. 26(c).

1

## II.  Factual Background

Plaintiffs share similar concerns that support a motion to proceed under pseudonyms. They fear that ICE will arrest, detain and deport them, and three plaintiffs have not left their homes because of this fear. *See* Ex. 1, John Doe #1 Declaration, at ¶¶ 15, 17 (stating he hasn't left his apartment in days out of fear that "ICE or other immigration agencies may use my information against me in a retaliatory manner."); Ex. 2, John Doe #2 Declaration, at ¶ 13 ("I have not left my apartment since receiving the emails about my SEVIS termination and visa cancellation because I fear ICE."); Ex. 3, John Doe #3 Declaration, at ¶ 12 (stating "I . . . do not want to be targeted further by DHS and ICE."); Ex. 4, John Doe #4 Declaration, at ¶¶ 14–15 (stating that he has stayed indoors out of fear of encountering ICE).

In addition, each Plaintiff details the mental anguish and stress they are under due to their SEVIS status termination. Doe #1, a Ph.D. student, describes the experience as a "personal and professional crisis," which has caused him struggle sleeping and eating. *See* Doe #1 Decl. ¶ 16. For Doe #2, the ordeal has exacerbated his depression and anxiety, causing his doctor to increase his depression medication. *See* Doe #2 Decl. ¶ 12 ("My depression was well managed before my SEVIS termination, but it has gotten worse since April 10."). Doe #3, a third-year undergraduate is feeling "anxious," "stressed," and "overwhelmed most of the time." Doe #3 Decl. ¶ 11 ("I can't sleep well at night, constantly worrying about my future and my immigration status. . . . I often experience racing thoughts."). Finally, Doe #4 has experienced similar worry and stress. "I have worked hard to build a meaningful personal and professional life path, . . . To have all of that suddenly halted has been incredibly difficult. I have been having nightmares." Doe #4 Decl. ¶ 13.

Plaintiffs have already experienced anxiety and mental distress due to fear of exposure, and revealing their names will exacerbate the issues. They therefore seek leave to appear in this lawsuit anonymously.

### III.  Argument

**A. The Court should allow Plaintiffs to proceed anonymously to prevent disclosure of their private, sensitive information and reprisal from the government.**

The Federal Rules of Civil Procedure assume all plaintiffs will be named. *See* FED. R. CIV. P. 10(a) ("The title of the complaint must name all the parties . . . ."); *id.* R. 17(a) ("An action must be prosecuted in the name of the real party in interest."). But though "there is a tradition of public access to court records, . . . that right is not absolute." *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1333 (D.C. Cir. 1985).

One recurring exception is allowing plaintiffs to proceed under pseudonyms in appropriate circumstances. While the Eighth Circuit has not set forth a test for district courts to follow, it has not questioned the use of a pseudonym in immigration cases. *See, e.g., R.K.N. v. Holder*, 701 F.3d 535, 537 n.2 (8th Cir. 2012); *Doe v. Holder*, 651 F.3d 824, 826 (8th Cir. 2011). Courts in similar circumstances have considered several factors, but noted they are ultimately "non-exhaustive" and open to "additional factors 'relevant to the particular case under consideration.'" *Doe v. Grinnell Coll.*, No. 4:17-CV-079, 2017 WL 11646145, at *2 (S.D. Iowa July 10, 2017) (quoting *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008)); *see also Lozano v. City of Hazleton*, 496 F. Supp. 2d 477, 506 (M.D. Pa. 2007), *vacated in part on other grounds*, 620 F.3d 170 (3d Cir. 2010) (articulating factors supporting motion to proceed pseudonymously by plaintiffs with concerns about the legality of their immigration status); *Keller v. City of Fremont*, Nos. 8:10–cv–0270, 4:10–cv–3140, 2011 WL 41902, *2 (D. Neb. Jan. 5, 2011) (same). Most recently, the Southern District of Iowa allowed two plaintiffs to remain unnamed in immigration-related litigation. Order, *Iowa Migrant Movement for Justice v. Brenna Bird*, No. 4:24-cv-00161, ECF No. 37 (S.D. Iowa June 6, 2024) (attached as Exhibit 5).

