IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, and JOHN DOE #4,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; the DEPARTMENT OF HOMELAND SECURITY; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement,<br><br>Defendants. | No. 3:25-cv-00042-RGE-WPK<br><br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER |

**I.    INTRODUCTION**

Plaintiffs John Doe # 1, John Doe # 2, John Doe # 3, and John Doe # 4—international students at the University of Iowa—seek a temporary restraining order. Plaintiffs allege Defendants Kristi Noem, the Department of Homeland Security, and Todd Lyons terminated their records in the Student and Exchange Visitor Information System (SEVIS) and their student status without legal justification and in violation of pertinent regulations. Plaintiffs assert claims under the Administrative Procedures Act and the Due Process clause of the Fifth Amendment to the United States Constitution. Plaintiffs allege termination of student status in SEVIS prevents their continued study; decreases their ability to obtain future visas; causes irreparable financial, educational, and career disruption; exposes them to removal; and causes irreparable stress and anxiety due to fear of imminent seizure and removal. Three Plaintiffs allege Defendants also terminated their F-1 student visas.

Plaintiffs' attorney has consulted with Defendants and provided them with copies of the

filings in this matter. Plaintiffs' attorney represents Defendants resist this motion. Attorneys have entered appearances for Defendants but have not yet been heard on Plaintiffs' request for a temporary restraining order. After considering Plaintiffs' pleadings and supporting materials, and applying the factors from *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc), the Court grants Plaintiffs' motion for an ex parte temporary restraining order for the reasons set forth below. The Court also schedules a preliminary injunction hearing.

**II.    BACKGROUND**

The Court draws the following facts from Plaintiffs' complaint and motion for a temporary restraining order as supported by Plaintiffs' declarations, copies of emails from the University of Iowa to all Plaintiffs, and copies of emails from embassies to three Plaintiffs. Compl., ECF No. 1; Pls.' Mot TRO, ECF No. 5; Pls.' Exhs. 1–13 Supp. Mot. TRO, ECF Nos. 5-4 through 5-16. As a general rule, "the findings of fact and conclusions of law made by a court granting a [temporary restraining order] are not binding at [later stages such as a preliminary injunction proceedings or a] trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Doe # 1 is an Indian national and a Ph.D. student in chemical engineering at the University of Iowa. ECF No. 1 ¶ 34. Doe #1 works as a teaching assistant and research assistant. *Id.* Doe #1 entered the United States on an F-1 student visa in 2021, has since that time remained engaged in a course of study, and has not fallen out of student status. *Id.* ¶ 37. Doe # 1 alleges unawareness of any "factual basis for SEVIS termination." *Id.* ¶ 49. Doe #1 admits receiving a speeding ticket and a misdemeanor OWI conviction, neither of which are bases for termination of SEVIS status. *Id.* ¶ 41.

Doe # 2 is a Chinese national undergraduate student in economics at the University of Iowa. *Id.* ¶ 43. Doe #2 entered the United States on an F-1 student visa in 2017 and the State Department issued a "most recent F-1 visa on June 7, 2024." *Id.* Doe # 2 alleges unawareness of

any "factual basis for the termination of . . . SEVIS status." *Id.* ¶ 49. Doe #2 admits traffic violations and a disorderly conduct conviction, none of which qualify as bases for termination of SEVIS status. *Id.*

Doe # 3 is a Chinese national and an undergraduate student in exercise science and kinesiology at the University of Iowa. *Id.* ¶ 52. Doe #3 received an F-1 visa in 2022 and has been engaged as a full-time student since that time. *Id.* ¶ 53. Doe # 3 alleges unawareness of any "factual basis for the termination of . . . SEVIS status." *Id.* ¶ 56. Doe # 3 admits traffic violations and an OWI with a deferred judgment, none of which qualify as bases for termination of SEVIS status.

