IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| JOHN DOE #1, et al, | ) | |
| | ) | No. 3:25-cv-00042-RGE-WPK |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | GOVERNMENT'S RESPONSE |
| | ) | TO MOTION FOR PRELIMINARY |
| KRISTI NOEM, in her official capacity | ) | INJUNCTION |
| as Secretary of Homeland Security, et al, | ) | |
| | ) | |
| Defendants. | ) | |

TABLE OF CONTENTS

I.    STATUTORY AND REGULATORY FRAMEWORK ........................................ 4

       A.    THE F-1 NONIMMIGRANT STUDENT CLASSIFICATION ...................... 4

       B.    THE STUDENT AND EXCHANGE VISITOR INFORMATION SYSTEM
             (SEVIS) ................................................................................. 6

II.   FACTS AND PROCEDURAL HISTORY ...................................................... 9

III.  STANDARD OF REVIEW ...................................................................... 13

IV.   ARGUMENT ...................................................................................... 15

       A.    THERE IS NO CASE OR CONTROVERSY BEFORE THE COURT BECAUSE
             PLAINTIFFS' F-1 NONIMMIGRANT STATUS HAVE NOT BEEN
             TERMINATED ............................................................................. 14

       B.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THEIR APA CLAIMS
             BECAUSE DEFENDANTS HAVE NOT WAIVED SOVEREIGN IMMUNITY 16

             1. ENTRY IN A SEVIS RECORD IS NOT A FINAL AGENCY ACTION
                SUBJECT TO APA REVIEW ....................................................... 16

             2. THE PRIVACY ACT FORECLOSES APA REVIEW OF PLAINTIFFS'
                CHALLENGE TO THE CONTENTS OF THEIR SEVIS RECORDS ...... 19

       C.    PLAINTIFFS CANNOT ESTABLISH IRREPARABLE HARM .................. 26

D.  The Balance of Equities and Public Interest Favor the Government ................................................................................. 28

E.  The Court Should Require Plaintiff to Post a Bond ................... 29

V.  CONCLUSION ..................................................................................... 30

Plaintiffs' Complaint and Motion for Preliminary Injunction challenge Defendants' alleged termination of their F-1 nonimmigrant student status. But Defendants have not terminated Plaintiffs' F-1 status. The only action Defendants, acting through the Student Exchange Visitor Program ("SEVP"), have taken is amending Plaintiffs' records in the Student and Exchange Visitor Information System ("SEVIS") database from "active" to "terminated." In doing so, Defendants did not delete Plaintiffs from the database or terminate their F-1 nonimmigrant status.[1] As a result, Plaintiffs' Complaint does not raise a justiciable case or controversy. As of the date of this filing, all Plaintiffs are active in the SEVIS database.[2]

Plaintiffs also do not meet their burden to show the need for a preliminary injunction. They are unlikely to succeed on the merits because the Court lacks jurisdiction over Plaintiffs' claims brought under the Administrative Procedure Act ("APA"). Defendants have not waived sovereign immunity to such claims because Plaintiffs do not identify a final agency action and because the Privacy Act of 1974 precludes APA review over suits seeking to amend records in federal database. Plaintiffs also suffer no immediate irreparable injury. Contrary to Plaintiffs' assertions, termination of their SEVIS records is not the same as termination of

---

[1] Plaintiffs concede they are not challenging any decision to revoke an F visa. *See* Dkt No. 1, Compl. ¶ 71 ("To be clear, Plaintiffs are not challenging the revocation of their F-1 student visas in this action. They are challenging DHS' termination of their F-1 student status.").

[2] Following this Court's entry of a Temporary Restraining Order, each Plaintiffs' SEVIS status was reinstated to "active."

their F-1 status. Because Plaintiffs cannot establish that they will suffer irreparable harm or success on the merits of the Complaint, they are not entitled to this extraordinary relief.

## STATUTORY AND REGULATORY FRAMEWORK

Enforcing the immigration laws of the United States is the Executive Branch's sovereign prerogative. Congress mandated that the Department of Homeland Security ("DHS") "develop and conduct a program" to collect certain information from approved institutions of higher education in the United States with respect to aliens seeking F-1 student status. *See* 8 U.S.C. § 1372. Under this authority, DHS (ICE and SEVP) established SEVIS.

### A. The F-1 Nonimmigrant Student Classification

The Immigration and Nationality Act ("INA"), as amended, allows for the entry into the United States of a foreign national who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study. . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States." 8 U.S.C. § 1101(a)(15)(F)(i) (hereinafter, "F-1 status").

To be admitted in F-1 status, an applicant must present a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status, issued by a certified school in the student's name; present documentary evidence of financial support;

demonstrate they intend to attend the school specified on the student's visa; and, if the student attends a public secondary school, demonstrate that they have reimbursed the local educational agency administering the school for the full, unsubsidized per capita cost of providing education at the school for the period of the student's attendance. 8 C.F.R. § 214.2(f)(1)(i). The foreign national must then obtain a nonimmigrant F-1 visa issued by the Department of State. 8 U.S.C. § 1201(a)(1)(B).

Individuals admitted in F-1 status are permitted to remain in the United States for the duration of status (or "D/S"), which "is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5). There are two types of such training: curricular practical training and optional practical training. *Id.* § 214.2(f)(10). Both must be "directly related to [a student's] major area of study." *Id.* While in school, the student's status is based on that student pursuing a degree and need not be routinely renewed. *Id.* § 214.2(f)(7).

