UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| JOHN DOE #1, *et al.* | ) |
| | ) |
| | ) Case No. 3:25-cv-00042-RGE-WPK |
| *Plaintiffs*, | ) |
| | ) **Reply in Support of Plaintiffs' Motion for** |
| v. | ) **Summary Preliminary Injunction** |
| | ) |
| KRISTI NOEM, *et al.*, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**

## I. Introduction

Defendants' resistance raises more questions than it answers. They appear to argue that terminating a student's SEVIS record has no legal effect, and that stripping Plaintiffs of SEVIS status was a mere "data entry action" with no impact on the student Plaintiffs. Defs.' Resistance, ECF No. 15-1, at 26. That is incorrect. Termination of a SEVIS record results in the immediate loss of employment, the risk of detention and removal, the inability to adjust to other immigration statuses, the inability to transfer schools, and the overall interruption in the student's studies.

Defendants' ever-shifting policies—including a new policy circulated six days ago (but unmentioned in Defendants' resistance)—show why a preliminary injunction is critical at this stage of the litigation. While the Department of Homeland Security ("DHS") continues to develop and adjust policies to justify terminating SEVIS records, the Court should grant a preliminary injunction to protect the status quo and prevent further irreparable harm to Plaintiffs.

## II. Recent Factual Developments Regarding the SEVIS Program

Since filing this lawsuit and motion for a preliminary injunction, the landscape has shifted. On April 26, 2025, ICE issued a new policy regarding termination of SEVIS records. *See* Ex. 14,[1] April 26 ICE SEVIS Policy (submitted as an exhibit in *Doe v. Trump, et al.*, No. 4:25-cv-00175-TUC-AMM, 2025 WL 1115468 (D. Ariz. Apr. 28, 2025)). This new policy lists reasons why ICE may terminate a nonimmigrant student's SEVIS record. *Id.* Notably, two new termination reasons were added: "Evidence of a Failure to Comply with the Terms of Nonimmigrant Status Exists" and "U.S. Department of State Visa Revocation (Effective Immediately)." *Id.* This is significant for Plaintiffs because, should their TRO expire, their revoked visas could be grounds for ICE to terminate their SEVIS records again, showing the ongoing nature of the parties' controversy. *See* TRO Exs. 3, 6, 9, 12; Reply Exs. 19–22 (SEVIS records for each plaintiff).

---

[1] Exhibit numbering continued from Plaintiffs' opening brief in support of their TRO motion.

1

Second, DHS has provided new testimony around its program to terminate thousands of student SEVIS records. In a recent hearing in the U.S. District Court for the District of Columbia, DHS witness Andre Watson, who submitted a declaration in this case, discussed ICE's "student criminal alien initiative." *See* Ex. 15, Transcript, *Patel v. Lyons* Hearing, Apr. 29, 2025, at 3–4. Mr. Watson explained that 10–20 ICE employees spent several weeks combing the records of 1.3 million student visa holders to determine whether they have had any criminal history or even minor interaction with law enforcement. *Id.* at 9, 11–13. ICE then sent that information to the Department of State ("DOS") for the purpose of visa revocation, and DOS, in turn, recommended that ICE terminate students'—including Plaintiffs'—SEVIS records. *Id.* at 4, 13–16. This evinces a larger enforcement program than ad hoc terminations.

## III. Argument
### A. There is a Live Case or Controversy as Defendants' SEVIS Policies Evolve.

Defendants inexplicably suggest that a SEVIS termination is a simple "data-entry action" with no legal consequences. Defs.' Resp. at 26. However, students with a terminated SEVIS status face immediate harm. While Plaintiffs' SEVIS records were reinstated due to this Court's TRO (*see* Ex. 23, Email from Univ. of Iowa), absent a preliminary injunction, Plaintiffs face the possibility of ICE re-terminating their SEVIS records, resulting in the severe consequences described below.

