Plaintiffs' Exhibit 13

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

YUNWEI CHEN,                         )
                                     )
                    Plaintiff,       )
                                     )
        v.                           )     Case No. 1:25-cv-00733-TWP-MG
                                     )
KRISTI NOEM,                         )
TODD LYONS,                          )
                                     )
                    Defendants.      )

## ORDER GRANTING TEMPORARY RESTRAINING ORDER

This matter is before the Court on Plaintiff Yunwei Chen's ("Chen") Motion for Temporary Restraining Order and Preliminary Injunction (Filing No. 2) filed pursuant to Federal Rule of Civil Procedure 65. Chen seeks a Temporary Restraining Order ("TRO") and Preliminary Injunction against Defendants Kristi Noem, Secretary of the United States Department of Homeland Security ("DHS"), and Todd Lyons, Acting Director of United States Immigration and Customs Enforcement ("ICE") (together, "Defendants"). Chen, a Chinese citizen, is a PhD student at Indiana University ("IU"). He was recently notified by IU that his record in the Student and Exchange Visitor Information System ("SEVIS") and his F-1 student status were terminated. He seeks a temporary restraining order directing Defendants to set aside the termination of his SEVIS record and F-1 status and enjoining Defendants from "enforcing, implementing, or otherwise taking any action or imposing any legal consequences," including detention or removal of Chen, as a result of that termination. Although Defendants have appeared, filed a response, and attended a telephonic hearing, this Order addresses Chen's request for a TRO pursuant to Federal Rule of Civil Procedure 65(b). Chen's request for a Preliminary Injunction remains pending and will be ruled on in due course in a separate entry (*see* Filing No. 5). For the reasons discussed below, the

Court concludes that Chen has met his burden of demonstrating entitlement to entry of a TRO against Defendants. Therefore, Chen's request for a TRO is **granted**.

## I. <u>BACKGROUND</u>

### A. <u>Statutory and Regulatory Background</u>

The Immigration and Nationality Act allows for the entry of international students into the United States to engage in a full course of study. (<u>Filing No. 1 at 3</u>); 8 U.S.C. § 1101(a)(15)(F)(i); (<u>Filing No. 14 at 2</u>). The State Department is responsible for issuing visas, including student visas that are often called "F-1 visas." (<u>Filing No. 1 at 3</u>). Issuance of an F-1 visa controls a student's lawful entry into the United States, and once admitted, a student may stay in the country as long as he continues to meet the requirements of his visa classification and maintains his F-1 status. 8 C.F.R. § 214.2(f). SEVIS is a centralized government database that tracks international students' compliance with their F-1 status. *About SEVIS*, Dep't of Homeland Sec., https://studyinthestates.dhs.gov/site/about-sevis (last visited Apr. 20, 2025). ICE uses SEVIS to monitor student status and track compliance with the terms of the student's status. Only schools and ICE may access SEVIS records (<u>Filing No. 1</u> ¶ 15).

To maintain lawful status, a nonimmigrant, including F-1 visa students, may not engage in certain specified activity, including engaging in unauthorized employment, providing false information to DHS, or engaging in "criminal activity." 8 C.F.R. § 214.2(e)–(g). "Criminal activity" is narrowly defined to mean a "conviction . . . for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." 8 C.F.R. § 214.1(g). These actions may result in the termination of a student's SEVIS record, which could end that student's F-1 status, although the ultimate authority to issue or revoke F-1 visas lies with the State Department (<u>Filing No. 14 at 4</u>).

Absent conduct causing a status violation, ICE can terminate SEVIS records under only three circumstances: (1) a previously-granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d). DHS cannot otherwise unilaterally terminate nonimmigrant status. *See Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019). The revocation of a visa by the State Department does not constitute a failure to maintain status and visa revocation is not, by itself, cause for termination of a student's SEVIS record (Filing No. 1 ¶ 19).

**B.**   **Factual Background**

Chen is a Chinese citizen and a current PhD student at IU (Filing No. 1-2). He came to the United States in 2013 to start his undergraduate studies. He obtained his undergraduate degree in 2017, obtained a master's degree from IU in 2019, and started his PhD program in 2020. *Id.* Chen is now five years into his PhD program and expects to graduate in 2027. *Id.* Chen has always abided by the terms of his F-1 status (Filing No. 1 ¶ 27).

On April 8, 2025, Chen received an email from IU stating his "SEVIS record and lawful F-1 status in the United States was terminated." (Filing No. 1-1). According to the email, "[t]he reason for the termination listed in SEVIS is, 'OTHER - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated.'" *Id.* The email further stated, "[i]f you are currently working on-campus, you are advised to cease employment immediately." *Id.* Chen has a conviction for reckless driving in 2019, which is a misdemeanor under Indiana law and is not punishable by a sentence of more than one year (Filing No. 1 ¶ 29).

To date, Chen has invested over $800,000.00 in his education, which includes tuition and living expenses over the last twelve years (Filing No. 1-2). Defendants' sudden termination of

Chen's SEVIS record and F-1 status has interrupted his doctoral studies and caused him to lose his employment and income, "placing a significant financial burden on [him] and [his] family." *Id.* Chen also stands to lose $4,500.00 in tuition for the current semester and his rental payments for the rest of the year despite having his lawful status terminated (Filing No. 1 ¶ 30). Further, Chen had accepted job offers for the upcoming year "that would have helped build [his] professional experience" but has since lost those jobs, which has "set back [his] career development and damaged [his] professional reputation with potential employers." (Filing No. 1-2). On top of educational and financial concerns, Chen lives in "constant fear about [his] ability to remain in the country legally, which has made it difficult to focus or make any concrete plans." *Id.* " The sudden nature of the termination has left [him] feeling isolated and helpless." *Id.*

On April 17, 2025, Chen became one of the many students across the United States to file a Petition for Declaratory Judgment and Injunctive Relief seeking reinstatement of SEVIS records and F-1 student status (Filing No. 1). That same day he filed the instant Motion for Temporary Restraining Order and Preliminary Injunction (Filing No. 2). On the evening of April 17, 2025, the Court ordered Chen's counsel to provide any information regarding efforts to notify Defendants of his request for a TRO and set the TRO for a telephonic hearing at 11:00 a.m. EST on Friday, April 18, 2025 (the "Hearing") (Filing No. 6). Chen's counsel filed an Attorney Certificate later that evening (Filing No. 8). Shortly before the Hearing began, Defendants filed an appearance and their response to the request for a TRO (Filing No. 13; Filing No. 14). Counsel for both parties appeared at the Hearing and presented argument. The Court then gave the parties' leave to file supplements to their briefs (Filing No. 15). Later that evening, Chen filed a short reply brief (Filing No. 16). Defendants did not file any supplements.

## II.     LEGAL STANDARD

A court may grant a TRO under Federal Rule of Civil Procedure 65(b) only in extremely limited circumstances, and the TRO may only last up to fourteen days, unless before that time expires, it is extended for another fourteen days for good cause. *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 321 (7th Cir. 1984). The Seventh Circuit uses a two-step analysis to assess whether preliminary injunctive relief is warranted. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.*, 549 F.3d 1079, 1085–86 (7th Cir. 2008), *abrogated on other grounds by Nken v. Holder*, 556 U.S. 418, 434 (2009). This analysis is the same to determine if a TRO is warranted. *Gray v. Orr*, 4 F. Supp. 3d 984, 989 n.2 (N.D. Ill. 2013). To warrant a TRO, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) plaintiff will suffer irreparable harm if the TRO is not granted. *See Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005). If these elements are satisfied, the Court must then balance the harm to the plaintiff if the restraining order is denied against the harm to the defendant if the restraining order is granted. *Id.* The greater the movant's likelihood of success on the merits, "the less strong a showing" the movant "must make that the balance of harm is in its favor." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003).

## III.     DISCUSSION

In his Petition, Chen asserts six claims against Defendants: (1) unauthorized SEVIS termination in violation of the Administrative Procedure Act ("APA"); (2) arbitrary and capricious SEVIS termination in violation of the APA; (3) violation of procedural due process under the Fifth Amendment; (4) violation of procedural due process under the APA; (5) unlawful SEVIS termination under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); and (6) unlawful detention in violation of the due process clause of the Fifth Amendment. He moves for a TRO to (1) enjoin Defendants' decision to terminate Plaintiff's SEVIS records and their F-1

student status, and (2) enjoin Defendants from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences—including detaining or removing Plaintiff—as a result of that decision pending the instant case. (Filing No. 3 at 12).

Defendants oppose the Court granting a TRO. (Filing No. 14).

## A. <u>Status Quo</u>

As a preliminary matter, Defendants argue that a TRO is meant to "preserve the status quo," but Chen seeks to alter the status quo by "request[ing] that the Court order DHS to reinstate his SEVIS record." (Filing No. 14 at 6). However, "[t]he status quo is the last uncontested status which preceded the pending controversy." *Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 256 F.2d 806, 808 (7th Cir. 1958); *see Local 180 of Int'l Union, United Auto. Aircraft & Agr. Workers of Am., AFL-CIO v. J.I. Case Co.*, 281 F.2d 773, 775 n.1 (7th Cir. 1960) ("We have defined the status quo as the last uncontested status which preceded the pending controversy."); *Seagram-Distillers Corp. v. New Cut Rate Liquors*, 221 F.2d 815, 82 (7th Cir. 1955); *Student Doe v. Noem*, No. 25-cv-1103, 2025 WL 1134977, at *3 (E.D. Cal. Apr. 17, 2025) ("[P]laintiff properly seeks to restore the status quo *ante litem*. . . . The last uncontested status existed before defendants terminated plaintiff's SEVIS record, placing plaintiff at risk of detention and removal on that basis."). In this case, an order preserving the "status quo" would be one requiring Defendants to reinstate Chen's SEVIS record and F-1 status.

## B. <u>Likelihood of Success on the Merits</u>

The Court begins with Counts 1 and 2 of Chen's Petition, which assert claims under the APA. The APA governs judicial review of agency actions and waives federal sovereign immunity in some circumstances to allow for equitable relief from agency action or inaction. 5 U.S.C. § 702. Under the APA, a court may "hold unlawful and set aside agency action" that is "arbitrary,

capricious, an abuse of discretion," "short of statutory right," or "without observance of procedure required by law." *Id.* § 706(2)(A), (C)–(D).

Chen alleges the Defendants terminated his SEVIS record and F-1 status without any statutory or regulatory authority and without articulating their basis for the termination decision. He alleges the decision was therefore arbitrary, capricious, not in accordance with law, in excess of statutory authority, and without observance of procedure required by law (Filing No. 1 at 7–8). Defendants respond that Chen is not likely to succeed on the merits of his APA claims because the Privacy Act bars APA review, Defendants' action is not a "final" agency action under the APA, and because this Court cannot enjoin a removal action. The Court will address each of the Defendants' arguments before discussing Chen's arguments.

### 1. **The Privacy Act**

The APA waives sovereign immunity for actions in federal court by "person[s] suffering legal wrong because of agency action." 5 U.S.C. § 702. "That waiver, however, is subject to three limitations: (1) the plaintiff must 'seek[] relief other than money damages'; (2) the plaintiff must have 'no other adequate remedy'; and (3) the plaintiff's action must not be 'expressly or impliedly forbid[den]' by 'any other statute.'" *Student Doe*, 2025 WL 1134977, at *4 (alterations in original) (quoting *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1022 (9th Cir. 2023) (citing 5 U.S.C. §§ 702, 704)). Defendants argue that the third limitation applies, and the APA does not waive the United States' sovereign immunity as to Chen's APA claims because the Privacy Act provides the exclusive means for challenging the termination of SEVIS records.

"Where a statute vest exclusive jurisdiction over a category of claims in a specialized court . . . , it 'impliedly forbids' an APA action brought in federal district court." *United Aeronautical Corp.*, 80 F.4th at 1022; *see Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 216 (2012). Defendants contend that the Privacy Act "allows individuals to

challenge data contained in a government system of records in federal court and establishes a comprehensive scheme for such claims," but because noncitizens may not sue under the Privacy Act, Chen cannot (and does not[1]) assert a Privacy Act claim. (Filing No. 14 at 9); *United Aeronautical Corp.*, 80 F.4th at 1022 (rejecting argument that the Privacy Act provided similar plaintiffs an "other adequate remedy" because noncitizens may not sue under the Privacy Act).

The District Court for the District of Columbia recently rejected the Defendants' argument in *Alliance for Retired Americans v. Bessent*, -- F. Supp. 3d --, 2025 WL 740401, at *18 (D.D.C. Mar. 7, 2025). In that case, three organizations sued the Department of Treasury and Treasury Secretary, among others, after government personnel were given access to Treasury records containing the sensitive and personal information of plaintiffs' members. The defendants, like Defendants here, argued that the APA did not waive sovereign immunity as to the plaintiffs' claims because "Congress intended the remedies in the Privacy Act to be exclusive, impliedly forbidding related forms of relief under the APA." *Id.* at *18. The District of Columbia disagreed, stating that "the Supreme Court's more recent decision in *Department of Agriculture Rural Development Rural Housing Service v. Kirtz*, 601 U.S. 42 (2024), suggests that the Privacy Act is not the kind of comprehensive and 'exclusive' remedial statute that impliedly displaces related remedies under other statutes." *Id.* at *19. In *Kirtz*, the Supreme Court found that the Privacy Act did not foreclose a plaintiff's claims under the Fair Credit Reporting Act. The District of Columbia therefore found that "Congress did not intend for the Privacy Act to be an 'exclusive' source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the APA," and the defendants did not have sovereign immunity to the plaintiff-organizations' claims. *Id.*; *see Am. Fed'n of Labor & Cong. of Indus. Orgs. v. Dep't of Labor*, -- F. Supp. 3d --, 2025 WL

---

[1] Because Chen does not assert a Privacy Act claim, the Court need not address the Defendants' argument that he has failed to exhaust his administrative remedies under the Privacy Act (Filing No. 14 at 9–10).

1129227, at *15 (D.D.C. Apr. 16, 2025) ("It appears, then, that the Supreme Court reads the Privacy Act to show no 'clear and convincing evidence' that Congress wanted to preclude review outside of the Act's confines, including through the APA. Hence, plaintiffs' reliance on the Privacy Act does not rob them of an APA cause of action." (citing *Alliance*, 2025 WL 740401, at *19; *Doe v. Chao*, 540 U.S. 614, 619, n.1 (2004))).

This Court is persuaded by the District of Columbia's analysis. The Supreme Court has held that the Privacy Act is not the exclusive means of challenging the mishandling of federal records, so the Privacy Act does not forbid Chen's APA claims. *Kirtz*, 601 U.S. at 63.

Defendants cite one decision in support of their argument that the Privacy Act impliedly forbids Chen's APA claims.[2] In *El Badrawi v. Department of Homeland Security*, the District of Connecticut, in dicta in a footnote, stated that because the Privacy Act applies only to U.S. citizens and lawful permanent residents, it "implicitly (if not explicitly) forbids nonresident aliens . . . from suing federal agencies to correct their records." 579 F. Supp. 2d 249, 279 n.35 (D. Conn. 2008). This non-precedential dicta is unpersuasive for several reasons. First, it predates the Supreme Court's decision in *Kirtz*. Second, this portion of *El Badrawi* has been cited only one other time, in 2010, also by the District of Connecticut. *Diaz-Bernal v. Myers*, 758 F. Supp. 2d 106, 119 (D. Conn. 2010). Third, the District of Connecticut's reading of the APA appears to conflict with the Seventh Circuit's less restrictive reading. In *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765 (7th Cir. 2011), the Seventh Circuit held that the FTCA did not "implicitly prohibit injunctive

---

[2] Defendants cite three other cases that are inapplicable, since none of them discusses the APA or sovereign immunity. (Filing No. 14 at 9); *Durrani v. U.S. Citizenship & Immigr. Servs.*, 596 F. Supp. 2d 24, 28 (D.D.C. 2009) (dismissing *pro se* plaintiff's Privacy Act claim seeking to correct citizenship records to reflect his status as naturalized citizen because undisputed evidence did not show that plaintiff was ever naturalized); *Cudzich v. U.S. Immigr. & Naturalization Serv.*, 886 F. Supp. 101, 105 (D.D.C. 1995) (dismissing *pro se* plaintiff's Privacy Act claim because plaintiff was not a citizen or lawful permanent resident); *Raven v. Panama Canal Co.*, 583 F.2d 169, 171 (5th Cir. 1978) (dismissing Privacy Act claim because plaintiff was not a citizen or lawful permanent resident).

relief in tort suits against the United States" simply because the FTCA only refers to monetary relief and is silent as to injunctive relief. *Id.* at 776. The Seventh Circuit explained:

> There is nothing in the statute suggesting that Congress meant to forbid all actions that were not expressly authorized. To the contrary, section 702(2) requires evidence, in the form of either express language or fair implication, that Congress meant to forbid the relief that is sought. The [government's] effort to transform silence into implicit prohibition would seriously undermine Congress's effort in the APA to authorize specific relief against the United States. When Congress amended the APA in 1976 it gave every indication that it intended to provide specific relief for all nonstatutory claims against the government.

*Id.* at 775–76. The Seventh Circuit continued that because the type of claim asserted by plaintiffs "would not be cognizable under the FTCA in the first place," there is "no reason to think that it implicitly forbids a particular type of relief for a claim outside its scope." *Id.* at 776.

Here, Defendants attempt to seize upon a similar silence in the Privacy Act, but there is nothing in the Privacy Act suggesting that Congress meant to forbid all actions that were not expressly authorized, particularly because, as Defendants assert, a Privacy Act claim by Chen "would not be cognizable . . . in the first place." *Id.* at 776; (Filing No. 14 at 9).

The Supreme Court has also indicated that the Privacy Act does not impliedly forbid claims or remedies that are not expressly authorized. *Doe v. Chao*, 540 U.S. at 619 n.1 ("The Privacy Act says nothing about standards of proof governing equitable relief that may be open to victims of adverse determinations or effects, although it may be that this inattention is explained by the general provisions for equitable relief within the Administrative Procedure Act . . . ."); *accord Texas v. U.S. Dep't of Homeland Sec.*, 123 F.4th 186, 204 (5th Cir. 2024) (discussing FTCA claims); *Am. Fed'n of Gov't Emps., AFL-CIO v. U.S. Office of Personnel Mgmt.*, -- F. Supp. 3d --, 2025 WL 996542, at *18–19 (S.D.N.Y. Apr. 3, 2025) ("[T]he Privacy Act explicitly provides for injunctive relief in two circumstances, while being silent regarding other circumstances. That is not 'fairly discernable' evidence that Congress intended to preclude judicial review of APA claims alleging

violations of the Privacy Act's substantive provisions or arbitrary and capricious actions by OPM that strike at the privacy concerns that drove the enactment of the Privacy Act. . . . [M]ore notably, the defendants have not identified any comparable cases in which injunctive relief which was ruled to be unavailable under the Privacy Act was not also available under the APA. Instead, the Supreme Court has suggested that injunctive relief is available under the APA in such circumstances.") (citing Supreme Court cases).

In sum, the Court is not persuaded by the dicta in *El Badrawi* and instead follows the reasoned analysis of the District of Columbia in *Allied*, which is well supported by, and consistent with, Supreme Court and Seventh Circuit precedent. Because the Supreme Court has held that the Privacy Act does not provide the exclusive remedy for mishandling of federal records, and because the Seventh Circuit does not read mere silence as a statutory prohibition against claims, the Court concludes that the Privacy Act does not explicitly or implicitly forbid Chen's claims, and the APA waives sovereign immunity against those claims.

### 2. Finality of Agency Action

Defendants next argue that Chen cannot succeed on his APA claims because "the agency's action is not final because no decision has been made on [Chen's] nonimmigrant status" and because Chen "could administratively challenge the relevant agency decision." (Filing No. 14 at 10). The APA "allow[s] any person 'adversely affected or aggrieved' by agency action to obtain judicial review thereof, so long as the decision challenged represents a 'final agency action' for which there is no other adequate remedy in a court." *Webster v. Doe*, 486 U.S. 592, 599 (1988) (quoting 5 U.S.C. §§ 701–06). For an "agency action" to be "final," 5 U.S.C. § 704, two conditions must be satisfied. "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences

will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citation omitted). In other words, the final agency action requirement "asks whether a 'terminal event' has occurred." *Driftless Area Land Conservancy v. Rural Utis. Serv.*, 74 F.4th 489, 493 (7th Cir. 2023) (quoting *Salinas v. R.R. Ret. Bd.*, 141 S. Ct. 691, 697 (2021)); *see also U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett*, 520 U.S. at 178).

As to their first reason, Defendants argue Chen "cannot establish that the change in [his] SEVIS record determines his rights or obligations as to his nonimmigrant status or that any legal consequences have flowed from the change of [his] SEVIS record to set the status as terminated." (Filing No. 14 at 10). In support, Defendants refile the Declaration of Andre Watson, the Senior Official in the National Security Division for Homeland Security Investigations (Filing No. 14-2) from another action pending in this Court, *Jelena Liu v. Noem*, No. 1:25-cv-00716-JPH-TAB (S.D. Ind. Apr. 15, 2025), and a recent decision from the Eastern District of Michigan, *Deore v. Secretary of U.S. Department of Homeland Security*, No. 25-cv-11038 (E.D. Mich. Apr. 17, 2025). Mr. Watson's Declaration mostly relates to the facts of *Jelena Liu* but states, in relevant part:

> Terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States. The statute and regulations do not provide SEVP the authority to terminate a nonimmigrant status by terminating a SEVIS record, and SEVP has never claimed that it terminated [the *Jelena Liu*] plaintiffs' nonimmigrant status. Furthermore, the authority to issue or revoke visas for nonimmigrant students like the [*Jelena Liu*] plaintiffs' lies with the Department of State, not SEVP. Terminating a record within SEVIS does not effectuate a visa revocation.

(Filing No. 14-2 ¶ 35). In *Deore*, the court denied the plaintiff's request for a TRO because "it [was] not clear that the Plaintiffs' F-1 status were terminated alongside their SEVIS records," and there was "substantial uncertainty over the effect of SEVIS record terminations" and whether that termination alone "carries any legal consequences." (Filing No. 14-5 at 10).

In *Jelena Liu* and *Deore*, the defendants had submitted evidence (including a similar declaration from Mr. Watson) or made representations that there had been no status change for the

plaintiffs in those cases. *Id.* at 7 ("At the motion hearing, the Government also represented that it does not currently believe that there has been any status change for any of the students, even considering the termination of the SEVIS records."); (Filing No. 14-2 ¶ 35 (relating to plaintiffs in the *Jelena Liu* case)). At the Hearing in this case, Defendants were unable to tell the Court "exactly what happened" with Chen, so there is no evidence contradicting Chen's evidence that both his SEVIS record *and* his F-1 status were terminated. (Filing No. 1-1 at 2 (telling Chen his "SEVIS record and lawful F-1 status in the United States was terminated"); *J.P. Morgan Secs. LLC v. Weiss*, 19-cv-4163, 2019 WL 6050176, at *4 (S.D. Ind. Nov. 15, 2019) ("[H]earsay can be considered in entering a preliminary injunction.") (quotation marks omitted); *Chandraprakash Hinge v. Lyons*, No. 25-1097, 2025 WL 1134966, at *4 & n.10 (D.D.C. Apr. 15, 2025) (granting TRO; "[D]efendant cited the . . . Declaration of Andre Watson . . . . However, even if this is true, in the . . . hearing, government counsel was unable to confirm that ICE would not interpret its SEVIS record termination and the subsequent action taken by the plaintiff's university in response to that termination, as effectively terminating the plaintiff's F-1 status and providing grounds for the plaintiff to be subject to arrest, deportation, and accruing unlawful presence."). At this stage, Chen has shown that his F-1 status was also terminated, so the Court need not reach the question of whether the SEVIS record termination, absent a termination of F-1 status, is a final agency action.

Chen argues that the termination of his F-1 student status is a final agency action. Defendants do not address this argument in their response. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (concluding that "failure to respond to an argument—as [is the case] here—results in waiver"). The Court agrees with Chen. In *Jie Fang v. Director U.S. Immigration & Customs Enforcement*, 935 F.3d 172 (3d Cir. 2019), the Third Circuit held that the defendants' termination of the plaintiffs' lawful F-1 status was a final agency action. *Id.* at 179–85. The Third

Circuit found that the termination of the students' F-1 status marked the consummation of the agency's decision-making process, and that the termination order determines a right or obligation because it "end[s] the student's legal status in the United States." *Id.* at 180; *See Doe v. Noem*, -- F. Supp. 3d --, 2025 WL 1141279, at *3 (W.D. Wash. Apr. 17, 2025) (holding that termination of SEVIS record and student status was a final agency action).

Defendants next argue that the termination of Chen's F-1 status is not "final" because Chen "could administratively challenge the relevant agency decision." (Filing No. 14 at 10). Defendants do not elaborate on this argument, aside from citing two regulations: 8 C.F.R. § 214.2(f)(16), regarding the reinstatement of student status; and 22 C.F.R. § 41.122(b), regarding provisional revocation of visas. The Third Circuit also rejected this argument in *Jie Fang*:

> First, there is no statutory or regulatory requirement that a student seek reinstatement after his or her F-1 visa [status] has been terminated. Moreover, even if the students attempt to pursue the administrative procedures for reinstatement, there is no mechanism to review the propriety of the original termination order. Second, the students need not wait for removal proceedings to be instituted. . . . [A]n order's finality cannot depend on the institution of removal procedures which may never occur. And in any event, immigration judges cannot review the original denial of reinstatement. They do not have that authority.

935 F.3d at 182; *see Young Dong Kim v. Holder*, 737 F.3d 1181 (7th Cir. 2013) ("[N]either the [immigration judge] nor the [Board of Immigration Appeals] may review the USCIS's discretionary denial of a motion to reinstate student status."). At the Hearing, Chen echoed the Third Circuit's reasoning, noting that during deportation proceedings, an immigration judge considers the termination of a lawful status but not the reason for that termination.

At this initial stage, the Court finds Chen is reasonably likely to show that Defendants' decision to terminate his F-1 status is a reviewable final agency action. *See Chandraprakash Hinge*, 2025 WL 1134966, at *5 ("If the plaintiff's lawful status in the United States has been revoked, whether directly by ICE or indirectly by his university's correct interpretation of the

action it is required to take in response to ICE's actions, that revocation will affect the plaintiff's 'rights or obligations . . . from which legal consequences will flow.' Thus, the Court concludes that it must grant the plaintiff's request for a temporary restraining order until a further status conference is held in order to allow government counsel to address these ambiguities after conferring with the agency he represents." (omission in original) (quoting *Bennett*, 520 U.S. at 177–78)).

### 3. Authority to Enjoin Removal Proceedings

Defendants lastly argue that Chen "seeks an injunction barring the government from initiating removal proceedings," but "the Court lacks jurisdiction or authority to entertain such a claim" because 8 U.S.C. § 1252(g) forecloses judicial review of decisions to commence removal proceedings and because the decision to commence removal proceedings is committed to agency discretion. (Filing No. 14 at 10); 5 U.S.C. § 701(a)(1)–(2). Section 1252(g) provides, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings . . . against any alien under this chapter." In *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999), the Supreme Court instructed courts to read § 1252(g) narrowly. *Id.* at 486; *see Fornalik v. Perryman*, 223 F.3d 523, 531 (7th Cir. 2000) ("[A]lmost every alien who brings a claim to federal court . . . does so because she is threatened with removal from the United States. . . . As the INS would have it here, the alien not only would be barred from raising virtually all claims *prior* to removal proceedings (because of exhaustion requirements), but then § 1252(g) would preclude jurisdiction of all claims brought *after* removal is threatened. Such a sweeping reading would be inconsistent with the narrow interpretation of § 1252(g) that *AADC* commands." (emphases in original)).