Among these factors for and against the use of pseudonyms are: (1)  whether the litigation involves matters that are highly sensitive and of a personal nature; (2) the extent to which the identity of the litigant has been kept confidential; (3) the bases upon which disclosure is feared or

3

sought to be avoided, and the substantiality of these bases; (4) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (5) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (6) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; (7) whether the suit is challenging private or public parties; and (8) whether the party seeking to sue pseudonymously has illegitimate ulterior motives. *See Grinnell Coll*, 2017 WL 11646145, at *2 (listing multiple factors courts consider); *Lozano*, 496 F. Supp. at 477 (same).

Factors against use of pseudonyms are: (1) the universal level of public interest in access to the identities of the litigants; (2) whether, because of the subject matter of the litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated. *Keller*, v, at *2 (quoting *Lozano*, 496 F. Supp. 2d at 506) (cleaned up and internal quotation marks omitted); *see also Grinnell*, 2017 WL 11646145, at *2 (articulating similar factors for consideration).

These factors weigh in favor of pseudonyms:

1. *Identity of Plaintiffs*. To date, the identity of the plaintiffs has been kept confidential through use of pseudonyms in initial pleadings. *See, e.g.*, Compl., ECF No. 1.

2. *Basis for fear of disclosure*. Plaintiffs could be exposed to harm or retaliation as a result of this litigation in the form of detention, initiation of removal proceedings, and removal. Such enforcement action is not just theoretical but has occurred to other students in the Midwest whose

SEVIS record and visa were terminated, just like Plaintiffs'.[1] Without F-1 status and without an F-1 visa, Plaintiffs are vulnerable to deportation.

3. *Highly sensitive and personal matters.* This litigation involves very sensitive and personal information. Details regarding the Plaintiffs' status as students and their immigration status will be rendered public through this litigation, if their identities are not duly protected under pseudonyms. Some plaintiffs are suffering from anxiety and depression due to the mental and emotional toll of their studies and work being halted. Others fear details about their life being made public.

4. *Magnitude of public interest.* The issue of the federal government's termination of international students' visas and status has garnered a great deal of public interest across the country as well as here in Iowa.[2] Because of this, Plaintiffs will likely be in the spotlight.

Additionally, revealing Plaintiffs' identity could make them subject of retaliatory harassment, discrimination, or violence. Courts have acknowledged that "[i]t is difficult, if not impossible, to quantify the risk of harm a plaintiff faces when litigating . . . a socially-charged issue." *Freedom From Religion Found., Inc. v. Emanuel Cnty. Sch. Sys.*, 109 F. Supp. 3d 1353, 1359 (S.D. Ga. 2015). Indeed, the "most compelling situations [for pseudonymous plaintiffs] involve matters which are highly sensitive, such as social stigmatization, real danger of physical harm, or where the injury litigated

---

[1] *See* Ernesto Londoño and Alan Blinder, *Minnesota Student Detained by ICE Was Not an Activist, Lawsuit Says*, N.Y. Times, (March 31, 2025), https://www.nytimes.com/2025/03/31/us/minnesota-student-immigration-arrest.html.

[2] Ryan Hansen, *University of Iowa dean says five student visas have been revoked. What to know*, Iowa City Press-Citizen (Apr. 16, 2025), https://www.press-citizen.com/story/news/local/2025/04/16/university-of-iowa-five-international-student-visas-have-been-revoked/83096965007/; Kimmy Yam, *In about half of U.S. states, international students' visas are being revoked. What's behind it*, NBC News (Apr. 10, 2025), https://www.nbcnews.com/news/asian-america/international-students-revoked-visas-reasons-why-rcna200313; Joseph Pisani, Michelle Hackman, Sara Randazzo, *Student Visas Are Being Revoked Without Reason or Warning, Colleges Say,* Wall Street J. (April 8, 2025), https://www.wsj.com/us-news/education/student-visas-revoked-trump-administration-82fd8059?msockid=3fd8a74e3cc2600634e8b3b03da36126;

against would occur as a result of the disclosure of the plaintiff's identity." *Doe v. Blue Cross & Blue Shield of Rhode Island*, 794 F. Supp. 72, 74 (D.R.I. 1992) (quoting *Doe v. Rostker*, 89 F.R.D. 158 (N.D. Cal. 1981) (quotations omitted). Each of those factors is present here.