Doe # 4 is an Indian national who has completed a course of study and received a Master of Public Health degree from the University of Iowa. *Id.* ¶ 58. Doe # 4 works for the Iowa Department of Health and Human Services pursuant to Optional Practical Training authorization. *Id.* ¶ 60; *see also* 8 C.F.R. § 214.2(f)(10)(ii) (describing Optional Practical Training as "temporary employment for optional practical training directly related to the student's major area of study"). Doe # 4 alleges unawareness of any "factual basis for the termination of . . . SEVIS status." ECF No. 1 ¶ 66. Doe # 4 admits an expunged OWI conviction that does not qualify as a basis for termination of SEVIS status. *Id.*

Plaintiffs allege United States Immigration and Customs Enforcement "abruptly terminated Plaintiffs [SEVIS] record without explanation" "[o]n or about April 10, 2025." *Id.* ¶ 3. Plaintiffs allege they learned of termination from the University of Iowa's International Students and Scholars Services which informed them the federal government—not the University—had taken this action. *Id.*

Days after notification from the University of Iowa, Does ## 1, 2, and 3 received messages from various United States embassies providing no explanations but containing identical language stating, "Remaining in the United States can result in fines, detention and/or deportation [and]

3

deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin." *Id.* ¶ 4; *see also id.* ¶¶ 39–40, 46–47, 55.

Plaintiffs sue, asserting five claims seeking restoration of their status and SEVIS records. In Count I, Plaintiffs assert, "[Homeland Security]'s termination of Plaintiffs' student statuses in SEVIS [w]as arbitrary and capricious and not in accordance with law under [the Administrative Procedure Act,] 5 U.S.C. § 706 (2)(A)." *Id.* ¶ 74. In Count II, Plaintiffs assert, "Once a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, the continued registration of that student in SEVIS is a statutorily conferred nondiscretionary government benefit, governed by specific and mandatory regulations" and protected by the Due Process clause of the Fifth Amendment to the U.S. Constitution. *Id.* ¶ 86. In Counts III–IV, Plaintiffs assert additional claims under the Administrative Procedure Act, 5 U.S.C. § 706 (2)(B) and 2(D). *Id.* ¶¶ 91–99. Finally, in Count V, Plaintiffs assert a claim under *United States ex rel. Accardi v. Shaugnessy*, 347 U.S. 260, 267–68 (1954), arguing Homeland Security's actions are in violation of the agency's own "self-imposed procedural rules that limit otherwise discretionary decisions." *Id.* ¶ 101.

Plaintiffs describe their requested temporary relief as an order specifically directing Defendants to:

(i) Restore each Plaintiff's F-1 student status in the Student and Exchange Visitor Information System (SEVIS), backdated to the date of termination;
(ii) Set aside the F-1 student status termination decisions as to Plaintiffs;
(iii) Prohibit Defendants from terminating Plaintiffs' F-1 student status absent a valid ground as set forth in 8 C.F.R. § 214.1(d)–(g), and absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator for each Plaintiff, in which they will be entitled to review any adverse evidence and respond to such evidence prior to determining anew that any Plaintiff's F-1 student status should be terminated;
(iv) Prohibit all Defendants from arresting, detaining, or transferring Plaintiffs out of this Court's jurisdiction, or ordering the arrest, detention, or transfer

4

    of Plaintiffs out of this Court's jurisdiction, without first providing adequate notice to both this Court and Plaintiffs' counsel as well as time to contest any such action; and

(v) Prohibit all Defendants from initiating removal proceedings against or deporting any Plaintiff on the basis of the termination of their F-1 student status.

ECF No. 5 ¶ 5. Plaintiffs specifically do not seek temporary relief regarding visa revocation. ECF No. 1 ¶ 5; Pls.' Brief Supp. Mot. TRO 6 n.7, ECF No. 5-1.

## III. LEGAL STANDARD

### A. Temporary Restraining Orders

Courts in this circuit apply the well-established *Dataphase* factors when considering motions for preliminary injunctions and motions for temporary restraining orders. *Sports Design & Dev., Inc. v. Schoneboom*, 871 F. Supp. 1158, 1162–63 (N.D. Iowa 1995) (citing *S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir.1989)). A movant is entitled to such relief when "the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113.

*Dataphase* articulates four factors the Court considers when determining whether to issue a preliminary injunction or temporary restraining order: 1) the probability the movant will succeed on the merits; 2) the threat of irreparable harm to the movant; 3) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; and 4) the public interest. *Id.* When a plaintiff seeks to restrain governmental action, the public interest and balancing of harm factors largely merge. *See Eggers v. Evnen*, 48 F.4th 561, 564 (8th Cir. 2022). The Court has broad discretion when ruling on a request for a temporary restraining order. *See Dataphase*, 640 F.2d at 113. Ultimately, the Court must "flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice

5

requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplements, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (internal quotation marks and citation omitted).