According to United States Citizenship and Immigration Services ("USCIS"), an F-1 student admitted for the duration of status found to have violated his status does not begin to accrue unlawful presence until the day after a request for another immigration benefit is denied by USCIS or, during removal proceedings, the day after an Immigration Judge enters an order that the individual violated his nonimmigrant status. *See* USCIS Memorandum on May 6, 2009, "Consolidation of

Guidance Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and

212(a)(9)(C)(i)(1) of the Act," at 25, available at:

https://www.uscis.gov/sites/default/files/document/memos/revision

_redesign_AFM.PDF  (last visited Apr. 29, 2025); *see also* 8 C.F.R. § 239.3.

**B. The Student and Exchange Visitor Information System (SEVIS)**

To facilitate oversight of nonimmigrant student admissions and status

eligibility, Congress required that "[t]he [Secretary of Homeland Security], in

consultation with the Secretary of State and the Secretary of Education, . . develop

and conduct a program to collect from approved institutions of higher education,

other approved educational institutions, and designated exchange visitor programs

in the United States [certain information] with respect to aliens who have the

status, or are applying for the status, of nonimmigrants under subparagraph (F),

(J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. § 1372(a)(1). This includes

collecting the following information: (a) identity and current address in the United

States; (b) nonimmigrant classification; (c) current academic status; (d) disciplinary

action taken by the institution as the result of a criminal conviction or change in

participation as a result of a criminal conviction; (e) the date of entry and port of

entry; (f) enrollment date at an approved institution or program; (g) the degree

program, if applicable, and field of study; and (h) the date of termination of

enrollment and the reason for such termination. 8 U.S.C. § 1372(c).

Pursuant to this statutory mandate, DHS created SEVIS, a web-based

system used "to maintain information on Student and Exchange Visitor Program

sponsors and J-1 visa Exchange Visitor Program participants." *See* "ICE, Student and Exchange Visitor Information System," available at:

https://www.ice.gov/sevis/overview (last visited Apr. 29, 2025). Inherent in DHS' broad authority to develop and conduct the oversight program is SEVP's ability to maintain, update and change SEVIS records as needed (*e.g.*, from "active" to "terminated"). *See* Government Exhibit A, Declaration of Andre Watson ("Watson Decl.") ¶ 4.

Importantly, a SEVIS record does not necessarily indicate a termination of nonimmigrant status. *See* DHS, SEVIS Terminate a Student, https://perma.cc/E9C2-9GR5 (last searched Apr. 30, 2025); Watson Decl. ¶ 23. ("[T]ermination is not always negative. [School officials] can terminate records for several normal, administrative reasons."). Under the INA in this context there are three separate and distinct concepts: (1) SEVIS, which is a recordkeeping system used by the Department to maintain information on certain noncitizens who come to the United States to study, *see* ICE, SEVIS Overview, *supra*; (2) a visa, which is document issued by the State Department reflecting permission to apply for admission to the United States at a port of entry, *see* State Dep't, Visitor Visa, https://perma.cc/HN23-H3DK (last searched April 30, 2025); and (3) immigration status, a noncitizen's formal immigration classification in the United States, *see* DHS, Maintaining Status, https://perma.cc/AM9P-LETR (last visited Apr. 30, 2025). Terminating a SEVIS record only terminates the first of these; it does not, in-and-

of-itself, terminate a noncitizen's immigration status or revoke a noncitizen's visa. (Watson Decl. ¶ 23.)

Indeed, 8 U.S.C. § 1372 does not provide SEVP the authority to terminate nonimmigrant status by terminating a SEVIS record. As set forth above, USCIS's May 6, 2009, Memorandum contemplates two mechanisms by which a lawful nonimmigrant admitted for duration of status may have that status terminated:

> (E) Lawful Nonimmigrants. The period of authorized stay for a nonimmigrant may end on a specific date or may continue for "duration of status (D/S)." Under current USCIS policy, nonimmigrants begin to accrue unlawful presence as follows:
>
> …
>
> (ii) Nonimmigrants Admitted for Duration of Status (D/S). If USCIS finds a nonimmigrant status violation while adjudicating a request for an immigration benefit, unlawful presence will begin to accrue on the day after the request is denied. If an immigration judge makes a determination of nonimmigrant status violation in exclusion, deportation, or removal proceedings, unlawful presence begins to accrue the day after the immigration judge's order. It must be emphasized that the accrual of unlawful presence neither begins on the date that a status violation occurs, nor on the day on which removal proceedings are initiated. See 8 CFR 239.3.

USCIS Memorandum on May 6, 2009, at 25. This paragraph identifies a scenario where USCIS terminates the status pursuant to its adjudication of an application for an immigration benefit, such as an adjustment of status, and a scenario where an immigration judge terminates the status during exclusion, deportation, or removal proceedings. *Id.* It does not reference a circumstance when status is terminated through the entry of termination in a SEVIS record. *See id.*

Administrative remedies are available to inquire about the termination of a
SEVIS record and if necessary, seek correction. As DHS explains on its website,
there are administrative processes available after SEVIS termination. DHS's
website explains that the options are to pursue correction, reinstatement, or to
depart and obtain a new SEVIS record. *See* https://studyinthestates.dhs.gov/sevis-
help-hub/student-records/certificates-of-eligibility/reinstatement-coe-form-i-20 (last
accessed April 30, 2025). These processes are pursued through the school's
Designated School Official ("DSO"). *Id.*