First, if ICE re-terminates Plaintiffs' SEVIS records, Plaintiffs would no longer be complying with the conditions of their F-1 status, which would make them deportable. *See* 8 U.S.C. § 1227(a)(1)(C)(i). They would also be deportable due to their visas being revoked. *See* 8 U.S.C. § 1227(a)(1)(B) (making deportable any noncitizen "whose nonimmigrant visa . . . has been revoked under section 1201(i) of this title.").

Second, a student's SEVIS termination immediately ends all on- and off-campus employment authorization, as well as curricular practical training and optional practical training

("OPT"), and students won't be approved for OPT upon graduation. *See* DEP'T HOMELAND SEC., *Terminate a Student*, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last visited May 2, 2025) [hereinafter "Terminate a Student"]; Ex. 16, Declaration of Designated School Officer Nusha Shishegar at ¶ 10. This was the case for Doe #4. When ICE terminated his SEVIS record, his OPT immediately ended. *See* Ex. 22, Doe #4 SEVIS Event History at 3 (showing OPT ending on April 10, 2025, instead of September 07, 2025).

Third, SEVIS terminations will negatively impact future status adjustments, as U.S. Citizenship and Immigration Services ("USCIS") often equates a SEVIS termination with lack of status, which would bar adjustment to an H-1B specialty worker visa or lawful permanent resident ("green card"), among other statuses. Ex. 18, USCIS Notice of Intent to Deny ("NOID") #2 at 2–3 (indicating that applicant can't adjust to an H-1B visa after equating a SEVIS termination to a lack of status). It could prevent reinstatement of the SEVIS record depending on how long the record is terminated. *See, e.g.*, Ex. 17, USCIS NOID #1 at 2 (finding SEVIS termination equating to a lack of status).

Fourth, students cannot change schools or programs of study with a terminated SEVIS record. *See* DHS Terminate a Student, *supra*. Nor can they reenter the United States. The Foreign Affairs Manual, DOS' policy manual, explains that "the SEVIS record is the definitive record of student or exchange visitor status and visa eligibility," and officers cannot grant an F-1 Visa unless the applicant's "SEVIS record indicates a SEVIS status of 'initial' or 'active.'" 9 F.A.M. 402.5-4(B), https://fam.state.gov/FAM/09FAM/09FAM040205.html (last updated Apr. 22, 2024).

Like USCIS, Designated School Officials ("DSOs") equate a SEVIS termination to a loss of status. Nusha Shishegar, who has served as a DSO for 15 years, states, "ICE has always taken the opposite position that terminating a record in SEVIS does result in the termination of an F-1/M-1 student's nonimmigrant status in the United States. . . . The position of Mr. Watson is different than

3

the public position of ICE and all previous statements and guidance I received during my career." Shishegar Decl. at ¶ 24–25. On a DHS webpage for DSOs, the agency states that when a SEVIS record is terminated, "the student must leave the United States, file for reinstatement or take another action to remain in status," implying that they are out of status upon termination. DHS, Terminate a Student, *DSO: Learn More About Termination Reasons*, https://studyinthestates.dhs.gov/2018/01/dsos-learn-more-about-sevis-termination-reasons (last visited May 2, 2025). A SEVIS termination also prevents "the student and their DSO from complying with reporting requirements or maintaining eligibility for employment authorization" because they cannot enter new information on a terminated record. *See Doe v. Trump, et al.*, No. CV-25-00174-TUC-JGZ, 2025 WL 1192826, at *6 (D. Ariz. Apr. 24, 2025); *see also* Shishegar Decl. at ¶ 30 ("[S]tudents need an active SEVIS record to meet regulatory program reporting requirements."). This defeats the letter and purpose of 8 U.S.C. § 1372, the statute that enabled the creation of SEVIS.