The Seventh Circuit has explained that § 1252(g) applies only to "judicial review 'arising from'" the enumerated actions, including commencing removal proceedings. *Sharif ex rel. Sharif*

*v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002). The cases cited by Defendants involve claims arising from a discretionary decision to commence removal proceedings. (Filing No. 14 at 11); *Kightlinger v. Napolitano*, 500 F. App'x 511, 514–15 (7th Cir. 2013) (dismissing APA claim challenging removal order under § 1252(a)(5), which precludes district court review of final removal orders); *Albarran v. Wong*, 157 F. Supp. 3d 779, 785 (N.D. Ill. 2016) (dismissing APA case under § 1252(g) because the claim "arises from" the defendants' decision to execute a reinstated removal order); *Garcia v. Dep't of Homeland Sec.*, No. 19-cv-1265, 2019 WL 7290556, at *3 (N.D. Ill. Dec. 30, 2019) (dismissing APA claim challenging DHS's denial of request for a stay of removal proceedings because it "arises from" a decision to execute a removal order).

This case is more analogous to the Seventh Circuit case *Fornalik v. Perrman*. In *Fornalik*, the plaintiff challenged the Attorney General's denial of his application for adjustment of status, but by the time the plaintiff filed a habeas petition, the government had threatened to commence removal proceedings, so the plaintiff requested a stay of his removal. 223 F.3d at 532. The Seventh Circuit "reject[ed] the [government's] argument that the district court properly invoked § 1252(g) to reject [the plaintiff's] claim" because "[h]is claim is not that the Attorney General is unfairly executing a removal order, but rather that a prior, unrelated error makes his removal improper. This makes our case entirely different from other decisions of this circuit that have applied *AADC*." *Id.* at 553. The *Fornalik* court accordingly exercised jurisdiction over the plaintiff's habeas action and stayed the execution of his removal order. *Id.* at 533. Here, Chen does not challenge a decision to commence removal proceedings and instead challenges Defendants' termination of his SEVIS record and F-1 status. Chen's request that the Court enjoin removal proceedings, as in *Fornalik*, "comes into the case only incidentally." *Fornalik*, 223 F.3d at 532.

At least two other district courts have reached this same conclusion in very similar cases. In *Student Doe v. Noem*, the plaintiff student sued Defendants "for terminating plaintiff's [SEVIS] record, which had the effect of terminating plaintiff's F-1 visa status." 2025 WL 1134977, at *1. The plaintiff sought the same injunctive relief that Chen seeks, and the Defendants argued that § 1252(g) barred that relief. The Eastern District of California noted that under Ninth Circuit precedent, like Seventh Circuit precedent, § 1252(g) "'does not divest courts of jurisdiction over cases that do not address prosecutorial discretion and address "a purely legal question, which does not challenge the Attorney General's discretionary authority."'" *Id.* at *7 (quoting *Sied v. Nielsen*, No. 17-cv-6785, 2018 WL 1142202, at *21 (N.D. Cal. Mar. 2, 2018) (quoting *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc))). The *Student Doe* court therefore held that § 1252(g) "addresses challenges predicated on purported improper use of discretionary authority to commence removal proceedings, which is not at issue," so "plaintiff's request to temporarily stay detention and removal on the basis of the SEVIS termination is proper." *Id.* at *7–8 ("The same reasoning applies to § 1226(e) regarding detention."). In *Osturk v. Trump*, -- F. Supp. 3d --, 2025 WL 1145250, at *12 (D. Vt. Apr. 18, 2025), the District of Vermont noted that the Second Circuit, also like the Seventh Circuit, has held that "a suit brought against immigration authorities is not *per se* a challenge to a removal order; whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking." *Id.* at *12 (quoting *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (citing *Kellici v. Gonzales*, 472 F.3d 416, 420 (6th Cir. 2006) (exercising jurisdiction over action where plaintiff "challenged only the constitutionality of the arrest and detention, not the underlying administrative order of removal")). The *Orturk* court held that the plaintiff's claims challenging her "apprehension, detention, and the termination of her SEVIS" did not "raise challenges to the removal process," so § 1252 did not apply. *Id.*

The Court additionally notes that other district courts in this Circuit have entered the same type of injunction that Chen request. *Nali v. Noem*, No. 25-cv-3969, Doc. No. 21 (N.D. Ill. Apr. 18, 2025); *Isserdasani v. Noem*, No. 25-cv-283, 2025 WL 1118626, at *6 (W.D. Wis. Apr. 15, 2025). And several other district courts throughout the country have as well. *Prasanna Oruganti v. Noem*, No. 25-cv-409, 2025 WL 1144560, at *8 (S.D. Ohio Apr. 18, 2025); *Zeel M. Patel v. Bondi*, No. 25-CV-101, 2025 WL 1134875, at *3 (W.D. Pa. Apr. 17, 2025); *Doe v. Noem*, 2025 WL 1141279, at *10; *Student Doe*, 2025 WL 1134977, at *8; *Arizona Student Doe #2 v. Trump*, No. 4:25-cv-00175, Doc No. 7 at 2 (D. Ariz. Apr. 15, 2025); *C.S. v. Noem*, No. 25-cv-477, Doc. No. 22 (W.D. Pa. Apr. 15, 2025); *Roe v. Noem*, No. CV 25-40, 2025 WL 1114694, at *4 (D. Mon. Apr. 15, 2025); *Zheng v. Lyons*, No. 25-cv-10893, Doc. No. 8 at 1 (D. Mass. Apr. 11, 2025). The Court concludes, at least at this stage, that it may enjoin Defendants from imposing any consequences, including detention and removal, of the termination of Chen's SEVIS record and F-1 status.

### 4. Chen's Likelihood of Success on the Merits

Chen argues he is likely to succeed on the merits of his APA claims because he has committed none of the violations that would trigger the lawful termination of his F-1 student status, and Defendants did not terminate his SEVIS record in compliance with 8 C.F.R. § 214.1(d) (Filing No. 3 at 8). Chen suspects that Defendants terminated his SEVIS record and F-1 status because of his 2019 conviction for reckless driving, which is a misdemeanor not punishable by a sentence of more than one year and is thus not "criminal activity" under 8 C.F.R. § 214.1(g). *See* Judgment and Order Re: Sentencing, *Indiana v. Chen*, No. 55D02-1810-F5-1717 (Morgan Sup. Ct. No. 2 Aug. 15, 2019); Ind. Code § 9-21-8-52(a)(1) (offense levels); Ind. Code §§ 35-50-3-2 & -4 (potential sentences). During the Hearing, Defendants conceded that based on Chen's allegations, this is likely what happened. "Accordingly, plaintiff [Chen] has shown a substantial, if not overwhelming, likelihood of success on the merits of his claim . . . that DHS violated the APA

when it summarily terminated his F-1 student status in SEVIS without cause." *Isserdasani*, 2025 WL 1118626, at *5. Specifically, based on the pleadings and evidence before the Court, Chen is likely to show that Defendants' termination of his SEVIS record and F-1 status was not in compliance with 8 C.F.R. 214.1(d) and was arbitrary, capricious, an abuse of discretion, and not in accordance with law under 5 U.S.C. § 706(2)(A).

To obtain preliminary injunctive relief, Chen must only show a reasonable likelihood of success on at least one of his claims, not all of them. *See, e.g.*, *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1096. The Court need not, and therefore does not, address Chen's likelihood of success on his due process claims or claim under the *Accardi* doctrine. *See Liu*, No. 25-cv-133, Doc. No. 13 at 3 n.2 (declining to address likelihood of success on due process claim); *Roe*, 2025 WL 1114694, at *3 (same); *Prasanna Oruganti*, 2025 WL 1144560, at *6 n.5 (same) (citing cases); *Doe v. Noem*, 2025 WL 1141279, at *4 n.5 (same).

## C.  Irreparable Harm and Inadequate Remedy at Law

Chen argues that absent an injunction, he will suffer irreparable harm in the form of potential detention and removal, "catastrophic financial hardship," and the interruption and potential loss of his education. DHS responds that Chen has not shown a likelihood of irreparable harm because DHS has not yet initiated removal proceedings and Chen is not being detained, and that his alleged monetary injuries alone generally do not constitute irreparable harm (Filing No. 14 at 13). Defendants also note that this Court recently denied a request for a TRO in another case, *Jelena Liu*, due to an insufficient showing of irreparable harm (Filing No. 14-1). On reply, Chen asserts that without an injunction, "[h]e cannot continue his PhD program, which includes stalling all research associated with that program," and "if he is unable to complete his research and his doctoral program, he will lose the past 5 years' worth of work, face diminished career prospects, and suffer reputational harm," on top of his concerns regarding removal (Filing No. 16 at 5).

In *Jelena Liu*, the seven plaintiffs, who are students from universities throughout Indiana,[3] challenged the termination of their SEVIS record and student status and seeking a temporary restraining order. 2025 WL 1141023, at *1. All of the plaintiffs alleged concerns about possible removal, and each plaintiff generally alleged that they "may never be able to complete [their] studies," with a few plaintiffs identifying lost income from jobs at their universities, and one PhD student alleging the risk of losing a fellowship. The Court denied the request for a temporary restraining order because "'some possibility' of deportation is not enough to show irreparable harm," and each plaintiff's "conclusory statement that they will not be able to complete their studies," without evidence "that they would not be able to resume and complete their academic programs if they prevail," were not enough to demonstrate irreparable harm. *Id.* at *3.

Chen offers more specific evidence of irreparable harm. Chen does not merely allege that he is worried he will not be able to continue his education as planned. He explains that he has invested twelve years and $800,000.00 in his education to date, and he is already five years into his doctoral research and program. Chen also describes how he has lost previously accepted jobs, which has "set back [his] career development and damaged his reputation with potential employers." (Filing No. 1-2 at 2). These allegations provide more context to Chen's alleged irreparable harm than the plaintiffs' conclusory allegations in *Jelena Liu*.

Further, Chen's doctoral program is not the type that could simply be resumed if Chen ultimately prevails. Unlike undergraduate or even masters programs, which typically have more standardized curricula and take fewer years to complete, doctoral programs are highly specialized and time intensive and cannot easily be put down and picked back up. *See Doe v. Noem*, 2025 WL

---

[3] Most of the plaintiffs in *Jelena Liu* do not reside in the Southern District of Indiana, and the Court in *Jelena Liu* expressed concern as to whether this this district is the proper venue for those plaintiffs' claims. 2025 WL 1141023, at *4. In this case, Defendants do not dispute that venue is proper in this Court.

1141279, at *8 ("[D]octoral programs typically involve supervision of the doctoral candidate by an adviser with specialized knowledge and reputation in the field, so the inability to complete a doctoral program due to status termination and removal cannot necessarily be remedied with re-starting another program at a different time and place."). Chen's status as a noncitizen may compound these concerns, since it may be more difficult for him to be readmitted to a similar doctoral program, especially if he is removed from the country. *Zeel M. Patel*, 2025 WL 1134875, at *2 n.3 ("While delays in education alone have generally been found not to amount to irreparable harm, the circumstances here are unique in that Patel is at risk of accruing days that could accumulate to prevent future reinstatement of F-1 status." (quotation marks and citations omitted)). Chen's situation is therefore distinguishable from other cases in this Circuit finding that "a potential gap" in education, by itself, is "generally not irreparable harm." *Jelena Liu*, 2025 WL 1141023, at *3 (citing *Medlock v. Tr. of Ind. Univ.*, No. 11-cv-977, 2011 WL 4068453, at *9 (S.D. Ind. Sept. 13, 2011) (finding that plaintiff, an undergraduate student at IU, would be eligible for reinstatement at IU, considering that plaintiff had already been admitted into George Mason University for the upcoming academic year); *Doe v. Bd. of Trs. of Univ. of Ill.*, No. 17-CV-2180, 2017 WL 11593304, at *2 (C.D. Ill. Dec. 18, 2017) (finding "no indication" that plaintiff could not attend another university or that plaintiff could not apply for readmission at the conclusion of his suspension)).

The Court finds that these considerations regarding Chen's specific degree path and progress, coupled with his allegations regarding financial harm, loss of present and future employment opportunities, and potential removal, place Chen's claims within the realm of irreparable harm with no adequate remedy at law. *See Isserdasani*, 2025 WL 1118626, at *5 ("Given the amount of Isserdasani's educational expenses and potential losses from having to leave the United States without obtaining his degree, the court concludes that Isserdasani credibly

demonstrates that he faces irreparable harm for which he has no adequate remedy at law in the absence of injunctive relief."); *Prasanna Oruganti*, 2025 WL 1144560, at *5 (citing *Isserdasani* and four other similar cases finding irreparable harm; granting TRO); *Doe v. Noem*, 2025 WL 1141279, at *8 ("[I]n this case, the ordinary harms of removal would compound the other harms Plaintiff faces by effectively eliminating his ability to complete his degree program, causing him economic and reputational loss wherever he ultimately resides.").

## D.    <u>Balance of Equities and Public Interest</u>

The final two questions are whether the balance of harms weigh in favor of preliminary relief and whether the public will benefit from the proposed injunction. "When the government is a party, the balance of equities and the public interest factors merge." *Nken*, 556 U.S. at 435. The Court "weighs the balance of potential harms on a 'sliding scale' against the movant's likelihood of success: the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015).

Chen asserts that while he is suffering "significant and devastating harm in the absence of injunctive relief," Defendants "have no substantial interest in terminating the status of one diligent, hard-working student." (Filing No. 11 at 3). He also contends that "'[t]he public interest is served when administrative agencies comply with their obligations under the APA" and "can only be served by the halting of ongoing unconstitutional government action." *Id.* (quoting *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009)) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Defendants do not respond to these arguments. The Court agrees with Chen that the balance of equities weighs strongly in his favor, considering the lack of potential harm to Defendants and Chen's very strong likelihood of success on the merits of his claims. The Court also agrees that the public interest would be served by ensuring that SEVIS record and F-1 student

status terminations occur only pursuant to applicable law. *See Zeel M. Patel*, 2025 WL 1134875, at *3; *Prasanna Oruganti*, 2025 WL 1144560, at *7; *Student Doe*, 2025 WL 1134977, at *9.

**E.**    **Bond**

According to Rule 65(c), "[t]he court may issue a . . . temporary restraining order . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Nevertheless, a district court may "waive the requirement of an injunction bond" when "the court is satisfied that there's no danger that the opposing party will incur any damages from the injunction." *Habitat Educ. Ctr. v. United States Forest Serv.*, 607 F.3d 453, 458 (7th Cir.2010) ("There is no reason to require a bond in such a case."). In this case, the court is satisfied that Defendants will not suffer any damages if their termination of Chen's SEVIS record and F-1 student status, and any consequences of that termination, are enjoined. Defendants make no argument to the contrary, so Chen shall not be required to post a bond.

## IV.    CONCLUSION

For the foregoing reasons, Chen's request for a TRO (Filing No. 2) is **GRANTED**.

IT IS, THEREFORE, **ORDERED** that:

1.        A temporary restraining order is issued immediately.

2.        Defendants are **ordered** to set aside the termination of Chen's SEVIS record and F-1 status.

3.        Defendants are **enjoined** from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as a result of the termination of Chen's SEVIS record and F-1 status.

4.        This Order shall remain in full force and effect for a period of **fourteen (14) days** pursuant to Federal Rule of Civil Procedure 65.

5.      No bond shall be required to be posted by Chen pursuant to Federal Rule of Civil

Procedure 65(c).

Chen's Motion (Filing No. 2) **REMAINS PENDING** as to his request for a Preliminary

Injunction. Pursuant to the Court's April 17, 2025 Order (Filing No. 5), the parties are **DIRECTED**

to meet with the Magistrate Judge to discuss a discovery plan, briefing schedule, and the hearing

on Chen's request for preliminary injunctive relief.

**SO ORDERED**.

Date:    4/21/2025

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Matthew Scott Kriezelman
Kriezelman Burton & Associates LLC
mkriezel@krilaw.com

Lauren McClure
KRIEZELMAN BURTON & ASSOCIATES, LLC
lmcclure@krilaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Student **DOE # 1** – **# 8**

   Plaintiffs,

v.

**Donald J. TRUMP**, *et al.*
  Defendants.

No. 25 C 4188

Judge Sara L. Ellis

---

## ORDER GRANTING PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER

Upon consideration of Plaintiffs' Emergency Motion for a Temporary Restraining Order, and good cause appearing therefore, the motion is **GRANTED**, and **IT IS FURTHER ORDERED** that:

1. Defendants shall fully reinstate Plaintiffs' Student and Exchange Visitor Information System ("SEVIS") records, retroactive to March 31, 2025. Further, Defendants' revocation of Plaintiffs' SEVIS records has no effect.

2. Once reinstated, Defendants shall not terminate Plaintiffs' SEVIS records during the pendency of this Temporary Restraining Order.

3. Plaintiffs' counsel shall provide a list of Plaintiffs' names, SEVIS ID numbers, and dates of birth to Defendants' counsel by 10:00 AM on Tuesday, April 22.

4. Defendants shall notify Plaintiffs' counsel of compliance with full SEVIS record reinstatement by Tuesday, April 22, 2025 at 5:00 PM.

5. Defendants are temporarily enjoined from arresting and detaining Plaintiffs pending these proceedings and/or removing Plaintiffs from the United States pending these proceedings;

6. The Court waives the bond requirement under Federal Rule of Civil Procedure 65(c) in light of the public interest at stake and the lack of harm to Defendants resulting from temporary maintenance of the status quo.

7. This Order takes effect immediately and shall continue until its expiration in fourteen (14) days.

**SO ORDERED** this 21st day of April, 2025 at 3:30 PM.

SARA L. ELLIS
United States District Judge

E-FILED
Monday, 21 April, 2025  12:28:20 PM
Clerk, U.S. District Court, ILCD

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| **ZIBO GONG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 25-CV-2115** |
| | ) | |
| **KRISTI NOEM, U.S. Secretary of** | ) | |
| **Homeland Security, and TODD** | ) | |
| **LYONS, Acting Director of U.S.** | ) | |
| **Immigration and Customs** | ) | |
| **Enforcement,** | ) | |
| | | |
| **Defendants.** | | |

## ORDER

This matter is currently before the court on Plaintiff Zibo Gong's Motion for Temporary Restraining Order and Preliminary Injunction (#2), which was filed on April 17, 2025. For the reasons set forth below, a Temporary Restraining Order ("TRO") is GRANTED.

### BACKGROUND

According to his Complaint (#1), Plaintiff is an international student enrolled in a master's degree program at the University of Illinois Urbana-Champaign. Defendants are Kristi Noem, the United States Secretary of Homeland Security, and Todd Lyons, the acting Director of United States Immigration and Customs Enforcement ("ICE").

By way of background, the Complaint explains that the Student and Exchange

Visitor Information Systems ("SEVIS") is a centralized government database that tracks

international students' compliance with their F-1 status. ICE, through the Student and

Exchange Visitor Program, uses SEVIS to monitor student status and track their

compliance with terms of their status. Only schools and ICE have access to SEVIS

records. Students have no way to view or edit their own SEVIS record.

On April 4, 2025, Plaintiff was informed via email from the University that the

U.S. Department of Homeland Security ("DHS") had "terminated [Plaintiff's] F-1 visa

status." The email indicated that the "listed reason" for this action was "Otherwise

Failing To Maintain Status: Individual identified in criminal records check and/or has

had their VISA revoked." The email made clear that as a result of the termination

Plaintiff no longer "hold[s] valid F-1 status within the United States." The email stated

that Plaintiff was no longer authorized for employment and should make plans to exit

the United States immediately. Plaintiff alleges that this email evidences the termination

of his SEVIS record.

Plaintiff concedes that he was arrested in September 2024 but maintains that no

criminal conviction resulted and that he has not committed any other violation or action

that would provide a basis for termination of his SEVIS record. He asserts that the

unlawful termination "has put his education and career trajectory at immediate risk."

He cites the money he has already invested in his education, the tuition he has paid for

the current semester, and rent that he will be liable for next year "despite being unable

to remain in the country." "Most critically," Plaintiff continues, "this termination

prevents Plaintiff from completing his degree for which he has already invested substantial time and money." Finally, Plaintiff notes that "[t]his termination also creates a risk for Plaintiff in that ICE may use the termination of the SEVIS record as a basis to unlawfully detain and deport him—an outcome other students have already faced."

Plaintiff challenges the unlawful termination of his SEVIS record pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, the Fifth Amendment to the U.S. Constitution, and the Declaratory Judgment Act, 28 U.S.C. § 2201. He seeks, inter alia, a declaration that the termination of his SEVIS record was unlawful and injunctive relief enjoining Defendants' decision to terminate his SEVIS record and F-1 status and enjoining Defendants from "directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences—including causing Plaintiff's visa to be revoked or detaining or removing Plaintiff—as a result of that decision[.]"

## ANALYSIS

To obtain a TRO, the moving party has the burden of showing that: "(1) they have a reasonable likelihood of success on the merits; (2) they have no adequate remedy at law; and (3) they will suffer irreparable harm without injunctive relief." *Stifel, Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 807 F.3d 184, 193 (7th Cir. 2015). If the moving party meets this threshold burden, then the court balances the harm to the movant absent a TRO against the harm to the opposing party if a TRO were granted, and considers the public interest in granting or denying a TRO. See *id.* "The more likely a plaintiff's success on the merits, the less the balance of harms needs to favor its side to justify relief, while a greater showing that the balance of harms

favors the plaintiff may offset a lower probability of success on the success." *Aon Risk Servs. Companies, Inc. v. Alliant Ins. Servs., Inc.*, 415 F. Supp. 3d 843, 847 (N.D. Ill. 2019) (citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)). A TRO "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

Plaintiff has attached to his Complaint copies of Orders issued by district courts across the country in recent weeks granting TROs for plaintiffs in cases essentially identical to this one: *Liu v. Noem*, No. 25-CV-133 (D.N.H. Apr. 10, 2025); *Roe and Doe v. Noem*, 2025 WL 1114694, at *4 (D. Mont. Apr. 15, 2025); *Wu v. Lyons*, No. 25-CV-1979 (E.D.N.Y. Apr. 11, 2025*); Zheng v. Lyons*, No. 25-CV-10893 (D. Mass. Apr. 11, 2025); *C.S. and D.T. v. Noem*, No. 25-CV-477 (W.D. Pa. Apr. 15, 2025). The court, in conducting its own research, has discovered a number of other cases reaching the same result as well. E.g., *Ratsantiboon v. Noem*, 2025 WL 1118645, at *3 (D. Minn. Apr. 15, 2025); *Patel v. Bondi*, 2025 WL 1134875, at *3 (W.D. Pa. Apr. 17, 2025); *Student Doe v. Noem*, 2025 WL 1134977 (E.D. Cal. Apr. 17, 2025); *Isserdasani and Khademi v. Noem*, 2025 WL 1118626, at *5 (W.D. Wis. Apr. 15, 2025); *Hinge v. Lyons*, 2025 WL 1134966, at *1 (D.D.C. Apr. 15, 2025); *Arizona Student Doe #2 v. Trump*, 2025 WL 1115468, at *2 (D. Ariz. Apr. 15, 2025). The court takes each of these cases into consideration. Further, the court notes that in this recent spate of cases, it has been unable to locate one in which a TRO was denied.

**Likelihood of Success on the Merits**

"A likelihood of success on the merits" requires that Plaintiff's chance of success must be more than negligible. See *Brunswick Corp. v. Jones*, 784 F.2d 271, 275 (7th Cir. 1986). Plaintiff asserts that he is likely to prevail on his APA, due process, and *Accardi*[1] claims.

"The APA sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 16 (2020) (cleaned up). Under § 706 of the APA, courts may set aside agency action that is "not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D). Only "final agency actions are reviewable under the APA." 5 U.S.C. § 704.

The APA also "requires agencies to engage in reasoned decisionmaking, and directs that agency actions be set aside if they are arbitrary or capricious." *Regents*, 591 U.S. at 16 (cleaned up). The district court's role "is simply to ensure that the [agency] made no 'clear error of judgment' that would render its action 'arbitrary and capricious.'" *Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008) (citing *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)). The requirement that agency action not be arbitrary and capricious requires the agency to "examine the relevant data and articulate a satisfactory explanation for its action" and explain its actions that will

---

[1] Under the *Accardi* Doctrine, Defendants are required to follow their own rules and procedures. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

enable the court to evaluate the agency's rationale at the time of decision. *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm*, 463 U.S. 29, 43 (1983); *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990).

As an initial matter, Plaintiff has provided the court with evidence that Defendants terminated his SEVIS record, effectively terminating plaintiff's F-1 status. This action constitutes a final decision reviewable under the APA. See *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019) ("The order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order[.]").

DHS regulations provide a list of specific circumstances where certain conduct by a nonimmigrant constitutes a failure to maintain status, such as engaging in unauthorized employment, providing false information to DHS, or engaging in criminal activity. 8 C.F.R. § 214.1(e)-(g). For international students, these specified actions may result in SEVIS termination. Criminal activity is defined narrowly, and a failure to maintain status results only when a student is "convict[ed] . . . for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)[.]" 8 C.F.R. § 214.1(g).

Absent a failure to maintain status, for one of the enumerated reasons, ICE can only terminate SEVIS records under three circumstances: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons

for termination. 8 C.F.R. § 214.1(d). DHS cannot otherwise unilaterally terminate nonimmigrant status. *Fang*, 935 F.3d at 185 n.100.

   None of these mechanisms have been deployed in this case. 8 C.F.R. § 214.1(d) does not provide statutory or regulatory authority to terminate F-1 student status in SEVIS based upon revocation of a visa. See *Fang*, 935 F.3d at 185 n.100. And while Plaintiff concedes he was arrested last year, he expressly denies that he engaged in criminal conduct as contemplated in DHS regulations.[2]

   Therefore, the court finds that Plaintiff is reasonably likely to succeed on his claims that Defendants' termination of his F-1 student status under SEVIS is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C. § 706(2). Because the court finds Plaintiff likely to succeed on his APA claims, it need not address his other claims or theories at this time.

---

   [2] "A condition of a nonimmigrant's admission and continued stay in the United States is obedience to all laws of United States jurisdictions which prohibit the commission of crimes of violence and for which a sentence of more than one year imprisonment may be imposed. A nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status under section 241(a)(1)(C)(i) of the Act." 8 C.F.R. § 214.1.

**Inadequate Remedy at Law and Irreparable Harm**

The Seventh Circuit has frequently considered these two factors as part of a single required element for preliminary injunctive relief. E.g., *Abbott* Lab'ys, 971 F.2d at 11.

Irreparable harm is "harm that cannot be repaired and for which money compensation is inadequate." *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020) (quoting *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997)) (quotations omitted). To cause irreparable harm, an injury "must be of a particular nature, so that compensation in money cannot atone for it." *Graham*, 130 F.3d at 296. Similarly, "[i]nadequate remedy at law does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003) (citing *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 386 (7th Cir. 1984)).

The harm that Plaintiff would suffer in the absence of a TRO is obvious, and it would be irreparable. Losing F-1 status places Plaintiff's education, research, financial stability, and career trajectory at imminent risk of irreparable harm. Worse yet, in the absence of a TRO, Plaintiff is facing a constant and pervasive threat of immediate detention or removal from the United States. These current and threatened consequences constitute a risk of irreparable harm for which an award of monetary damages would not be sufficient. Accordingly, the court finds these factors satisfied.

**Balance of Harms and Public Interest**

Having found that Plaintiff has made the threshold showing required for issuance of a TRO, the court must consider the harms that Defendants would suffer in the event of injunctive relief, and balance those against the clearly irreparable harms to Plaintiff discussed above.

Any potential harm suffered by Defendants as a result of a TRO would be minimal at most. See *Roe*, 2025 WL 1114694, at *4 ("[I]t is unlikely any harm will come to Defendants as a result of this temporary restraining order."). In *Liu*, No. 25-CV-133, Doc. No. 13 at 4, the court found that any potential interference with "ICE's ability to carry out its duties" was insufficient within the balance of harms analysis. Indeed, an agency's obligation to comply with constitutional, statutory, and regulatory requirements should not be considered a hardship. As a result of the apparent lack of harm Defendants will suffer, the court also exercises its discretion to waive the bond requirement under Federal Rule of Civil Procedure Rule 65(c). See *Roe*, 2025 WL 1114694, at *4.