5. *Purely legal nature of the issues presented.* Plaintiffs challenge the legality of Defendants' policy of terminating student status in SEVIS terminations without providing plaintiffs notice and without following the regulations at 8 C.F.R. §§ 214.1(d)–(g). The central legal question will be whether ICE complied with the regulations and policies (they did not). This is principally a legal question that depends on a handful of discrete facts, few of which are likely to be disputed. Accordingly, this factor weighs in favor of anonymity.

6. *Risk of chilling litigation because of public identification.* Should Plaintiffs be forced to reveal their identities, it may chill their continued pursuit of this litigation.

7. *Nature of defendant.* The defendants here—government agencies and officials sued in their official capacity—do not have the same interest in protecting their reputation that private parties do. Because of this difference in reputational interests, "[b]asic fairness dictates that those among [a private party's] accusers who wish to participate in [a] suit as individual party plaintiffs must do so under their real name[,]" but the same is not true of plaintiffs suing the government. *See S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe,* 599 F.2d 707, 713 (5th Cir. 1979). Defendants here do not have the same level of interest in protecting their reputation through revealing the Plaintiffs' identities.

8. *Illegitimate ulterior motives.* Plaintiffs have no ulterior motives other than shielding their privacy and preventing immigration enforcement actions. They are each students or recent graduates who are anxious about their current status and eager to return to school and work.

Finally, anonymity and protection from retaliation *serves* rather than detracts from the public interest. While the public has an interest in access to court proceedings, the individual identity of

each Plaintiff is not necessary to facilitate the public's understanding of judicial decision-making or "public scrutiny of the important issues in this case." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1072 (9th Cir. 2000). Moreover, the "public . . . has an interest in seeing this case decided on the merits." *Id.* at 1073; *see also EW v. New York Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003) (where plaintiff challenges a governmental policy or statute "there is arguably a public interest in a vindication of his rights"). Advancing that public interest includes meaningful protection from retaliation. *See Rivera v. NIBCO Corp.*, 364 F.3d 1057, 1064, 1066 (9th Cir. 2004) (granting protective order in recognition of the "harsh[] reality" that defendants had incentive to subject plaintiffs to enforcement action notwithstanding "promise[s] not to [retaliate]" and that unrestricted discovery would "unacceptably burden[] the public interest").

Importantly, allowing Plaintiffs to proceed anonymously will not prejudice Defendants. As discussed below, Plaintiffs seek a protective order so they can make Defendants aware of their identities, as necessary, for purposes of reviewing and reinstating SEVIS records. *See Grinnell,* 2017 WL 11646145 (no prejudice where "Defendants know Plaintiff's true identity"). In this way, they won't be harmed or prejudiced. Providing Plaintiffs' identities under a protective order would allow Defendants to ascertain information about Plaintiffs to defend the case, without using that information to arrest or detain or otherwise take action against Plaintiffs. *See Doe v. Noem, et al.*, No. 2:25-cv-1103, 2025 WL 1134977, at *2 (E.D. Cal. Apr. 17, 2025). Defendants would face minimal inconvenience, if any at all, by restrictions on public release of Plaintiffs' identities. Plaintiffs will also seek document redactions or, if necessary, will file them under seal.

**B. Plaintiffs' Reasonable Fear of Retaliation by the Government Supports Entry of a Protective Order and Order Prohibiting Defendants' Detention of Plaintiffs**

Plaintiffs recognize the need to provide the government with information about their identity to permit the government to litigate the case; however, due to the very real risk of retaliation by the government, Plaintiffs are unable to do so without any protection. Plaintiffs ask that the

7

Court enter a protective order under Fed. R. Civ. P. 26(c) governing the use of any information Plaintiffs disclose to the government, as well as an order enjoining Defendants from detaining or removing Plaintiffs while the lawsuit is pending. Good cause exists to enter a protective order in this case. *See Doe*, 2025 WL 1134977, at *2 (finding good cause to grant protective order in SEVIS case).