Federal Rule of Civil Procedure 65(b)(1) allows for ex parte temporary restraining orders where the moving party presents "specific facts in an affidavit or verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the moving party's attorney certifies in writing "efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). The Supreme Court has counseled that ex parte restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

B.   F-1 Visas, SEVIS, and Student Status

Federal immigration law authorizes F-1 visas for nonimmigrant students who enroll in approved schools and participate in a full course of academic study. *See* 8 U.S.C. § 1101(a)(15)(F)(i). A non-immigrant student who enters the United States on an F-1 visa may remain for the duration of their "status" when they continue to satisfy regulatory requirements applicable to their visa classification. *See* 8 C.F.R. § 214.2(f)(5). For students, this means remaining engaged in a full course of study and avoiding unauthorized employment. *See* 8 C.F.R. §§ 214.2(f)(6), (9), 214.1(e). Further, students may not provide false information to Homeland Security or be convicted of a crime of violence carrying a potential sentence greater than one year. 8 C.F.R. § 214.1(f), (g). Upon completion of study, students may apply to remain for a period of time to engage in employment in the form of "Practical Training" related to their studies. *See* 8 C.F.R. § 214.2(f)(10).

Federal immigration law also requires Homeland Security to "collect from approved

institutions of higher education . . . [data] with respect to aliens who have the status, or are applying for the status, of [F-1] nonimmigrants . . . ." 8 U.S.C. § 1372(a)(1)(A). The resulting program, a database named SEVIS, allows students and Homeland Security to track students' compliance and status. *See generally* 8 C.F.R. § 214.2(f). "Designated School Officials" must report through SEVIS if a student fails to maintain status. *Id. see also* 8 C.F.R. § 214.3(l).

Apart from students' own actions related to crimes, falsities, unauthorized employment, and the pursuit of academic studies, Homeland Security may initiate termination of a student's status for limited reasons: "[1] by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; [2] by the introduction of a private bill to confer permanent resident status on such alien; or, [3] pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d).

Finally, a visa generally is required for entry into the United States, but the revocation of an F-1 visa does not, in and of itself, demonstrate a failure to maintain status providing grounds for Homeland Security to terminate student status in SEVIS. 8 C.F.R. § 214.1 (e)–(g). "F-1 student status and F-1 student visas are not one in the same. The F-1 student visa refers only to the document that nonimmigrant students receive to enter the United States, whereas F-1 student status refers to the students' formal immigration classification once they enter the country." Order 4, *Doe 1 v. Bondi*, No. 1:25-cv-01998-VMC (N.D. Ga. Apr. 18, 2025), ECF No. 23. In other words, revocation of an F-1 visa may preclude re-entry but does not preclude a student from remaining in the United States and continuing their course of study. *See generally Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 175–76 (3d Cir. 2019) (discussing generally student status, F-1 visas, and the relationships between these concepts).

## IV.     DISCUSSION

### A.     Likelihood of Success on the Merits

"Success on the merits has been referred to as the most important of the four [*Dataphase*] factors." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). "When determining the likelihood of [Plaintiffs'] success on the merits, [the Court does] not have to decide whether [Plaintiffs] will ultimately win, [but a]n injunction cannot issue if there is no chance of success on the merits." *Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1044 (8th Cir. 2020) (cleaned up) (citations omitted). Further "[Plaintiffs] do[] not need to prove a greater than fifty per cent likelihood that [they] will prevail on the merits." *Id.* at 1044–45 (citations omitted). But Plaintiffs "must . . . show a 'fair chance of prevailing.'" *Id.* at 1045 (quoting *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)). "The plaintiff need only establish a likelihood of succeeding on the merits of any one of [its] claims." *Richard/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1040 (8th Cir. 2016) (internal quotation marks and citation omitted).

Based on the allegations contained in the submitted declarations, emails from the University and embassies to Plaintiffs, and for the reasons set forth below, the Court concludes Plaintiffs have demonstrated a likelihood of success as to their Administrative Procedure Act claim sufficient to weigh in favor of granting a temporary restraining order. Consistent with the conclusion of the District of South Dakota when addressing claims mirroring Plaintiffs' Administrative Procedures Act claims, the Court holds Plaintiffs have made a preliminary showing that Defendants' termination of Plaintiffs' SEVIS status occurred in violation of applicable regulations. *See Saxena v. Noem*, No. 5:25-cv-05035-KES, 2025 WL 1149498, at *2 (D.S.D. April 18, 2025).

On the present limited record, there is no suggestion of disqualification for any Plaintiff.