## FACTS AND PROCEDURAL HISTORY

John Doe #1 is a citizen of India. (Compl. ¶ 12.) John Doe #1 was admitted
into the United States pursuant to a valid F-1 visa on August 4, 2021, and most
recently entered the United States on an F-1 visa on December 28, 2024. (*See* Dkt
No. 5-4, Declaration of John Doe #1 ("Doe #1 Decl.") at ¶ 2.) John Doe #1 is
currently a Ph.D. student at the University of Iowa. (Doe #1 Decl. ¶ 1.) On April 10,
2025, John Doe #1 learned from their school's International Students and Scholar
Services that their SEVIS records had been cancelled. (Doe #1 Decl. ¶ 8.) John Doe
#1 pled guilty on March 11, 2024, to operating while intoxicated, first offense. (Doe
#1 Decl. ¶ 10.) Based on John Doe #1's criminal history, on April 10, 2025, SEVP
amended John Doe #1's SEVIS record to reflect this information by setting the
record designation to "terminated." (Watson Decl. ¶ 9.) John Doe #1 is currently
listed as active in SEVIS. (Watson Decl. ¶ 10.)

John Doe #2 is a citizen of China. (Compl. ¶ 13.) John Doe #2 first entered the United States pursuant to an F-1 visa on September 5, 2017, and most recently entered the United States on an F-1 visa on June 7, 2024. (See Dkt No. 5-7, Declaration of John Doe #2 ("Doe #2 Decl.") at ¶ 3.) John Doe #2 is currently a student at the University of Iowa. (Doe #2 Decl. ¶ 1.) On April 10, 2025, John Doe #2 learned from the University of Iowa that their SEVIS record had been administratively cancelled. (Doe #2 Decl. ¶ 9.)  John Doe #2 has five speeding citations, a citation for driving without a valid driver's license, and one pending driving without a valid driver's license charge. (Doe #2 Decl. ¶ 11.) John Doe #2 has a disorderly conduct conviction from July 31, 2024. *Id.* Based on John Doe #2's criminal history, on April 10, 2025 SEVP amended John Doe #2's SEVIS record to reflect this information by setting the record designation to "terminated." (Watson Decl. ¶ 12.) John Doe #2 is currently listed as active in SEVIS. (Watson Decl. ¶ 14.)

John Doe #3 is a citizen of China. (Compl. ¶ 14.) John Doe #3 was admitted into the United States pursuant to a valid F-1 visa on August 13, 2022, and most recently entered the United States on an F-1 visa on August 20, 2023. (*See* Dkt No. 5-10, Declaration of John Doe #3 ("Doe #3 Decl.") at ¶ 2.) John Doe #3 is currently a student at the University of Iowa. (Doe #3 Decl. ¶ 1.) On April 10, 2025, John Doe #3 learned from their school's International Students and Scholar Services that their SEVIS records had been cancelled. (Doe #3 Decl. ¶ 8.) John Doe #3 has two speeding citations, one failure to yield citation, and one citation for driving without a valid driver's license. (Doe #3 Decl. ¶ 10.) On January 3, 2025, John Doe #3 pled

guilty to operating under the influence first offense and the judgment will be deferred upon completion of a one-year term of probation. *Id*. Based on John Doe #3's criminal history, on April 10, 2025, SEVP amended John Doe #3's SEVIS record to reflect this information by setting the record designation to "terminated." (Watson Decl. ¶ 17.) John Doe #3 is currently listed as active in SEVIS. (Watson Decl. ¶ 18.)

John Doe #4 is a citizen of India. (Compl. ¶ 15.) John Doe #4 was admitted into the United States pursuant to a valid F-1 visa on August 12, 2021, and most recently entered the United States on an F-1 visa on June 29, 2022. (*See* Dkt No. 5-13, Declaration of John Doe #4 ("Doe #4 Decl.") at ¶ 3.) John Doe #4 is currently an Epidemiologist working for the Iowa Department of Health and Human Services. (Doe #4 Decl. ¶ 1.) John Doe #4 graduated with a master's degree in public health from the University of Iowa. (Doe #4 Decl. ¶ 4.) John Doe #4 applied for and was granted an Optional Practical Training ("OPT") extension of their F-1 visa for three years. (Doe #4 Decl. ¶ 5.) John Doe #4's OPT extension was valid through September 7, 2026. *Id*. On April 10, 2025, John Doe #4 learned from their school's International Students and Scholar Services that their SEVIS records had been cancelled. (Doe #4 Decl. ¶ 9.) John Doe #4 has an expunged operating while intoxicated deferred judgment from 2023. (Doe #4 Decl. ¶ 11.) Based on John Doe #4's criminal history, on April 10, 2025, SEVP amended John Doe #4's SEVIS record to reflect this information by setting the record designation to "terminated."

(Watson Decl. ¶ 21.) John Doe #4 is currently listed as active in SEVIS. (Watson Decl. ¶ 22.)