Defendants insist that SEVIS termination does not terminate F-1 status, but several courts have found otherwise. *See Doe*, 2025 WL 1192826, at *5–6 (collecting cases) ("Essentially, on one hand, the Government says Plaintiff is wrong to conflate the termination of her SEVIS record with the termination of her F-1 status; on the other hand, the Government itself appears to conflate the two actions and treat plaintiff as if she has in fact failed to maintain status.").[2] Defendants themselves have taken inconsistent positions on the effect of a SEVIS termination on status. ICE's new policy—crafted in the wake of dozens of lawsuits—states that "[a] terminated record *could* indicate that the nonimmigrant no longer maintains F or M status," but provides no further

---

[2] *See also Yang v. Noem*, No. 25-CV-292-WMC, 2025 WL 1166521, at *4 (W.D. Wis. Apr. 22, 2025); *Doe v. Noem*, No. 2:25-CV-01103-DAD-AC, 2025 WL 1134977, at *5 n. 1 (E.D. Cal. Apr. 17, 2025) ("[D]istrict courts have found that such action necessarily involves terminating the plaintiff's F-1 status."); *Liu v. Noem*, No. 25-CV-133-SE, 2025 WL 1189760, at *2 (D.N.H. Apr. 10, 2025).

4

conditions or explanations as to when status *could* be terminated. Ex. 14 (emphasis added); *see also* Terminate a Student, *supra* (same language); Defs.' Res. at 7 (a terminated "SEVIS record *does not necessarily* indicate a termination of nonimmigrant status.") (emphasis added).

Defendants also argue that 8 U.S.C. § 1372 governs ICE's responsibilities regarding SEVIS termination, not the regulations at 8 C.F.R. §§ 214.1(d)–(g). Defs.' Res. at 18. But nothing in § 1372 gives ICE the authority to terminate a student's SEVIS record; rather, the statute mandates collection and maintenance of accurate information, including the student's "nonimmigrant classification." § 1372(c)(1)(B). In a recent hearing, Defendants "conceded . . . as they must, that SEVIS's purpose is to reflect accurately an international student's status." *Liu v. Noem*, No. 25-CV-133-SE, 2025 WL 1233892, at *5 (D.N.H. Apr. 29, 2025). If anything, ICE's terminating a SEVIS record when a student is still in status conflicts with the purpose of § 1372 to report accurate and reliable information about a student's "nonimmigrant classification" and status.

Finally, Defendants have failed to identify any authority that allows them to terminate a SEVIS record, and they are patently incorrect that a SEVIS termination is merely a "data-entry action" with no effect. A live case and controversy remains. For the same stated reasons, Plaintiffs are likely to succeed on the merits of their APA and Fifth Amendment Due Process Clause claims.

### B. ICE's New Policy Provides Plaintiffs No Protections Against Termination of Their SEVIS Records and Deportation from the United States.

ICE's new policy further emphasizes the ongoing nature of this case. Under this new policy and without an injunction, ICE could easily terminate Plaintiffs' SEVIS records again. Each Plaintiff in this case received notice from their respective embassies or consulates that their visas had been revoked under INA § 221(i). *See* TRO Exs. 3, 6, 9, 12 (emails to Plaintiffs from embassies and consulates notifying them of their visa revocation). The new policy states that once the "[DOS] revokes an alien's visa with immediate effect, ICE should take steps to initiate removal proceedings." Ex. 14 at 2. This new policy also states that if the agency "has objective evidence that

5

a nonimmigrant visa holder is no longer complying with the terms of their nonimmigrant status for any reason, then the SEVIS record may be terminated on that basis." *Id.* ICE's new policy clearly indicates that Plaintiffs are at risk of having their SEVIS status revoked again and potentially being removed from the country without a preliminary injunction.

Despite Mr. Watson's statement that SEVIS termination does not result in a visa revocation, his recent testimony clearly indicates that DHS and DOS are attempting to subvert the regulations in 8 C.F.R. §§ 214.1(d)–(g), which do not list visa revocation as a valid reason to terminate status. *See* Watson Decl. ¶ 23, ECF No. 15-2. "[T]he authority to issue or revoke visas for nonimmigrant students . . . lies with the Department of State, not SEVP. Terminating a record within SEVIS does not effectuate a visa revocation." *Id.* But in a recent hearing, Mr. Watson further testified that ICE sent information about thousands of students, including Plaintffs, to DOS presumably for visa revocation, and in response, DOS instructed ICE to terminate those students' SEVIS records. *See* Ex. 15 at 3–4; 13–19. ICE's subsequent policy that visa revocations are a ground for both SEVIS termination and removal shows that the Defendants are trying to make an end-run around the regulations; actions that could well result in Plaintiffs' ultimate deportation. Accordingly, a case and controversy continues.