The public interest also favors a TRO. The relief requested restores Plaintiff's ability to remain in the United States to complete his degree, and granting temporary relief in this instance will maintain the status quo. As one court has observed, "the public interest is served by granting the temporary restraining order because it avoids undermining the missions of U.S. universities, preserves the substantial benefits of international research and collaboration, and prevents potential chilling of international student enrollment." *Student Doe*, 2025 WL 1134977, at *8.

In other contexts, the Seventh Circuit has allowed that there is a "clear public interest (as expressed by Congress) in deporting illegal aliens without delay." *Lucacela v. Reno*, 161 F.3d 1055, 1059 (7th Cir. 1998). But Plaintiff is not an illegal alien. He resided, worked, and attended school in this country pursuant to his valid F-1 status, until one day, for reasons unknown to him, his status was terminated. "The public interest would be served by the entry of a temporary restraining order, as it is 'always in the public interest to prevent the violation of a party's constitutional rights.'" *Faust v. Vilsack*, 519 F. Supp. 3d 470, 477 (E.D. Wis. 2021) (quoting *Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty., Tennessee*, 274 F.3d 377, 400 (6th Cir. 2001)). More broadly still, it is assuredly in the public's interest that their government agencies be held to the rule of law.

In summary, Plaintiff has demonstrated a likelihood of success on the merits, that he lacks an adequate remedy at law, and that he would suffer irreparable harm but for the issuance of a TRO. Further, the issuance of a TRO is supported by a balance of Plaintiff's hardships against those of Defendants and is in the public interest. Accordingly, Plaintiff's request for a TRO is GRANTED.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's request for a temporary restraining order is GRANTED. Defendants Kristi Noem and Todd Lyons are hereby enjoined for a period of 14 days as follows:

> (a) Defendants shall restore Plaintiff's F-1 student status in the Student and Exchange Visitor Information System.
>
> (b) Defendants shall not terminate Plaintiff's student status under the Student and Exchange Visitor Information System absent (i) a valid

ground as set forth in 8 C.F.R. § 214.1(d), and (ii) an adequate individualized pre-deprivation proceeding before an impartial adjudicator.

(c) Defendants are prohibited from arresting, detaining, or transferring Plaintiff out of this court's jurisdiction, or ordering the arrest, detention, or transfer of Plaintiff out of this court's jurisdiction, without first providing adequate notice to both this court and Plaintiff's counsel as well as appropriate time to contest any such action.

(d) Defendants are prohibited from initiating removal proceedings against or deporting Plaintiff on the basis of the termination of his F-1 student status.

(2) It is further ordered that Defendant shall file their response to Plaintiff's Motion for Preliminary Injunction (#2) by April 25, 2025. Plaintiff shall file any reply thereto by April 30, 2025.

(3) A hearing on Plaintiff's Motion is hereby set for May 1, 2025, at 10:30 AM in Courtroom A in Urbana. The parties shall file respective notices by 5:00 p.m. on April 29, 2025, of any witnesses they intend to call at the hearing along with a brief summary of their expected testimony and the expected length of their testimony.

ENTERED this 21st  day of April, 2025, at 12:30 PM

s/Colin Stirling Bruce

COLIN S. BRUCE

U.S. DISTRICT JUDGE

E-FILED
Monday, 21 April, 2025  03:27:55 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

|  |  |  |
|---|---|---|
| **SAMUEL OKYEM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 25-CV-2120** |
| | ) | |
| **KRISTI NOEM, U.S. Secretary of** | ) | |
| **Homeland Security, and TODD** | ) | |
| **LYONS, Acting Director of U.S.** | ) | |
| **Immigration and Customs** | ) | |
| **Enforcement,** | ) | |
| | | |
| **Defendants.** | | |

## <u>ORDER</u>

This matter is currently before the court on Plaintiff Samuel Okyem's Motion for Temporary Restraining Order and Preliminary Injunction (#2), which was filed on April 18, 2025. For the reasons set forth below, a Temporary Restraining Order ("TRO") is GRANTED.

### BACKGROUND

According to his Complaint (#1), Plaintiff is an international student enrolled in a doctoral degree program at the University of Illinois Urbana-Champaign. Defendants are Kristi Noem, the United States Secretary of Homeland Security, and Todd Lyons, the acting Director of United States Immigration and Customs Enforcement ("ICE").

By way of background, the Complaint explains that the Student and Exchange Visitor Information Systems ("SEVIS") is a centralized government database that tracks

international students' compliance with their F-1 visa status. ICE, through the Student and Exchange Visitor Program, uses SEVIS to monitor student status and track their compliance with terms of their status. Only schools and ICE have access to SEVIS records. Students have no way to view or edit their own SEVIS record.

On April 9, 2025, Plaintiff was informed via email from the University that the U.S. Department of Homeland Security ("DHS") had "terminated [Plaintiff's] F-1 visa status." The email indicated that the "listed reason" from DHS stated: "Other: Individual identified in criminal records check and/or has had their VISA revoked." The email made clear that as a result of the termination Plaintiff no longer "hold[s] valid F-1 status within the United States." The email stated that Plaintiff was no longer authorized for employment and should make plans to exit the United States immediately. Plaintiff alleges that this email evidences termination of his SEVIS record.

Plaintiff concedes that he was arrested in 2021 for misdemeanor driving under the influence ("DUI"), to which he pleaded guilty, but asserts that he has not committed any other violation or action that would provide a basis for termination of his SEVIS record and visa status. He asserts that the unlawful termination "has put his education and career trajectory at immediate risk." He cites the money he has already invested in his education and rent that he will be liable for next year "despite being unable to remain in the country." "Most critically," Plaintiff continues, "this termination prevents Plaintiff from completing his degree for which he has already invested substantial time and money." Finally, Plaintiff notes that "[t]his termination also creates a risk for

Plaintiff in that ICE may use the termination of the SEVIS record as a basis to unlawfully detain and deport him—an outcome other students have already faced."

Plaintiff challenges the unlawful termination of his SEVIS record pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, the Fifth Amendment to the U.S. Constitution, and the Declaratory Judgment Act, 28 U.S.C. § 2201. He seeks, inter alia, a declaration that the termination of his SEVIS record was unlawful and injunctive relief enjoining Defendants' decision to terminate his SEVIS record and F-1 status and enjoining Defendants from "directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences—including causing Plaintiff's visa to be revoked or detaining or removing Plaintiff—as a result of that decision[.]"

## ANALYSIS

To obtain a TRO, the moving party has the burden of showing that: "(1) they have a reasonable likelihood of success on the merits; (2) they have no adequate remedy at law; and (3) they will suffer irreparable harm without injunctive relief." *Stifel, Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 807 F.3d 184, 193 (7th Cir. 2015). If the moving party meets this threshold burden, then the court balances the harm to the movant absent a TRO against the harm to the opposing party if a TRO were granted, and considers the public interest in granting or denying a TRO. See *id.* "The more likely a plaintiff's success on the merits, the less the balance of harms needs to favor its side to justify relief, while a greater showing that the balance of harms favors the plaintiff may offset a lower probability of success on the success." *Aon Risk Servs. Companies, Inc. v. Alliant Ins. Servs., Inc.*, 415 F. Supp. 3d 843, 847 (N.D. Ill. 2019)

<div align="center">3</div>

(citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)). A TRO "'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

  Plaintiff has attached to his Complaint copies of Orders issued by district courts across the country in recent weeks granting TROs for plaintiffs in cases essentially identical to this one: *Liu v. Noem*, No. 25-CV-133 (D.N.H. Apr. 10, 2025); *Roe and Doe v. Noem*, 2025 WL 1114694, at *4 (D. Mont. Apr. 15, 2025); *Wu v. Lyons*, No. 25-CV-1979 (E.D.N.Y. Apr. 11, 2025*); Zheng v. Lyons*, No. 25-CV-10893 (D. Mass. Apr. 11, 2025); *C.S. and D.T. v. Noem*, No. 25-CV-477 (W.D. Pa. Apr. 15, 2025); *Hinge v. Lyons*, 2025 WL 1134966, at *1 (D.D.C. Apr. 15, 2025). The court, in conducting its own research, has discovered a number of other cases reaching the same result as well. E.g., *Ratsantiboon v. Noem*, 2025 WL 1118645, at *3 (D. Minn. Apr. 15, 2025); *Patel v. Bondi*, 2025 WL 1134875, at *3 (W.D. Pa. Apr. 17, 2025); *Student Doe v. Noem*, 2025 WL 1134977 (E.D. Cal. Apr. 17, 2025); *Isserdasani and Khademi v. Noem*, 2025 WL 1118626, at *5 (W.D. Wis. Apr. 15, 2025); *Arizona Student Doe #2 v. Trump*, 2025 WL 1115468, at *2 (D. Ariz. Apr. 15, 2025). The court takes each of these cases into consideration. Further, the court notes that in this recent spate of cases, it has been unable to locate one in which a TRO was denied.

**Likelihood of Success on the Merits**

  "A likelihood of success on the merits" requires that Plaintiff's chance of success must be more than negligible. See *Brunswick Corp. v. Jones*, 784 F.2d 271, 275 (7th Cir.

<div align="center">4</div>

1986). Plaintiff asserts that he is likely to prevail on his APA, due process, and *Accardi*[1] claims.

"The APA sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 16 (2020) (cleaned up). Under § 706 of the APA, courts may set aside agency action that is "not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D). Only "final agency actions are reviewable under the APA." 5 U.S.C. § 704.

The APA also "requires agencies to engage in reasoned decisionmaking, and directs that agency actions be set aside if they are arbitrary or capricious." *Regents*, 591 U.S. at 16 (cleaned up). The district court's role "is simply to ensure that the [agency] made no 'clear error of judgment' that would render its action 'arbitrary and capricious.'" *Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008) (citing *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)). The requirement that agency action not be arbitrary and capricious requires the agency to "examine the relevant data and articulate a satisfactory explanation for its action" and explain its actions that will enable the court to evaluate the agency's rationale at the time of decision. *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm*, 463 U.S. 29, 43 (1983); *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990).

---

[1] Under the *Accardi* Doctrine, Defendants are required to follow their own rules and procedures. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

Ex. 13-4
Case No. 3:25-cv-00042-SMR-WPK

As an initial matter, Plaintiff has provided the court with evidence that Defendants terminated his SEVIS record, effectively terminating Plaintiff's F-1 status. This action constitutes a final decision reviewable under the APA. See *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019) ("The order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order[.]").

DHS regulations provide a list of specific circumstances where certain conduct by a nonimmigrant constitutes a failure to maintain status, such as engaging in unauthorized employment, providing false information to DHS, or engaging in criminal activity. 8 C.F.R. § 214.1(e)-(g). For international students, these specified actions may result in SEVIS termination. Criminal activity is defined narrowly, and a failure to maintain status results only when a student is "convict[ed] . . . for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)[.]" 8 C.F.R. § 214.1(g).

Absent a failure to maintain status, for one of the enumerated reasons, ICE can only terminate SEVIS records under three circumstances: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d). DHS cannot otherwise unilaterally terminate nonimmigrant status. *Fang*, 935 F.3d at 185 n.100.

Ex. 13-4
Case No. 3:25-cv-00042-SMR-WPK

None of these mechanisms have been deployed in this case. Section 214.1(d) does not provide statutory or regulatory authority to terminate F-1 student status in SEVIS based upon revocation of a visa. See *Fang*, 935 F.3d at 185 n.100. And while Plaintiff concedes he was arrested and convicted of misdemeanor DUI, but he expressly denies that he engaged in criminal conduct as contemplated in DHS regulations. Indeed, in the state of Illinois, a misdemeanor DUI is not a crime for which a sentence of imprisonment of more than one year may be imposed, and thus is not a qualifying conviction under the DHS regulations.[2] See *People v. Smith*, 802 N.E.2d 179, 188 (Ill. App. Ct. 2004) ("DUI is generally a Class A misdemeanor."); 730 Ill. Comp. Stat. 5/5-4.5-55(a) (for Class A misdemeanors in Illinois, such as the DUI Plaintiff pled guilty to, "[t]he sentence of imprisonment shall be a determinate sentence of less than one year.").

Therefore, the court finds that Plaintiff is reasonably likely to succeed on his claims that Defendants' termination of his F-1 student status under SEVIS is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C. § 706(2). Because the court finds Plaintiff likely to succeed on his APA claims, it need not address his other claims or theories at this time.

---

[2] "A condition of a nonimmigrant's admission and continued stay in the United States is obedience to all laws of United States jurisdictions which prohibit the commission of crimes of violence and for which a sentence of more than one year imprisonment may be imposed. A nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status under section 241(a)(1)(C)(i) of the Act." 8 C.F.R. § 214.1.

7

### Inadequate Remedy at Law and Irreparable Harm

The Seventh Circuit has frequently considered these two factors as part of a single required element for preliminary injunctive relief. E.g., *Abbott Lab'ys*, 971 F.2d at 11.

Irreparable harm is "harm that cannot be repaired and for which money compensation is inadequate." *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020) (quoting *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997)) (quotations omitted). To cause irreparable harm, an injury "must be of a particular nature, so that compensation in money cannot atone for it." *Graham*, 130 F.3d at 296. Similarly, "[i]nadequate remedy at law does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003) (citing *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 386 (7th Cir. 1984)).

The harm that Plaintiff would suffer in the absence of a TRO is obvious, and it would be irreparable. Losing F-1 status places Plaintiff's education, research, financial stability, and career trajectory at imminent risk of irreparable harm. Worse yet, in the absence of a TRO, Plaintiff is facing a constant and pervasive threat of immediate detention or removal from the United States. These current and threatened consequences constitute a risk of irreparable harm for which an award of monetary damages would not be sufficient. Accordingly, the court finds these factors satisfied.

### Balance of Harms and Public Interest

Having found that Plaintiff has made the threshold showing required for issuance of a TRO, the court must consider the harms that Defendants would suffer in

8

the event of injunctive relief, and balance those against the clearly irreparable harms to Plaintiff discussed above.

Any potential harm suffered by Defendants as a result of a TRO would be minimal at most. See *Roe*, 2025 WL 1114694, at *4 ("[I]t is unlikely any harm will come to Defendants as a result of this temporary restraining order."). In *Liu*, No. 25-CV-133, Doc. No. 13 at 4, the court found that any potential interference with "ICE's ability to carry out its duties" was insufficient within the balance of harms analysis. Indeed, an agency's obligation to comply with constitutional, statutory, and regulatory requirements should not be considered a hardship. As a result of the apparent lack of harm Defendants will suffer, the court also exercises its discretion to waive the bond requirement under Federal Rule of Civil Procedure Rule 65(c). See *Roe*, 2025 WL 1114694, at *4.

The public interest also favors a TRO. The relief requested restores Plaintiff's ability to remain in the United States to complete his degree, and granting temporary relief in this instance will maintain the status quo. As one court has observed, "the public interest is served by granting the temporary restraining order because it avoids undermining the missions of U.S. universities, preserves the substantial benefits of international research and collaboration, and prevents potential chilling of international student enrollment." *Student Doe*, 2025 WL 1134977, at *8.

In other contexts, the Seventh Circuit has allowed that there is a "clear public interest (as expressed by Congress) in deporting illegal aliens without delay." *Lucacela v. Reno*, 161 F.3d 1055, 1059 (7th Cir. 1998). But Plaintiff is not an illegal alien. He resided,

worked, and attended school in this country pursuant to his valid F-1 status, until one day, for reasons unknown to him, his status was terminated. "The public interest would be served by the entry of a temporary restraining order, as it is 'always in the public interest to prevent the violation of a party's constitutional rights.'" *Faust v. Vilsack*, 519 F. Supp. 3d 470, 477 (E.D. Wis. 2021) (quoting *Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty., Tennessee*, 274 F.3d 377, 400 (6th Cir. 2001)). More broadly still, it is assuredly in the public's interest that their government agencies be held to the rule of law.

In summary, Plaintiff has demonstrated a likelihood of success on the merits, that he lacks an adequate remedy at law, and that he would suffer irreparable harm but for the issuance of a TRO. Further, the issuance of a TRO is supported by a balance of Plaintiff's hardships against those of Defendants and is in the public interest. Accordingly, Plaintiff's request for a TRO is GRANTED.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's request for a temporary restraining order is GRANTED. Defendants Kristi Noem and Todd Lyons are hereby enjoined for a period of 14 days as follows:

(a) Defendants shall restore Plaintiff's F-1 student status in the Student and Exchange Visitor Information System.

(b) Defendants shall not terminate Plaintiff's student status under the Student and Exchange Visitor Information System absent (i) a valid ground as set forth in 8 C.F.R. § 214.1(d), and (ii) an adequate

10

individualized pre-deprivation proceeding before an impartial adjudicator.

(c) Defendants are prohibited from arresting, detaining, or transferring Plaintiff out of this court's jurisdiction, or ordering the arrest, detention, or transfer of Plaintiff out of this court's jurisdiction, without first providing adequate notice to both this court and Plaintiff's counsel, as well as appropriate time to contest any such action.

(d) Defendants are prohibited from initiating removal proceedings against or deporting Plaintiff on the basis of the termination of his F-1 student status.

(2) It is further ordered that Defendants shall file their response to Plaintiff's Motion for Preliminary Injunction (#2) by April 25, 2025. Plaintiff shall file any reply thereto by April 30, 2025.

(3) A hearing on Plaintiff's Motion is hereby set for May 1, 2025, at 11:00 a.m., in Courtroom A in Urbana. The parties shall file respective notices by 5:00 p.m. on April 29, 2025, of any witnesses they intend to call at the hearing along with a brief summary of their expected testimony and the expected length of their testimony.

ENTERED this 21st day of April, 2025, at 3:30 PM

s/Colin Stirling Bruce
COLIN S. BRUCE
U.S. DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CHAMBERS OF
MADELINE COX ARLEO
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST. ROOM 4066
NEWARK, NJ 07101
973-297-4903

April 18, 2025

<u>VIA ECF</u>
All Counsel of Record

**<u>LETTER ORDER</u>**

Re:     **Student Doe #1 v. Donald J. Trump, et al.**
        **<u>Civil Action No. 25-2825</u>**

Dear Litigants:

      Before the Court is Plaintiff Student Doe #1's Motion for a Temporary Restraining Order ("TRO"), ECF No. 4 (the "Motion"). Plaintiff asks this Court to grant the Motion and enter an order (1) restraining Defendants "from taking any enforcement action against Plaintiff arising directly or indirectly" from the termination of Plaintiff's F-1 status under the Student and Exchange Visitor Information System ("SEVIS"), including detaining Plaintiff, transferring them to another jurisdiction, or removing them from the United States pending these proceedings; and (2) restoring the status quo as it existed before Defendants terminated Plaintiff's SEVIS status. <u>See</u> Motion at 2, 25–26. Having carefully reviewed Plaintiff's submissions,[1] this Court **GRANTS** Plaintiff's Motion for a TRO pending further proceedings.

**I.      BACKGROUND**

      Plaintiff is a citizen of China who currently resides in Jersey City, New Jersey. ECF No. 4.5 ("Doe Decl.") at ¶ 3. Plaintiff successfully completed a Masters degree in Mathematical Statistics and Probability at a university in New York, graduating in December 2022. <u>Id.</u> ¶ 4; <u>see also</u> Motion at 2. After graduation, Plaintiff obtained their Optional Practical Training ("OPT") work authorization pursuant to their F-1 visa and began working at a company in January 2023. <u>Id.</u> ¶ 5. Plaintiff had been continuously employed at that company. <u>Id.</u>

      On July 12, 2024, Plaintiff was involved in a dispute with their ex-partner and "was charged with a single municipal disorderly persons offense in the [Hudson County, New Jersey] Municipal Court for simple assault in violation of Disorderly Persons Code 2C:12-1A(1)." <u>Id.</u> ¶ 7; <u>see also</u>

---

[1] The Court acknowledges that Defendants have not yet had the opportunity to weigh in on Plaintiff's Motion. However, in light of Defendants' request for an extended briefing schedule and failure to agree to Plaintiff's proposed stipulation that Defendants refrain from taking enforcement action—including arresting, initiating removal proceedings, detaining, transferring, or deporting the Plaintiff—pending this Court's adjudication of Plaintiff's Motion, <u>see</u> ECF No. 11, this Court deems an <u>ex parte</u> ruling appropriate pursuant to Federal Rule of Civil Procedure 65(b)(1).

Motion at 6. Plaintiff pleaded not guilty, and the city attorney dismissed the case. Doe Decl. ¶ 7. Plaintiff has no other criminal history. Id.

Just over a week ago, on April 10, Plaintiff received an email from their university stating that "[w]e noticed that SEVIS record was auto-terminated on 4/9/2025 by [the Student Exchange Visitor Program ("SEVP")] with the reason below and we wanted to make sure you were aware of it." Id. ¶ 8. According to Plaintiff, the email noted that their SEVIS record was terminated on April 9 with the following justification: "Termination Reason: OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Id. Plaintiff independently verified[2] that the Department of State also revoked their F-1 visa on April 9. Id. ¶ 9; ECF No. 1 ("Compl.") at ¶ 3.

Having learned that Plaintiff's SEVIS status was terminated, Plaintiff's employer terminated their employment as well, and halted any efforts to sponsor Plaintiff's immigration case; Plaintiff previously had plans to enter the H-1B lottery and change their status in the United States. Doe Decl. ¶¶ 10–11.

By consequence, Plaintiff is now "unable to change status to another valid nonimmigrant status, unable to change employers, unable to apply for enrollment at a different school or doctorate program[,] and unable to pursue other post-graduate opportunities." Id. ¶ 12. Plaintiff also lost a lucrative salary, and, in the long run, will suffer harm to their earning potential and career trajectory. Id. ¶¶ 13–14.

Plaintiff has also experienced, and will continue to experience, severe impacts on their mental health. Id. ¶¶ 14–16. Plaintiff lives with "extreme stress and anxiety" knowing that they "may lose everything that [they] have worked so hard to obtain over the past 4 years of graduate study and OPT." Id. ¶ 15. They are also frightened they will be separated from their current partner, and that they "will be arrested, transferred and deported like so many other students." Id. Simply put: Plaintiff "live[s] every day in fear." Id. ¶ 16.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 governs the issuance of TROs and preliminary injunctions. Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." Novartis Consumer Health v. Johnson & Johnson – Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) (citation and quotation marks omitted). One purpose of a TRO is to "maintain the status quo, defined as the last, peaceable, noncontested status of the parties," pending further proceedings. See Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC, 793 F.3d 313, 318 (3d Cir. 2015) (citation omitted). To establish that they are entitled to such relief,[3] Plaintiff must demonstrate:

---

[2] Plaintiff alleges that, to date, the Department of State has not notified Plaintiff that their visa has been revoked. Compl. ¶ 3.

[3] Plaintiff seeks both a temporary restraining order and a preliminary injunction. See generally Motion. For purposes of this Order, the Court's ruling is confined to Plaintiff's request

Ex. 13-5
Case No. 3:25-cv-00042-SMR-WPK

(1) a reasonable probability of eventual success in the litigation, and (2) that [they] will be irreparably injured . . . if relief is not granted. . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26, 2017) (citing Del. River Port Auth. v. Transamerican Trailer Transp., Inc., 501 F.2d 917, 919–20 (3d Cir. 1974) (citations omitted)); see also Ballas v. Tedesco, 41 F. Supp. 2d 531, 537 (D.N.J. 1999) (as to temporary restraining order). A plaintiff must establish that all four factors favor preliminary relief. Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990). Where, as here, the Government is the opposing party, the last two factors merge for purposes of the Court's TRO analysis. See Nken v. Holder, 556 U.S. 418, 435 (2009).

## III.    DISCUSSION

Both of Plaintiff's arguments in support of their Motion arise under the Administrative Procedure Act ("APA"). First, Plaintiff contends that the Defendants' termination of Plaintiff's SEVIS status violates 5 U.S.C. § 706(2)(A), (C)–(D) of the APA, which establishes that final agency action may be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." See Motion at 16–18. Second, Plaintiff argues that the Defendants' actions violate 5 U.S.C. § 706(2)(B) of the APA, which likewise allows Courts to set aside final agency action if it is "contrary to constitutional right, power, privilege, or immunity."[4] Id. Because Plaintiff need only establish a likelihood of success on a single claim to obtain a TRO, the Court limits its review to Plaintiff's first argument. See Pa. Pro. Liab. Joint Underwriting Ass'n v. Wolf, 328 F. Supp. 3d 400, 410 n. 2 (M.D. Pa. 2018).

---

for a temporary restraining order. Nonetheless, it is instructive to note that each mechanism for emergent relief sought essentially requires satisfaction of the same standard, but relief available via temporary restraining order is "ordinarily [limited to] temporarily preserving the status quo," whereas injunctive relief seeking beyond maintenance of the status quo must normally be obtained through a motion seeking a preliminary injunction. Hope v. Warden York Cnty. Prison, 956 F.3d 156, 160–62 (3d Cir. 2020).

In addition, "a preliminary injunction must be issued with notice to the adverse party," see id. at 160 (citing Fed. R. Civ. P. 65(a)(1)), but a temporary restraining order "may be issued without notice where it is 'clearly show[n] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition,'" see id. (quoting Fed. R. Civ. P. 65(b)(1)(A)). Here, Defendants have received notice of Plaintiff's Motion. See, e.g., ECF Nos. 4.3, 8, 9, 11.

[4] Here, Plaintiff asserts that "[p]rocedural due process requires that the government be constrained before it acts in a way that deprives individuals of property interests protected under the Due Process Clause of the Fifth Amendment." Motion at 18.

Ex. 13-5
Case No. 3:25-cv-00042-SMR-WPK

## A. Likelihood of Success on the Merits

Plaintiff argues that Defendants have violated the APA[5] because they "have no statutory or regulatory authority to terminate Plaintiff's SEVIS record or status, as nothing in Plaintiff's criminal history or immigration history provides a basis for termination." Motion at 17. Plaintiff is likely to succeed on this claim.

SEVIS termination may occur under two general circumstances: (1) a student fails to maintain status, or (2) the Department of Homeland Security ("DHS") terminates status. See 8 C.F.R. §§ 214.2(f), 214.1(d); see also Patel v. Bondi, No. 25-101, 2025 WL 1134875, at *2 (W.D. Pa. Apr. 17, 2025); Isserdasani v. Noem, No. 25-283, 2025 WL 1118626, at *1 (W.D. Wis. Apr. 15, 2025).

As to the first category, a student fails to maintain status when they fall out of compliance with F-1 status requirements, for example, by not maintaining a full course of study. See 8 C.F.R. § 214.2(f) (listing requirements for F-1 status). Students are also prohibited from engaging in particular conduct, including accepting unauthorized employment, providing false information to DHS, or engaging in criminal activity. See id. § 214.1(e)–(g). Criminal activity is defined to include instances where a student is "convict[ed] . . . for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." Id. § 214.1(g).

As to the second category, termination of SEVIS status can occur (1) "by revoking a waiver that the Attorney General had previously authorized under [Immigration and Nationality Act] § 212(d)(3) or (4)," (2) "by the introduction of a private bill to confer permanent resident status," or (3) "pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." Jie Fang v. Dir. United States Immigr. & Customs Enf't, 935 F.3d 172, 176 (3d Cir. 2019) (quoting 8 C.F.R. § 214.1(d)).

On the current record, none of the aforementioned bases for terminating SEVIS status have been satisfied. It is not apparent that Plaintiff has fallen out of compliance with F-1 status requirements. See Compl. ¶ 4 ("Plaintiff has been in full compliance with the terms of their F-1 status . . . ."); Motion at 3 (same). And "[b]ased on all known information, Plaintiff has not engaged in unauthorized employment and has not provided false information to DHS." Motion at 17.

Indeed, Plaintiff had been charged with simple assault under N.J.S.A. 2C:12-1a(1), see Doe Decl. ¶ 7, but the regulations prohibiting criminal activity define it as involving a "convict[ion]," 8 C.F.R. § 214.1(g). Plaintiff's charges were dropped. Doe Decl. ¶ 7. Cf. Isserdasani, 2025 WL 1118626, at *4 (holding that, even if plaintiff's misdemeanor offense qualified as a crime of violence, the charge was not ultimately pursued and plaintiff was never convicted).