Plaintiffs' request that the Court enter a protective order limiting the sharing by Defendants' counsel of any information about Plaintiffs' identity or related personal information and restricting its use for any purpose outside of this action is reasonable and routine. Courts have previously entered protective orders governing information about plaintiffs' identity or litigation materials. *See, e.g.*, *ACLU of Nevada v. Masto*, No. 08-cv-00822-JCM-PAL, 2008 WL 3874263, at *6 (Aug. 18, 2008) (permitting Doe plaintiffs to proceed under pseudonym, requiring counsel for plaintiffs to disclose the identities of plaintiffs to defendants' counsel, and entering a temporary protective order precluding defendants from disclosing the identities or using the information for any purpose outside the litigation); *Enters. Int'l, Inc. v. Pasaban*, No. 3:11-CV-05919, 2012 WL 5269375, at *2 (W.D. Wash. Oct. 24, 2012) (granting protective order restricting disclosure and use of information).

Plaintiffs' request for an order prohibiting detention during the pendency of this action, or until further notice of the Court, is likewise reasonable under the circumstances. Detention following the filing of this suit would not only chill Plaintiffs' willingness to go forward with litigation (in addition to dramatically impacting Plaintiffs' practical ability to proceed in this case), but it would undoubtedly dissuade numerous other international students from vindicating their rights. Indeed, several federal courts have recently enjoined the detention of international students who are Plaintiffs in SEVIS lawsuits. *See, e.g.*, *Ajugwe v. Noem, et al.*, No. 8:25-CV-982, 2025 WL 1148689, at *4 (M.D. Fla. Apr. 18, 2025) ("Defendants are prohibited from arresting, detaining, or transferring Plaintiff out of this Court's jurisdiction."); *Ariwoola, v. Noem, et al.,* No. 3:25-CV-03313, 2025 WL 1148491, at *1 (D.S.C. Apr. 18, 2025) (enjoining ICE arrest and detention).

Granting Plaintiffs' requested relief will not prejudice Defendants. First, Plaintiffs' counsel intends to provide Defendants' counsel with information about Plaintiffs' identity as soon as a protective order can be entered. Second, as discussed above in Part III.A, the case will ultimately have little to do with the details of Plaintiffs' individual situations. The lawsuit challenges the legality of Defendants' new policy of SEVIS terminations based on visa revocations and minor criminal history with respect to a large (and growing) group of international students around the country. Compl., ECF No. 1, ¶¶ 69-72.

Further, Defendants will not be prejudiced by a protective order restraining detention and removal. Detaining Plaintiffs would serve no legitimate purpose, and the government has made no indication that it independently wants to take Plaintiffs into custody. Indeed, the government would have no reason to take Plaintiffs into custody. Plaintiffs are three college students and a graduate who pose no flight risk or danger. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (finding immigration detention must further twin goals of (1) ensuring noncitizen's appearance during removal proceedings and (2) preventing danger to the community). Accordingly, Plaintiffs ask the Court to grant Plaintiffs' motion for a protective order and enter the attached protective order.

## IV. Conclusion

Plaintiffs are in a vulnerable position as they currently lack lawful status and in the context of a widely publicized practice of ICE terminated international students' status. The risk of retaliation and harassment cause by revealing their identities is not outweighed by Defendants' interests. The Court should grant Plaintiffs leave to proceed as John Does #1–4 and further grant a protective order so that Plaintiffs can share their identities with Defendants.

Dated: April 23, 2025                    Respectfully submitted,

*/s/ Katherine Melloy Goettel*
KATHERINE MELLOY GOETTEL
MIKHAIL ACHERKAN*
JUDE HAGERMAN*
ANGELA PANDIT*
IAN REEVES*
JUSTIN REMPE*
ISABELLA SIRAGUSA*
University of Iowa College of Law
Clinical Law Programs
380 Boyd Law Building
Iowa City, IA 52242-1113
Telephone: (319) 335-9023
Email: kate-goettel@uiowa.edu

*Counsel for Plaintiffs*

* Authorized law student practitioners

## **CERTIFICATE OF SERVICE**

  I certify that on April 23, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to counsel for Defendants.

*/s/ Katherine Melloy Goettel*
KATHERINE MELLOY GOETTEL
*Counsel for Plaintiffs*