There is no suggestion any Plaintiff was conveying falsehoods to Homeland Security, engaging in unauthorized employment, suffering qualifying convictions, or failing to engage in a qualifying course of study or occupational training. *Cf.* 8 C.F.R. §§ 214.1 (e)–(g), 214.2(f)(6), (9). Nor do Plaintiffs represent they received allegations of such from Homeland Security; emails from the University and embassies support this assertion. Similarly, there is no suggestion any of the three bases for Homeland Security-initiated termination of status are present or were cited by Homeland Security as justification for termination of status. *Cf.* 8 C.F.R. § 214.1(d). In the absence of a qualifying basis for termination of status, Defendants' actions, as a preliminary matter, appear to be "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *see also Saxena*, 2025 WL 1149498 at *2.

### B.     Threat of Irreparable Harm

Plaintiffs describe disruption to their academic progress, inability to complete their course of study or graduate, inability to pay bills, imminent removal due to loss of legal status, resulting stress and anxiety, and loss of substantial sums already invested in their educations. Doe #1 Decl. ¶¶ 13, 16, ECF No. 5-4; Doe #2 Decl. ¶¶ 12, 14, ECF No. 5-7; Doe #3 Decl. ¶¶ 6, 11, ECF No. 5-10; Doe #4 Decl. ¶¶ 6, 13, 14, ECF No. 5-13. In several similar recent cases, courts have found education interruption to be irreparable harm. *See, e.g.*, *Isserdasani v. Noem*, No. 25-cv-283-WMC, 2025 WL 1118626, at *5 (W.D. Wis. Apr. 15, 2025) ("The loss of timely academic pro[gr]ess alone is sufficient to establish irreparable harm." (*citing* Order 4, *Liu v. Noem*, No. 1:25-cv-00133-SE-TSM (D.N.H. April 10, 2025), ECF No. 13 (granting a motion for a temporary restraining order on an APA claim based on the termination of an F-1 international student's record in SEVIS))).[1]

---

[1] In the overwhelming majority of recent similar cases, district courts have found orders for temporary relief appropriate. Plaintiffs cite thirty such cases in their brief, and provide copies of

In addition, the presently alleged violations may result in Plaintiffs' inability to obtain future visas, or increased difficulty in obtaining future visas in that the accrual of too many days of unlawful presence can eliminate the possibility of the discretionary and unreviewable reinstatement of F-1 status. *See Jie Fang*, 935 F.3d at 176 ("Under the reinstatement regulations, a district director in the U.S. Citizenship and Immigration Services . . . 'may consider' reinstating a student who demonstrates that he or she: 1) 'has not been out of [valid F-1] status for more than 5 months at the time of filing the request for reinstatement' . . . . The USCIS's decision to reinstate is discretionary. If the USCIS 'does not reinstate the student, the student may not appeal that decision.'" (alteration in original) (citations omitted)).