Plaintiffs filed the Complaint on April 21, 2025. (Dkt No. 1, Compl.) The Complaint identifies five causes of action. (Compl. ¶¶ 73-101.) Count I contends the SEVIS termination was a final agency decision that was arbitrary and capricious, in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A). (*Id.* ¶¶ 73-83.) Count II alleges that Defendants violated Plaintiffs' Fifth Amendment Due Process rights and claim Plaintiffs have a constitutionally protected property interest in their SEVIS registrations and Defendants did not afford Plaintiffs adequate procedural rights prior to depriving them of their property interests. (*Id.* ¶¶ 84 - 90). Count III alleges that Defendants violated the APA, 5 U.S.C. § 706(2)(B), by not providing Plaintiffs notice or an opportunity to respond to the SEVIS termination, as required by the Fifth Amendment to the United States Constitution. (*Id.* ¶¶ 91 – 93.) Count IV contends the SEVIS termination was a final agency decision that was not authorized by statutory or regulatory authority, in violation of the APA, 5 U.S.C. § 706(2)(D). (Id. ¶¶ 94 – 99.) Count V asserts an *Accardi* claim and alleges Defendant ICE cannot terminate a nonimmigrant's SEVIS status for contact with law enforcement that is not a crime of violence under the INA. (*Id.* ¶¶ 100-101.)[3]

---

[3] In Plaintiffs' Complaint, each Plaintiff discloses contacts with law enforcement resulting in non-felony convictions and/or deferred judgments. (Compl. ¶¶ 41, 49, 56, 66.)

On April 23, 2025, Plaintiff filed a Motion for Temporary Restraining Order ("TRO"). (Dkt No. 5, Mot. for TRO; Dkt No. 5-1, Brief in Supp. Mot. for TRO.) On April 24, 2025, the Court granted Plaintiff's TRO motion and ordered Defendants to restore Plaintiffs' "F-1 student status on the Student Exchange Visitor Information System (SEVIS), backdated to the date of termination," and "to set aside the F-1 student status termination decisions as to [Plaintiffs]." (Dkt No. 10 at 13.) The Court also temporarily enjoined Defendants from terminating Plaintiffs' student status "absent a valid ground as set forth in 8 C.F.R. § 214.1d)-(g), and absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator for each Plaintiff, in which they will be entitled to review any adverse evidence an response to such evidence prior to determining anew that any Plaintiffs' F-1 student status should be terminated." (Dkt. No. 10, 13 – 14.) Defendants were temporarily ordered not to arrest, detain, or transfer or order the arrest, detention or transfer of the Plaintiffs out of the Court's jurisdiction without notice to the Court and Plaintiffs' counsel, as well as time to contest such action. (Dkt. No. 10 at 14.) Defendants were temporarily enjoined from initiating removal proceedings against or deport Plaintiffs on the basis of the termination of their F-1 student status. *Id.* Finally, the Court scheduled a hearing for May 5, 2025, to consider whether to convert the TRO into a preliminary injunction. *Id.*

## STANDARD OF REVIEW

Preliminary injunctive relief is an extraordinary remedy, never awarded as of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff

seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The Eighth Circuit has established a four-factor test for determining whether to grant the extraordinary relief of a preliminary injunction: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties []; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)).

To start, "if the court lacks jurisdiction, [a plaintiff] cannot demonstrate a likelihood of success on the merits." *U.S. Ass'n of Imps. of Textiles & Apparel v. U.S. Dep't of Commerce,* 413 F.3d 1344, 1348–49 (Fed. Cir. 2005). "[W]here the challenge is made upon an application for a preliminary injunction, the plaintiff must 'adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits.'" *Hedberg v. State Farm Mut. Auto. Ins. Co.*, 350 F.2d 924, 929 (8th Cir. 1965) (quoting *Indus. Elec. Corp. v. Cline*, 330 F.2d 480, 482 (3d Cir. 1964)). Moreover, the Eighth Circuit has held that "[t]he failure of a movant to show irreparable harm is an independently sufficient basis upon which to deny a preliminary injunction." *Sessler v. City of Davenport*, 990 F.3d 1150, 1156 (8th Cir.

2021) (quotation omitted). The party seeking a preliminary injunction must show "that irreparable injury is *likely* in the absence of an injunction," not merely "a possibility of irreparable harm." *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, 115 F.4th 889, 893 (8th Cir. 2024) (quoting *Winter*, 555 U.S. at 22) (emphasis in original; citation omitted).

## ARGUMENT

### A. There is no Case or Controversy Before the Court because Plaintiff's F-1 Nonimmigrant Status has Not Been Terminated.

The Complaint conflates a change to Plaintiffs' SEVIS records with a change to their F-1 nonimmigrant status. An individual's SEVIS record is not the same thing as his F-1 nonimmigrant status. As explained in the Declaration of Andre Watson, changing a data entry field in a SEVIS record to "terminated" (as opposed to initial, active, inactive, or completed) does not terminate the alien's F-1 nonimmigrant status. (Watson Decl. ¶ 23.)

SEVIS is a database to monitor and verify certain information about F, M, and J nonimmigrants administered by SEVP. *Id.* ¶¶ 3, 4. The applicable statute, 8 U.S.C. § 1372, does not provide authority to terminate nonimmigrant status by changing a SEVIS record. Thus, the entire premise of Plaintiffs' complaint is incorrect, and there is no case or controversy before the Court regarding Plaintiffs' F-1 nonimmigrant status.

**B. Plaintiffs are Unlikely to Succeed on their APA Claims Because Defendants have not Waived Sovereign Immunity.**

    1. <u>Entry in a SEVIS Record is not a Final Agency Action Subject to APA Review.</u>

The APA's limited waiver of sovereign immunity is contained in 5 U.S.C. § 702. Waivers of sovereign immunity must be "unequivocally expressed in statutory text… and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citations omitted). The scope of this type of waiver is "strictly construed" in the Government's favor. *Id.* "[T]he 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (quoting *United States* v. *Sherwood*, 312 U.S. 584, 586 (1941)). To invoke the waiver, "the plaintiff must identify some agency action affecting him in a specific way, which is the basis of his entitlement for judicial review" and "the plaintiff must show that he has suffered legal wrong because of the challenged agency action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute." *Id.* (quotations/citations omitted).