### C. Termination of SEVIS is a Final Agency Action from which Legal Consequences Flow.

ICE's SEVIS terminations are final agency action because they "mark the 'consummation' of the agency's decision-making process," from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotations and citations omitted). Regardless of whether SEVIS termination amounts to status termination (and many courts have found they do; *see* cases cited at 4 n.2), the agency's actions were not interim and carried heavy consequences. Mr. Watson's testimony shows that Plaintiffs' termination was part of a larger effort that culminated in approximately 3,000 terminations in the first two weeks of April 2025. Ex. 15 at 3–4; 13–19. These

6

terminations were not ad hoc, interim, or one-offs; they were part of the "student criminal alien initiative." *Id.* As described above; serious legal consequences flowed from the terminations. *See supra* Part III.A. The SEVIS terminations also resulted in DOS revoking Plaintiffs' visas and warning, "Remaining in the United States without a lawful immigration status can result fines, detention, and/or deportation." Compl. at ¶ 46. The terminations were final. There is no administrative appeal process for a SEVIS termination, and Plaintiffs have nowhere else to bring these claims. 5 U.S.C. § 704; *see Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 185 (3d Cir. 2019). Accordingly, ICE's actions terminating Plaintiffs' SEVIS records are final and reviewable. *See* 5 U.S.C. § 706.

### D. The Privacy Act Does Not Provide an Alternative Cause of Action.

The Privacy Act does not bar Plaintiffs' claims because Plaintiffs are not "individual[s]" as defined in the Privacy Act. *See* 5 U.S.C. § 552a(a)(2) (defining "individual" as "a citizen of the United States or an alien lawfully admitted for permanent residence."). Because Plaintiffs do not qualify as "individual[s]" under the Privacy Act, their SEVIS records do not meet the definition of a "record" governed by the Privacy Act. *See* § 552a(a)(4) (defining "record" as "any item, collection, or grouping of information about an *individual* that is maintained by an agency . . . .") (emphasis added). Even if Plaintiffs qualified as "individuals" under the Privacy Act, the Privacy Act would not be Plaintiffs' sole avenue for relief. "Congress did not intend for the Privacy Act to be an 'exclusive' source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the APA." *See Liu*, 2025 WL 1233892, at *9 (citing *All. For Retired Americans v. Bessent*, No. CV 250313 (CKK), 2025 WL 740401, at *19 (D.D.C. Mar. 7, 2025)); *Doe v. Noem*, No. 2:25-CV-01103-DAD-AC, 2025 WL 1134977 at *5 (E.D. Cal. Apr. 17, 2025), (the remedy proposed by the government is "not even doubtful, but nonexistent."). For this reason, the Privacy Act does not conflict with or otherwise bar APA relief.

7

### E. Plaintiffs Have Established Irreparable Harm Absent an Injunction.

Ignoring Plaintiffs' very real harms, Defendants once again repeat their misguided argument that SEVIS termination does not terminate a student's F-1 status, and so there can be no irreparable harm. But many serious consequences would befall Plaintiffs if ICE were to again terminate their SEVIS status, and ICE's April 26, 2025, policy makes it all the more likely that ICE will re-terminate.

As this Court has already found, SEVIS termination could result in Plaintiffs' inability to complete their academic program, losing years of full-time work, facing diminished career prospects, and suffering reputational harm constitute irreparable harm. *See Doe v. Noem*, F.Supp.3d, 7 (W.D. Wash. 2025). In the case of Doe #4, he was immediately unable to work on OPT when ICE terminated his SEVIS record.