Finally, nowhere in the record can the Court discern that any of 8 C.F.R. § 214.2(f)'s

---

[5] SEVIS termination is a final agency action reviewable under the APA. See, e.g., Jie Fang v. Dir. United States Immigr. & Customs Enf't, 935 F.3d 172, 185 & n.100 (3d Cir. 2019); Patel v. Bondi, No. 25-101, 2025 WL 1134875, at *2 (W.D. Pa. Apr. 17, 2025); Student Doe v. Noem, No. 25-1103, 2025 WL 1134977, at *5 (E.D. Ca. Apr. 17, 2025).

requirements have been met. There is no record of waiver revocation, a private bill to confer permanent resident status, or notification in the Federal Register.

Accordingly, this Court concludes that Plaintiff "has shown a substantial, if not overwhelming, likelihood of success on the merits," Isserdasani, 2025 WL 1118626, at *5, based on their claim that Defendants—acting without a lawful or rational basis to terminate Plaintiff's SEVIS status—have acted ultra vires in violation of 5 U.S.C. § 706(2)(A), (C)–(D) of the APA.

**B. Irreparable Harm**

Plaintiff next argues that they will suffer irreparable harm if a TRO is not issued because (1) they are at risk of "unlawful enforcement action by Defendants—including arrest, detention, being transferred to another jurisdiction, and deportation," (2) they are suffering and will continue to suffer mental health consequences in the form of "high levels of stress and anxiety," and (3) because of the interruption to their OPT program, which effectively forecloses their ability to "move on to the next step in their education or career" in which they have invested years of hard work and resources. See Motion at 19–22; see generally Doe Decl. The Court agrees that Plaintiff will suffer an irreparable harm that cannot be redressed by a legal or an equitable remedy following a trial if a TRO is not issued. See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 562 F.3d 553, 557 (3d Cir. 2009).

Plaintiff rightly notes that "other students who have had their F-1 visa revoked and/or SEVIS status terminated have been arrested and detained," and refers to a potential "policy and practice" of those individuals being transferred "far from their homes, school, and communities" to detention centers in places like Texas and Louisiana once they are detained. Motion at 19. See also id. at 20 n.20. The Court finds that Plaintiff's fear and concern of similar actions happening to them is not hypothetical or speculative.[6] See Doe Decl. ¶ 15 ("I am . . . terrified that I will be arrested, transferred and deported like so many other students I am hearing about on the news.").

Plaintiff is also stricken by significant stress and anxiety stemming from the uncertainty of "what will happen to them" and the potential consequences of Defendants' unlawful conduct—including their inability to continue their employment, to change status to another visa status based on employment in professional capacity or by display of outstanding ability—ICE detention and incarceration, and potential deportation that will deprive them "the ability to return to their studies, employment, career, or community which, in Plaintiff's case, includes their lawful permanent resident partner." See Mot. at 21; Doe Decl. ¶¶ 14–16.

Plaintiff anticipated entering the H-1B lottery before they were terminated by their employer because of Defendants' conduct. Doe Decl. ¶ 11. Now, Plaintiff's employer is "unwilling to continue with [their] case," and Plaintiff is unable to change status to another valid nonimmigrant status, unable to change employers, or apply for admission to a different school. Id. ¶ 12. Plaintiff's present career outlook is a radical departure from Plaintiff previously earning

---

[6] To underscore this point, and as set forth above, as of the date of this Order, counsel for Defendants was unable to confirm whether Defendants would stipulate to not take any enforcement action against Plaintiff, including arrest, initiation of removal proceedings, detainment, transfer, or deportation. See ECF No. 11 at 2.

more than $100,000 per year with good prospects of continued employment and career growth. Id. ¶¶ 13–14. Plaintiff notes that they "live every day in fear" knowing that they "may lose everything that [they] have worked so hard to obtain over the past 4 years of graduate study and OPT." Doe Decl. ¶¶ 15–16.

Critically, however, Plaintiff argues that the "circumstances of [their] departure strongly indicate the absence of any ability to return," which would be consistent with the experiences of other international students around the United States, including in New Jersey, who departed under similar circumstances. See Motion at 22. Plaintiff fears that they would be unsuccessful in reapplying for any future visas, for they fear that Defendants may justify future termination or revocation using the reasoning applied to the termination and revocation of Plaintiff's prior status. Id.

For these reasons, the Court finds a TRO is necessary to prevent Plaintiff from suffering irreparable harm because of Defendants' termination of their SEVIS record. Cf. Patel, 2025 WL 1134875, at *2 ("[T]he disruption of education and potential accrual of time out of lawful status that could not be regained[,] constitute an immediate and irreparable harm to Plaintiff warranting a TRO."); Doe v. Noem, No. 25-633, 2025 WL 1141279, at *7 (W.D. Wash. Apr. 17, 2025) (loss of employment authorization, interruption of post-secondary educational opportunities, and threat of removal in tandem with economic and reputational loss can constitute irreparable harm); Norsworthy v. Beard, 87 F. Supp. 3d 1164, 1192 (N.D. Cal. 2015) (holding that "[e]motional distress, anxiety, depression, and other psychological problems can constitute irreparable injury.").

### C. Balancing Test

Finally, Plaintiff contends that the balance of equities and public interest weighs in favor of granting the Motion. See Motion at 22–24. Again, the Court agrees. Although Defendants have not yet had a chance to respond to Plaintiff's Motion, it is unlikely that any harm will come to Defendants because of this TRO.[7] Considering the relatively short time between entry of the TRO and a hearing before this Court, this TRO cannot credibly interfere with Defendants' enforcement priorities.

On the other hand, Plaintiff is allegedly facing significant harm, already discussed at-length above. Since Plaintiff has lawfully resided within the United States, they have worked hard to accomplish impressive goals, earning a Masters degree, securing a well-paying job, and maintaining that employment until the unexpected termination of their SEVIS status. See Doe Decl. ¶¶ 4–5. That termination has seriously impacted Plaintiff's professional path, personal life, and mental health. Id. ¶¶ 14–16. This calculable harm to Plaintiff strongly outweighs any potential harm that may come to Defendant, considering there is no apparent reason why Plaintiff is undeserving of the fruits of their years-long efforts.

Likewise, the public's interest weighs in favor of entering the requested TRO. Ensuring that SEVIS terminations occur in compliance with applicable law is undoubtedly in the public interest. See Doe, 2025 WL 1141279, at *9 ("The public has a vested interest in a federal

---

[7] For this reason, among others, this Court exercises its discretion to waive Rule 65(c)'s bond requirement.

government that follows its own regulations."). Cf. Town of Newton v. Rumery, 480 U.S. 386, 400 (1987) (O'Connor, J., concurring) ("The public has an interest in seeing its laws faithfully executed."); St. John–St. Thomas Hotel & Tourism Ass'n, Inc. v. Government of the Virgin Islands, 41 V.I. 317, 337–38 (D. VI. 1993), rev'd on other grounds, 218 F.3d 232 (3d Cir. 2000) (noting that the public has an interest in the executive branch's compliance with federal law). Moreover, New Jersey and its taxpayers have an interest in ensuring that its residents can pursue higher education and obtain gainful employment resulting therefrom, so long as such pursuit is legally permissible. Therefore, the balance of these remaining factors weigh in favor of granting the requested interim relief.

## IV.    CONCLUSION

Plaintiff's Motion, ECF No. 4, is **GRANTED**. Defendants are temporarily enjoined from the date of this Order until May 6, to accommodate the Easter holiday, as follows:

(1) Defendants shall restore Plaintiff's SEVIS record and status and set aside Defendants' termination of Plaintiff's SEVIS status;

(2) Defendants are enjoined from directly or indirectly enforcing, implementing, or otherwise imposing any legal consequences as the result of Defendants' decision to terminate Plaintiff's SEVIS records, including arresting, detaining, or removing Plaintiff from this Court's jurisdiction, or ordering the same, without providing adequate notice to this Court and to Plaintiff's counsel, as well as sufficient time to contest any such enforcement action.

**IT IS FURTHER ORDERED** that Plaintiff shall file, under seal, identifying information including full name, address, and date of birth, or any other information required for Defendants to reinstate their F-1 student status in SEVIS.

**IT IS FURTHER ORDERED** that Defendants shall file their response to Plaintiff's Motion on or before April 25, the date they requested in response to the Court's request. Plaintiff shall file their reply brief on or before April 30. Temporary restraints will remain until the Preliminary Injunction hearing on May 6, described below. Should either party have any objections to the foregoing briefing schedule and the duration of restraints, they shall advise the Court immediately, and no later than noon tomorrow, in which case the court will impose a more expedited briefing and hearing schedule.

**IT IS FURTHER ORDERED** that a hearing on Plaintiff's Motion shall be held on May 6 at 2:00 p.m. at the Martin Luther King Federal Courthouse in Newark, New Jersey.

**IT IS FURTHER ORDERED** that the parties shall file respective notices by 9:00 a.m. on May 2 of any witnesses they intend to call at the hearing along with a brief summary of their expected testimony and the expected length of their testimony.

**SO ORDERED.**

*s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

8

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

JANE DOE 1, et al.,

     Plaintiffs,

v.

PAM BONDI, in her official capacity
as Attorney General of the United
States, et al.,

     Defendants.

Civil Action No.
1:25-cv-01998-VMC

## ORDER

This matter is before the Court on Plaintiffs' Amended Motion for a Temporary Restraining Order (TRO) against Defendants Pam Bondi, in her official capacity as Attorney General of the United States, Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security ("DHS"), and Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), (collectively, "Defendants"). (Doc. 19). Plaintiffs, who are proceeding pseudonymously, request that this Court enter a TRO to: (1) enjoin Defendants from terminating their F-1 student status under the Student and Exchange Visitor (SEVIS) system, and (2) require Defendants to set aside their SEVIS Registration termination determination, restore Plaintiffs F-1 nonimmigrant student status, and restore Plaintiffs' Optional Practical Training (OPT) and

Curricular Practical Training (CPT) work authorizations. Upon careful consideration of the parties' submissions, and with the benefit of a hearing, the Court grants Plaintiffs' motion.

## I.    Background

Congress has authorized nonimmigrant F-1 visas for nonimmigrant students, such as Plaintiffs, who enroll in Government-approved academic institutions and engage in a full course of study. 8 U.S.C. § 1101(a)(15)(F)(i). Once admitted to the United States with an F-1 visa, an international student is granted permission to remain in the United States for the duration of status (noted as D/S on the relevant document) as long as they continue to meet the requirements established by the regulations governing their visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment. 8 C.F.R. §§ 214.2(f)(6). Students who complete that course of study are entitled to apply for OPT, which if approved, enables them to remain for an additional year, or in cases of STEM degrees up to three years, working in their field of study.[1] 8 C.F.R. § 214.2(f)(10).

Congress required that DHS "develop and conduct a program to collect from approved institutions of higher education . . . in the United States [certain

---

[1] Additionally, some degree programs also allow students to work in their field of study during their course of study under CPT.

2

information] with respect to aliens who have the status, or are applying for the status, of [F-1] nonimmigrants . . . ." 8 U.S.C. § 1372(a)(1)(A). As a result, the Department of Homeland Security's Student and Exchange Visitor Program (SEVP) created an online database known as SEVIS. SEVIS is a centralized database maintained by the SEVP and it is used to manage information on nonimmigrant students and exchange visitors to track their compliance with the terms of their status. Under 8 C.F.R. § 214.2(g)(2), Designated School Officials (DSOs) must report through SEVIS to the SEVP when a student fails to maintain status as described in the Code of Federal Regulations. SEVIS termination is governed by SEVP policies and regulations, which indicate that termination of SEVIS registration can be done in one of a few ways. 8 C.F.R. § 214.1(d). Students can fail to maintain status in violation of their status requirements outlined in 8 C.F.R. § 214.2(f). Additionally, 8 C.F.R. § 214.2(e)–(g) delineates the specific circumstances under which certain conduct by any nonimmigrant visa holder "constitutes a failure to maintain status," such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than one year.

A termination of status initiated by DHS is governed by 8 C.F.R. § 214.1(d), and permits DHS to terminate status when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent

<div align="center">3</div>

Ex. 13-6
Case No. 3:25-cv-00042-SMR-WPK

residence is introduced in Congress; or (3) DHS published a notification in the Federal register identifying national security, diplomatic, or public safety reasons for termination.

Accordingly, the revocation of an F-1 visa does not constitute failure to maintain status pursuant to the relevant regulations and does not provide a basis to terminate F-1 student status under the SEVIS registration system.[2] Instead, if the visa is revoked, the student is permitted to continue to pursue her course of study in school, but upon departure from the United States, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning. *See* Guidance Directive 2016-03, 9 FAM 403.11-3 — VISA REVOCATION (Sept. 12, 2016). Put differently, F-1 student status and F-1 student visas are not one in the same. The F-1 student visa refers only to the document that nonimmigrant students receive to enter the United States, whereas F-1 student status refers to the students' formal immigration classification once they enter the country.

Here, Plaintiffs are all F-1 student visa holders actively enrolled in colleges and universities throughout the United States, or who have obtained lawful OPT to resume working under the terms of their lawful student status. (Doc. 15 ¶¶ 6,

---

[2] *See* ICE Policy Guidance 1004-04 — Visa Revocations (June 7, 2010) ("[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record.").

4

9–27). Between April 1, 2025 and April 14, 2025, Plaintiffs received notification from their schools' DSOs informing them that SEVP terminated their SEVIS record and marked Plaintiffs as either "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated" or, "Otherwise Failing to Maintain Status" with a narrative citing deportability provisions under 8 U.S.C. § 1227(a)(1)(C), for failure to maintain status, and 8 U.S.C. § 1227(a)(4)(C)(i), for foreign policy grounds. (Doc. 1 ¶ 2). However, Plaintiffs do not have any criminal history that would warrant their SEVIS records being terminated. Nonetheless, many of the emails from the schools direct Plaintiffs to leave the United States with little notice to prepare to do so.[3]

In some, but not all of these cases, the State Department has revoked the student's visa. But as the Court previously explained, the revocation of a visa does not necessarily impact the person's lawful presence in the country. As such, Plaintiffs allege that it is the SEVIS registration termination that has rendered them vulnerable to devastating immigration outcomes such as detention and deportation, as well as irreparable harm.

On April 11, 2025, seventeen Plaintiffs filed this action. (Doc. 1). Four days later, Plaintiffs amended their Complaint to add 116 Plaintiffs, bringing the total

---

[3] For example, in the email directed to Plaintiff John Doe 49, he was informed that he must depart the United States within 15 days. (Doc. 77 at 32).

Ex. 13-6
Case No. 3:25-cv-00042-SMR-WPK

number of Plaintiffs to 133. (Doc. 11). In their four-count Complaint, Plaintiffs seek declaratory and injunctive relief that Defendants violated the Administrative Procedure Act ("APA") when they terminated their records on improper grounds, without prior notice, without an articulated basis for their decision, and without providing Plaintiffs an opportunity to respond. (*Id.* ¶¶ 180-182). Plaintiffs contend that Defendants acted in an arbitrary and capricious manner, inconsistent with the intent and plain language of the Immigration & Nationality Act and its associated regulations, as well as in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. (*Id.* ¶¶ 183-195). The original 17 Plaintiffs moved for a TRO to temporarily enjoin Defendants from terminating their student status in the SEVIS system and to require Defendants to set aside their termination decisions. (Doc. 4).

On April 14, 2025, the Court scheduled an in-person hearing for Thursday, April 17, 2025 at 9:30 a.m. to address whether to issue a temporary restraining order. (*See* Doc. 9). The Court also ordered that Plaintiffs provide notice to Defendants, as well as supplemental briefing addressing the Court's jurisdiction over nonresident Plaintiffs.[4] (*Id.*). Further, Defendants were given until April 16,

---

[4] Defendants oppose the Court's jurisdiction over the nonresident Plaintiffs and were ordered to file their response in opposition by midnight on April 18, 2025. Nevertheless, given the emergency nature of a TRO, as well as its limited duration, the Court finds it more prudent to issue relief as to all Plaintiffs. If Defendants'

6

2025 at 5:00 p.m. to respond to Plaintiffs' request for a temporary restraining order. (*Id.*). At the end of the hearing, the Court ordered Plaintiffs to amend their TRO to include all of the Plaintiffs and the Parties agreed that an additional hearing on the amended TRO was unnecessary. Plaintiffs have amended their TRO and therefore this matter is ripe for consideration as to all Plaintiffs. (Doc. 19).

## II.    Discussion

The standard for obtaining a TRO is identical to that of obtaining a preliminary injunction. *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1332 (N.D. Ga. 2018) (citing *Windsor v. United States*, 379 F. App'x 912, 916-17 (11th Cir. 2010)). To obtain a TRO or preliminary injunction, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the movant outweighs the damage to the opposing party; and (4) granting the injunction would not be adverse to the public interest. *Id.* (citing *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003)). The balance-of-the-harms and public interest elements merge when the government is the party opposing the injunctive relief. *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020).

---

response convinces the Court that it does not have jurisdiction over certain Plaintiffs, the Court will dissolve the TRO as to them.

## A.    Plaintiffs Have Met the Factors for Issuance of a TRO

### 1.  Plaintiffs' Likelihood of Success on the Merits

The Eleventh Circuit instructs district courts to consider the question of whether a plaintiff has a substantial likelihood of success on the merits as "generally the most important" factor in the analysis. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005). "A substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain*, success." *Id.* Plaintiffs claim that Defendants' termination of their F-1 student status under the SEVIS system was unlawful for multiple reasons. First, it constitutes agency action not in accordance with law and in excess of statutory authority under the Administrative Procedure Act (Count 1); second, it violates the Due Process Clause of the Fifth Amendment to the Constitution (Count 2); third, it violates the APA by infringing upon constitutional rights protected by the Fifth Amendment (Count 3); and fourth, it is arbitrary and capricious under administrative law (Count 4). (*See* Doc. 19-1 at 67).

The Court finds that based on the allegations in the Amended Complaint and the specific facts in the Plaintiffs' 133 declarations, Plaintiffs have demonstrated a substantial likelihood of success on the merits of their claim in Counts 1 and 4: that Defendants' termination of the SEVIS registration exceeds the bounds of statutory and regulatory authority and is therefore unlawful under 5

8

U.S.C. § 706(2)(A), (C), and (D). Termination of the SEVIS registration constitutes a final decision reviewable under the APA.[5] *See Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019) ("The order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order[.]").[6] And, pursuant to the record currently before the Court at this time, the Court concludes that Plaintiffs are likely to show that DHS's authority to terminate F-1 student status is narrowly circumscribed by regulation. *See* 8 C.F.R. § 214.1(d); *see also Jie Fang*, 935 F.3d at 185 n.100 (explaining that the ability to terminate F-1 status is limited by § 214.1(d) which states: "Within the period of initial admission or extension of stay, the nonimmigrant status of an alien shall be terminated by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons."). Since none of those conditions are applicable here, Plaintiffs are likely to show that Defendants' termination of their F-1 status was not in compliance

---

[5] Under the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

[6] Plaintiffs' evidence showed that Plaintiffs' schools and/or employers took adverse action against Plaintiffs, further demonstrating that the termination of the SEVIS records is a final agency action from which rights and liabilities occur.

9

with 8 C.F.R. § 214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A).

In their opposition, Defendants argue that although the APA generally waives the government's immunity, that waiver is not applicable here. (Doc. 16 at 6). Specifically, Defendants point to APA section 702, which "preserves other limitations on judicial review and does not confer authority to grant relief if any other statute . . . expressly or impliedly forbids the relief which is sought." (Doc. 16 at 6–7 (citing *Cohen v. United States*, 650 F.3d 717, 724–25 (D.C. Cir. 2011))). Although Plaintiffs have not asserted a claim under the Privacy Act, Defendants contend that Plaintiffs' claims "clearly" implicate the Privacy Act, and that the Privacy Act provides an alternative, adequate remedy to the APA. (*Id.*). However, courts have held that the "availability of a Privacy Act suit . . .  does not take [the] case[] outside the scope of the waiver of sovereign immunity in § 702 of the APA and does not affect this Court's subject-matter jurisdiction over Plaintiffs' APA claims. *All. for Retired Ams. v. Bessent*, No. CV 25-0313 (CKK), 2025 WL 740401, at *19 (D.D.C. Mar. 7, 2025).

Moreover, Plaintiffs do not have the ability to seek relief under the Privacy Act. (*Id.*). The Privacy Act provides that an "individual" is "a citizen of the United States or an alien lawfully admitted for permanent residence." (*Id.* at 8 (citing 5

10

U.S.C. § 552a(a)(2))), but Plaintiffs are neither U.S. citizens nor lawful permanent residents, and therefore fall outside of the purview of the Privacy Act.

Further, the relief available under the Privacy Act is actual damages. *Williams v. U.S. Citizenship & Immigr. Servs.*, No. 23-cv-61124, 2023 WL 8079947, at *6 (S.D. Fla. Nov. 21, 2023) (quoting *Stewart v. Kendall*, 578 F. Supp. 3d 18, 23 (D.D.C. 2022)); *FAA v. Cooper*, 566 U.S. 284, 298 (2012). Plaintiffs' Complaint seeks only declaratory and injunctive relief. (Doc. 11 at 67–68). As such, Defendants' argument fails.

## 2. Substantial Threat of Irreparable Injury

Plaintiffs must establish there is a threat of irreparable harm if injunctive relief is not granted, and that such harm is "harm that could not be sufficiently compensated by money damages or avoided by a later decision on the merits." *Canon, Inc. v. GCC Int'l, Ltd.*, 263 F. App'x 57, 62 (Fed. Cir. 2008).

Given the number of Plaintiffs, the Court will not include a description of each harm described by Plaintiffs in the Amended Complaint and the declarations accompanying the Amended TRO Motion. (*See* Docs. 11, 19). Nonetheless, Plaintiffs have demonstrated that they face irreparable harm in the absence of temporary relief. Plaintiffs declare that as a result of the SEVIS terminations, they will lose scholarships, career opportunities, access to education, and the ability to apply for OPT. (*See* Doc. 4-2). Plaintiffs fear that they will abruptly have to leave

11

behind family, cancel marriage plans, and abandon their communities in order to avoid detention or being labeled a national security or foreign policy threat. Many Plaintiffs are mere weeks away from attaining their degrees. (Doc. 4-2 at 34, 40). The loss of timely academic progress alone is sufficient to establish irreparable harm. Additionally, all Plaintiffs report high levels of stress and anxiety resulting from the uncertainty around their futures. If Plaintiffs cannot work or study, they cannot remain in the United States legally and will therefore be subjected to removal proceedings or forced to return to their native countries on their own. These harms could not be sufficiently compensated with monetary damages or avoided by a later decision on the merits. *See Liu v. Noem*, No. 25-cv-133-SE-TSM, slip op. at 3 (D.N.H. Apr. 10, 2025), ECF No. 13 (granting a motion for a temporary restraining order on an APA claim based on the termination of an F-1 international student's record in SEVIS); *Isserdani, et al. v. Noem*, No. 25-cv-00283-WMC, 2025 WL 118626, at *10 (W.D. Wis. Apr. 15, 2025) (same); *John Roe, et al v. Noem, et al.*, No. 25-cv-00040-BU-DLC, 2025 WL 1114694, at *3 (D. Mont. Apr. 15, 2025) (same); *Rantsantiboom v. Noem, et al.*, No. 25-cv-01315 (D. Minn. Apr. 15, 2025) (same); *Hinge v. Lyons*, No. 1:25-cv-01097-RBW, slip op. at 12 (D.D.C. Apr. 15, 2025), ECF No. 11 (same).

### 3. Balance of Harms and Public Interest

The third and fourth TRO requirements—that the threatened injury to the movant outweighs any harm to the non-movant and that an injunction is not adverse to the public interest—merge when, as here, the government is the party opposing the motion. *Koe v. Noggle*, 688 F. Supp. 3d 1321, 1358 (N.D. Ga. 2023) (citing *Swain*, 958 F.3d at 1091). "The third element" of that analysis "looks to the competing claims of injury, requiring the court to consider the effect on each party of the granting or the withholding of the requested relief." *De La Fuente v. Merrill*, 214 F. Supp. 3d 1241, 1249 (M.D. Ala. 2016) (quoting *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008)) (internal quotations omitted).

For the reasons set forth above, Plaintiffs have satisfied both factors. First, the balance of harms weighs in Plaintiffs' favor. Plaintiffs stand to lose their lawful status, access to education, and future career prospects. By contrast, the temporary nature of the requested relief poses minimal harm to Defendants. Defendants assert that SEVIS does not control or even necessarily reflect whether a student has lawful nonimmigrant status. (Doc. 16 at 2). If that is so, then restoring Plaintiffs to the status quo before their SEVIS records were terminated has no effect on the Executive's "control over immigration," Defendants' only stated harm. (*Id.* at 16 (citing *El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Review*, 959 F.2d 742 (9th Cir. 1992)). Considering the record evidence as discussed in the previous sections

13

of this order, the Court determines that the imminent risk of irreparable harm to Plaintiffs flowing from the termination of their SEVIS records outweigh any harm the government will experience from the TRO.

Lastly, the Court concludes that there is substantial public interest in ensuring government agencies abide by federal laws. *See Kansas v. U.S. Dep't of Labor*, 749 F. Supp. 3d 1363, 1380 (S.D. Ga. Aug. 26, 2024) (citing *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022)); *see also Florida v. Dep't of Health and Hum. Servs.*, 19 F.4th 1271, 1315 (11th Cir. 2021) (Lagoa, J., dissenting) ("[T]here is no public interest in the perpetuation of unlawful agency action. To the contrary, there is substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016))).

Accordingly, the Court concludes that all relevant factors favor Plaintiffs.

## 4. Security

Finally, the Court exercises its discretion to waive the bond requirement set forth in Rule 65(c) of the Federal Rules of Civil Procedure at this time. *BellSouth Telecomms. Inc. v. MCImetro Access Transmission Servs., LLC*, 435 F.3d 964, 971 (11th Cir. 2005); *Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1359–61 (N.D. Ga. 2022).

14

## III.    Conclusion

Based on the foregoing, it is **ORDERED** that:

1. Plaintiffs' Motion for Temporary Restraining Order and Amended Motion for Temporary Restraining Order (Docs. 4, 19) are **GRANTED**.

2. The Parties are **DIRECTED** to file a proposed joint protective order regarding the use of Plaintiffs' identifying information by 3:00 p.m. on Monday, April 21, 2025.

3. In the meantime, the Court **ORDERS** the Defendants not to disclose the Plaintiffs' identifying information and not to use it for any purpose outside of this litigation. This aspect of the Court's Order expires at 5:00 p.m. on Monday, April 21, 2025.

4. Defendants shall reinstate Plaintiffs' student status and SEVIS authorization, retroactive to March 31, 2025. By Tuesday, April 22, 2025 at 5:00 p.m., Defendants shall file a notice of compliance with this Order.

5. This Order takes effect immediately and shall continue until its expiration in fourteen (14) days.

**SO ORDERED** this 18th day of April, 2025.

Victoria Marie Calvert
United States District Judge

15

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
GIZEM DOGAN,                            )
                                        )
                    Plaintiff,          )
        v.                              )
                                        )        Civil Action No. 25-1130 (RBW)
KRISTI NOEM,                            )
in her official capacity as             )
Secretary of U.S. Department of         )
Homeland Security,                      )
                                        )
                    Defendant.          )
_____ )

## <u>ORDER</u>

In light of the Plaintiff's Motion for Temporary Restraining Order, ECF No. 2, and the

discussions the Court had with counsel for the parties at the April 18, 2025, motion hearing,[1] it is

hereby

**ORDERED** that the Plaintiff's Motion for Temporary Restraining Order, ECF No. 2, is

**GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**.  The motion is

**GRANTED** to the extent outlined in this Order, and in accordance with the oral rulings issued

by the Court at the April 18, 2025, motion hearing.  The motion is **DENIED** in all other respects.