---

many unreported cases for the Court. The Court lists many such cases here that include electronic reporter citations. *See Gao v. Noem*, No. 1:25-cv-419, 2025 WL 1171572 (W.D. Mich. Apr. 23, 2025); *Shaik v. Noem*, No. cv 25-1584 (JRT/DJF), 2025 WL 1170447 (D. Minn. Apr. 22, 2025); *Mohammed H. v. Trump*, No. cv 25-1576 (JWB/DTS), 2025 WL 1170448 (D. Minn. Apr. 22, 2025); *Yang v. Noem*, No. 25-cv-292-WMC, 2025 WL 1166521 (W.D. Wis. Apr. 22, 2025); *Doe v. Noem*, No. 3:25-cv-00023, 2025 WL 1161386 (W.D. Va. Apr. 21, 2025); *Chen v. Noem*, No. 1:25-cv-00733-TWP-MG, 2025 WL 1163653 (S.D. Ind. Apr. 21, 2025); *Patel v. Bondi*, No. 1:25-cv-00103-SPB-WSH, 2025 WL 1158708 (W.D. Pa. Apr. 21, 2025); *Ajugwe v. Noem*, No. 8:25-cv-00982-MSS-AEP, 2025 WL 1148689 (M.D. Fla. Apr. 18, 2025); *Ariwoola v. Noem*, No. 3:25-cv-03313-JDA, 2025 WL 1148491 (D.S.C. Apr. 18, 2025); *Chen v. Noem*, No. 25-cv-03292-SI, 2025 WL 1150697 (N.D. Cal. Apr. 18, 2025); *Daou v. Noem*, No. 8:25-cv-00976-MSS-AEP, 2025 WL 1148687 (M.D. Fla. Apr. 18, 2025); *Oruganti v. Noem*, No. 2:25-cv-00409-ALM-EPD, 2025 WL 1144560 (S.D. Ohio Apr. 18, 2025); *Saxena v. Noem*, No. 5:25-cv-05035-KES, 2025 WL 1149498 (D.S.D. Apr. 18, 2025); *Doe v. Noem*, No. 2:25-cv-01103-DAD-AC, 2025 WL 1134977 (E.D. Cal. Apr. 17, 2025); *Doe v. Noem*, No. 2:25-cv-00633-DGE, 2025 WL 1141279 (W.D. Wash. Apr. 17, 2025); *Hinge v. Lyons*, No. 25-01097-RBW, 2025 WL 1134966 (D.D.C. Apr. 15, 2025); *Patel v. Bondi*, No. 1:25-cv-00101-SPB-WSH, 2025 WL 1134875 (W.D. Pa. Apr. 17, 2025); *Doe #2 v. Trump*, No. 4:25-cv-00175-TUC-AMM, 2025 WL 1115468 (D. Ariz. Apr. 15, 2025); *Isserdasani v. Noem*, No. 3:25-cv-00283-wmc, 2025 WL 1118626 (W.D. Wis. Apr. 15, 2025); *Roe v. Noem*, No. 2:25-cv-00040-DLC, 2025 WL 1114694 (D. Mont. Apr. 15, 2025); 2025 WL 1115298 (D. Mont. Apr. 15, 2025); *Ratsantiboon v. Noem*, No. 25-CV-01315 (JMB/JFD), 2025 WL 1118645 (D. Minn. Apr. 15, 2025).

But courts' views have not been unanimous, as several courts denied TROs based on inadequate assertions of harm or otherwise. *See He v. Noem*, No. 3-25-cv-05333-DGE, 2025 WL 1149717 (W.D. Wash. Apr. 20, 2025); *Liu v. Noem*, No. 1:25-cv-00716-JPH-TAB, 2025 WL 1141023 (S.D. Ind. Apr. 17, 2025); Order Den. in Part Mot. TRO, *Deore v. Sec'y U.S. Dep't Homeland Sec.*, No. 2:25-cv-11038-SJM-DRG (E.D. Mich. Apr. 17, 2025), ECF No. 20.

The emails from embassies include statements to three Plaintiffs, "Remaining in the United States without a lawful immigration status can result in fines, detention and/or deportation [and] deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin." ECF No. 5-6 at 3. The disruption of removal and its impact on Plaintiffs' educational and career investments is extreme. Plaintiffs are "left in an uncertain legal status with the termination of [their] SEVIS record[s], which constitute[] a separate irreparable harm." *Saxena*, 2025 WL 1149498 at *2.

The Court concludes these educational, career, personal, and immigration-related harms are irreparable justifying preliminary relief.

### C. Balance of Hardship and Public Interest

The Court concludes the final two *Dataphase* factors favor issuance of a temporary restraining order. All four Plaintiffs face irreparable harm outweighing risk of injury to Defendants. The loss of legal status in the United States deprives Plaintiffs of the ability to pursue degrees Plaintiffs have already invested substantial time and effort to obtain. "In contrast, the temporary nature of the requested relief poses minimal harm to defendants." *Id.* at *3 (citing *Nebraska v. Biden*, 52 F.4th 1044, 1047 (8th Cir. 2022) (concluding that "the equities strongly favor an injunction considering the irreversible impact [on Plaintiffs] compared to the lack of harm an injunction would presently impose [on the United States]."). The Court also concludes "[t]here is substantial public interest in ensuring that governmental agencies abide by federal laws as 'there is generally no public interest in the perpetuation of unlawful agency action.'" *Saxena*, 2025 WL 1149498 at *3 (quoting *Missouri v. Trump*, 128 F.4th 979, 997 (8th Cir. 2025)). On balance, the relative hardships and public interest justify granting temporary relief.

### D. Granting Order Without Notice

Rule 65(b)(1) provides a "court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and reasons why it should not be required." Here, Plaintiffs' attorney represents she gave notice of the present motion to Defendants on April 21, 2025, and conferred by telephone with Defendants on April 22, 2025. ECF No. 5 ¶ 3. She also represents Defendants oppose this motion. *Id.* Counsel for Defendants have now entered appearances. Notices of Appearance, ECF Nos. 7, 8. Here, Defendants have received notice although they have not had the opportunity to respond.