Moreover, agency action must be final before it may be subject to APA review. 5 U.S.C. § 706. An action is "final" when it (1) "mark[s] the consummation of the agency's decision-making process," and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations and quotations omitted). "The agency's action cannot be tentative or interlocutory in nature." *Sisseton-Wahpeton Oyate of Lake Traverse Rsrv. v. United States Corps of Eng'rs*, 888 F.3d 906, 915 (8th Cir.

2018) (citing *Bennett*, 520 U.S. at 178). "To constitute a final agency action, the agency's action must have inflicted an actual, concrete injury upon the party seeking judicial review." *Sisseton*, 888 F.3d at 915 (citations and quotations omitted).

SEVP's change to Plaintiffs' SEVIS records fail to meet both factors of the final agency action test. First, the change does not mark the consummation of any decision-making process. SEVIS records are "an electronic means to monitor and verify" certain information about a student nonimmigrant. (*See* Watson Decl. ¶ 4 (citing 8 U.S.C. § 1372(c).) And changing a SEVIS record to "terminated" does not terminate nonimmigrant status in the United States. (Watson Decl. ¶ 23.) Thus, the SEVIS record—indicating initial, active, inactive, completed or terminated—does not reflect the consummation of any agency decision-making process regarding the student's nonimmigrant status.

To the extent Plaintiffs rely on *Jie Fang v. Director of ICE*, 935 F.3d 172 (3d Cir. 2019), to argue that the termination of a SEVIS record is final agency action the APA, that reliance is misguided. In *Jie Fang*, DHS conducted a sting operation to catch fraudulent student visa brokers. 935 F.3d at 173–74. During that process, several foreign students were granted nonimmigrant visas and entered the United States only to have their immigration status revoked by DHS at the conclusion of the investigation. *Id.* Because their status had been revoked, the plaintiffs were placed into removal proceedings. *Id.* at 178–79. On appeal, the Third Circuit concluded that the regulation providing for reinstatement of F-1 nonimmigrant

status, 8 C.F.R. § 214.2(f)(16), was not mandatory and that the regulatory appeal procedure was not reviewable in immigration proceedings. *Id.* at 177–78. But the relevant issue in *Jie Fang* was not a SEVIS record; it was the revocation of lawful nonimmigrant status, which led to the students being placed into removal proceedings. *See id.* at 178–79. Indeed, a district court in the Ninth Circuit came to the opposite conclusion for former F-1 students involved in a separate sting operation who challenged a SEVIS termination. *See Yerrapareddypeddireddy v. Albence*, No. 20-cv-1476, 2021 WL 5324894, at *7 (D. Ariz. Nov. 16, 2021) ("Plaintiffs have produced no evidence showing that there was a finding of visa fraud, and have thus identified no agency action, much less a final agency action, that is subject to judicial review."), *aff'd*, No. 21-17070, 2022 WL 17484323, at *1 (9th Cir. Dec. 7, 2022).

Plaintiffs incorrectly allege that DHS failed to comply with its regulations in 8 C.F.R. § 214.1(d) by changing Plaintiffs' SEVIS records. (*See* Compl. ¶ 7.) Section 214.1(d) relates to the termination of nonimmigrant status—not a SEVIS record. *See* 8 C.F.R. § 214.1(d) ("the nonimmigrant status of an alien shall be terminated by…"). And as SEVP has indicated, it has never claimed that it had terminated Plaintiffs' nonimmigrant status. (Watson Decl. ¶ 23.) Congress tasked DHS with the broad authority to "develop and conduct a program" to record information about nonimmigrant students in an electronic database. 8 U.S.C. § 1372(a)(1). DHS can update, change or modify the records for that program because of its congressionally-mandated authority to "conduct" the SEVIS program. *Id.* at ¶ 4.

Second, legal consequences do not flow from the mere changing of a SEVIS record to terminated. As indicated, it does not terminate the student's nonimmigrant status or result in the revocation of a nonimmigrant visa. (Watson Decl. ¶ 23.) Rather, it is record-keeping action conducted under DHS's authority to collect information and maintain records under 8 U.S.C. § 1372. *See Zhao v. Virginia Polytechnic Inst. and State Univ.*, No. 7:18cv00189, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2008) (describing SEVIS record modification by school's DSO as "clerical duty performed as a preliminary matter"); *see also Yerrapareddypeddireddy v. Albence,* No. CV-20-01476-PHX-DWL, 2021 WL 5324894, at *7-8 (D. Ariz. Nov. 16, 2021).

Because the SEVIS termination did not terminate Plaintiffs' nonimmigrant status, they cannot establish that legal consequences flow from the challenged agency action. Thus, Plaintiffs fail to assert a viable claim under the APA because the change to their SEVIS records is not a final agency action.

2. <u>The Privacy Act Forecloses APA Review of Plaintiffs' Challenge to the Contents of their SEVIS Records.</u>

Plaintiffs are also unlikely to succeed on the merits of their APA claims because the Privacy Act of 1974, 5 U.S.C. § 552a (2018), does not allow them to challenge the content of a SEVIS record. In addition to requiring final agency actions, the "APA's waiver of sovereign immunity comes with an important carve-out: The waiver does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought' by the plaintiff." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215, 132

19

(2012) (hereinafter "*Patchak*") (quoting 5 U.S.C. § 702). "That provision prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Id.*

To date, the Eighth Circuit has not considered whether the Privacy Act is one such statute, nor has it set forth a test for determining how to assess whether another statute precludes APA review.[4] At least one Court has interpreted Section 702 and the Supreme Court's decision in *Patchak* to contain three requirements to trigger the "any other statute" exception: "(1) the statute must address the same type of grievance the plaintiff asserts in his suit; (2) the statute must deal 'in particularity' with the claim, and (3) Congress must have intended the statute to afford the 'exclusive remedy' for that type of claim/grievance." *Cambranis v. Blinken*, 994 F.3d 457, 463 (5th Cir. 2021) (citing *Patchak*, 567 U.S. at 216).

The Complaint asks the Court to "Order that Defendants restore Plaintiffs' SEVIS record and status." (Compl., Prayer ¶ F.) To the extent Plaintiffs seek judicial review under the APA to amend the status field contained in their SEVIS records, their claims fail because the Privacy Act addresses the same type of

---

[4] The Eighth Circuit and another Eighth Circuit district court, the District of Minnesota, have applied the exception in another other context. *See, e.g., Ducheneaux v. Sec'y of the Interior of U.S.*, 837 F.2d 340, 343 (8th Cir. 1988) (concluding that application of the Quiet Title Act preempts application of the APA and does not waive sovereign immunity for claims involving land held in trust for Indians); *Dillon v. United States*, 620 F. Supp. 3d 856, 860 (D. Minn. 2022) (holding that the Anti-Injunction Act and the Declaratory Judgment Act forbid action brought under the APA if it concerns the assessment or collection of federal taxes, rendering the APA's sovereign-immunity waiver inapplicable).

grievance, deals in particularity with the asserted claim, and Congress intended to afford an exclusive remedy for that type of claim.

First, the Privacy Act addresses the same type of grievance asserted by Plaintiffs, one seeking corrections to records held in government databases. 5 U.S.C. § 552a(b). The Privacy Act establishes practices for federal agencies regarding the collection, maintenance, use, and dissemination of information about individuals within systems of records. *See* Pub. L. 93–579 § 2, Dec. 31, 1974, 88 Stat. 1896 (codified at 5 U.S.C. § 552a) (notes)). The Privacy Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by the Government's purported compliance failures. *See generally*, 5 U.S.C. § 552a. A "system of records" is defined by statute as a group of records under the control of an agency from which information is retrieved by the name of the individual or by some identifier assigned to the individual. 5 U.S.C. § 552a(a)(5). The Privacy Act sets forth agency record-keeping requirements, places restrictions on disclosure of information, and provides a means for individuals to access their records and seek correction of inaccurate information in those records. *Id.* §§ 552a(b)-(d).

The Complaint alleges that "[o]n or about April 10, 2025, U.S. Immigration and Customs Enforcement ("ICE") abruptly terminated Plaintiffs' Student and Exchange Visitor Information Systems ("SEVIS") records without explanation." (Compl. ¶ 3.) In accordance with the Privacy Act, DHS "modiff[ed], rename[d] and reissue[d]" the SEVIS database as "DHS/ICE-001 Student and Exchange Visitor

Information System (SEVIS) System of Records." *See* 86 Fed. Reg. 69663 (Dec. 8, 2021). Plaintiff acknowledges that SEVIS is a "database." (Compl. ¶ 20.) Plaintiffs ask the Court to find that Defendants' termination of his SEVIS status was unlawful. (*See* Comp. Prayer ¶ D.) At its core, however, Plaintiffs seek to have the Court order amendments to information in the SEVIS records. (*See* Compl. Prayer ¶ F.) The Privacy Act encompasses this type of grievance. *See* 5 U.S.C. § 552a(b).

Second, the Privacy Act sets forth the contours of the administrative process an agency must follow when an individual requests a record amendment, including submitting a request, the timeline for an agency response, a requirement that a denial includes the basis for the decision, and an appeal if the request is denied. 5 U.S.C. § 552a(d)(2). The Privacy Act also states that agencies must establish particular procedures for the review and amendment process. *Id.* at § 552a(f); *Quinn v. Stone*, 978 F.2d 126, 137 (3d Cir. 1992) (describing the "detailed set of requirements" for amending a record set forth in the Privacy Act). It provides for judicial review of an agency's failure to amend the records, but only after administrative remedies have been exhausted. 5 U.S.C. § 552a(d)(1)-(4). It also defines the class of persons who may sue, the venue where suit may be brought, the standard of review, the statute of limitations, and the available remedies including an order directing the agency to amend a record or to provide access to a record, costs, attorneys fees, and in some cases actual damages. *See* 5 U.S.C. §§ 552a(g)(1)-(5); *see also Block v. North Dakota*, 461 U.S. 273, 286 (1983) (indicating that "the balance, completeness, and structural integrity" of a statutory provision "belie[s] the

contention that it was designed merely to supplement other judicial relief"). Thus, the second factor of the *Cambranis* test is met.

Finally, Congress intended for the Privacy Act to provide the exclusive remedy in these types of challenges. The completeness of the Privacy Act scheme— to view, challenge, and seek amendment of records, and to pursue civil remedies in court if unsuccessful—shows Congress' intent for exclusivity. That conclusion is consistent with the legislative history in which Congress explained that the Privacy Act contained provisions "for the exercise of civil remedies by individuals against the Federal Government through the Federal courts to enforce their rights, with the burden of proof resting on the government." H.R. Report 93-1416 (Oct. 2, 1974) at 4 (*see* Privacy Sourcebook[5] at 297). The House Report further explained that "[t]he section authorizing civil actions by individuals is designed to assure that any individual who has been refused lawful access to his record or information about him in a record or has otherwise been injured by an agency action which was based upon an improperly constituted record, will have a remedy in the Federal District courts." *Id.* at 17 (*see* Privacy Sourcebook at 310). When reconciling the House and Senate versions of the bill, the committee explained the remedies available under the Privacy Act to correct or amend a record, including the applicable standard of proof: "These amendments represent a compromise between the two positions,

---

[5] 3 S. Comm. on Gov't. Operations & H.R. Comm. on Gov't. Operations, 94th Cong., Legislative History of the Privacy Act of 1974 S. 3418 (Public Law 93-579): Source Book on Privacy at 4 (Comm. Print 1976) (hereinafter "Privacy Sourcebook") *available at* https://www.justice.gov/d9/privacy_source_book.pdf (last visited April 29, 2025).

permitting an individual to seek injunctive relief to correct or amend a record maintained by an agency. In a suit for damages, … the standard for recovery of damages was reduced to 'willful or intentional' action by an agency." *See* Privacy Sourcebook at 862 (citing from the Congressional Record—Senate, Dec 17, 1974— Senate Considers House Substitute of Text of H.R. 16373 to S. 3418 and Adopts Compromise Amendments Identical to those Considered in House).

The jurisdictional analysis does not change because the Privacy Act does not provide relief for the Plaintiffs, as part of Congress's design. Thus, the Privacy Act triggers the APA's exception that sovereign immunity is not waived if "any other statute explicitly or impliedly forbids the relief sought." 5 U.S.C. § 702; *Patchak*, 567 U.S. at 216; *Cambranis,* 994 F.3d at 462-63. "[W]hen Congress has dealt in particularity with a claim and [has] intended a specified remedy—including its exceptions—to be exclusive, that is the end of the matter; the APA does not undo the judgment." *Patchak*, 567 U.S. at 216 (alteration in original, quotations/citations omitted); *see also Block*, 461 U.S. at 286 n.22.

 Here, the Privacy Act explicitly "forbids the relief sought" by Plaintiff's' APA claims. *See* 5 U.S.C. § 702. Congress intentionally restricted who can challenge purportedly erroneous records under the Act to U.S. citizens and lawful permanent residents. 5 U.S.C. § 552a(a)(2) (defining "individual"); *see* H.R. 93-1416 at 11 (Privacy Sourcebook at 304) (explaining the law "would not affect any other foreign nationals."). Indeed, Congress explicitly acknowledged that foreign nationals are generally barred from the Privacy Act's remedial measures by passing the Judicial

Redress Act of 2015, Pub. L. 114-126, which extended certain remedial measures of the Privacy Act to citizens of designated countries. 5 U.S.C. § 552a note. The Attorney General twice designated European countries whose citizens could take advantage of such redress. 82 Fed. Reg 7860-61 (Jan. 23, 2017); 84 Fed. Reg. 3493-94 (Feb. 12, 2019). Congress and the Attorney General have not extended that designation to India or China, thus barring Plaintiffs from the relief they seek. *Raven v. Panama Canal Co.*, 583 F.2d 169, 170 (5th Cir. 1978) (applying plain meaning to definition of individual in § 552a(a)(2) and holding that "since the plaintiff is a Panamanian citizen and thus not an 'individual' within the meaning of the Privacy Act, she is not entitled to compel access under its authority"); *see also El Badrawi v. Dep't of Homeland Sec.*, 579 F.Supp.2d 249, 279 n. 35 (D. Conn. 2008) ("the Privacy Act implicitly (if not explicitly) forbids nonresident aliens … from suing federal agencies to correct their records.").

As the Supreme Court noted, "[i]t would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading." *Block*, 461 U.S. at 285. Other courts have reached the same conclusion in APA suits challenging government records. *See El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 279 n.35 (D. Conn. 2008) (APA's waiver of sovereign immunity did not extend to actions to correct government records); *Westcott v. McHugh*, 39 F. Supp. 3d 21, 33 (D.D.C. 2014) ("[A] plaintiff cannot bring an APA claim to obtain relief for an alleged Privacy Act violation."); *Touchstone Rsch. Grp. LLC v. United States,* No. 18-CV-3451 (OTW),

2019 WL 4889281, at *5-6 (S.D.N.Y. Oct. 3, 2019) (dismissing APA claims because APA's general grant of review was not intended to duplicate existing procedures of Privacy Act).

Because the APA's waiver of sovereign immunity does not extend to Plaintiffs' APA claims, the Court lacks jurisdiction over all claims[6] in the Complaint.[7]

## C. Plaintiffs Cannot Establish Irreparable Harm

Irreparable harm must be likely absent an injunction, not merely possible. *Winter*, 555 U.S. at 22. Here, Plaintiffs have failed to establish any irreparable harm. The Court can and should deny their preliminary injunction motion on this basis alone. *Sessler*, 990 F.3d at 1156.

Plaintiff's' suggestion that a SEVIS termination puts them out of status is mistaken. Plaintiffs do not need injunctive relief from this Court for additional protection. SEVIS record terminations and cancellations are not final agency actions and do not terminate nonimmigrant status. They are simply data entry actions.

---

[6] The Declaratory Judgment Act is not an independent source of federal jurisdiction. *Schilling v. Rogers, 363 U.S. 666, 677 (1960)*. Rather, it "provides an additional remedy where jurisdiction already exists." *Terminal Freight Handling Co. v. Solien, 444 F.2d 699, 703 (8th Cir. 1971)*.

[7] Even if Plaintiffs were authorized to bring a Privacy Act claim, this Court would still lack jurisdiction because they have not exhausted their administrative remedies. *See* 5 U.S.C. § 552a(d)(3); *Taylor v. U.S. Treas. Dep't*, 127 F.3d 470, 475 (5th Cir. 1997) (per curiam) (statutory mandate to exhaust administrative remedies is jurisdictional); *Hill v. Air Force,* 795 F.2d 1067, 1069 (D.C. Cir. 1986) (plaintiff seeking to amend inaccurate records must first exhaust); *Barouch v. United States DOJ*, 962 F. Supp. 2d 30, 67 (D.D.C. 2013) (exhaustion requirement of Privacy Act is jurisdictional).

The SEVIS entry also does not risk Plaintiffs accruing unlawful presence, as USCIS has stated that unlawful presence would only accrue for an individual admitted with D/S after USCIS or an Immigration Judge has taken administrative action against him. *See* USCIS Memorandum on May 6, 2009. Moreover, the Supreme Court has held in other immigration contexts that claims related to the possibility of removal proceedings do not constitute irreparable injury. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ("[T]he burden of removal alone cannot constitute the requisite irreparable injury."). Plaintiffs do not allege that notices to appear ("NTA"s) in immigration court have been issued or that there have been attempts to serve them with NTAs. Accordingly, Plaintiffs' claims that they may be detained and placed in immigration proceedings is at best speculative at this time.

Plaintiffs have provided no evidence that the credits earned at the University of Iowa will be lost or invalidated. To the extent that any money was purportedly "lost" by Plaintiffs in the process of paying tuition to earn credits towards a university degree program while in the United States, it is well established that a claim of monetary loss on its own is not recognized as irreparable harm. See *Local Union No. 884, United Rubber, Cork, Linoleum & Plastic Workers of Am. v. Bridgestone/Firestone, Inc.*, 61 F.3d 1347, 1355 (8th Cir.1995); *Packard Elevator v. ICC,* 782 F.2d 112, 115 (8th Cir.1986). Accordingly, Plaintiffs have failed to establish any irreparable harm.

**D. The Balance of Equities and Public Interest Favor the Government**

The balance of equities and public interest factors "merge when the Government is the opposing party." *See Nken*, 556 U.S. at 435. A court "'should pay particular regard for the public consequences'" of injunctive relief. *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero- Barcelo*, 456 U.S. 305, 312 (1982)). Here, this factor weighs in the Government's favor.

Congress has provided the Secretary of Homeland Security significant authority to administer and enforce U.S. immigration laws, including those governing the conditions of admission of foreign students. *See* 8 U.S.C. §§ 1103(a), 1184(a)(1). And it has mandated that DHS develop and administer a "[p]rogram to collect information relating to nonimmigrant foreign students." *See* 8 U.S.C. § 1372. Any order that enjoins a governmental entity from exercising its discretion pursuant to statute constitutes an irreparable injury that weighs against the entry of injunctive relief. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977).

Granting Plaintiffs the extraordinary relief they seek would undermine DHS' authority to enforce the provisions of the Immigration and Nationality Act relating to the Department's ability to update and maintain the information in SEVIS. This includes changing SEVIS record status to "terminated" as needed, in order to carry out the purposes of the program. The public interest would not be served by restricting the agency's authority.

**E. The Court Should Require Plaintiff to Post a Bond**

Pursuant to Rule 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *see also Global NAPs, Inc. v. Verizon New England, Inc.,* 489 F.3d 13, 20-21 (1st Cir. 2007). A bond posted for a preliminary injunction is viewed as a contract in which "the court and [Plaintiff] 'agree' to the bond amount as the 'price' of a wrongful injunction." *Global NAPs, Inc.*, 489 F.3d at 21 n. 5 (internal citation omitted). As a result of the posting of the bond, a presumption arises that damages will be awarded from those posted bond amounts in order for defendants "to receive compensation for their damages in cases where it is later determined that a party was wrongfully enjoined." *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994); *see also Global NAPs, Inc.*, 489 F.3d at 23. Defendants respectfully request that Plaintiff be required to post security during the pendency of the Court's Order, in the event it is later determined that Defendants were wrongfully enjoined.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's request for a preliminary injunction in its entirety.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By: */s/ Rachel J. Scherle*
    Rachel J. Scherle
    Andrew H. Kahl
    Assistant United States Attorneys
    Neal Smith Federal Building
    210 Walnut Street, Ste 455
    Des Moines, Iowa 50309
    Telephone: (515) 473-9300
    Facsimile: (515) 473-9282
    Email: rachel.scherle@usdoj.gov
           andrew.kahl@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2025, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

_____U.S. Mail _____ Fax _____Hand Delivery

___X___ECF/Electronic filing     _____Other means

UNITED STATES ATTORNEY

By: */s/ S. Irwin*
    Paralegal Specialist