The daily accrual of time out of F-1 status increases the risk that Plaintiffs will be unable to reinstate status, which in turn means that they would be unable to continue their studies, research, and work at the University of Iowa. Such harm is irreparable. *See Doe v. Noem*, No. 2:25-CV-00633-DGE, 2025 WL 1141279, at *8 (W.D. Wash. Apr. 17, 2025); *Liu*, 2025 WL 1233892, at *11 (citing *Patel v. Bondi*, No. 1:25-CV-00101, 2025 WL 1134875, at *2 (W.D. Pa. Apr. 17, 2025)); *see also* Ex. 17, NOID (doubting reinstatement because the length of the applicant's SEVIS termination).

Financial loss can constitute irreparable harm if monetary damages are unavailable. *Missouri v. Trump*, 128 F.4th 979, 996 (8th Cir. 2025). Defendants incorrectly state that economic losses do not constitute irreparable harm. *See* Defs.' Res. at 27. While that may be true for cases involving money damages, the same is not true where plaintiffs seek non-monetary relief. That is because they have no adequate remedy at law to recover for those damages. *Liu*, No. 25-CV-133-SE at *11 (citing *N.H. Hosp. Ass'n v. Burwell*, No. 15-CV-460-LM, 2016 WL 1048023, at *17–18 (D.N.H. Mar. 11, 2016)); *Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 115–16 (D.D.C. 2022) (citing

8

cases supporting the conclusion that the lack of availability of money damages for APA claims weighs in favor of a finding of irreparable harm). Here, the economic losses stemming from lost tuition, as well as work as research assistants, teaching assistants, or OPT employees constitute irreparable harm. Further, Plaintiffs do not assert economic losses alone as the source of irreparable harm; they are one facet of compounded harm for Plaintiffs.

### F. The Balance of Equities and Public Interest Strongly Favor Plaintiffs.

While Plaintiffs recognize the executive branch's significant authority to enforce and regulate U.S. immigration law, Defendants have no legitimate interest in enforcing terminations that exceed their statutory and regulatory authority. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Brandt ex rel. Brandt v. Rutledge*, 47 F.4th 661, 672 (8th Cir. 2022) (internal quotations omitted). It is further in the public interest for international students to study in the United States and in the State of Iowa. *See Doe v. Noem*, No. 25-cv-317-wmc, 2025 WL 1214162, at *6 (W.D. Wisc. Apr. 28, 2025) ("[T]he public. . . , has an overriding interest in seeing that students . . . are able to be educated and obtain degrees earned with both sweat equity and tuition payments, unless there is a *good* reason to deny either. This is a contract between the [s]tate . . . and its students.") (emphasis in original). Thus, the balance of equities and the public interest both strongly favor a preliminary injunction.

### G. Bond is not warranted in a public interest case such as this.

Defendants have not identified damages they will suffer from entry of an injunction in this case, nor can they. *See* Defs.' Resp. at 29. The Court should not issue a bond where there is a strong public interest in the outcome of the case. *See Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016); *see also Chen v. Noem, et al.*, No. 1:25-CV-00733, 2025 WL 1163653, at *12 (S.D. Ind. Apr. 21, 2025) ("Defendants will not suffer any damages if their termination of Chen's SEVIS record and F-1 student status . . . [is] enjoined.").

## IV.    Conclusion

The uncertainty of DHS' policies around SEVIS, coupled with Plaintiffs' likely success on the merits and the harsh consequences of a SEVIS termination, warrant a preliminary injunction in this case to preserve the status quo as the parties continue litigation.

Dated: May 2, 2025                                     Respectfully submitted,

*/s/ Katherine Melloy Goettel*
KATHERINE MELLOY GOETTEL
MIKHAIL ACHERKAN*
JUDE HAGERMAN*
ANGELA PANDIT*
IAN REEVES*
JUSTIN REMPE*
ISABELLA SIRAGUSA*
University of Iowa College of Law
Clinical Law Programs
380 Boyd Law Building
Iowa City, IA 52242-1113
Telephone: (319) 335-9023
Email: kate-goettel@uiowa.edu

*Counsel for Plaintiffs*

* Authorized law student practitioners

## **CERTIFICATE OF SERVICE**

I certify that on May 2, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to counsel for Defendants.

*/s/ Katherine Melloy Goettel*
KATHERINE MELLOY GOETTEL
*Counsel for Plaintiffs*