It is therefore

**ORDERED** that the defendant shall treat the plaintiff as it would have treated the

plaintiff prior to the defendant's termination of her record in the Student and Exchange Visitor

Information System ("SEVIS"), preserving the status quo until a further hearing on the Plaintiff's

---

[1] The Court also notes that, despite the strikingly similar nature of this case with another case that was before this Court earlier this week, <u>Hinge v. Lyons</u>, No. 25-cv-1097 (RBW)—in which the parties are represented by the same counsel as those representing the parties in this case—when the Court queried the parties about whether a similar resolution could be reached in this case, government counsel indicated that the agency in this case declined to do so. The Court finds this inconsistency concerning.

Motion for Temporary Restraining Order, ECF No. 2, currently scheduled for April 21, 2025, at 1:00 p.m.  It is further

  **ORDERED** that the defendant shall ensure the attendance at the motion hearing currently scheduled for April 21, 2025, of a representative of the United States Department of Homeland Security ("DHS") who can make authoritative representations to the Court on behalf of the agency.  Specifically, the representative should be prepared to explain to the Court what impact the agency's SEVIS termination has on the lawful status of students, including the plaintiff, who are studying in the United States, and if such terminations were not intended to have the impact that educational institutions are interpreting the agency's action to have (i.e., revocation of SEVIS-terminated students' authorization to lawfully continue their studies or training in the United States), why the agency has not taken action to communicate that misalignment with the educational institutions hosting these students.  It is further

  **ORDERED** that, by 11:00 a.m. on April 21, 2025, the defendant shall file evidence of the plaintiff's alleged criminal history record, with the Washington Metropolitan Police Department, for Simple Assault.[2]

  **SO ORDERED** this 18th day of April, 2025.

<div align="right">

REGGIE B. WALTON
United States District Judge

</div>

---

[2] If the defendant is not able to meet this deadline, the defendant shall show cause in writing by the same deadline why the defendant was not able to file this information in advance of the April 21, 2025, hearing and propose a specific plan for expeditiously providing the Court with this information.

<div align="center">2</div>

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF NextGen 1.8 (rev. 1.8.3)
### Eastern Division

Vishnu Nali

                      Plaintiff,

v.                                     Case No.: 1:25−cv−03969
                                     Honorable Mary M. Rowland

Kristi Noem, et al.

                      Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, April 18, 2025:

      MINUTE entry before the Honorable Mary M. Rowland: Motion hearing held on 4/18/2025. Plaintiff Nali brings suit for violation of his due process rights under the Fifth Amendment and the Administrative Procedure Act arising from Defendants' termination of his Student and Exchange Visitor Information Systems ("SEVIS") record. [3]. Plaintiff Nali moved for a temporary restraining order to (i) enjoin Defendants from terminating his F−1 student status under the SEVIS system, and (ii) require Defendants to set aside their F−1 student status termination determination. [4]; [5]. The motion was presented to the Court on 4/18/25 and expert witness testimony was taken. Defendants to submit a status report by 4/22/25 at 5 pm CST to indicate whether they request a hearing on the motion to present witnesses. Plaintiff granted leave to supplement the record as discussed on the record. The parties to file cross−briefs by 4/24/25 at 5 pm CST. Once fully briefed, the Court will take the motion under advisement. During the pendency of the motion, the Court orders that defendants may not arrest or detain Plaintiff or cause Plaintiff to be arrested or detained based on the revocation of his F−1 visa or the termination of his SEVIS record or for any immigration purpose and may not remove Plaintiff or cause Plaintiff to be removed from the Northern District of Illinois. Mailed notice. (jg, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at **www.ilnd.uscourts.gov**.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **NIHARIKA BEJUGAM,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) **Case No. 2:25-cv-00537-MHH** |
| **TODD M. LYONS, Acting Director,** | ) |
| **U.S. Immigrations and Customs** | ) |
| **Enforcement,** | ) |
| | ) |
| **Defendant.** | ) |

## TEMPORARY RESTRAINING ORDER

*Pro se* plaintiff Niharika Bejugam, a student at the University of Alabama at Birmingham, has sued Todd M. Lyons, the Acting Director of U.S. Immigrations and Customs Enforcement, for violating the Administrative Procedure Act. (Doc. 1). Ms. Bejugam alleges that ICE caused her SEVIS record to be terminated which, in turn, causes her to be "out of status." Ms. Bejugam contends that the termination of her SEVIS record and F-1 status was unlawful and arbitrary and capricious. (Doc. 1, pp. 4, 8–10). Ms. Bejugam filed with her complaint a motion for a temporary restraining order. (Doc. 2).

On April 11, 2025, the Court entered a temporary restraining order that enjoins Mr. Lyons from effectuating ICE's termination of Ms. Bejugam's SEVIS record and F-1 status. (Doc. 6, p. 2). The Court asked the parties to submit by April 16 briefing

1

concerning the Court's subject matter jurisdiction to hear this lawsuit.  (Doc. 6, p. 2).  The Court set this matter for an evidentiary hearing on April 17 to address Ms. Bejugam's motion for injunctive relief.  (Doc. 6, pp. 2–3).

On April 15, 2025, the Court ordered UAB to produce the records in its possession related to Ms. Bejugam's SEVIS status over the past three months.  (Doc. 10, p. 4).  UAB responded to the Court's order on April 16, and the Court forwarded the information UAB provided to the parties.  One of the documents received from UAB provides an "Event History" from Ms. Bejugam's online SEVIS portal.[1]  Ms. Bejugam's SEVIS Event History indicates that on April 2, 2025 and April 8, 2025, a user named "SEVIS Maintenance" terminated her SEVIS status.  On April 8, 2025, a representative from UAB requested reinstatement of Ms. Bejugam's status.  On April 14, after the entry of a temporary restraining order in this case, a user named "DHS Official" returned Ms. Bejugam to active status.  The documentation UAB provided does not identify the individuals involved in these changes in status or the reasons for the status changes.

After the parties received the documents UAB provided, Mr. Lyons filed a motion to extend the parties' briefing deadline and to continue the April 17 hearing in this matter.  (Doc. 11).  The Court held a telephone conference with the parties to

---

[1] The Court has attached a copy of this document to this order.  Because this document contains personal identifying information, the Clerk of Court shall file the attached document under seal and docket a redacted copy of the document as another attachment to this order.

discuss Mr. Lyons's motion.  The Court granted Mr. Lyons's motion by separate order.  (Doc. 16).

Consistent with the discussion during the April 17, 2025 telephone conference in this matter, the Court orders as follows:

1. For the reasons stated on the record during the April 17 telephone conference, the Court extends the temporary restraining order entered in this matter until April 22, 2025 at 5:00 p.m.[2]  The Court temporarily enjoins Mr. Lyons and his officers, agents, servants, employees, and attorneys, along with any other persons who are in active concert or participation with any of these individuals, from effectuating ICE's termination of Ms. Bejugam's SEVIS record and F-1 status.

2. On or before April 21, 2025, Ms. Bejugam and Mr. Lyons shall submit to the Court legal arguments they wish the Court to consider concerning Ms. Bejugam's motion for a temporary restraining order.

3. The Court sets this matter for a hearing on April 22, 2025 at 2:30 p.m. in Courtroom 4B of the Hugo L. Black United States Courthouse in Birmingham, Alabama.

---

[2] The United States did not object to this extension of the temporary restraining order.

3

Ex. 13-9
Case No. 3:25-cv-00042-SMR-WPK

4.  The parties shall bring to the hearing all evidence they wish the Court to consider concerning Ms. Bejugam's request for injunctive relief. The evidence should address:

   a.  The identity of the user listed as "SEVIS Maintenance" in Ms. Bejugam's SEVIS history for April 2025;[3]

   b.  Whether the termination of Ms. Bejugam's SEVIS status has impacted her pending request for OPT employment;

   c.  The status of Ms. Bejugam's F-1 visa;

   d.  The reasons for the termination of Ms. Bejugam's SEVIS status;

   e.  The reasons for the termination of Ms. Bejugam's SEVIS status without notice;

   f.  The reasons ICE reinstated Ms. Bejugam's SEVIS status;

   g.  The impact on Ms. Bejugam of a termination of SEVIS status;

   h.  Other matters concerning the issues in this case.

The Court can accommodate witness testimony by remote means.

**DONE** and **ORDERED** this April 17, 2025.

_Madeline H. Haikala_
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[3] If Ms. Bejugam's SEVIS status was terminated by operation of a computer program or other electronic means that did not involve an individual manually changing the status, then the United States shall explain the method employed for termination of status.

4

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
CHANDRAPRAKASH HINGE,                    )
                                        )
                    Plaintiff,           )
        v.                               )
                                        )    Civil Action No. 25-1097 (RBW)
TODD M. LYONS,                           )
Acting Director, United States Immigration   )
and Customs Enforcement,                 )
                                        )
                    Defendant.           )
_____ )

## <u>MEMORANDUM OPINION</u>

The plaintiff, Chandraprakash Hinge, an Indian national currently residing in the United

States as a student who gained lawful entry with an F-1 visa, brings this civil action against the

defendant, Todd M. Lyons, in his capacity as the Acting Director of United States Immigration

and Customs Enforcement ("ICE"), pursuant to the Administrative Procedure Act (the "APA"), 5

U.S.C. § 706(2), arising out of ICE's termination of the plaintiff's record in the Student and

Exchange Visitor Information System ("SEVIS").[1]  <u>See</u> Complaint ("Compl.") at 1, ECF No. 1.

Currently pending before the Court is the plaintiff's motion for a temporary restraining order or,

in the alternative, a preliminary injunction.  <u>See generally</u> Application for Temporary Restraining

Order or in the Alternative Preliminary Injunction ("Pl.'s Mot."), ECF No. 2.  Upon careful

consideration of the parties' submissions,[2] the Court concludes for the following reasons that it

_____

[1] Given the limited nature of the Court's brief grant of the plaintiff's motion for a temporary restraining order, the
Court will not explain the F-1 visa, SEVIS, and related processes in detail here.  Once the Court has conducted a
further hearing on the plaintiff's motion, the Court will explain these aspects of the case in more detail as they relate
to the Court's ultimate determination regarding the plaintiff's motion.

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its
decision: (1) the plaintiff's Response to Order to Show Cause (ECF No. 4) ("Pl.'s Show Cause Response"), ECF
No. 6; (2) the Defendant's Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order
("Def.'s Opp'n"), ECF No. 8; and (3) the plaintiff's Notice of Additional Authority ("Pl.'s Notice"), ECF No. 9.

must grant in part and hold in abeyance in part the plaintiff's motion for a temporary restraining

order and enter a temporary restraining order that will remain in effect only until the conclusion

of a further hearing on the plaintiff's motion, which is currently scheduled for April 16, 2025, at

2:30 p.m.

   Given the exigent circumstances and ambiguity as to the status of the plaintiff's F-1 visa,

of which the Court was made aware through the parties' submissions and oral representations

during the scheduling conference held on April 14, 2025, the Court has determined that an

immediate Order is warranted to maintain the status quo until the conclusion of a further hearing

on the plaintiff's motion for a temporary restraining order or a preliminary injunction.

Specifically, the Court has maintained the status quo because it concludes that the record at this

stage seems to indicate that final agency action has occurred and could result in the plaintiff

being forced to leave the United States.  Until government counsel is able to confer with the

defendant and report back that (1) the interpretation being given by the plaintiff's university to

the defendant's termination of the plaintiff's SEVIS record is incorrect, i.e., that his F-1 visa has

been effectively terminated, and (2) the plaintiff—despite what has occurred—can remain

employed in his Optional Practical Training ("OPT")[3] position until otherwise informed by the

defendant, the Court concludes that irreparable harm is likely to occur if the plaintiff is forced to

leave the country before being able to acquire the additional training he was pursuing prior to the

defendant's termination of his SEVIS record.  The confusion confronting the Court arises from

the parties' conflicting positions, both in their filings and during oral argument, on what effect

---

[3]According to the defendant, "'OPT' must be 'directly related to [a student's] major area of study' in order to
qualify as authorized training.  [8 C.F.R.] § 214.2(f)(10).  OPT allows eligible students to obtain temporary
employment that is directly related to [their] major area of study.  Id. § 214.2(f)(10)(ii)[.]"  Def.'s Opp'n at 2 (first
brackets in original).  The defendant further represents that "[w]hile in school, a[] [foreign student's] status is based
on that student pursuing a degree . . . . For post-degree completion OPT, there are limits on how long an individual
can be unemployed . . . unless granted [an] extension[.]"  Id. at 2–3.

2

the actions that ICE has already taken have on the plaintiff's student visa status. And, although the government takes exception to the plaintiff's position that his F-1 visa has been revoked, the Court cannot properly assess the government's positions—both that no final agency action has occurred and that the Court lacks jurisdiction to entertain the plaintiff's case—until the government counsel can definitively provide proof that that his position is correct, despite the fact that the evidence currently provided by the plaintiff seems to support the plaintiff's position.

## I.     BACKGROUND

### A.  Factual Background

In 2020, the plaintiff, a student from India who applied for and obtained an F-1 visa, sought admission to study in the United States "at a lawful port of entry as an F-1 student." Compl. ¶ 10. The plaintiff represents that "the border agent did not admit [him] for a certain period of time. Rather, [he was admitted] for a 'duration of status.'" Id. ¶ 11 (citing 8 C.F.R. § 214.2(f)(5)(i)); see also Pl.'s Mot. at 2 (providing the statutory definition of "duration of status").[4] The plaintiff alleges that his university maintained a record on the plaintiff in the SEVIS database, as required by law, which was then used by ICE to monitor his status. See id. ¶¶ 14–19 (citing 8 U.S.C. § 1372). The plaintiff represents that, "[i]n July 2024, while working pursuant to his F-1 student status," he was arrested "for a class B misdemeanor reckless driving" offense, but "the charges were dismissed on April 9, 2025." Id. ¶¶ 26–30. The plaintiff alleges, "[w]ith no notice, on April 4, 2025," he received notification "that his SEVIS record had been terminated." Id. ¶ 31. He claims that the notification letter he received "reports that ICE

---

[4] During the April 14, 2025, hearing, the plaintiff represented that this is the duration articulated on his I-94 form, which the defendant represented supersedes an F-1 student's visa if the visa expires before the duration noted on the student's I-94 form.

3

Ex. 13-10
Case No. 3:25-cv-00042-SMR-WPK

terminated his SEVIS with the following note: TERMINATION REASON: OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked.  SEVIS record has been terminated." Id. ¶ 32.  The plaintiff alleges that, as a result of his SEVIS record termination by ICE, his F-1 visa status has been revoked, and he is no longer able to lawfully work, which is his current status due to ICE's actions, and remain in the United States.  See id. ¶¶ 33–41.

### B.  Procedural Background

On April 11, 2025, the plaintiff filed his Complaint.  See Compl. at 1.  He also filed at that time his motion for a temporary restraining order or, in the alternative, a preliminary injunction.  See Pl.'s Mot. at 1.

Later that day, the Court issued an Order directing the plaintiff to "show cause in writing . . . why the Court should not transfer this case to the United States District Court for the Northern District of Texas."  Order (Apr. 11, 2025) at 1, ECF No. 4.  The plaintiff filed his response to the Court's Order that evening.  See Pl.'s Show Cause Response at 1.[5]  The Court subsequently scheduled a hearing for April 14, 2025, and Ordered the defendant to "file his opposition, if any, to the plaintiff's" motion for a temporary restraining order "on or before April 13, 2025[.]"  See Minute ("Min.") Order (Apr. 11, 2025).  On April 13, 2025, the defendant filed his opposition to the plaintiff's motion for a temporary restraining order, see Def.'s Opp'n at 1, and, on April 14, 2025, the plaintiff filed a notice of supplemental authority concerning the implications of SEVIS record termination, see Pl.'s Notice at 1.

---

[5] The plaintiff argued that this District is a proper venue for the litigation of this case, which the government conceded during the April 14, 2025, hearing is correct.

Ex. 13-10
Case No. 3:25-cv-00042-SMR-WPK

On April 14, 2025, the parties appeared before the Court for a scheduling conference. During that hearing, the parties also made oral arguments as to whether a temporary restraining order should be issued by the Court.  See Min. Entry (Apr. 14, 2025).  Following that hearing, the Court issued an Order (1) granting the plaintiff's motion for a temporary restraining order "until the conclusion of a further hearing scheduled for April 16, 2025"; (2) ordering "that the defendant shall not commence proceedings to remove the plaintiff from the United States while this Order is in effect absent further Order from the Court"; and (3) scheduling a further hearing on the plaintiff's motion for a temporary restraining order for April 16, 2025.  Min. Order (Apr. 14, 2025).

## II.      STANDARD OF REVIEW

### A.      Temporary Restraining Order

A temporary restraining order is an extraordinary remedy designed to prevent serious and imminent harm in exigent circumstances.  Preliminary injunctions are also "extraordinary remed[ies] that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion."  Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004).  In order to obtain a temporary restraining order or preliminary injunction, the moving party must demonstrate "(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction."  Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006).  "These four considerations are factors, not elements."[6]  Nat'l Council of Nonprofits v.

---

[6] In an element test, a litigant must prove a series of independent elements in order to establish a cause of action or defense.  If a single element remains unproven, then the claim or the defense fails.  However, as to a factor test, no

(continued . . .)

Ex. 13-10
Case No. 3:25-cv-00042-SMR-WPK

Off. of Mgmt. & Budget, ___ F. Supp. 3d ___, ___, 2025 WL 368852, at *9 (D.D.C. Feb. 3, 2025).  Therefore, "[a] district court must 'balance the strengths of the requesting party's arguments in each of the four required areas.'"  Id. (quoting CityFed Fin. Corp. v. Off. of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995)).  When, as here, a government entity is a party in the case, the third and fourth factors—that an injunction would not cause the parties substantial injury and that it would further the public interest—merge.  See Pursuing Am.'s Greatness v. Fed. Election Comm'n, 831 F.3d 500, 511 (D.C. Cir. 2016).

Although previously "[t]he four factors [were] typically [ ] evaluated on a 'sliding scale[]'" in this Circuit, Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288, 1291 (D.C. Cir. 2009), the Supreme Court's decision in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), cast doubt on the propriety of that approach, see Save Jobs USA v. U.S. Dep't of Homeland Sec., 105 F. Supp. 3d 108, 112 (D.D.C. 2015) (noting that "[i]t is not clear whether th[e sliding scale] approach survives after Winter, which suggested that a likelihood of success on the merits must always be shown").  Indeed, "the [District of Columbia] Circuit has suggested that a positive showing on all four preliminary injunction factors may be required."  Holmes v. Fed. Election Comm'n, 71 F. Supp. 3d 178, 183 n.4 (D.D.C. 2014) (citing Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288 (D.C. Cir. 2009)).  And at least some Circuit judges have "read Winter at least to suggest[—]if not to hold[—]'that a likelihood of success is an independent, freestanding requirement for a preliminary injunction[.]'"  Sherley v. Sebelius, 644 F.3d 388, 393 (D.C. Cir. 2011) (citing Davis, 571 F.3d at 1296 (Kavanaugh, J., concurring)).

---

individual factor is necessary to a claim or defense; each factor is taken into consideration and weighed against the other factors and the circumstances of the case.  See, e.g., Valspar Corp. v. E.I. Du Pont De Nemours & Co., 873 F.3d 185, 207 (3d Cir. 2017) (Stengel, C.J., dissenting) ("There is no one plus factor that is 'strictly necessary.'" (quoting In re Flat Glass Antitrust Litig., 385 F. 3d 350, 361 n.12 (2004))).

6

Similarly, <u>Winter</u> "makes clear[] [that] a mere 'possibility' of irreparable harm will not

suffice." <u>Cal. Ass'n of Private Postsecondary Schs. v. DeVos</u>, 344 F. Supp. 3d 158, 167 (D.D.C.

2018) (quoting <u>Winter</u>, 555 U.S. at 22). Indeed, "a showing that irreparable injury is 'likely' is

the <u>sine qua non</u> for obtaining a preliminary injunction—it is what justifies the extraordinary

remedy of granting relief before the parties have had the opportunity fully to develop the

evidence and fully to present their respective cases." <u>Achagzai v. Broad. Bd. of Governors</u>, No.

14-cv-768 (RDM), 2016 WL 471274, at *3–4 (D.D.C. Feb. 8, 2016). Therefore, "[a] movant's

failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary

injunction, even if the other three factors entering the calculus merit such relief." <u>Chaplaincy of</u>

<u>Full Gospel Churches</u>, 454 F.3d at 297.[7]

### III.    ANALYSIS

In his Complaint, the plaintiff alleges that: (1) the defendant's "termination of

[the plaintiff's] SEVIS record and F-1 status is unlawful, arbitrary and capricious, and in

violation of 5 U.S.C. §§ 706(2)"; and (2) "it is indeed a final agency action that harms

[the plaintiff] for which there is no other adequate remedy in a court. 5 U.S.C. §§ 702, 704."

Compl. ¶¶ 43–44. Therefore, the plaintiff seeks to have the Court, <u>inter alia</u>: (1) "[t]ake

jurisdiction over this case"; (2) "[e]nter a temporary restraining order or preliminary injunction,

enjoining the effect of ICE's termination of [the p]laintiff's SEVIS record and F-1 status during

the course of this litigation;" (3) "[d]eclare ICE's termination decision unlawful;" and (4)

"[e]nter an Order setting aside ICE's termination decision and enjoining ICE from terminating

---

[7] "The standard for a stay is the same as for a preliminary injunction." <u>Comm. for a Constructive Tomorrow v. U.S.</u>
<u>Dep't of Interior</u>, No. 24-774 (LLA), 2024 WL 2699895, at *2 (D.D.C. May 24, 2024) (citing <u>Nken v. Holder</u>, 556
U.S. 418, 433–34 (2009)).

Ex. 13-10
Case No. 3:25-cv-00042-SMR-WPK

[the p]laintiff's SEVIS record and F-1 status without additional process in the future[.]"  Compl. ¶¶ 51–56.

In his motion for a temporary restraining order, the plaintiff argues that (1) "ICE's SEVIS termination is unlawful," Pl.'s Mot. at 9; (2) he "will suffer irreparable harm without an injunction," id. at 16; and (3) the "[e]quities favor injunction," id. at 17.  The plaintiff contends that "[b]ecause ICE's unlawful termination will cause [the p]laintiff irreparable harm, this Court must enjoin [the defendant's] termination of [the p]laintiff's SEVIS record and F-1 status."  Id. at 2.  In its opposition, the defendant argues, inter alia, that the termination of a SEVIS record is not a final agency action with legal consequences, and therefore there is no harm.  See Def.'s Opp'n at 8–9.

### A.    Whether the Plaintiff is Likely to Succeed on the Merits

Pursuant to the APA, judicial review of agency action is only appropriate in the case of "final agency action."[8]  5 U.S.C. § 704.  Final agency action is defined as action that "mark[s] the consummation of the agency's decisionmaking and process" and determines "rights or obligations . . . from which legal consequences will flow."  Bennett v. Spear, 520 U.S. 154, 177–78 (1997) (first quoting Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113 (1948); and then quoting Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71 (1970)).

In his opposition, and during the April 14, 2025, hearing, the defendant represented that ICE's termination of the plaintiff's SEVIS record did not mean that ICE had revoked the plaintiff's F-1 visa.  See Def.'s Opp'n at 5 ("[The p]laintiff conflates the agency's action here—

---

[8] The APA prohibits courts from reviewing the "day-to-day operations" of agencies.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 899 (1990).

8

the termination of his SEVIS record—with the termination of his F-1 status.").  Indeed, the

defendant explicitly asserted during the April 14, 2025, hearing that the plaintiff's F-1 visa has

not been revoked, and he will not accrue unlawful presence in the United States unless his status

is terminated, which the defendant alleges has not yet occurred.  The defendant also represented

during the hearing that no regulation requires the plaintiff's university to terminate his OPT

based solely on ICE's termination of his SEVIS record.[9]  The defendant clarified that the

plaintiff only needed an F-1 visa to lawfully enter the United States; then, in order to remain in

the United States lawfully, he needs an I-94[10] that establishes the permitted duration of his stay.

In the plaintiff's case, that duration is written as "for the duration of status," see Compl. ¶ 11, and

the defendant contends that since the plaintiff's status has not been revoked, he is not in the

United States unlawfully.  However, the plaintiff argued during the April 14, 2025, hearing, that

the phrase "for the duration of status" refers to the duration of active status in the SEVIS

database; thus, the plaintiff alleges, ICE effectively terminated the plaintiff's legal nonimmigrant

status in this country when it terminated his SEVIS record and cited his "failure to maintain

---

[9] In support of this assertion, the defendant cited the tenth paragraph of the Declaration of Andre Watson, which the defendant filed as an attachment to his opposition.  See Def.'s Opp'n, Exhibit ("Ex.") 1 (Declaration of Andre Watson) at 5, ECF No. 8-1 ("Terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States.  The statute and regulations do not provide [the Student Exchange Visitor Program ('SEVP')] the authority to terminate nonimmigrant status by terminating a SEVIS record, and SEVP has never claimed that it had terminated [the plaintiff's] nonimmigrant status.  Furthermore, the authority to issue or revoke visas for nonimmigrant students like [the plaintiff] lies with the Department of State, not SEVP.  Terminating a record within SEVIS does not effectuate a visa revocation.").

[10] According to the United States Citizen and Immigration Services ("USCIS") website, "[a]ll persons need a Form I-94 except U.S. citizens, returning resident aliens, aliens with immigrant visas, and most Canadian citizens visiting or in transit.  Air and sea travelers will be issued I-94s during the admission process at the port of entry."  In order to obtain a Form I-94, "[a] Customs and Border Protection ('CBP') officer attaches [a] Form I-94 to the nonimmigrant visitor's passport upon entry to the U.S.  The visitor must exit the U.S. on or before the departure date stamped on the Form I-94."  U.S. Citizenship and Immigr. Serv., Form I-94, Arrival/Departure Record, Information for Completing USCIS Forms, U.S. CITIZENSHIP AND IMMIGR. SERV., https://www.uscis.gov/forms/all-forms/form-i-94-arrivaldeparture-record-information-for-completing-uscis-forms (last visited Apr. 15, 2025).

status" as its reason for doing so. Moreover, as the plaintiff contended during the April 15, 2025, hearing, he cannot remain in the United States legally if he is not either studying or working in an OPT position. See also Pl.'s Mot., Exhibit ("Ex.") 2 (Declaration of Brad Banias) at 1, ECF No. 2-2 ("ICE's termination of Plaintiff's SEVIS and F1 status prevents him from continuing his OPT program"). And, if the plaintiff's university was required to terminate his OPT authorization and enrollment, as it has done, due to ICE's termination of the plaintiff's SEVIS record, then the plaintiff cannot lawfully remain in the United States and will be subject to removal proceedings if he does not first leave voluntarily.

Accordingly, given that on the current record the plaintiff has established a likelihood of success on the merits and the lack of verifiable information offered by the defendant rebutting his argument in regards to (1) the effect of ICE's termination of the plaintiff's SEVIS record on the plaintiff's lawful nonimmigrant status in the United States, and (2) whether the plaintiff's university was required to terminate his authorization to study and work in the United States as a result of ICE's SEVIS termination, the Court cannot determine on the current record whether final agency action has occurred in this case. If the plaintiff's lawful status in the United States has been revoked, whether directly by ICE or indirectly by his university's correct interpretation of the action it is required to take in response to ICE's actions, that revocation will affect the plaintiff's "rights or obligations . . . from which legal consequences will flow." Bennett, 520 U.S. at 177–78. Thus, the Court concludes that it must grant the plaintiff's request for a temporary restraining order until a further status conference is held in order to allow government counsel to address these ambiguities after conferring with the agency he represents.[11]

---

[11] The Court expressed its concern during the April 14, 2025, hearing that although government counsel stated that the plaintiff's F-1 visa had not been revoked, government counsel expressed uncertainty as to whether the agency itself would confirm his representation on this point.

**B.      Whether the Plaintiff has Sufficiently Alleged Irreparable Injury**

In order to establish irreparable injury, a party must meet a "high standard." England, 454 F.3d at 297.  The alleged injury "must be both certain and great," "actual and not theoretical," and "of such imminence that there us a 'clear and present' need for equitable relief." Id. (quoting Wis. Gas Co. v. Fed. Energy Regul. Comm'n, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)).  Furthermore, the alleged injury "must be beyond remediation"; in other words, the party alleging irreparable injury must establish that "[t]he possibility [of] adequate compensatory or other corrective relief . . . at a later date . . . weighs heavily against a claim of irreparable harm." Id. at 297–98. (quoting Wis. Gas Co., 758 F.2d at 674).  Importantly, "obstacles [that] unquestionably make it more difficult for the [plaintiff] to accomplish its primary mission . . . provide injury for the purposes . . . [of establishing] irreparable harm." League of Women Voters of the U.S. v. Newby, 838 F.3d 1, 9 (D.C. Cir. 2016).  "For some, these are harms for which 'there can be no do over and no redress.'"  Nat'l Council of Nonprofits, ___ F. Supp. 3d ___, ___, 2025 WL 368852, at *13 (quoting Newby, 838 F.3d at 9).

Here, the plaintiff is an Indian national who sought legal entry into the United States by working with his consulate to obtain an F-1 visa and gaining admission to an American university.  See Pl.'s Mot. at 6.  During the April 14, 2025, hearing, the plaintiff represented that, once here, he obtained an I-94, valid "for the duration of status[,]" see Compl. ¶ 11, and has most recently been working through OPT, see Pl.'s Mot., Ex. 3 (Declaration of Chandraprakash Hinge) at 1, ECF No. 2-3.  The plaintiff's university, as part of its obligations associated with enrolling and hosting foreign students, maintains SEVIS records on all such students while they are lawfully studying or working in the United States.  See Pl.'s Mot. at 5.  ICE terminated the plaintiff's SEVIS record, and the plaintiff's university responded to that termination by revoking his authorization to work.  Id. at 7.  If the plaintiff cannot work or study, he cannot remain in the

11

United States legally, and he will therefore either be subjected to removal proceedings or forced to return to India on his own, which would require him to pursue anew the entire process for lawful readmission to the United States if he wishes to complete his training.  The plaintiff further alleges that if he is, in fact, accruing unlawful time in the United States following the termination of his SEVIS record, that time will work against him should he attempt to initiate the process to lawfully return to the United States in order to complete his training, and that might prevent him from doing so.  <u>See</u> Compl. ¶ 38.

In light of the plaintiff's representations, and without definitive information to the contrary from the defendant, the Court concludes that "adequate compensatory or other corrective relief . . . at a later date" will be insufficient to remedy the plaintiff's alleged injury. <u>England</u>, 454 F.3d at 297–98.  Furthermore, if ICE's alleged actions render the plaintiff unable to complete his educational training, the Court deems that consequence to be a "harm[] for which 'there can be no do over and no redress."   <u>Nat'l Council of Nonprofits</u>, ___ F. Supp. 3d ___, ___, 2025 WL 368852, at *13 (quoting <u>Newby</u>, 838 F.3d at 9).  Therefore, the Court concludes that, based on the current record, the plaintiff has established irreparable harm.[12]

### IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the plaintiff's motion for a temporary restraining order until the conclusion of a further hearing scheduled for April 16, 2025.

**SO ORDERED** this 15th day of April, 2025.[13]

REGGIE B. WALTON
United States District Judge

---

[12] Because the Court concludes that the plaintiff has carried his burden by satisfying the first two factors for a temporary restraining order, the Court will not address the other two factors at this time.

[13] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

12

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

ZILIANG J.,

                        Plaintiff,

v.

KRISTI NOEM, Secretary of Department of
Homeland Security, in her official capacity;
TODD LYONS, Acting Director of
Immigration and Customs Enforcement, in
his official capacity; and U.S.
IMMIGRATION & CUSTOMS
ENFORCEMENT,

                        Defendants.

Case No. 25-CV-1391 (PJS/DLM)

ORDER

---

Cameron Lane Youngs Giebink, David L. Wilson, Gabriela Sophia
Anderson, and Katherine Lourdes Santamaria Mendez, WILSON LAW
GROUP, for plaintiff.

This matter is before the Court on plaintiff's emergency motion for a temporary

restraining order ("TRO") against defendants Kristi Noem, Todd Lyons, and U.S.

Immigration & Customs Enforcement ("ICE") (together "defendants"). For the reasons

that follow, the Court grants the motion.

## I. BACKGROUND

Plaintiff is a citizen of the People's Republic of China who has lawfully resided in

the United States since August 25, 2019, when he was admitted pursuant to an F-1 visa.

ECF Nos. 1 ¶ 8, 7 ¶ 2. Plaintiff is currently enrolled as a full-time student in a master's

degree program in geographic information science and cartography at the University of Minnesota's Twin Cities campus.  ECF No. 7 ¶ 2.

ICE is responsible for administering the student visa program and tracking information on students in F-1 status through the Student and Exchange Visitor Program.  ECF No. 1 ¶ 13.  Under 8 U.S.C. § 1372, such students are tracked in an electronic record system known as the Student Exchange Visitor Information System ("SEVIS").  Plaintiff alleges that ICE takes the position that termination of a student's SEVIS account requires the student to immediately depart the United States.  ECF No. 1 ¶ 87.

During his time in the United States, plaintiff has twice received parking tickets and once been cited for speeding.  ECF No. 7 ¶¶ 6–7.  He has also been cited for driving with a suspended license, but that case was dismissed.  *Id.* ¶ 6.  Plaintiff paid all of the fines that were imposed as a result of these offenses, and he has never been subject to academic discipline.  *Id.* ¶¶ 7–8.

On April 8, 2025, ICE terminated plaintiff's student status in the SEVIS system. ECF No. 8-4.  ICE identified the reason for the termination of his status as follows: "Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated."  *Id.*  ICE did not inform plaintiff that his status had been terminated.  ECF No. 7 ¶ 9.  Instead, he learned about the termination of his SEVIS

-2-

status when the University of Minnesota sent him an email on April 8, 2025, notifying him of the change. *Id.* ¶ 9.

Plaintiff filed this action on April 14, 2025.[1] ECF No. 1. He brings three claims under the Administrative Procedure Act ("APA") and a claim for a declaratory judgment, contending that terminating his SEVIS status was contrary to the Immigration and Nationality Act and its implementing regulations, violated the Due Process Clause of the Fifth Amendment, and was arbitrary and capricious. Plaintiff seeks injunctive as well as declaratory relief.

Plaintiff now moves for a TRO to temporarily enjoin defendants from terminating his status in the SEVIS system and to require defendants to set aside their termination decision.

## II. ANALYSIS

In considering a motion for a TRO, courts consider four factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981); *see also Tumey v. Mycroft AI, Inc.*, 27

---

[1]The Court notes that, just as this order was about to be docketed, plaintiff filed an amended complaint. The allegations underlying the Court's conclusions, however, remain the same.

Ex. 13-11
Case No. 3:25-cv-00042-SMR-WPK

F.4th 657, 665 (8th Cir. 2022) ("[T]he standard for analyzing a motion for a temporary restraining order is the same as a motion for preliminary injunction."). No one factor is determinative, and the court should "weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (internal quotation marks omitted). The moving party bears the burden to establish that these factors weigh in favor of granting temporary relief. *See, e.g.*, *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

Here, based on the record now before the Court, the Court concludes that all four factors weigh in favor of granting plaintiff's requested TRO.

As to the first factor, the Court finds that plaintiff plainly faces irreparable harm. plaintiff is in the middle of the semester, for which he has already paid $17,739.23 in tuition. ECF No. 7 ¶¶ 1, 18; ECF No. 8-2. He is at imminent risk of being forced to drop his courses for this semester, and he is at risk of being prevented from registering for classes for next semester, as the University cannot allow him to proceed with his studies without an active student status on the SEVIS system. ECF No. 7 ¶¶ 16–17. More broadly, plaintiff faces the loss of the many years and many thousands of dollars he has invested in pursuing his degree. *Id.* ¶ 14. Because both the United States and the

-4-

University of Minnesota enjoy sovereign immunity, plaintiff may be unable to recover his financial losses.

In addition, plaintiff is now present in the United States with his legal status uncertain. This confusion about his legal status threatens imminent harm in at least two ways. First, it may subject him to immediate detention and deportation. *Id.* ¶ 10. Second, it causes him to accumulate unlawful presence in the United States, which is likely to impede or prevent him from becoming a permanent resident in the future. *Id.* ¶¶ 12, 13.

As to the second factor, the only apparent basis for defendants' action is plaintiff's history of minor traffic violations, the most recent of which took place in December 2023. ECF No. 7 ¶ 7. Enabling plaintiff to remain in status and continue his studies while the Court sorts through the legal issues in this case poses no plausible risk of injury to defendants.

As to the third factor, the Court finds on the basis of the current record that plaintiff is likely to succeed on the merits. Government agencies are generally required to follow their own regulations. *See, e.g.*, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954); *Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020). Plaintiff alleges that, when defendants terminated his status in the SEVIS system, they violated their own regulations and thereby violated the APA. *See* 8 C.F.R.

-5-

§ 214.1(d) (providing that termination of a non-citizen's nonimmigrant status may be accomplished by (1) revoking a waiver authorized on the non-citizen's behalf, (2) the introduction of a private bill to confer permanent-resident status on the non-citizen, or (3) a notification in the Federal Register on the basis of national security, diplomatic, or public-safety reasons). Defendants do not appear to have terminated plaintiff's status pursuant to any of these three courses of action. The record does not indicate that there was any relevant waiver to revoke. Nor does the record reflect that a private bill for permanent residence has been introduced, or that any notification in the Federal Register has been published.

Finally, as to the fourth factor, the Court finds that there is a substantial public interest in ensuring that government agencies comply with federal law. Indeed, the Court cannot imagine how the public interest might be served by permitting federal officials to flaunt the very laws that they have sworn to enforce.

For these reasons, the Court grants plaintiff's request for temporary relief and, in its discretion, the Court waives the bond requirement under Fed. R. Civ. P. 65(c). The Court also finds good cause to issue this order without notice, as defendants took the challenged action without notice, giving rise to a real risk that plaintiff might be detained or deported without notice and before he can serve defendants.

-6-

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.    Plaintiff's motion for a temporary restraining order [ECF No. 4] is

      GRANTED.

    a.    Defendants are ORDERED to temporarily set aside their

        determination to classify plaintiff's F-1 student status as

        terminated.

    b.    Defendants are ORDERED to reinstate plaintiff's student status in

        the SEVIS system, backdated to April 8, 2025.

    c.    Defendants are temporarily ENJOINED from taking any further

        action to terminate plaintiff's student status.

    d.    Defendants are ENJOINED from directly or indirectly enforcing,

        implementing, or otherwise taking any action or imposing any

        legal consequences as the result of the decision to terminate

        plaintiff's SEVIS records, including revoking plaintiff's visa,

        detaining him, or deporting him.

2.    Plaintiff is ORDERED to serve defendants with the summons, complaint,

      motion papers, and a copy of this order as soon as possible.

3.   The Court will hold a hearing on Thursday, April 24, 2025, at 2:30 pm to

consider whether to convert the TRO into a preliminary injunction.

Defendants' brief in response to plaintiff's motion is due no later than

Monday, April 21, 2025.  Plaintiff may file a reply no later than

Wednesday, April 23, 2025.

4.   Pursuant to Fed. R. Civ. P. 65(b)(2), this order will expire 14 days from the

date of entry unless the Court extends it for good cause shown or

defendants consent to an extension.

Dated:  April 17, 2025, at 9:15 a.m.         s/Patrick J. Schiltz
                                             Patrick J. Schiltz, Chief Judge
                                             United States District Court

-8-

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MANOJ MASHATTI,                          )
                                         )
      Plaintiff,                    )
                                         )
        v.                       )    Civil Case No. 25-1100 (RJL)
                                         )
TODD M. LYONS, Acting Director, U.S.     )
Immigration and Customs Enforcement,     )
                                         )
      Defendant.                    )

## MEMORANDUM ORDER
April 17, 2025 [Dkt. #2]

    This matter comes before the Court on plaintiff Manoj Mashatti's ("plaintiff" or "Mashatti") motion for a temporary restraining order ("TRO"). *See* Pl.'s Mot. for TRO [Dkt. #2]. Having considered the parties' briefing, the oral arguments made on the record on April 17, 2025, and the entire record, I will **GRANT** the motion for a TRO.

## I.    BACKGROUND

    Plaintiff, a citizen and national of India, obtained an F-1 student visa to pursue a master's degree in Business Analytics at the University of Texas at Dallas (the "University"). Compl. [Dkt. #1] ¶¶ 8–12. During the course of his studies at the University, plaintiff was arrested for misdemeanor driving while intoxicated. *Id.* ¶ 26. According to plaintiff, "[h]is criminal attorney entered a deferred adjudication plea, allowed him to complete certain terms, and his probation was terminated early." *Id.* ¶ 27.

    Plaintiff completed his master's degree in May 2024, and he then applied for and received post-completion Optional Practical Training ("OPT"), which granted him

1

authorization to work as a full-time data engineer while maintaining his F-1 student status. *Id.* ¶¶ 29–32.

On April 2, 2025, the Designated School Official ("DSO") at the University informed plaintiff that his Student and Exchange Visitor Information System ("SEVIS") record[1] had been terminated. *Id.* ¶ 33. The letter contained the following note:

> TERMINATION REASON: OTHERWISE  FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated.

*Id.* ¶ 34.

Plaintiff received no warning of or opportunity to respond to this termination. *Id.* ¶¶ 36–37. According to plaintiff, ICE's website states that this type of termination mandates that "the student must either apply for reinstatement, or the student and dependents must leave the United States immediately." *Id.* ¶ 35.

On April 11, 2025, plaintiff filed suit in this Court, claiming that defendant Todd Lyons, acting in his official capacity as Acting Director of Immigration and Customs Enforcement ("defendant" or "ICE"), violated the Administrative Procedure Act ("APA"). The same day, plaintiff moved for a TRO. This Court set a briefing schedule on the motion and a date for oral argument. *See* Min. Order (Apr. 14, 2025). The Court received defendant's opposition on April 16, 2025 and heard oral argument on April 17, 2025. *See* Def.'s Mem. in Opp'n to Pl.'s Mot. for TRO [Dkt. #8]; Min. Entry (Apr. 17, 2025).

---

[1] SEVIS is "an online database housing data about all F-1 students." Compl. ¶ 15. U.S. Immigration and Customs Enforcement operates the Student Exchange and Visitor Program ("SEVP"), which maintains SEVIS. *Id.* ¶ 14. Schools report information about students' start dates, course progress, and graduation dates in SEVIS, and SEVP in turn monitors SEVIS to verify that students are maintaining their status. *Id.* ¶¶ 16–17.

Ex. 13-12
Case No. 3:25-cv-00042-SMR-WPK
Page 100

## II.    ANALYSIS

To obtain a TRO, the moving party must establish: "(1) a substantial likelihood of success on the merits; (2) that the moving party would suffer irreparable injury if the temporary restraining order were not granted; (3) that such an order would not substantially injure other interested parties; and (4) that such an order furthers the public interest." *Sibley v. Obama*, 810 F. Supp. 2d 309, 310 (D.D.C. 2011) (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). The third and fourth factors merge when the Government is the opposing party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

Here, plaintiff has met his burden to obtain a TRO. *First*, plaintiff has shown a substantial likelihood of success on the merits. Plaintiff asserts that the termination of his SEVIS record violates the APA for multiple reasons, including that the decision was arbitrary and capricious, lacked reasoned decisionmaking, and violated due process. At this early stage, the Court is inclined to agree. The termination of plaintiff's SEVIS record is likely a final agency action, as it has legal consequences—potentially severe legal consequences—for plaintiff, who can no longer work and who may have to leave the United States. There was a striking lack of notice and opportunity to be heard here, and the note purporting to explain the basis for the termination of the SEVIS record is both brief and ambiguous. Plaintiff is left wondering the reason for the termination of the SEVIS

Ex. 13-12
Case No. 3:25-cv-00042-SMR-WPK

record, the effect of the termination, and his options for correcting this alleged mistake.[2] The Court thus finds that plaintiff has shown a likelihood of success on the merits.

*Second*, plaintiff has demonstrated that he will suffer irreparable injury without a TRO. Plaintiff asserts multiple forms of irreparable harm, including that (1) he is unable to work without a work authorization; (2) the false accusation of having a criminal record harms his reputation; and (3) he is accruing unlawful presence in the United States, which "places [him] at risk of being barred from reentry in the future and jeopardizes any opportunity [he] may have to return to the U.S. for employment, education, or personal travel." Mashatti Decl. [Dkt. #2-3] ¶ 15–18. The Court finds that, at minimum, the third point establishes irreparable harm. Plaintiff argues that the termination of his SEVIS record means that he is unlawfully in the United States; during oral argument, defense counsel, curiously, was unable to explain to the Court whether plaintiff's continued presence is unlawful, and thus failed to counter plaintiff's argument. The Court therefore finds that plaintiff would suffer irreparable harm should his SEVIS record remain terminated.

*Third*, the balance of equities and public interest tip in favor of granting a TRO. Plaintiff risks deportation or accrual of unlawful presence; in contrast, ICE is not harmed by temporarily reactivating plaintiff's SEVIS record pending further review of the merits of the case. The equities thus favor a TRO.

---

[2] The Court can relate to plaintiff's confusion, as the parties take conflicting positions with respect to the effect of ICE terminating plaintiff's SEVIS record. Defense counsel's obfuscation on these points is telling and favors a TRO, as the Court is inclined to maintain the status quo pending further investigation of the merits.

Ex. 13-12
Case No. 3:25-cv-00042-SMR-WPK

## III.   CONCLUSION

For the reasons set forth above, the Court will **GRANT** plaintiff's Motion for a Temporary Restraining Order [Dkt. #2], insofar as it is:

**ORDERED** that defendant shall return plaintiff's record in the Student and Exchange Visitor Information System ("SEVIS") to Active status; it is further

**ORDERED** that defendant may not change or otherwise modify plaintiff's record in SEVIS solely on the basis of plaintiff's arrest in October 2022 for misdemeanor driving while intoxicated and the subsequent dismissal of that charge; it is further

**ORDERED** that the parties shall submit by April 22, 2025 a proposed schedule for briefing the motion for a preliminary injunction; and it is further

**ORDERED** that the parties, in briefing the preliminary injunction, shall also brief whether jurisdiction and venue are proper in this Court or whether a different venue may be appropriate.

**SO ORDERED**.


RICHARD J. LEON
United States District Judge

Ex. 13-12
Case No. 3:25-cv-00042-SMR-WPK

Page 103

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.Y., et al., | Case No. 25-cv-03244-NW |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER AND SETTING BRIEFING SCHEDULE AND HEARING** |
| KRISTI NOEM, et al., | |
| Defendants. | Re: ECF No. 10 |

On April 11, 2025, Plaintiffs brought suit against Kristi Noem, in her official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"), Todd M. Lyons, in his official capacity as the Acting Director of Immigration and Customs Enforcement ("ICE"), Moises Becerra, in his official capacity as the Acting Field Office Director of the San Francisco ICE Office of Detention and Removal, and Donald J. Trump, in his official capacity as President of the United States (collectively, "the Government"). Compl., ECF No. 1.

On April 16, 2025, Plaintiffs filed a motion for a temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b) ("TRO"). ECF No. 10 ("Mot."). Plaintiffs ask the Court to temporarily enjoin Defendants from taking any enforcement action against them arising directly or indirectly from the termination of Plaintiffs' Student and Exchange Visitor Information Systems ("SEVIS") records[1] and possible revocation of their F-1 visa, and enjoin any legal effect that otherwise may be caused by the termination of Plaintiffs' SEVIS statuses or the potential unlawful revocation of their F-1 visas. Mot. at 1, 22.

---

[1] SEVIS is "the web-based system that [DHS] uses to maintain information regarding: . . . F-1 . . . students studying in the United States[.]" About SEVIS, Department of Homeland Security, https://studyinthestates.dhs.gov/site/about-sevis (last visited April 17, 2025).

United States District Court
Northern District of California

## I.     BACKGROUND

The limited record before the Court indicates that Plaintiffs S.Y., Z.D., Y.W., H.G., and W.X. are each individuals who are present in the United States on an F-1 visa and are maintaining their status by being either current students or employed pursuant to post-graduate optional practical training ("OPT") employment authorization in this District.  Compl. ¶ 1.  This Court granted Plaintiffs leave to proceed under pseudonyms.  ECF No. 11.

Plaintiff S.Y. is a current graduate student in this District.  Compl. ¶ 35.  Plaintiff S.Y. first came to the United States in 2013 as an undergraduate student, on a student visa.  *Id.* ¶ 36.  Plaintiff S.Y.'s visa was renewed on multiple occasions, including most recently in 2024.  *Id.* ¶¶ 37-38.  On or about April 8, 2025, S.Y. received notice from their university that their SEVIS status was terminated; it is unclear who terminated S.Y.'s SEVIS status, but Plaintiff was informed that it was not the university.  *Id.* ¶¶ 39-41.  According to the university, the reason cited in SEVIS for the termination was "Otherwise Failing to Maintain Status – Individual identified in criminal records check and/or has had their visa revoked."  *Id.* ¶ 40; Decl. Zachary Nightingale in Support of Compl. ("Nightingale Compl. Decl.") ¶ 5, Ex. B.  Plaintiff S.Y. acknowledges a 2018 misdemeanor conviction for driving under the influence (for which S.Y. paid a fine and completed classes) but alleges it was not a crime of violence and did not carry a potential sentence of more than one year.[2]  *Id.* ¶ 45.  On or about April 9, 2025, Plaintiff S.Y. received notice from the U.S. Department of State that their F-1 visa had been revoked.  *Id.* ¶ 44.

Plaintiff Z.D. is currently employed pursuant to post-graduate OPT employment authorization, which is authorized through their F-1 student status, in this District.  *Id.* ¶ 46.  Plaintiff Z.D. first came to the United States in 2021 as an undergraduate student, on a student visa, and earned both undergraduate and graduate degrees.  *Id.* ¶ 47.  On or about April 4, 2025, Plaintiff Z.D. received notice from the Student and Exchange Visitor Program ("SEVP") that their SEVIS status was terminated.  *Id.* ¶ 48.  It is unclear who terminated Plaintiff Z.D.'s SEVIS status, but Plaintiff was not informed that the university terminated their SEVIS status.  *Id.* ¶ 52.

---

[2] Pursuant to 8 C.F.R. section 214.1(g), only a crime of violence and for which a sentence of more than one year imprisonment may be imposed constitutes a failure to maintain status.

United States District Court
Northern District of California

1  According to SEVP, the reason cited in SEVIS for the termination was "Otherwise Failing to

2  Maintain Status – Individual identified in criminal records check and/or has had their visa

3  revoked." *Id*. ¶ 49; Nightingale Compl. Decl. ¶ 5, Ex. F.  Plaintiff Z.D. acknowledges a 2024

4  misdemeanor conviction for disturbing the peace (for which Z.D. paid a fine) but alleges it was not

5  a crime of violence and did not carry a potential sentence of more than one year.  *Id*. ¶ 55.  On or

6  about April 4, 2025, Plaintiff Z.D. received an email from do-not-reply.SEVP@ice.dhs.gov stating

7  that Z.D.'s OPT authorization period has ended.  *Id*. ¶ 50.  On or about April 6, 2025, Plaintiff

8  Z.D. also received notice from the U.S. Department of State that their F-1 visa had been revoked.

9  *Id*. ¶ 51.

10  Plaintiff Y.W. is a current undergraduate student in this District.  *Id*. ¶ 57.  Plaintiff Y.W.

11  first came to the United States in 2021 as an undergraduate student, on a student visa.  *Id*. ¶ 58.

12  On or about April 4, 2025, Plaintiff Y.W. received a phone call from their university informing

13  Y.W. that their SEVIS status was terminated.  *Id*. ¶ 61.  Plaintiff Y.W. is unaware of the factual

14  basis for the termination of their SEVIS status; it is unclear who terminated Y.W.'s SEVIS status,

15  but Plaintiff was informed that it was not the university.  *Id*. ¶¶ 61-63.  Plaintiff Y.W. does not

16  have any criminal arrest or conviction, including no conviction for a crime of violence with a

17  potential sentence of more than one year.  *Id*. ¶ 65.  Plaintiff Y. W. acknowledges that they were

18  previously deported in 2022 (when Y.W. left the country and reentered while transiting to another

19  country), which was not a criminal matter, and Y.W. subsequently applied for another F-1 visa,

20  which the United States granted.  *Id*.  ¶¶ 59, 65.  Plaintiff Y.W. has not received notice that their

21  F-1 visa has been revoked.

22  Plaintiff H.G. is a current graduate student in this District.  *Id*. ¶ 66.  Plaintiff H.G. first

23  came to the United States in 2019 as an undergraduate student, on a student visa, and earned an

24  undergraduate degree.  *Id*. ¶ 67.  On or about April 4, 2025, Plaintiff H.G. received notice from

25  their university that their SEVIS status was terminated; it is unclear who terminated H.G.'s SEVIS

26  status, but Plaintiff was informed that it was not the university.  *Id*. ¶ 69.  According to the

27  university, the reason cited in SEVIS for the termination was "Otherwise Failing to Maintain

28  Status – Individual identified in criminal records check and/or has had their visa revoked."  *Id*. ¶

United States District Court
Northern District of California

70; Nightingale Compl. Decl. ¶ 5, Ex. L.  Plaintiff H.G. acknowledges a 2021 arrest for which all changes were dismissed; this is not a conviction, nor a conviction for a crime of violence with a potential sentence of more than one year.  *Id*. ¶ 74.  Plaintiff H.G. has not received notice that their F-1 visa has been revoked.

Plaintiff W.X. is currently employed pursuant to post-graduate Science, Technology, Engineering, and Mathematics OPT employment authorization in this District.  *Id*. ¶ 75.  Plaintiff W.X. first came to the United States in 2017 as a high school student, on a student visa, and earned a high school diploma, and both undergraduate and graduate degrees.  *Id*. ¶ 76.  On or about April 4, 2025, Plaintiff W.X. received notice from the university where they obtained their graduate degree, which oversees their post-graduate employment authorization, that their SEVIS status was terminated; it is unclear who terminated Plaintiff W.X.'s SEVIS status, but Plaintiff was informed that it was not the university.  *Id*. ¶¶ 77-80.  According to the university, the reason cited in SEVIS for the termination was "Otherwise Failing to Maintain Status" with the "additional SEVP explanation [as] 'Individual identified in criminal records check and/or has had their VISA revoked.'"  *Id*. ¶ 78; Nightingale Compl. Decl. ¶ 5, Ex. O.  Plaintiff W.X. acknowledges a 2024 arrest for which no charges were filed.  *Id*. ¶ 83.  This is not a conviction, nor a conviction for a crime of violence with a potential sentence of more than one year.  On or about April 9, 2025, Plaintiff W.X. received notice from the U.S. Department of State that their F-1 visa had been revoked.  *Id*. ¶ 82.

## II.    LEGAL STANDARD

The Court may issue a TRO without notice to the adverse party only if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b)(1).  In addition, this District's Civil Local Rules require that a TRO application be accompanied by "[a] declaration by counsel certifying that notice has been provided to the opposing party, or explaining why such notice could not be provided."  Civ. L.R. 65-1(a)(5).

4

United States District Court
Northern District of California

1    Courts use the same standard for issuing a temporary restraining order as that for issuing a

2    preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017)

3    ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially

4    identical." (internal quotation marks and citation omitted)). An injunction is a matter of equitable

5    discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that

6    the plaintiff is entitled to such relief." *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 22

7    (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to

8    succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary

9    relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public

10    interest." *Id.* at 20. Courts may still issue a preliminary injunction if a "plaintiff can only show

11    that there are serious questions going to the merits – a lesser showing than likelihood of success on

12    the merits," if the balance of equities "tips sharply in the plaintiff's favor" and the plaintiff

13    establishes that they are likely to suffer irreparable harm and that an injunction is in the public

14    interest. *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation

15    marks and citations omitted).[3]

16    **III.    DISCUSSION**

17    Although "very few circumstances" justify the issuance of an *ex parte* temporary

18    restraining order, based on the Court's review of Plaintiffs' motion, allegations in the complaint,

19    and relevant authorities, the Court finds that Plaintiffs have met the requirements for an

20    emergency *ex parte* TRO. The Court is satisfied that Plaintiffs have demonstrated that there are

21    serious questions going to the merits of their claims under the Administrative Procedure Act, and

22    have further established that they are likely to succeed on the merits. Plaintiffs' counsel notes that

23    they have reached out to the Office of the United States Attorney about this matter and the

24    pending motion. Decl. Zachary Nightingale in Support of Mot. ¶ 2-3, ECF No. 10-1. Plaintiffs'

25    counsel indicates that "Defendants' counsel stated via email that they have notified Defendants of

26    this case, but that Defendants cannot stipulate to the terms proposed by the temporary restraining

27    _____

28    [3] Where, as here, the Government is a party, the last two *Winter* factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

1    order at this time." *Id*. ¶ 4.

2            Plaintiffs argue the termination of a SEVIS record is a final agency action for purposes of

3    the APA. *See, e.g., Fang v. Dir. U.S. Immigr. & Customs Enf't,* 935 F.3d 172, 185 (3rd Cir. 2019)

4    (holding that order terminating F-1 visa status was final agency action for jurisdictional purposes).

5    Based on the record currently before this Court, Plaintiffs will likely be able to show that

6    Defendants' termination of Plaintiffs' F-1 student statuses were not in compliance with 8 C.F.R.

7    § 214.1(d), and were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

8    with the law. *See* 5 U.S.C. § 706(2)(A); *see also e.g.*, *Roe v. Noem*, No. CV 25-40-BU-DLC, 2025

9    WL 1114694, at *3 (D. Mont. April 15, 2025) (granting TRO on APA claim on similar facts:

10   student alleged DHS unlawfully terminated F1-status in SEVIS system and cited reasons did not

11   comport with statutory or regulatory requirements); *Isserdasani v. Noem*, No. 25-cv-283-WMC,

12   2025 WL 1118626, at *6 (W.D. Wis. Apr. 15, 2025) (same).  In the last week, throughout the

13   United States, current and former students with F-1 visas have been granted temporary injunctive

14   relief following their SEVIS records being terminated. *Liu v. Noem*, Case No. 1:25-cv-00133-SE-

15   TSM (D.N.H. Apr. 10, 2025); *Wu v. Lyons,* Case No. 1:25-cv-01979-NCM (E.D.N.Y. Apr. 11,

16   2025); *Isserdasani*, 2025 WL 1118626, at *3; *Hinge v. Lyons*, Case No. 1:25-cv-01097 (D.D.C.

17   Apr. 17, 2025); *Arizona Student DOE #2 v. Trump*, Case No. 4:25-cv-00175-AMM (D. Ariz. Apr.

18   15, 2025); *Jin v. Noem*, Case No. 0:25-cv-01391-PJS-DLM (D. Minn. Apr. 17, 2025).

19           The Court also finds that Plaintiffs have shown the likelihood of irreparable harm absent

20   relief.  Plaintiffs allege that they are current at risk of unlawful enforcement action by Defendants

21   including arrest and detention, which would likely lead to them being transferred to another

22   jurisdiction far away from their communities, and deportation.  Mot. at 18.  Plaintiffs additionally

23   allege that they have been experiencing high levels of stress and anxiety since the termination of

24   their SEVIS records.  Mot. at 19.  Moreover, Plaintiffs allege that termination of their SEVIS

25   records is likely to lead to the discontinuation of their studies or their inability to continue their

26   OPT employment, jeopardizing Plaintiffs' academic and career trajectories.  *Id*.  Plaintiffs have

27   shown that, without a TRO, they will suffer irreparable harm for which an award of monetary

28   damages would not be sufficient.  The Court's conclusion on this factor is further supported by the

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1    Government's refusal stipulate to the terms proposed by the temporary restraining order, which

2    included the agreement not to arrest or deport Plaintiffs during the pendency of this action.

3          In its analysis the Court has considered: the limited scope of this TRO; the serious possible

4    consequences to Plaintiffs, including loss of education, employment, arrest, and/or deportation;

5    and the public interest served by our government respecting due process, compliance with the

6    APA, and other federal laws – interests fundamental to our historic values.  *See Marbury v.*

7    *Madison*, 5 U.S. 137, 163 (1803) ("The government of the United States has been emphatically

8    termed a government of laws, and not of men.").  The Court finds that both the balance of the

9    hardships, and whether injunctive relief is in the public interest, weigh in Plaintiffs' favor.

10         Finally, under the circumstances of this case and because the TRO should not result in any

11   financial damage to Defendants, the Court waives the requirement that Plaintiff give an amount of

12   security.

13   **IV.    CONCLUSION**

14         Accordingly, the Court GRANTS Plaintiffs' motion for a TRO to preserve the status quo

15   pending further briefing and a hearing on this matter.  The Court shall hold an in-person hearing

16   on Friday, April 25, 2025, at 9:00 a.m.  Defendants shall file a response to Plaintiffs' motion by no

17   later than April 21, 2025, at 11:00 a.m.  Plaintiff shall file a reply by no later than April 23, 2025,

18   at 11:00 a.m.

19         IT IS FURTHER ORDERED as follows:

20   (1) Defendants are enjoined for 14 days from arresting and incarcerating Plaintiffs pending
         resolution of these proceedings. 5 U.S.C. § 705; and

21

22   (2) Defendants are enjoined for 14 days from transferring Plaintiffs outside the jurisdiction
         of this District pending the resolution of these proceedings. 5 U.S.C. § 705; and

23   (3) Defendants are enjoined for 14 days from imposing any legal effect that otherwise may
         be caused by the termination of Plaintiffs' SEVIS statuses or the potential unlawful
24       revocation of their F-1 visas. 5 U.S.C. § 705; § 706(2)(A), (C)-(D); and

25   (4) The parties shall redact or file any information identifying Plaintiffs under seal; and

26   (5) Defendants' counsel are prohibited from sharing any information about Plaintiffs'
         identities or related personal information beyond what is reasonably necessary for the
27       litigation (including to comply with Court orders) and to prohibit use of the
         information for any purpose outside of the litigation; and

28

(6) Plaintiffs shall serve Defendants with this Order forthwith and provide proof of service on the docket by no later than April 18, 2025, by 1:00 p.m.

**IT IS SO ORDERED.**

Dated: April 17, 2025 at 4:45 p.m.

Noël Wise
United States District Judge

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF NextGen 1.8 (rev. 1.8.3)
### Eastern Division

Parth Atul Chatwani

                     Plaintiff,

v.                                 Case No.: 1:25–cv–04024
                                      Honorable Sharon Johnson Coleman

Kristi Noem, et al.

                     Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, April 16, 2025:

      MINUTE entry before the Honorable Sharon Johnson Coleman: Motion hearing held on 4/16/2025. Plaintiff filed a Complaint [1] for habeas corpus, declaratory judgment, and injunctive relief stemming from Defendants' termination of Plaintiff's Student and Exchange Visitor Information Systems ("SEVIS") record. Plaintiff alleges that U.S. Immigration and Customs Enforcement ("ICE") through the Student and Exchange Visitor Program ("SEVP") uses SEVISD to monitor international students' compliance with their F–1 visa status. Plaintiff contends that SEVP terminated Plaintiff's SEVIS record with the stated reason of "Other Individual identified in criminal records check and/or has had their VISA revoked." Plaintiff alleges that he does not have a criminal record nor has he violated, nor received notice of, revocation of his F–1 visa. Plaintiff filed a Motion for Temporary Restraining Order [8] requesting the Court enjoin Defendants from terminating his SEVIS record, and requiring them to reactivate his SEVIS record so he may resume his Optional Practice Training ("OPT") and enjoin Defendants from detaining him and transferring him outside the jurisdiction of this Court. The motion was presented to the Court on 4/16/25. After brief oral argument, Defendants requested time to respond to the motion. Defendants to respond by 4/17/25 at 5 p.m. CST. Plaintiff to reply by 4/18/25 at 5 p.m. Once fully briefed, the Court will take the motion under advisement. During the pendency of the motion, the Court orders the Plaintiff may not be moved anywhere, outside of this Court's jurisdiction, and Plaintiff may not be detained for immigration purposes in any way, shape or form. The Court sets this matter for status on 4/21/25 at 8:45 a.m. CST. The Court directs Plaintiff to properly serve the Complaint and motion to Defendants. Mailed notice. (ym)

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

C. S. *and* D.T.,

                 *Plaintiffs*,

     v.

KRISTI NOEM, *et al*,

                 *Defendants*.

Civil Action No. 2:25-cv-477

Hon. William S. Stickman IV

## **ORDER OF COURT**

AND NOW, this __15__ day of April 2025, IT IS HEREBY ORDERED that the Motion for a Temporary Restraining Order (ECF No. 7) IS GRANTED IN PART AND DENIED IN PART for the reasons set forth on the record at the evidentiary hearing this day. A temporary restraining order is DENIED as to any governmental agency or officer altering information about Plaintiffs' status on the Student and Exchange Visitor Information System ("SEVIS"). A temporary restraining order is GRANTED in that Defendants are prohibited from upsetting the status quo as to instituting, commencing, or beginning deportation processes against the two named Plaintiffs during the pendency of the Motion for Preliminary Injunction (ECF No. 11). The bond requirement of Federal Rule of Civil Procedure 65 is waived.

IT IS FURTHER ORDERED that the Court will conduct a hearing on the Motion for Preliminary Injunction (ECF No. 11) on **Friday, April 25, 2025 at 8:00 AM**. Briefs in support of or opposition to Plaintiffs' Motion for Preliminary Injunction (ECF No. 11) shall be filed by **Wednesday, April 23, 2025 at 4:00 PM**.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Chengkai Zhou a/k/a Edward Zhou, )  Case No. 2:25-cv-02994-CV(SKx)
 )
Plaintiff, )  **ORDER GRANTING PLAINTIFF'S**
 )  **APPLICATION FOR TEMPORARY**
v. )  **RESTRAINING ORDER**
Todd M. Lyons, Acting Director, U.S. )
Immigration and Customs Enforcement, )
 )
Defendant. )
_____ )

On April 7, 2025, Plaintiff Chengkai Zhou, a/k/a Edward Zhou ("Plaintiff") filed a complaint (Doc. # 1, "Compl.") and an Application for Temporary Restraining Order or in the Alternative Preliminary Injunction ("Application") (Doc. #11, "App.") against Defendant Todd M. Lyons, the acting director of the U.S. Immigration and Customs Enforcement ("ICE") (the "Government"). On April 10, 2025, Plaintiff filed a Supplement to its Application ("Supplement"). (Doc # 15, "Suppl."). On April 11, 2025, the Government filed its opposition brief to Plaintiff's Application ("Opposition"). (Doc # 17, "Opp'n).

The Application was heard on April 15, 2025. Having considered the briefing and the parties' oral arguments, and for the reasons discussed below, the Court GRANTS the Application.

# INTRODUCTION

Plaintiff alleges that ICE terminated Plaintiff's Student and Exchange Visitor Information System ("SEVIS") record and F-1 student status, and that the termination violated the Administrative Procedure Act and Plaintiff's due process rights under the Fifth Amendment. Compl. ¶ 47–50. Plaintiff asks the Court to "enjoin the effects of [ICE's] termination of Plaintiff's SEVIS record and F-1 status." App. at 15.

# FACTUAL BACKGROUND

The present dispute arises from the Government's termination of Plaintiff's F-1 status in SEVIS, an online database that stores information regarding international students. Compl. at p. 1–2. Such information includes the student's start date, academic progress, and graduation date, which schools must enter into SEVIS. *Id.* ¶ 18. The Student Exchange Visitor Program ("SEVP"), which ICE operates, monitors SEVIS to determine whether students are maintaining their student status. *Id.* ¶¶ 16, 19. If a student does not maintain their status, ICE (through SEVP) can terminate the student's SEVIS record and, along with it, the student's F-1 status. Consequently, the student would be barred from continued studies in the United States. *See Id.* ¶¶ 21–27.[1] According to the Complaint, ICE considers students who have their SEVIS records terminated as nonimmigrants without status, and such students are expected to leave the United States. *Id.* ¶ 22. Moreover, a student's F-1 status in the SEVIS system is distinguishable from an F-1 visa—F-1 status allows a student to seek education in the United States, *see* 8 C.F.R. § 214.2(f)(5)(i) (permitting students to seek a full course of study during the time period the student is "maintaining status"), while an F-1 visa permits a student to enter the United States based on having F-1 status. *See* 8 U.S.C. § 1101(a)(15)(F). A student

---

[1] At the hearing, the Government argued that a termination of a student's SEVIS record does not constitute a termination of the student's F-1 status. However, the Government did not make this argument in the Opposition and there is currently no such evidence in the record. Accordingly, the Court declines to consider this argument at this time.

cannot have an F-1 visa without having F-1 status; accordingly, if a student's F-1 status is terminated in the SEVIS system, so is the student's F-1 visa. *See* Compl. ¶ 38.

Plaintiff, a citizen and national of the People's Republic of China, has been a student at the University of California, Los Angeles ("UCLA") since 2021. Doc. #1–2 ¶¶ 3–4, "Zhou Decl." On June 25, 2021, after accepting an offer to attend UCLA, Plaintiff received an F-1 student visa. *Id.* ¶ 5. On September 17, 2021, Plaintiff was admitted through the port of entry at the Los Angeles International Airport as an F-1 student. *Id.* ¶ 6. Plaintiff has since been attending classes at UCLA and expects to graduate in a few months. *Id.* ¶ 7. Plaintiff has been paying an annual tuition of $15,154 plus an annual "nonresident supplemental tuition" of $34,200. *Id.* ¶ 10. Plaintiff approximates his annual cost to attend UCLA, including room and board, at $75,000. *Id.* As a result of losing his F-1 status, Plaintiff cannot attend classes and finish his degree. *Id.* ¶ 24.

On April 3, 2025, Plaintiff received an email from UCLA's international student office explaining that his SEVIS record had been terminated. *Id.* ¶ 15, Ex. B. The email cited to a notation made by the Department of Homeland Security ("DHS") in SEVIS, which stated in relevant part: "TERMINATION REASON: OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." *Id.* ¶ 16, Ex. B. Plaintiff was not provided with any notice or opportunity to respond. *Id.* Ex. 17. Since Plaintiff's F-1 visa was revoked two days later on April 5, 2025, Plaintiff presumes that his SEVIS record was terminated due to a prior brush with the law, but he does not know for certain since ICE never provided an explanation. *Id.* ¶¶ 11-15. Plaintiff was never charged with a crime and has no criminal record. *Id.* ¶¶ 12-14, Ex. A.

## LEGAL STANDARD

Courts analyze motions for TROs and motions for preliminary injunctions in substantially the same manner. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A TRO or a preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to

such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a TRO or preliminary injunction must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. 7, 20. The third and fourth factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## DISCUSSION

### I.  Jurisdiction

As a preliminary matter, the Government challenges the Court's jurisdiction to review this matter on the basis that ICE's termination of Plaintiff's SEVIS record is not "final." The Government argues that the termination is not final because (1) Plaintiff has not exhausted administrative processes identified on the DHS website, and (2) Plaintiff is subject to removal proceedings, during which Plaintiff can challenge the termination in an immigration court. Opp'n at 4–5. The Court disagrees. With regards to the Government's first point, "the exhaustion of administrative remedies [is] 'a prerequisite to judicial review only when [1] expressly required by statute or [2] when an administrative rule requires appeal before review and the administrative action is made inoperative pending that review.'" *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 181 (3d Cir. 2019) (quoting *Darby v. Cisneros*, 509 U.S. 137, 154, (1993)). The Government has not pointed to any statute or administrative rule requiring Plaintiff to pursue the administrative processes described in the Opposition. With regards to the Government's second point, "the finality of an order cannot be conditioned on something that may never happen." *Fang*, 935 F.3d at 184. Here, there is no guarantee that the government will initiate removal proceedings against Plaintiff, and the mere possibility of removal proceedings does not negate the finality of the termination.

Accordingly, for purposes of the Application, the Court finds that it has jurisdiction to review this case. However, the Court acknowledges that any party may, at any time, challenge a court's subject-matter jurisdiction.

## II.  Application for TRO

After considering the Application, the exhibits attached thereto, the Opposition, and the parties' oral argument during the April 15 hearing, the Court finds that Plaintiff has met each of the elements required for a TRO. [2]

*First*, Plaintiff has shown a likelihood of success on the merits of his claim that the Government violated the APA when it terminated Plaintiff's SEVIS record and, in effect, his F-1 status. Based on the record before the Court, Plaintiff is likely to show that ICE exceeded its legal authority in terminating Plaintiff's SEVIS record by failing to comply with 8 C.F.R. § 214.1(d), and that the termination was arbitrary, capricious, an abuse of discretion, or otherwise unlawful.[3] *See* 5 U.S.C. § 706(2)(A). The Government did not address Plaintiff's arguments that ICE exceeded its authority, nor did the Government provide any information to the contrary at the hearing.

*Second*, Plaintiff established that he would suffer irreparable harm absent a TRO. The record shows that Plaintiff lost his F-1 status and, in turn, his ability to attend classes, effectively denying Plaintiff the ability to complete his degree. "The loss of timely academic progress alone is sufficient to establish irreparable harm." *Liu v. Noem*, 1:25-cv-00133-SE-TSM, slip op. at 4. The record also shows that, without F-1 status, Plaintiff is subject to arrest, deportation, and accruing unlawful presence. Finally, the evidence indicates that the possibility of deportation and not being able to complete his education is causing Plaintiff emotional harm. Monetary damages alone would not be sufficient to compensate Plaintiff for these harms.

---

[2] The Government was given notice and an opportunity to be heard, however, Government's counsel asked the Court to treat the Application as a request for a TRO and not a preliminary injunction given the condensed briefing schedule. The Court agrees and will limit its consideration to the issue of a temporary restraining order at this time. *See Midkiff v. US Bancorp*, No. CV 12-3262-VBF (Ex), 2012 WL 12882431, at *2 (C.D. Cal. May 14, 2012) ("[I]nformal notice and hearing does not [automatically] convert the temporary restraining order into a preliminary injunction of unlimited duration," which would require "a meaningful opportunity to prepare for the hearing[.]")

[3] Since Plaintiff has established a likelihood of success on the merits on these grounds, the Court declines to address Plaintiff's due process arguments at this time.

*Third*, Plaintiff has established that both the balance of hardships and the public interest weigh in favor of injunctive relief. The Government's only argument on these factors was that "[t]he public interest lies in the Executive's ability to enforce U.S. immigration laws" and that "control over immigration is a sovereign prerogative." Opp'n at 9. But the record suggests that the Government's termination of Plaintiff's SEVIS record exceeded the Government's legal authority. And the Government has made no showing that the requested relief of temporarily restoring Plaintiff's F-1 status while the Court considers whether the termination was proper would interfere with the Government's ability to lawfully enforce immigration laws. On the other hand, Plaintiff has shown that he will suffer irreparable harm from a potentially unlawful agency action. Accordingly, the Court finds that these two factors weigh in Plaintiff's favor.

Finally, the Court denies the Government's request that Plaintiff provide security pursuant to Fed. R. Civ. P. 65(c). The Court exercises its discretion to waive the bond requirement. *See Diaz v. Brewer,* 656 F.3d 1008, 1015 (9th Cir. 2011).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's application for a TRO is GRANTED. The parties shall meet and confer regarding an appropriate briefing and argument schedule for a preliminary injunction hearing.

The Government's decision to terminate Plaintiff's F-1 student status in SEVIS is hereby set aside pending further order from the Court. The Government is enjoined from terminating Plaintiff's F-1 status in SEVIS pending further order from the Court.

IT IS SO ORDERED

DATED: 4/15/25

*Cynthia Valenzuela*

HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

XINYUAN WU, *et al.*,

Plaintiffs,

– against –

TODD M. LYONS,

Defendant.

**TEMPORARY RESTRAINING ORDER**
25-cv-01979 (NCM)

---

**NATASHA C. MERLE**, United States District Judge:

**WHEREAS**, upon review of plaintiffs' motion for a temporary restraining order, the accompanying declarations and the exhibits attached thereto, the memorandum of law submitted in support, as well as the parties' arguments raised during the April 11, 2025, hearing on plaintiffs' motion, and for good cause shown; and

**WHEREAS**, for the reasons set forth on the record, the Court finds that plaintiffs have shown by a preponderance of the evidence a likelihood of success on the merits of their claim pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 551, *et seq.*, that plaintiffs will likely suffer irreparable harm which cannot be remedied by money damages, and that the balance of hardships and public interest weigh in favor of temporary injunctive relief; it is hereby

**ORDERED** that, pending further order of this Court, defendant is enjoined from terminating plaintiff Wu's Student and Exchange Visitor Information System ("SEVIS") record and F-1 visa status; and it is further

1

**ORDERED** that, pending further order of this Court, defendant must set aside its decision to terminate plaintiffs' visa statuses and plaintiff Wu's SEVIS record; and it is further

**ORDERED** that this temporary restraining order shall be in effect for a period of fourteen (14) days from the entry hereof, after which it shall expire absent further order of the Court; and it is further

**ORDERED** that the bond requirement of Rule 65(c) is waived; and it is finally

**ORDERED** that by April 16, 2025, the parties shall meet and confer and submit an appropriate briefing schedule for plaintiffs' motion for a preliminary injunction, which must conclude no later than April 22, 2025, so that the Court may hold a hearing by April 24, 2025, if necessary.

_/s/ Natasha C. Merle_
NATASHA C. MERLE
United States District Judge

Issued:  April 11, 2025
Brooklyn, New York

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

<table>
<tr><td>

HUADAN ZHENG,
a/k/a CARRIE ZHENG,

    Plaintiff,

    v.

TODD LYONS, Acting Director, U.S.
Immigration and Customs Enforcement,

    Defendant.

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

Civil Action No. 25-cv-10893-FDS

</td></tr>
</table>

## <u>TEMPORARY RESTRAINING ORDER</u>

**SAYLOR, C.J.**

After reviewing the complaint, the application for a temporary restraining order, and related filings, for good cause shown, and pursuant to Fed. R. Civ. P. 65, the Court hereby orders as follows:

1.     Defendant Todd Lyons, Acting Director, United States Immigration and Customs Enforcement, and any agents acting under his authority or control, are temporarily restrained (a) from arresting or detaining plaintiff Huadan Zheng, a/k/a Carrie Zheng, under 8 U.S.C. § 1226(a), or otherwise for being unlawfully present in the United States without legal permission or authority, based on the termination or revocation of her F-1 student visa, or (b) if plaintiff has already been arrested or detained, transferring her outside the District of Massachusetts, until 5:00 p.m. on Wednesday, April 16, 2025.  This order is subject to such further extension by the Court as may be appropriate

2.     This order is issued without notice to the United States because there are specific facts set out in the affidavits and pleadings that clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the United States can be heard in opposition and the

movant's attorney has certified in writing any efforts made to give notice to the United States and the reasons why it should not be required.

3.     Plaintiff is ordered to serve a copy of this Temporary Restraining Order, the Complaint, the Summons, and the Motion and Application for Temporary Restraining Order and related filings on the United States Attorney for the District of Massachusetts by 11:59 p.m. on Friday, April 11, 2025, and to complete service in accordance with Fed. R. Civ. P. 4(i)(2) by 5:00 p.m. on Monday, April 14, 2025.

4.     Defendant shall file any opposition or response to the application for a temporary restraining order by the close of business on Wednesday, April 16, 2025.

5.     A hearing shall be held on Thursday, April 17, 2025, at 3:30 p.m., in Courtroom 10.

 **So Ordered.**

<div style="margin-left:45%">

/s/ F. Dennis Saylor IV_____
F. Dennis Saylor IV
Chief Judge, United States District Court

</div>

Dated at Boston, Massachusetts, April 11, 2025, 3:15 p.m.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Xiaotian Liu

      v.                                        Case No. 25-cv-133-SE

Kristi Noem et al.

# O R D E R

On April 7, 2025, Plaintiff Xiaotian Liu brought suit against Kristi Noem, the Secretary of the Department of Homeland Security, and Todd Lyons, the Acting Director of Immigration and Customs Enforcement, alleging that DHS unlawfully terminated his F-1 student status in the Student and Exchange Visitor ("SEVIS")[1] system. He alleges, among other things, that DHS violated his due process rights under the Fifth Amendment and violated the Administrative Procedure Act when it terminated his status in the system. Liu filed a motion for a temporary restraining order with his complaint, requesting a TRO "(i) enjoining Defendants from terminating Plaintiff's F-1 student status under the Student and Exchange Visitor (SEVIS) system and (ii) requiring Defendants to set aside their termination determination." Doc. no. 2 at 1.

The court held a brief video hearing on April 7. Although Liu filed a motion for a TRO, his attorneys communicated with the defendants' attorney, who was able to attend the hearing. The parties agreed that the court should not consider the motion for a TRO at that hearing and that they would confer regarding a potential briefing schedule and provide the court with a status update on or before April 9.

---

[1] SEVIS is "the web-based system that [DHS] uses to maintain information regarding: . . . F-1 . . . students studying in the United States[.]" About SEVIS, Department of Homeland Security, https://studyinthestates.dhs.gov/site/about-sevis (last visited April 10, 2025).

On the evening of April 8 and the early morning of April 9, Liu filed two addenda to his motion for a TRO. See doc. nos. 7 and 8. In the latter addendum, Liu stated that because of the "potential immigration detention and deportation in light of the F-1 student status termination, on April 7, 2025, Plaintiff's counsel attempted to receive assurance from Defendants' counsel that Defendants would not arrest, detain, or place him in removal proceedings during the pendency of [litigation regarding the] temporary restraining order and preliminary injunction." Doc no. 8 at 3. Liu added that his "counsel could not receive such assurances from Defendants' counsel." Id. He therefore notified the defendants' counsel that he would pursue his motion for a TRO immediately and he requested an emergency hearing. The court held that hearing on April 9, and counsel for both Liu and the defendants appeared.

As explained at the hearing, although the defendants were given notice and an opportunity to be heard, the court does not convert the motion for a TRO into a motion for a preliminary injunction. The defendants' counsel acknowledged at the hearing that he had not had adequate time to investigate certain of Liu's factual allegations or evaluate properly the legal bases on which Liu's motion rests. Therefore, the court construes Liu's motion as a request for the provisional remedy of a TRO with notice, which essentially seeks to avoid irreparable harm until the defendants are able to review the factual record and develop their legal arguments sufficiently to address the request for preliminary relief.

In evaluating a motion for a TRO, the court considers the same four factors that apply to a motion for a preliminary injunction. Karlsen v. Town of Hebron, Civ. No. 18-cv-794-LM, 2018 WL 11273651, at *1 (D.N.H. Sept. 28, 2018). Those four factors include "(i) the likelihood that the movant will succeed on the merits; (ii) the possibility that, without an injunction, the movant will suffer irreparable harm; (iii) the balance of relevant hardships as between the parties; and

Ex. 13-19
Case No. 3:25-cv-00042-SMR-WPK

(iv) the effect of the court's ruling on the public interest." Coquico, Inc. v. Rodríguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009). "The first of these four factors normally weighs heaviest in the decisional scales." Id. When, as here, the defendants are government officials sued in their official capacities, the balance of the hardships and the public interest factors merge. Does 1-6 v. Mills, 16 F.4th 20, 37 (1st Cir. 2021).

After considering Liu's motion for a TRO, the exhibits attached thereto, and the addenda, as well as the parties' oral argument during the April 9 hearing, the court granted Liu's motion for a TRO on the record at the hearing.

Liu has shown a likelihood of success on the merits of his claim in Count 2, that DHS violated the APA when it terminated his F-1 student status in the SEVIS system. Based on the record before the court, Liu is likely to show that DHS's termination of his F-1 student status was not in compliance with 8 C.F.R. § 214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. See 5 U.S.C. § 706(2)(A). The defendants did not offer any legal or factual argument contradicting Liu's likelihood of success on the merits of Count 2 during the hearing.[2]

Because DHS terminated Liu's F-1 student status in the SEVIS system, he is no longer authorized to work as a research assistant or participate in any research, and he is no longer eligible to receive any stipend from his Ph.D. program at Dartmouth College. There is uncontroverted evidence that due to his inability to participate in research, Dartmouth must require him to disenroll from his current courses so that Dartmouth can remain in compliance

---

[2] Because the court finds that Liu has shown a likelihood of success on the merits of his APA claim in Count 2, it does not address at this time his claim in Count 1 that DHS violated his due process rights under the Fifth Amendment when it terminated his F-1 status in the SEVIS system.

with federal law. Additionally, it may be too late to forestall this requirement by the time the defendants are prepared to be heard on the preliminary injunction. These circumstances will derail Liu's academic trajectory and ability to complete his Ph.D. program in a timely fashion. This loss of timely academic progress alone is sufficient to establish irreparable harm. Further, the change in Liu's status in the SEVIS system may expose him to a risk of detention or deportation. The defendants' inability to agree that he would not be detained or deported as a result of his status change before the defendants could be prepared to be heard on Liu's request for preliminary relief is an acknowledgement of the existence of this risk. The evidence before the court further establishes that the uncertain link between Liu's SEVIS status and the possibility of detention and deportation is causing him emotional harm. Liu has shown that, without a TRO, he will suffer irreparable harm for which an award of monetary damages would not be sufficient.

The balance of the hardships and whether injunctive relief is in the public interest both weigh in Liu's favor. The only argument that the defendants offered on these factors was a concern that a TRO in this case may interfere with ICE's ability to carry out its duties. Though the defendants did not challenge for the purposes of the April 9 hearing the allegation that Liu's SEVIS status had changed, they could not confirm that his status had changed, or if it had, whether it had been changed intentionally or as the result of an error. Nor could the defendants confirm that ICE had included Liu in any priority. At best, the defendants ask the court to avoid unintentionally interfering with ICE's ability to carry out some unstated duty. For his part, Liu points to the irreparable injury that he contends supports his request for immediate relief, as well as Congress's expressed intent to allow foreign students to pursue educational opportunities in

the United States without interference. The court finds that these two factors weigh in Liu's favor.

A TRO is necessary to avoid irreparable harm in this case. It is made more appropriate given its anticipated short duration, which is only long enough to afford the defendants the time they have requested to prepare their factual and legal responses to Liu's requests for preliminary relief.

After considering the relevant factors, the court exercises its discretion to waive the bond requirement embedded in Rule 65(c) of the Federal Rules of Civil Procedure. See Crowley v. Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen, & Packers, 679 F.2d 978, 1001 (1st Cir. 1982), rev'd on other grounds, 467 U.S. 526 (1984).


<u>Conclusion</u>

For the foregoing reasons, the plaintiff's motion for a temporary restraining order (doc. no. 2) is granted. The parties shall meet and confer regarding an appropriate briefing and argument schedule for the preliminary injunction hearing, with the hearing scheduled no later than April 23, 2025.

All defendants are (i) enjoined from terminating Mr. Liu's F-1 student status under the SEVIS [Student and Exchange Visitor] system, and (ii) required to set aside their termination determination. This order shall remain in effect until further order of the court.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

April 10, 2025
cc: Counsel of Record.

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHINMAY DEORE, et al.,

                Plaintiffs,

v.

SECRETARY OF U.S. DEPARTMENT
OF HOMELAND SECURITY, et al.,

                Defendants.

Case No. 2:25-cv-11038

HONORABLE STEPHEN J. MURPHY, III

_____/

**ORDER DENYING IN PART MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION [2]**

After the Government terminated their records in the Student and Exchange

Visitor Information System (SEVIS) database, four international students sued the

Secretary of the U.S. Department of Homeland Security and others. The students

alleged that, by terminating their SEVIS records, the Government had also

terminated their F-1 student status, which violated the Due Process Clause of the

Constitution of the United States and the Administrative Procedure Act. The

students then moved for a temporary restraining order that, *inter alia*, would force

the Government to set aside the alleged F-1 status termination while the parties

litigate the case.

According to the Government, however, SEVIS terminations do not

automatically revoke F-1 student status. The Government also represented that it

had no reason to believe that the students had lost F-1 status or were in danger of

facing removal proceedings.

1

Based on the limited record, the Court cannot conclude whether the termination of a record within the SEVIS database is synonymous with a termination of F-1 status. The parties also presented insufficient information for the Court to ascertain whether the termination of a SEVIS record—absent a termination of F-1 status, insofar as that is possible—carries legal consequences and is thus a reviewable final agency action. And the Court cannot find, based on the record before it, that the students have sufficiently developed their claim of irreparable harm. Accordingly, the Court will deny the motion for a temporary restraining order.

## BACKGROUND[1]

Chinmay Deore, Yogesh Joshi , Xiangyun Bu, and Qiuyi Yang are international students studying at the University of Michigan and Wayne State University. On April 4, 2025, the United States Department of Homeland Security terminated their records in the SEVIS database. ECF No. 14-3, PageID.168–169.

The termination reasons—at least as relayed to the students by the University of Michigan and Wayne State University—varied. The emails to Deore, Bu, and Yang said that their SEVIS records were terminated for "OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." ECF No. 1-3, PageID.39 (email to Deore); ECF No. 1-5, PageID.43 (email to Bu); ECF No. 1-6, PageID.46

---

[1] The findings of fact and conclusions of law made herein are "not determinative of a ruling on the [Preliminary Injunction] Motion or at a trial on the merits." *Burton v. Kettering Adventist Health Care*, No. 20-cv-209, 2020 WL 3265526, at *4 (S.D. Ohio June 17, 2020).

2

(email to Yang). Meanwhile, the email to Joshi said that his SEVIS record was terminated for "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." ECF No. 1-4, PageID.41 (email to Joshi). The schools advised all four students that the SEVIS terminations meant that their F-1 status had been revoked. ECF No. 1, PageID.39–43.

Soon thereafter, the students sued the Secretary of the Department of Homeland Security and other government officials and sought a temporary restraining order and a preliminary injunction. ECF No. 1; ECF. No. 2, PageID.49. The students argued that the Department's action was contrary to the Due Process Clause of the Constitution and that it violated the Administrative Procedure Act because it was arbitrary, capricious, and contrary to law. *Id.* at PageID.56.

After the Court scheduled a hearing on the emergency temporary restraining order, ECF No. 7, Yang and Joshi learned that the United States Department of State had formally revoked their visas. ECF No. 12, PageID.119–120.[2] The next day, the Government responded to the motion for an emergency TRO. ECF No. 14.

Alongside their response, the Government submitted a declaration from Andre Watson, an Assistant Director of the National Security Division of Homeland Security Investigations within U.S. Immigration and Customs Enforcement (ICE). ECF No. 14-3, PageID.165–170. Watson oversees the Student Exchange Visitor Program

---

[2] Bu has not received notification of any visa revocation, and Deore did not have a visa because he changed his immigration status to F-1 after already being in the United States. ECF 12, PageID.119–120.

3

(SEVP). *Id.* at PageID.166. SEVP tracks various nonimmigrants, including students with F-1 status, through SEVIS pursuant to 8 U.S.C. § 1372. *Id.* at PageID.167.

According to Watson, SEVP terminated the SEVIS records of the four students based on their criminal or immigration histories. *Id.* at PageID.168–169. Deore and Joshi were previously arrested for "Assault Excluding Sexual." *Id.* at PageID.168. Bu had previously been found inadmissible under Section 212 of the Immigration and Nationality Act. *Id.* And Yang was arrested for "Assault – 4th Degree" with a domestic-violence enhancement. *Id.* at PageID.169.

## LEGAL STANDARD

Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing [of] an injunction." *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18, Int'l Typographical Union*, 471 F.2d 872, 876 (6th Cir. 1972).

> When considering a motion for a temporary restraining order, the Court must examine four factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction.

*Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (applying the preliminary injunction test for review of a temporary restraining order).

The Court generally balances the four factors and should not consider them "prerequisites to the grant" of a temporary restraining order. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (citations omitted); *see also Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) ("The district judge is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue."). A Court may not, however, grant injunctive relief based only on a "possibility" of irreparable harm. *Winter*, 555 U.S. at 22.

Finally, courts routinely decline to issue injunctive relief when they cannot yet resolve novel and complex issues of law or fact. *McKay v. Federspiel*, No. 14-cv-10252, 2014 WL 1400091, at *12 (E.D. Mich. Apr. 10, 2014) (denying preliminary injunctive relief when the Court lacked the requisite facts to make necessary conclusions of law); *see also Detroit Newspaper*, 471 F.2d 872, 876 (6th Cir. 1972) (noting that injunctive relief is available only when the right is "clear," and injunctions should not be awarded in doubtful cases); *Decorative Stone Co. v. Bldg. Trades Council of Westchester Cnty.*, 13 F.2d 123, 123 (2d Cir. 1926) (noting that in the presence of "debatable questions, it is within the discretion of the court to refuse to grant a preliminary injunction on affidavits"); *First Nat'l Bank & Tr. Co. of Mich. v. Fed. Rsrv. Bank of Chi. Detroit Branch*, 495 F. Supp. 154, 157 (W.D. Mich. 1980) ("It is the Court's opinion that there can be no substantial likelihood of success where there exist complex issues of law, the resolution of which are not free from doubt."); *N.W. Controls, Inc. v. Outboard Marine Corp.*, 317 F. Supp. 698, 703 (D. Del. 1970) (finding

Ex. 13-20
Case No. 3:25-cv-00042-SMR-WPK

Page 134

no likelihood of success when "on the present record serious conflicts of both a factual and legal nature exist"); *Marilley v. McCamman*, No. C-11-02418, 2011 WL 4595198, at *1 (N.D. Cal. Oct. 3, 2011) ("In circumstances where the court finds that it cannot yet resolve 'doubtful and difficult questions of law or disputed questions of fact,' however, a preliminary injunction may not issue.").

## DISCUSSION

Plaintiffs alleged that Defendants' actions violated the APA and the Constitution. For Defendants to demonstrate a likelihood of success on the merits of either claim, however, Plaintiffs' core assumption must be correct: that their SEVIS record terminations necessarily reflect an F-1 status termination. As discussed below, the Court has reservations about whether the two terminations are necessarily linked. Those reservations, in turn, prevent the Court from concluding that Plaintiffs have demonstrated a strong likelihood of success on their APA and constitutional claims.

I.    SEVIS Record Terminations and F-1 Status Terminations

Based on the limited record and briefing before it, the Court cannot ascertain at this time whether a SEVIS record termination is always reflective of an F-1 status termination or carries with it any independent legal consequences.

First, according to Watson's declaration, a clerical change in SEVIS does not create a termination of F-1 status. ECF No. 14-3, PageID.169. Watson explained that "[t]he statute and regulations do not provide SEVP the authority to terminate nonimmigrant status by terminating a SEVIS record, and SEVP has never claimed

6

that it had terminated the nonimmigrant status of DEORE, JOSHI, BU, and YANG." *Id.*

At the motion hearing, the Government also represented that it does not currently believe that there has been any status change for any of the students, even considering the termination of the SEVIS records. *See* ECF No. 14, PageID.144–145 ("[T]he agency does not take the position that plaintiffs' lack lawful nonimmigrant status at this time or that SEVIS controls or reflects their nonimmigrant status."). Accordingly, the Government admitted that it does not currently have any basis to initiate removal proceedings against the students.

And based on Homeland Security's own website, last updated November 7, 2024, terminated records in SEVIS do not always reflect a revocation of F-1 status. Rather, "[a] terminated record in the Student and Exchange Visitor Information System (SEVIS) *could* indicate that the nonimmigrant no longer maintains F or M status."[3]

Finally, although the Secretary of State has prudentially revoked the visas of some of the students, the Government admitted that prudential visa revocation—on its own—does not automatically revoke F-1 status. ECF No. 14-3, PageID.169 ("Prudential visa revocation, absent other factors, does not make an individual [amenable] to removal"). ICE's own guidance confirms that there is no automatic

---

[3] *SEVIS Help Hub: Terminate a Student*, Department of Homeland Security, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last updated Nov. 7, 2024) (emphasis added) [https://perma.cc/7KEH-BJYQ].

connection between visa revocation and F-1 status. For example, in a 2010 letter to Designated School Officials, SEVP noted: "Some circumstances require revocation of a nonimmigrant student's visa while the nonimmigrant is in the United States and in status. Visa revocation is not, in itself, a cause for termination of the student's SEVIS record." ECF No. 2-3, PageID.94.

To be sure, both the University of Michigan and Wayne State University concluded that a status termination took place. *See, e.g.*, ECF No. 1-4, PageID.41 (warning that "your lawful status in the U.S. is terminated, and you are at risk of detention and deportation."); ECF No. 1-5, PageID.43 ("You will need to cease any employment immediately. Since this termination does not carry a grace period, we must recommend you make plans to exit the United States immediately.").

But since then, and as noted above, the Government has provided additional information and argument that may prompt the schools to reassess their view of whether a status termination has occurred. That information includes the Government's agreement with Plaintiffs that a prudential revocation of a visa does not—on its own—change a student's F-1 status, and the Government's argument that F-1 status and the non-termination of a SEVIS record are *meaningfully* distinct. *See generally Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, No. 7:18CV00189, 2018 WL 5018487, at *5 (W.D. Va. Oct. 16, 2018) (determining that SEVIS status and F-1 status are divisible).

The Government's representations are by no means dispositive, and Plaintiffs may ultimately show that termination of a SEVIS record is conclusive of a loss of F-

Ex. 13-20
Case No. 3:25-cv-00042-SMR-WPK
Page 137

1 status or carries its own legal consequences. But the Court cannot conclude based on the current record whether it is likely that any of the students have lost their F-1 status or have lost any legal rights based solely on the termination of their SEVIS record.

## II.  Temporary Restraining Order Factors

Next, the Court will analyze each of the classic temporary-restraining-order factors. Because the case proceeds against government defendants, the last two factors—balance of the equities and public interest—merge. *Busby v. Bonner*, 477 F. Supp. 3d 691, 700 (W.D. Tenn. 2020).

### A. *Likelihood of Success on the Merits*

#### i.    Administrative Procedure Act

In support of their APA claim, Plaintiffs alleged that the termination of their F-1 statuses was not in accordance with law, was arbitrary and capricious, and was contrary to a constitutional right. ECF No. 2, PageID.75. But because the record at present does not clearly support that a final agency action took place, Plaintiffs have not shown a strong likelihood of success on the merits of their APA claim.

Section 704 of the Administrative Procedures Act authorizes judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see also Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 495 (6th Cir. 2014). Courts use a two-pronged test to determine when agency action is "final": "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be

9

one by which rights or obligations have been determined, or from which legal consequences will flow." *Jama*, 760 F.3d at 495–95 (quotation and quotation marks omitted). An agency action is not final if it "only affects [the complainants'] rights adversely on the contingency of future administrative action." *Marquette Cnty. Rd. Comm'n v. U.S. Env't Prot. Agency*, 188 F. Supp. 3d 641, 647 (W.D. Mich. 2016), *aff'd*, 726 F. App'x 461 (6th Cir. 2018) (quotation omitted).

As noted above, it is not clear that the Plaintiffs' F-1 statuses were terminated alongside their SEVIS records. And substantial uncertainty over the effect of SEVIS record terminations remains—*i.e.* neither party adequately explained whether SEVIS termination alone (and not as reflective of F-1 status loss) carries any legal consequences. Thus, if Plaintiffs have not lost their F-1 status alongside their SEVIS record terminations or have not lost other rights by termination of SEVIS, then it is not clear that the SEVIS termination represents a final action "by which rights or obligations have been determined, or from which legal consequences will flow." *Jama*, 760 F.3d at 495–96 (quotation and quotation marks omitted). Given those difficult issues, the Court lacks sufficient factual information from which to determine whether there has been a final agency action. *See McKay*, 2014 WL 1400091, at *12 (denying preliminary injunctive relief when the Court lacked the requisite facts to make requisite conclusions of law).

Plaintiffs cited *Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172 (3d Cir. 2019), for the proposition that "Defendants' termination of each Plaintiff's F-1 student status is a final agency action [that the] Court has jurisdiction to review

under the APA." ECF No. 2, PageID.75. In *Jie Fang*, the Department of Homeland Security formally advised students that their SEVIS record had been terminated, that they no longer had valid F-1 status, *and* that they had to file for reinstatement of nonimmigrant status or depart from the United States immediately. 935 F.3d at 180. But *Jie Fang*'s conclusion—that the "order terminating the students' F-1 visa status was therefore a final order for jurisdictional purposes because there was no further opportunity for review," *see* 935 F.3d at 185—does not fit well with the core ambiguities of this case. Those ambiguities are whether the students retain their F-1 status and what the independent effects of a SEVIS termination are.[4]

Here, the Department of Homeland Security provided no letter and no clear indication of a status termination. For the four students who are plaintiffs here, the Government stated that it *has no reason to believe that a status change has occurred*.[5] And the Plaintiffs' brief largely proceeded on the assertion that the "termination of their F-1 *status* in SEVIS" is conclusive of their legal loss of F-1 status in fact. *See*

---

[4] Other courts have described the termination of SEVIS records—albeit by university officials rather than Government officials—as a simple "clerical duty." *See, e.g.*, *Yerrapareddypeddireddy v. Albence*, No. CV-20-01476, 2021 WL 5324894, at *8 (D. Ariz. Nov. 16, 2021), *aff'd*, No. 21-17070, 2022 WL 17484323 (9th Cir. Dec. 7, 2022); *Yunsong Zhao*, 2018 WL 5018487, at *5.

[5] There is *some* reason to believe that a status change occurred. Three Plaintiffs indicated that their records were cancelled by DHS for "otherwise failing to maintain status." *See, e.g.*, ECF No. 1-5, PageID.44. On first glance at 8 C.F.R. § 214.2(f), references to "status" seem to refer not to the status of having a SEVIS record but rather to the student's immigration status. DHS's own notes in SEVIS could provide a reason to believe that three of the students failed to maintain, and thus lost, their F-1 status. That said, given the new information presented by the Government, the Court cannot currently conclude, one way or another, whether the students actually lost their status in fact. The parties can—and should—more fully develop the point in subsequent briefing and at the preliminary injunction hearing.

11

ECF No. 2, PageID.59. That assertion may ultimately prove correct. But, absent further briefing, its veracity is not clear.

ii.     Due Process Clause

In support of their due process claim, Plaintiff contended that a due process violation occurred because Defendants received no notice of the F-1 status determination, no adequate explanation for the termination, and no adequate opportunity to respond. ECF No. 2, PageID.73. As with its analysis of the APA claim, however, the Court cannot say that the students actually lost their F-1 status, notwithstanding the termination of their SEVIS records. And so, Plaintiffs have not shown a likelihood of success on their due process claims as it relates to the as-of-yet unconfirmed F-1 status change.

The Court must next consider the process due (if any) before SEVP modifies a SEVIS record. The few courts to consider the issue have found that students could not maintain a due process claim for termination of a SEVIS record. *See Yunsong Zhao*, 2018 WL 5018487, at *6 (finding that student whose SEVIS record was terminated, without prior notice and without a hearing, failed to state a due process claim because there was "no legal basis or precedent supporting [his] contention that his SEVIS status constitutes an independent property interest implicating due process"); *Bakhtiari v. Beyer*, No. 4:06-cv-01489, 2008 WL 3200820, at *3 (E.D. Mo. Aug. 6, 2008) (finding that "neither the SEVIS regulations nor the enabling legislation on which they are based demonstrate that Congress intended to create a private right of action or intended to benefit a class of which plaintiff is a member").

12

At this stage of the litigation and upon the present record, the Court likewise cannot conclude that the SEVIS terminations on their own infringed on an interest that implicates due process.

For the reasons above, Plaintiffs cannot show a strong likelihood of success on the merits at this time.

### B. Risk of Irreparable Harm

Plaintiffs did not persuade the Court that they met the high burden to establish the risk that they will suffer immediate and irreparable harm absent a TRO. Plaintiffs identified three main types of harm: (1) possible detention or removal, (2) disruption to their academic programs, and (3) loss of employment.[6]

*Removal and Detention.* It is not clear that DHS terminated the Plaintiffs' F-1 status or that Plaintiffs are facing removal or detention. At oral argument, the Government represented to the Court that DHS has no reason to believe that Plaintiffs are removable. It follows then that there would be no reason for them to be arrested.

If Plaintiffs lost their status, and are removable or detainable on that basis, they are free to seek reinstatement of their student status. 8 C.F.R. § 214.2(16). And Plaintiffs failed to fully explain whether they are pursuing reinstatement, and

---

[6] Only three Plaintiffs—Deore, Joshi, and Yang—alleged loss of paid employment. ECF No. 1, PageID.21. Although Bu alleged that he is "no longer able to obtain OPT," *id.*, which is a form of temporary employment, the complaint did not suggest that he lost any paid position.

13

whether, if their status was indeed revoked, they are allowed to remain in the country while their application for reinstatement is pending review.

*Academic Disruption.* It is not clear that the students' educational progress will be impeded at their current institutions. The Government explicitly said at oral argument that the students are allowed to continue taking classes—which would make sense if the students still maintained their F-1 status—and that the Department of Homeland Security has not asked the University of Michigan or Wayne State University to disenroll the students. In other SEVIS-related cases, schools have allowed students to continue their studies after termination of SEVIS status. *Yunsong Zhao*, 2018 WL 5018487, at *5 (determining that SEVIS status and F-1 status are divisible).

To be sure, some Plaintiffs have future plans that might be impeded. *See, e.g.*, ECF No. 1, PageID.21 (noting that students might be unable to transfer for a master's degree or matriculate for further graduate studies). But those harms are sufficiently distant to counsel against immediate relief in the form of a TRO.

*Employment.* Three Plaintiffs alleged a loss of employment because of the termination of their F-1 status in SEVIS. ECF No. 1, PageID.21. As noted above, it remains unclear whether the students have F-1 status despite the termination of their SEVIS record, have lost their F-1 status, or anything else. The parties did not thoroughly analyze whether someone with F-1 status but without a SEVIS record (insofar as such a person can exist) may be employed.

14

Furthermore, lost wages are generally not harms that are irreparable and the universities—that is, the entities who presumably terminated Plaintiffs' employment—are not parties to the lawsuit. *See Aluminum Workers Int'l Union, AFL-CIO, Local Union No. 215 v. Consolidated Aluminum Corp.*, 696 F.2d 437, 443 (6th Cir. 1982) (absent a showing that an employer will be unable to provide backpay or reinstatement, "loss of employment . . . is not irreparable harm and will not support a claim . . . for injunctive relief"). Although it may not be possible for the students to seek reinstatement or backpay from their universities to the extent that they carried out terminations in adherence to federal law, Plaintiffs did not develop any argument of that type. And the Government's representations, before and at the hearing, might positively affect the students' employment. Finally, although Plaintiffs may seek reinstatement of their SEVIS record, they did not explain whether they would be able to work pending review. The Court thus cannot find on the record before it that the lost employment during the pendency of the litigation is an irreparable harm. Again, Plaintiffs can and should develop the argument before and at the preliminary injunction hearing.

## C. *Balance of the Equities and the Public's Interest*

Next, the final two factors—the balance of harms and the public interest—are too mixed to move the needle given the Court's concerns stated above. The Court appreciates that detention, deportation, loss of educational opportunity, and wage loss are frightening and very serious concerns for Plaintiffs. And the Court recognizes

15

that the public generally has an interest in the predictable application and enforcement of the law—to which arbitrary and capricious action is antithetical.

But enjoining the agency's ability to exercise its authority before a complete review of the merits of the case, especially considering the novel and complex issues of law present here, is also serious and may be harmful. *See Lopez-Mejia v. Lynch*, No. 1:16-CV-549, 2017 WL 25501, at *4 (S.D. Ohio Jan. 3, 2017) (acknowledging that "the government has a compelling state interest, based on border security and national sovereignty, to enforce its immigration" rules). And the executive retains a strong interest in handling immigration matters. *See Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) (recognizing that the public interest in immigration enforcement is significant) (collecting cases).

## CONCLUSION

In sum, the balance of factors favors denying the motion at this stage. It is not currently clear that Plaintiffs have lost F-1 status or that the SEVIS terminations carry independent consequences. Thus, Plaintiffs have not shown a strong likelihood of success on the merits. And the other factors do not sufficiently support granting the motion.

Although it is ultimately unclear why DHS would terminate SEVIS records for students who maintain F-1 status, Plaintiffs have not, for the reasons explained above, met the standard for the issuance of such an extraordinary remedy.

**WHEREFORE**, it is hereby **ORDERED** that the motion for a temporary restraining order [2] is **DENIED**.

16

**IT IS FURTHER ORDERED** that the following schedule for a preliminary injunction is hereby **ENTERED**:

| Event | Due Date |
|---|---|
| Government's Brief in Response to Preliminary Injunction (30-page limit) | April 30, 2025 |
| Meet and Confer (see below) | May 2, 2025 |
| Submission of Pre-Hearing Materials | May 13, 2025 |
| Plaintiffs' Reply Brief (30-page limit) | May 13, 2025 |
| Preliminary Injunction Hearing | May 19, 2025 at 10:00 a.m. |

**IT IS FURTHER ORDERED** that the parties shall **FOLLOW** the guidance in the preliminary injunction scheduling order appendix attached below.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: April 17, 2025

17

## PRELIMINARY INJUNCTION SCHEDULING ORDER APPENDIX

### 1. Meet and Confer

Not later than the corresponding date set forth above, counsel for all parties shall meet and confer, preferably in person, to discuss the following:

a) whether the parties can agree to a preliminary injunction of scope less than what Plaintiff has sought;

b) whether any facts or legal conclusions are agreed upon;

c) evidentiary issues, including any objections to the admissibility of any proposed exhibit or testimony to be offered at the hearing.

The meet and confer is intended to be substantive. The Court thus encourages the parties to exchange proposed findings of fact and conclusions of law (see below) prior to the meet and confer, such that each party has the opportunity to consider the precise language that it would be stipulating to at the meet and confer.

### 2. Submission of Pre-Hearing Materials

Not later than the corresponding date set forth above, counsel must:

a) File a "Joint Exhibit and Witness List" which lists all exhibits that the parties intend to introduce at the hearing and all witnesses the parties intend to call at the hearing. For each identified witness, the Joint Exhibit and Witness List must indicate whether the witness "will" be called or "may" be called at the hearing, the witness's likely testimony (one or two sentences), an estimate of the time needed for direct and cross examination of the witness, and any significant objection to the witness's testimony. For each exhibit the admission

18

of which is not agreed to by the parties, the Joint Exhibit and Witness List must briefly state the basis for objection.

b) Provide the Court with a "Joint Exhibit Book" containing a copy of all proposed exhibits (including any deposition transcripts or applicable portions thereof) identified in the Joint Exhibit and Witness List. All exhibits must be marked by counsel prior to the preparation of the Joint Exhibit Book such that the copy in the Joint Exhibit Book is marked. The preferred method of marking is letters for the Plaintiffs and numbers for Defendants. The parties should also provide an extra copy of the Joint Exhibit Book for the Court Reporter.

c) File a "Pre-Hearing Brief" containing separately numbered proposed findings of fact with citation to proposed exhibits (preferably citing to the Joint Exhibit Book) and separately numbered proposed conclusions of law.

d) File a joint statement concerning the suitability of hearing and trial under Federal Rule of Civil Procedure 65(a)(2).

## 3. The Preliminary Injunction Hearing

a) The Court has set aside one day for the preliminary injunction hearing. The hearing will begin on **May 19, 2025 at 10:00 a.m. The hearing will finish no later than 3:00 p.m.** and the Court may take periodic breaks and break for lunch.

b) The Court will admit unobjected-to exhibits in the Joint Exhibit and Witness List at the start of the preliminary injunction hearing. The Court will determine the admissibility of objected-to exhibits and objected-to testimony

19

prior to the start of the hearing or at the time a party seeks to introduce the objected-to evidence (or testimony). Evidence not included in the Joint Exhibit and Witness List will not be admitted absent a showing of good cause for failing to include the evidence on the list. Counsel are required to keep track of all exhibits admitted during the hearing.