Given the descriptions of harm present in Plaintiffs' declarations and the actions Defendants have taken against Plaintiffs as described in the University and embassy emails, the Court finds the requirements of Rule 65 satisfied. *Cf. Creativision, Inc. v. Martinelli*, No. 4:16-cv-00428-SMR-HCA, 2016 WL 9345208, at *1 (S.D. Iowa July 26, 2016) (discussing requirements of Rule 65(b)(1)). The University informed Plaintiffs of unilateral government action and informed Plaintiffs the University was aware of no status violations. *See, e.g.*, ECF No. 5-5 at 2. The embassy emails to three Plaintiffs notified Plaintiffs of visa termination without explanation and specifically advised removal could occur at any moment without time permitted to secure possessions or conclude affairs. *See, e.g.*, ECF No. 5-6 at 3. That same email notified Plaintiffs they could be removed to countries other than their countries of origin. *Id.*

### E. Security

Rule 65(c) states the Court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the

costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Eighth Circuit has stated that the bond amount ultimately "rests within the sound discretion of the trial court." *Stockslager v. Carroll Elec. Coop. Corp.*, 528 F.2d 949, 951 (8th Cir. 1976). Further, the Court may waive entirely the requirement of bond. *See Richard/Wilkin Joint Powers Auth.*, 826 F.3d at 1043. In particular, where the public interest weighs in favor of restraining unlawful federal action and where the restraint causes little hardship to the government a waiver of bond may be appropriate. *See id.* at 1045 (concluding it was "permissible for the district court to waive the bond requirement based on its evaluation of public interest in this specific case"). The Court concludes no bond is required in this matter.

V. **CONCLUSION**

Based on the allegations contained in the record and after considering the *Dataphase* factors, the Court grants Plaintiffs' motion for a temporary restraining order.

**IT IS ORDERED** that Plaintiffs John Doe # 1, John Doe # 2, John Doe # 3, and John Doe # 4's Motion for Temporary Restraining Order, ECF No. 5, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Kristi Noem, the Department of Homeland Security, and Todd Lyons shall restore Plaintiffs John Doe # 1's, John Doe # 2's, John Doe # 3's, and John Doe # 4's F-1 student status in the Student and Exchange Visitor Information System (SEVIS), backdated to the date of termination.

**IT IS FURTHER ORDERED** that Defendants Kristi Noem, the Department of Homeland Security, and Todd Lyons shall set aside the F-1 student status termination decisions as to Plaintiffs John Doe # 1, John Doe # 2, John Doe # 3, and John Doe # 4.

**IT IS FURTHER ORDERED** that Defendants Kristi Noem, the Department of Homeland Security, and/or Todd Lyons shall not terminate Plaintiffs John Doe # 1's, John Doe # 2's, John Doe # 3's, or John Doe # 4's F-1 student status absent a valid ground as set forth in 8

C.F.R. § 214.1(d)–(g), and absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator for each Plaintiff, in which they will be entitled to review any adverse evidence and respond to such evidence prior to determining anew that any Plaintiff's F-1 student status should be terminated.

**IT IS FURTHER ORDERED** that Defendants Kristi Noem, the Department of Homeland Security, and/or Todd Lyons shall not arrest, detain, or transfer Plaintiffs John Doe # 1, John Doe # 2, John Doe # 3, or John Doe # 4 out of this Court's jurisdiction, or order the arrest, detention, or transfer of Plaintiffs out of this Court's jurisdiction, without first providing adequate notice to both this Court and Plaintiffs' counsel as well as time to contest any such action.

**IT IS FURTHER ORDERED** that Defendants Kristi Noem, the Department of Homeland Security, and/or Todd Lyons shall not initiate removal proceedings against or deport Plaintiffs John Doe # 1, John Doe # 2, John Doe # 3, or John Doe # 4 on the basis of the termination of their F-1 student status.

**IT IS FURTHER ORDERED** that a hearing on the motion for a preliminary injunction is set for Monday, May 5, 2025, at 10:00 a.m. in Courtroom 160 in the United States Courthouse in Des Moines, Iowa.

**IT IS SO ORDERED**.

Dated this 24th day of April, 2025.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE