IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| PRASOON KUMAR, SONGLI CAI, HAORAN YANG, and SRI CHAITANYA KRISHNA AKONDY, <br><br>      Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security; the DEPARTMENT OF HOMELAND SECURITY; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement, <br><br>      Defendants. | **No. 3:25-cv-00042-RGE-WPK** <br><br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

## I.    INTRODUCTION

Plaintiffs Prasoon Kumar, Songli Cai, Haoran Yang, and Sri Chaitanya Krishna Akondy—international students at the University of Iowa—seek a preliminary injunction precluding their removal from the Court's jurisdiction, preserving their student immigration status, and preserving their Student and Exchange Visitor Information System (SEVIS) records. Plaintiffs allege Defendants Kristi Noem, the Department of Homeland Security, and Todd Lyons terminated their student status and their records in SEVIS without legal justification and in violation of pertinent regulations. Plaintiffs assert claims under the Administrative Procedures Act and the Due Process clause of the Fifth Amendment to the United States Constitution. Plaintiffs allege the wrongful termination of student status in SEVIS prevents their continued study; prevents otherwise permissible student-related employment; decreases their ability to obtain future visas; causes irreparable financial, educational, and career disruption; exposes them to removal; and causes irreparable stress and anxiety due to fear of imminent seizure and removal. Plaintiffs also allege

Defendants acted with nonparty the Department of State to terminate their F-1 student visas.

The Court granted a temporary restraining order, held an evidentiary hearing on the motion for a preliminary injunction, and extended the TRO for good cause shown. After considering the parties' briefing, arguments, and supporting materials, and applying the factors from *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc), the Court grants Plaintiffs' motion for a preliminary injunction for the reasons set forth below.

## II.    BACKGROUND

The Court draws the following facts from Plaintiffs' complaint and motion for preliminary relief as now supported by evidence, including Plaintiffs' declarations, copies of emails from the University of Iowa to Plaintiffs, copies of emails from embassies to Plaintiffs, declarations from Plaintiffs' and Defendants' witnesses, documentation of agencies' past reliance on SEVIS records to determine student status, documentation and descriptions of Defendants' currently fluid policy regarding SEVIS records, and testimony from Defendants' witness in another case. The Court also considers representations and admissions counsel made at the preliminary injunction hearing. *See generally* Compl., ECF No. 1; Pls.' Mot Prel. Inj., ECF No. 5; Pls.' Exs. 1–23 Supp. Mot. Prel. Inj., ECF Nos. 23-2 through 23-24; Defs.' Ex. A Supp. Resist. Prel. Inj., ECF No. 22-2. Since the hearing, Defendants supplemented the record with an additional declaration and admissions. Defs.' Suppl. Notice, ECF No. 30; Defs.' Suppl. Ex. B Supp. Resist. Prel. Inj., ECF No. 30-1. The Court relies on the evidence as described herein to make its preliminary findings. As a general rule, "the findings of fact and conclusions of law" the Court made when granting the temporary restraining order "are not binding at [later stages such as a preliminary injunction proceedings or a] trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Similarly, findings of fact and conclusions of law made here while considering the preliminary injunction are not binding at later stages of proceedings. *Id.*

Kumar, previously identified as Doe #1, is an Indian national and a Ph.D. student in

chemical engineering at the University of Iowa. Kumar Decl. ¶¶ 1, 3, Pls.' Ex. 1 Supp. Mot. Prelim. Inj., ECF No. 23-2. Kumar works as a teaching assistant and research assistant. *Id.* ¶¶ 5, 6. Since Kumar entered the United States on an F-1 student visa in 2021, he has remained engaged in a course of study and has not fallen out of student status. *Id.* ¶ 2; *see also* Kumar SEVIS History, Pls.' Ex. 19 Supp. Mot. Prelim. Inj., ECF No. 23-20. Kumar admits receiving a misdemeanor OWI conviction for which he attended a weekend class and which is not a basis for termination of SEVIS status. ECF No. 23-2 ¶ 10. Kumar alleges no knowledge as to the "factual basis for either his SEVIS termination or his visa revocation." ECF No. 1 ¶ 41.

Cai, previously identified as Doe #2, is a Chinese national undergraduate student in statistics, data science, and economics at the University of Iowa who previously studied at other academic institutions in the United States. Cai Decl. ¶¶ 1, 4–5, Pls.' Ex. 4 Supp. Mot. Prelim. Inj., ECF No. 23-5. Cai entered the United States on an F-1 student visa in 2017 and the State Department issued Cai's most recent "F-1 visa on June 7, 2024." *Id.* ¶ 3. Cai admits traffic violations and a disorderly conduct charge, none of which qualify as bases for termination of SEVIS status. *Id.* ¶ 11. Cai alleges no knowledge as to the "factual basis for the termination of his SEVIS status." ECF No. 1 ¶ 49.

Yang, previously identified as Doe #3, is a Chinese national and an undergraduate student in exercise science and kinesiology at the University of Iowa. Yang Decl. ¶¶ 1–2, Pls.' Ex. 7 Supp. Mot. Prelim. Inj., ECF No. 23-8. Yang received an F-1 visa in 2022 and has been engaged as a full-time student since that time. *Id.* ¶ 2; *see also* Yang SEVIS History, Pls.' Ex. 21 Supp. Mot. Prelim. Inj., ECF No. 23-22. Yang alleges no knowledge as to any "factual basis for the termination of his SEVIS status." ECF No. 1 ¶ 56. Yang admits traffic violations and an OWI with a deferred judgment, none of which qualify as bases for termination of SEVIS status. ECF No. 23-8 ¶10.

Akondy, previously identified as Doe #4, is an Indian national who has completed a course of study and received a Master of Public Health degree from the University of Iowa. Akondy

Decl. ¶¶ 1–4, Pls.' Ex. 10 Supp. Mot. Prelim. Inj., ECF No. 23-11. Akondy works for the Iowa Department of Health and Human Services pursuant to Optional Practical Training authorization. *Id.* ¶ 5–6; *see also* 8 C.F.R. § 214.2(f)(10)(ii) (describing Optional Practical Training as "temporary employment for optional practical training directly related to the student's major area of study"). Akondy alleges no knowledge as to any "factual basis for the termination of his SEVIS status." ECF No. 1 ¶ 66. Akondy admits an expunged OWI conviction that does not qualify as a basis for termination of SEVIS status. ECF No. 23-11 ¶ 11.

Plaintiffs assert Homeland Security "abruptly terminated Plaintiffs' [SEVIS] record[s] without explanation" "[o]n or about April 10, 2025." ECF No. 1 ¶ 3. Plaintiffs allege they learned of termination from the University of Iowa's International Students and Scholars Services which informed them the federal government—not the University—had taken this action. *Id.*; *see also, e.g.*, Univ. Iowa Email, Pls.' Ex. 2 Supp. Mot. Prelim. Inj., ECF No. 23-3.

Days after notification from the University of Iowa, Plaintiffs received messages from various United States embassies providing no explanations but containing identical language stating, "Remaining in the United States can result in fines, detention and/or deportation [and] deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin." ECF No. 1 ¶ 4; *see also, e.g.*, State Dep't Email, Pls.' Ex. 3 Supp. Mot. Prelim. Inj., ECF No. 23-4.

Plaintiffs assert five claims seeking restoration of their status and SEVIS records. In Count I, Plaintiffs assert "[Homeland Security]'s termination of Plaintiffs' student statuses in SEVIS [w]as arbitrary and capricious and not in accordance with law under [the Administrative Procedure Act,] 5 U.S.C. § 706(2)(A)." ECF No. 1 ¶ 74. In Count II, Plaintiffs assert they have a "constitutionally protected property interest in their SEVIS registration," under the Due Process clause of the Fifth Amendment to the U.S. Constitution that was violated by the termination of

their SEVIS records. *Id.* ¶ 85. In Counts III and IV, Plaintiffs assert additional claims under the Administrative Procedure Act, 5 U.S.C. § 706 (2)(B) and 2(D). *Id.* ¶¶ 91–99. In Count V, Plaintiffs assert a claim under *United States ex rel. Accardi v. Shaugnessy*, 347 U.S. 260, 267–68 (1954), arguing Homeland Security's actions in terminating SEVIS records and student status based on misdemeanor events are in violation of the agency's "self-imposed procedural rules that limit otherwise discretionary decisions." *Id.* ¶ 101.

Plaintiffs describe their requested preliminary injunctive relief as an order specifically directing Defendants to:

(i)    Restore each Plaintiff's F-1 student status in the Student and Exchange Visitor Information System (SEVIS), backdated to the date of termination;

(ii)   Set aside the F-1 student status termination decisions as to Plaintiffs;

(iii)  Prohibit Defendants from terminating Plaintiffs' F-1 student status absent a valid ground as set forth in 8 C.F.R. § 214.1(d)–(g), and absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator for each Plaintiff, in which they will be entitled to review any adverse evidence and respond to such evidence prior to determining anew that any Plaintiff's F-1 student status should be terminated;

(iv)   Prohibit all Defendants from arresting, detaining, or transferring Plaintiffs out of this Court's jurisdiction, or ordering the arrest, detention, or transfer of Plaintiffs out of this Court's jurisdiction, without first providing adequate notice to both this Court and Plaintiffs' counsel as well as time to contest any such action; and

(v)    Prohibit all Defendants from initiating removal proceedings against or deporting any Plaintiff on the basis of the termination of their F-1 student status.

Pls.' Proposed Order, ECF No. 5-2. Plaintiffs do not seek temporary relief regarding visa revocation. ECF No. 1 ¶ 5; Pls.' Brief Supp. Mot. Prelim. Inj. 6 n.7, ECF No. 5-1.

After the Court granted the temporary restraining order, the Court set a hearing and briefing schedule. Order Setting Deadlines, ECF No. 11. Counsel appeared for a hearing on May 5, 2025, where the Court considered additional argument and evidence. *See* Mots. Hr'g Mins., ECF No. 25. Defendants provided an affidavit from Andre Watson, a Homeland Security employee, containing representations regarding the operation of SEVIS and the relationship between SEVIS records and student status for nonimmigrant students. Watson Decl., Defs.' Ex. A Supp.

Resist. Mot. Prelim. Inj., ECF No. 22-2. Plaintiffs provided a transcript from a proceeding in another jurisdiction in which Watson addressed similar topics. *Patel* Tr., Pls.' Ex. 15 Supp. Prelim. Inj., ECF No. 23-16 (transcript of April 29, 2025 hearing on motion for preliminary injunction or summary judgment in *Patel v. Lyons*, No. 1:25-cv-01096-ACR (D.D.C.)). At the hearing, Defendants agreed Watson's statements reflected in the Patel Transcript could be used as evidence in the present matter. *See* ECF No. 25 at 2.

In briefing and at the hearing, Defendants present several jurisdictional and substantive arguments, most of which reduce to the assertion that SEVIS entries are not indicative of actual student status. *See, e.g.*, Defs.' Resist. Mot. Prelim. Inj. 15, ECF No. 17 ("The Complaint conflates a change to Plaintiffs' SEVIS records with a change to their F-1 nonimmigration status. An individual's SEVIS record is not the same thing as his F-1 status."). According to Defendants, SEVIS records, as maintained and shared with relevant actors by Defendants, are merely data that do not reflect final agency actions, carry no meaningful consequences for nonimmigrant students, and do not impact visa or student status. *See id.* at 26. Defendants argue specifically: 1) The Court lacks jurisdiction because there is no case or controversy; 2) the alteration of SEVIS records is not a final agency action subject to review under the Administrative Procedure Act; 3) the Privacy Act applies and precludes the present claims concerning challenges to public records; and 4) Plaintiffs cannot otherwise meet the burden of proving the necessity of a preliminary injunction under the applicable factors. *Id.* at 15–28.

The Court presents additional facts below. In particular, the Court discusses in greater detail representations from the parties regarding how Homeland Security, nonparty the Department of State, schools, and employers have treated SEVIS data in the past and how they treated that data as to Plaintiffs. In addition, the Court addresses representations from Defendants regarding current practices by Homeland Security concerning SEVIS data, student status, and the relationship between the two.

## III.    LEGAL STANDARD

### A.    Preliminary Injunctions

*Dataphase* articulates four factors the Court considers when determining whether to issue a preliminary injunction or temporary restraining order: 1) "the probability the movant will succeed on the merits"; 2)" the threat of irreparable harm to the movant"; 3) "the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant"; and 4) "the public interest." *Dataphase*, 640 F.2d at 113; *see also Sports Design & Dev., Inc. v. Schoneboom*, 871 F. Supp. 1158, 1162–63 (N.D. Iowa 1995) (citing *S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989)). When a plaintiff seeks to restrain governmental action, the public interest and balancing of harm factors largely merge. *See Eggers v. Evnen*, 48 F.4th 561, 564 (8th Cir. 2022). Ultimately, the Court must "flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *United Industries Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1989) (citation omitted).

"Success on the merits has been referred to as the most important of the four [*Dataphase*] factors." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). "When determining the likelihood of [Plaintiffs'] success on the merits, [the Court does] not have to decide whether [Plaintiffs] will ultimately win, [but a]n injunction cannot issue if there is no chance of success on the merits." *Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1044 (8th Cir. 2020) (cleaned up) (citations omitted). Further "[Plaintiffs] do[] not need to prove a greater than fifty per cent likelihood that [they] will prevail on the merits." *Id.* at 1044–45 (citation omitted). But Plaintiffs "must . . . show a 'fair chance of prevailing.'" *Id.* at 1045 (quoting *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)). When a plaintiff asserts multiple claims and seeks preliminary relief, "[t]he plaintiff need only establish a

likelihood of succeeding on the merits of any one of [its] claims." *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1040 (8th Cir. 2016) (internal quotation marks and citation omitted).

**B.    F-1 Visas, SEVIS, and Student Status**

Federal immigration law authorizes F-1 visas for nonimmigrant students who enroll in approved schools and participate in a full course of academic study. *See* 8 U.S.C. § 1101(a)(15)(F)(i) (allowing entry for "a bona fide student qualified to pursue a full course of study . . . solely for the purpose of pursuing such a course of study . . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States, . . . approved by the Attorney General after consultation with the Secretary of Education, which institution or place of study shall have agreed to report to the Attorney General the termination of attendance of each nonimmigrant student"). An F-1 visa is required for admission into the United States but does not determine the lawful duration of the student's stay. Rather, a nonimmigrant student who enters the United States on an F-1 visa may remain for the duration of their "status" when they continue to satisfy regulatory requirements applicable to their visa classification. *See* 8 C.F.R. § 214.2(f)(5).

For students, this means remaining engaged in a full course of study and avoiding unauthorized employment. *See id.* §§ 214.2(f)(6), (9); *see also id.* § 214.1(e) ("Any unauthorized employment by a nonimmigrant constitutes a failure to maintain status within the meaning of section 241(a)(1)(C)(i) of the Act."). Further, students may not provide false information to Homeland Security or be convicted of a crime of violence carrying a potential sentence greater than one year. *Id.* § 214.1(f)("A nonimmigrant's willful failure to provide full and truthful information requested by DHS . . . constitutes a failure to maintain nonimmigrant status under section 237(a)(1)(C)(i) of the Act."); *id.* § 214.1(g) ("A nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year

imprisonment may be imposed . . . constitutes a failure to maintain status under section 241(a)(1)(C)(i) of the Act."). Upon completion of study, students may apply to remain for a period of time to engage in employment in the form of "practical training" related to their studies. *Id.* § 214.2(f)(10).

Apart from students' own actions related to crimes, falsities, unauthorized employment, and the pursuit of academic studies, Homeland Security may initiate termination of a student's status for limited reasons: "[1] by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; [2] by the introduction of a private bill to confer permanent resident status on such alien; or, [3] pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." *Id.* § 214.1(d).

Federal immigration law also requires Homeland Security to "collect from approved institutions of higher education . . . [data] with respect to aliens who have the status, or are applying for the status, of [F-1] nonimmigrants . . . ." 8 U.S.C. § 1372(a)(1)(A). Through the resulting program, Homeland Security maintains and employs the SEVIS database which allows students and Homeland Security to track students' compliance and status. *See generally* 8 C.F.R. § 214.2(f). "Designated School Officials" at approved institutions must monitor and supervise sponsored students and report through SEVIS if a student fails to maintain status. *Id.*; *see also id.* § 214.3(g)(2).

In general, an F-1 student may receive a short grace period for departure if they complete a course of study or practical training or receive authorization from their school's Designated School Official to withdraw. *Id.* § 214.2(f)(5)(iv). "However, an F-1 student who fails to maintain a full course of study without the approval of the [Designated School Official] or otherwise fails to maintain status is not eligible for an additional period for departure," *id.*, and therefore must seek reinstatement or depart the United States immediately. Reinstatement occurs largely at the discretion of Homeland Security, and reinstatement decisions may not be appealed. *Id.*

§ 214.2(f)(16)(ii). Discretion is limited, however, in that an F-1 student is not eligible for discretionary reinstatement if they have "been out of status for more than 5 months[.]" *Id.* § 214.2(f)(16)(i)(A).

Finally, revocation of an F-1 visa does not, in and of itself, demonstrate a failure to maintain status providing grounds for Homeland Security to terminate student status in SEVIS. 8 C.F.R. § 214.1(e)–(g). "F-1 student status and F-1 student visas are not one in the same. The F-1 student visa refers only to the document that nonimmigrant students receive to enter the United States, whereas F-1 student status refers to the students' formal immigration classification once they enter the country." Order 4, *Doe 1 v. Bondi*, No. 1:25-cv-01998-VMC (N.D. Ga. Apr. 18, 2025), ECF No. 23. In other words, revocation of an F-1 visa may preclude re-entry but does not preclude a student from remaining in the United States and continuing their course of study. *See generally Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 175–76 (3d Cir. 2019) (discussing generally student status, F-1 visas, and the relationships between these concepts)

IV.    DISCUSSION

A.    Introduction

Across the country, similarly situated F-1 students are seeking relief from Homeland Security's actions. Many courts have granted temporary restraining orders. Order Granting TRO 9–10 n.2, ECF No. 10 (listing a sample of cases). Courts are beginning to consider preliminary injunction motions—with most granting relief. *See, e.g.*, *Ortega Gonzalez v. Noem*, No. 6:25-cv-00622-MC, 2025 WL 1355272 (D. Or., May 9, 2025); *Vyas v. Noem*, Civil Action No. 3:25-0261, 2025 WL 1351537 (S.D. W.Va, May 8, 2025); *Doe #1 v. Trump*, No. 25 C 4188, 2025 WL 1341711 (N.D. Ill., May 8, 2025); *Isserdasani v. Noem*, No. 25-cv-283-wmc, 2025 WL 1330188 (W.D. Wis., May 7, 2025); *Madan B K v. Noem*, No. 1:25-cv-419, 2025 WL 1318417 (W.D. Mich. May 7, 2025); *Rodriguez v. Noem*, No. 3:25-cv-616(SRU), 2025 WL 1284722, at *9–10 (D. Conn., May 1, 2025) (granting preliminary injunctive relief and finding evidence

showed agencies and other actors equated SEVIS record termination with removal of status); *Liu v. Noem*, No. 25-cv-133-SE, 2025 WL 1233892, at *5–7 (D.N.H., April 29, 2025) (same). The court in *Liu* succinctly summarized the tension between the students' and Homeland Security's positions and concluded a student merited preliminary relief because all evidence supported the student's position that Homeland Security, the State Department, and other actors equated SEVIS record termination with termination of status and therefore imposed consequences based on SEVIS record termination. 2025 WL 1233892 at *5–7. The Court agrees and presents that summary here as an introduction to discussion of the instant parties' arguments:

> At bottom, [D]efendants' arguments on each factor under consideration turn on the answer to a seemingly straightforward question: What [do Plaintiffs] challenge in this case? On the face of [the] pleadings, the answer seems obvious; [Plaintiffs] challenge[ Homeland Security]'s termination of [their] F-1 student status. [They] learned of that termination when [the University] saw [Homeland Security] had terminated [their] F-1 student status in SEVIS, the database that exists to track and document the continuing status of noncitizen students who are authorized to study in the United States.

> [D]efendants say otherwise. They argue repeatedly that [Homeland Security] has not changed [Plaintiffs'] F-1 student status. Importantly, as discussed below, they refuse to present competent evidence to support that argument or stipulate to that fact on the record. Instead, they merely argue that [Homeland Security] only terminated the record[s] of F-1 student status in the SEVIS database, an action that they assert is divorced entirely from . . . actual F-1 student status. To [D]efendants, this is an act of simple record-keeping, one which they argue Plaintiffs cannot challenge in this court for many reasons.

> The implications . . . are troubling. [Defendants] conceded at the hearing, as they must, that SEVIS's purpose is to reflect accurately an international student's status. Yet they contend that they purposefully terminated [Plaintiffs'] F-1 status in SEVIS despite purportedly not terminating [their] actual F-1 status, with the result that the former no longer reflects the latter. The only justification they offered for such an action was that [Homeland Security] has broad authority to manage its web-based systems as it sees fit.

> The potential repercussions of [D]efendants' position are notable but ultimately irrelevant in this case. Instead, the relevant point is that [D]efendants' argument suffers from a fundamental and fatal flaw: all of the evidence in the record at this stage of the litigation supports [Plaintiffs'] allegation that [Homeland Security] terminated [their] actual F-1 student status when it terminated [their] record[s] in SEVIS.

*Id.* at *5.

**B.    Jurisdictional Challenge**

Defendants argue first that the Court lacks Article III jurisdiction over the present dispute because there exists no live case or controversy. *See* ECF No. 17 at 14–18; *see also Folta v. Norfork Brewing Co.*, 88 F.4th 1266, 1267 (8th Cir. 2023) ("Article III restricts federal courts to the resolution of cases and controversies." (quoting *Davis v. FEC*, 554 U.S. 724, 732 (2008)). This argument relies on the theory that SEVIS records are mere data entries that carry no consequences and do not reflect actual student status.

Other courts have rejected this theory. *See Rodriguez*, 2025 WL 1284722, at *9–10; *Liu*, 2025 WL 1233892, at *5–7. The theory runs counter to other agencies relying on SEVIS records as proof of status or nonstatus. *See, e.g.*, 9 Foreign Affairs Manual 402.5-4(B) (State Department). It also conflicts with Homeland Security itself equating SEVIS status with actual status. *See, e.g.*, Dep't Homeland Security, Terminate a Student, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last visited May 13, 2025). Moreover, Defendants' theory ignores the fact that educational institutions, in general, 1) rely on SEVIS records as conclusive and 2) cannot maintain records as necessary to preserve status for students when SEVIS status is terminated. *See* Shishegar Decl. ¶¶ 10, 30, Pls.' Ex. 16 Supp. Mot. Prelim. Inj., ECF No. 23-17. And ultimately, Defendants' theory ignores the fact that the University of Iowa relied on the SEVIS record in the instant case to determine actual status and took actions based on that reliance. *See, e.g.*, Univ. of Iowa Email, Pls.' Ex. 23 Supp. Mot. Prelim. Inj., ECF 23-24.

First, other courts have already rejected Defendants' theory for the purpose of entering preliminary injunctive relief. In *Liu*, for example, the court explained how the State Department and Homeland Security both rely on SEVIS status as student status. "The State Department's own guidance document . . . [t]he Foreign Affairs Manual, an 'authoritative source' for State

Department policies that 'convey codified information to Department staff and contractors,' explains that 'the SEVIS record is the definitive record of student or exchange visitor status and visa eligibility.'" *Liu*, 2025 WL 1233892, at *6 (quoting 9 F.A.M. 402.5-4(B)). In fact, in *Liu*, the plaintiff had attempted to enter the United States on a valid visa, but was physically turned away by Homeland Security's agents at a United States airport. *Id.* The court explained, "Despite confirmation from Liu's department chair at [Liu's university] that his student status was active, [Homeland Security] officials would not allow Liu to enter the country because he did not have an active F-1 status *in the SEVIS database*." *Id.* (emphasis added).

Plaintiffs' evidence demonstrates Homeland Security actions consistent with those described in *Liu*—reliance on students' SEVIS records to impose immediate consequences on students with a terminated SEVIS record. Plaintiffs' Exhibits 17 and 18 demonstrate Homeland Security equating SEVIS termination with lack of status for nonimmigrant students when denying a request for a change of status or for reinstatement. *See* United States Custom and Immigration Service Notice of Decision 2, Pls.' Ex. 17 Supp. Mot. Prelim. Inj., ECF No. 23-18 (denying reinstatement of a student's status in reliance on dates of termination shown in SEVIS record); *see also* United States Custom and Immigration Service Notice of Intent to Deny 2, Pls.' Ex. 18 Supp. Mot. Prelim. Inj., ECF No. 23-19 (denying adjustment of a student's status to H-1B specialty worker or lawful permanent resident because the SEVIS record showed student status as terminated).

Homeland Security's online guidance provides further illustration of past practices, explaining that a student's SEVIS termination immediately ends all employment authorization, curricular practical training, and optional practical training. *See* Dep't Homeland Security, Terminate a Student, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/ completions -and-terminations/terminate-a-student (last visited May 13, 2025).

Schools also rely on SEVIS records as conclusive. Schools must be approved by Homeland

Security to sponsor international students and must update records for Homeland Security in SEVIS. *See* ECF No. 23-17 ¶¶ 3, 10. As such, Designated School Officials are accustomed to dealing with Homeland Security and are familiar with its reliance on SEVIS record. Plaintiffs provide the declaration of Nusha Shishegar who has served as a Designated School Official for fifteen years. *Id.* Shishegar explains Homeland Security "has always taken the . . . position that terminating a record in SEVIS does result in the termination of an F-1/M-1 student's nonimmigrant status in the United States. . . . [Homeland Security's present litigation] position . . . is different than the public position of [Homeland Security] and all previous statements and guidance I received during my career." *Id.* ¶¶ 24–25. This affidavit and historic practice is consistent with the fact that a SEVIS termination effectively blocks "the student and their Designated School Official from complying with reporting requirements or maintaining eligibility for employment authorization" because they cannot enter new information on a terminated record. *See Doe v. Trump*, No. CV-25-00174-TUC-JGZ, 2025 WL 1192826, at *6 (D. Ariz. Apr. 24, 2025); *see also* ECF No. 23-17 ¶ 30 ("[A] termination of SEVIS records disallows any student (especially students on [professional training]) to continue maintaining status because such students need an active SEVIS record to meet regulatory program reporting requirements.").

Finally, at least two documents in evidence demonstrate how the University of Iowa relied on SEVIS records as proof of status. First, in a communication to Yang, the University of Iowa notified him Homeland Security had at least partially complied with the Court's TRO by returning his SEVIS status from "terminated" to "active." ECF No. 23-24. The University stated, "If applicable, you may resume your employment at the University of Iowa." *Id.* This email makes clear Yang *could not* work at the University of Iowa while his SEVIS record was "terminated." This routine reliance by an academic institution on the SEVIS record for purposes of assessing actual status lends substantial credibility to Shishigar's description of general university and Homeland Security practices.

A second document supporting Plaintiffs' position is the "event history" within Akondy's SEVIS record. Akondy SEVIS Event History 3, Pls.' Ex. 22 Supp. Mot. Prelim. Inj., ECF No. 23-23. The event history shows Akondy's optional practical training ended immediately when his SEVIS record was altered to "terminated." *Id.* (showing optional practical training ending on April 10, 2025, when Homeland Security altered the record to "terminated" rather than September 7, 2025, the date training otherwise would have ended).

Based on the foregoing, the Court finds for preliminary purposes that SEVIS status is not meaningless and distinct from actual status as urged by Defendants. Immediate consequences flow from reliance by Homeland Security, the Department of State, employers, and academic institutions on SEVIS records as proof of student status. The alleged unlawful termination of student status through termination in SEVIS records eliminates or substantially hinders the ability to study, graduate, work, obtain reinstatement of status, alter status, or secure future immigration benefits. Ultimately, and for the purpose of granting preliminary relief, the Court rejects Defendants' interpretation of their own actions and the purported distinction between actual student status, on the one hand, and SEVIS data regarding student status, on the other.

Plaintiffs present a justiciable case or controversy. *Cf. Folta*, 88 F.4th at 1267.

**C.    *Dataphase* Factors**

**1.    Likelihood of Success on the Merits**

Turning to the *Dataphase* factors, the Court examines Plaintiffs' likelihood of success on the claim Defendants violated the Administrative Procedure Act by taking arbitrary and capricious action. *See* 5 U.S.C. § 706(2)(A). Because Plaintiffs demonstrate a likelihood of success on this claim, it is unnecessary to address Plaintiffs' other claims. *See Richland/Wilkin Joint Powers Auth.*, 826 F.3d at 1040. In discussing the *Dataphase* factors, Defendants argue this claim is precluded by the Privacy Act, 5 U.S.C. § 552a, fails for lack of a final agency action, and otherwise fails on the merits. The Court addresses each argument in turn.

a.   The Privacy Act

Defendants argue the Administrative Procedure Act's "waiver of sovereign immunity comes with an important carve-out: The waiver does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought' by the plaintiff." ECF No. 17 at 19 (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). Defendants assert, "The Privacy Act sets forth agency record-keeping requirements, places restrictions on disclosure of information, and provides a means for individuals to access their records and seek correction of inaccurate information in those records." *Id.* at 21 (discussing 5 U.S.C. § 552a(b)–(d)). Finally, Defendants assert the Privacy Act must be treated as the exclusive source of remedy where it applies.

Several courts have rejected Defendants' position. Courts have held the Privacy Act is "not 'a vehicle for amending the judgments of federal officials as those judgments are reflected in records maintained by federal agencies.'" *Liu*, 2025 WL 1233892, at *8 (quoting *Barnett v. United States*, 195 F. Supp. 3d 4, 7 (D.D.C. 2016)); *see also Rodriguez*, 2025 WL 1284722, at *6. Courts have also held the Privacy Act is not exclusive even where it applies. *See Liu,* 2025 WL 123389, at *8 ("Congress did not intend for the Privacy Act to be an 'exclusive' source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the [Administrative Procedure Act]." (quoting *All. for Retired Ams. v. Bessent*, No CV 25-0313 (CKK), 2025 WL 740401, at * 19 (D.D.C. March 7, 2025))).

The Court need not adopt these analyses because a separate and conclusive textual argument forecloses Defendants' position. The Privacy Act defines a "record" as "any item, collection, or grouping of information about an individual that is maintained by an agency, . . . ." 5 U.S.C. § 552a(a)(4). The Privacy Act, in turn, defines an "individual" as "a citizen of the United States or an alien lawfully admitted for permanent residence." *Id.* § 552a(a)(2). Plaintiffs, as nonimmigrant F-1 students, are neither "citizens" nor persons "admitted for permanent residence."

Accordingly, the Privacy Act does not apply. *See Liu,* 2025 WL 1233892, at *8.

        b.      Final Agency Action

The Administrative Procedure Act permits judicial review of "final" agency actions. 5 U.S.C. § 704; *see also Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 813 (8th Cir. 2006). An agency action is "final" if it reflects the "consummation of the agency's decisionmaking process" and is "one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). The action cannot be "tentative or interlocutory [in] nature." *Id.* at 178.

Defendants' arguments regarding finality rest on the rejected distinction between F-1 student status and SEVIS status. Because, as explained above, the Court preliminarily concludes Plaintiffs challenge the termination of their F-1 student status—not merely an act of recordkeeping and data entry as characterized by Defendants—the action here is both final and immediately consequential. *See Liu,* 2025 WL 1233892, at *9; *see also Madan B.K. v. Noem*, 2025 WL 1171572, at *6 (W.D. Mich. April 23, 2025) ("Rather, this Court, like other courts, preliminarily concludes that the termination was a unilateral determination with immediate legal consequences over which Plaintiffs have no ability to seek administrative review." (collecting cases)).

        c.      Arbitrary and Capricious

"To survive judicial review under the arbitrary and capricious standard, the government must 'articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Vyas*, 2025 WL 1351537, at *9 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted)). On the present record, there is no suggestion of a valid ground for termination of any Plaintiff's F-1 student status in SEVIS. There is no suggestion any Plaintiff conveyed falsehoods to Homeland Security, engaged in unauthorized employment, suffered qualifying convictions, or failed to engage in a qualifying course of study or occupational training. *Cf.*

8 C.F.R. §§ 214.1 (e)–(g), 214.2(f)(6), (9).

Defendants assert reliance on criminal record checks as the bases for termination. *See, e.g.*, ECF No. 22-2 ¶ 12 ("Based on JOHN DOE #2's criminal history, on April 10, 2025, SEVP amended JOHN DOE #2's SEVIS record to reflect this information by setting the record designation to 'terminated.'"). Defendants expressly conceded at the hearing, however, that none of the Plaintiffs suffered a qualifying conviction for a crime of violence carrying a possible sentence greater than one year. *Cf.* 8 C.F.R. § 214.1(g). No other "criminal record" has any impact on F-1 status. Emails from the University and embassies support Plaintiffs' assertion as to the absence of qualifying bases for termination. In the absence of qualifying bases for termination of status, Defendants' actions, as a preliminary matter, appear to be "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *see also Saxena v. Noem*, No. 5:25-CV-05033-KES, 2025 WL 1149498, at *2 (D.S.D. Apr. 18, 2025); *Xia v. Scott*, 129 F.4th 1084, 1087 (8th Cir. 2025) ("An agency decision is arbitrary and capricious if it fails to consider an important aspect of the issue or provides no meaningful explanation for its conclusions.").

Defendants provide a declaration from Andre Watson, a "Senior Official within the National Security Division . . . for Homeland Security Investigations." Watson Decl. ¶ 1, ECF No. 22-2. Plaintiffs, in turn, provide a transcript from a similar proceeding in the District of Columbia in which Watson described Homeland Security's methodology in identifying F-1 students for status termination, part of a process he identifies as the "Student Criminal Alien Initiative." ECF No. 23-16. In neither document does Watson describe a process connected in any manner to underlying laws or regulations governing termination of F-1 status. Rather, in the transcript, Watson describes a process through which Homeland Security ran an overinclusive criminal records check that captured all law enforcement encounters by F-1 visa holders, including interactions not resulting in a conviction and in no way limited to qualifying felony convictions

for a crime of violence. *See id.* 5:12–9:24. As a second step, Homeland Security filtered vast numbers of records to confirm identity—to make sure any identified person was, in fact, an F-1 student. *See id.* 11:15–12:15. Homeland Security then passed filtered lists to the State Department for visa cancellation and terminated student status within SEVIS. *See id.* 12:16–13:6.

As to why status was terminated, Watson expressly states termination was "based on" criminal record checks. ECF No. 22-2 ¶ 12. He does not suggest any attempt was made to determine if the record check reflected qualifying convictions for felony crimes of violence. And he makes no representation as to any other valid basis for termination of status.

Imposing immediate negative consequences on persons while disregarding governing law and regulations is arbitrary and capricious. *See Vyas*, 2025 WL 1351537, at *9 ("Defendants' actions likely exceeded statutory and regulatory authority."); *Doe #1 v. Trump*, 2025 WL 1341711, at *12 ("Defendants have failed to 'articulate a satisfactory explanation for [their] action including a rational connection between the facts found and the choice made'" (citation omitted)); *Isserdasani*, 2025 WL 1330188, at *4 (same); *Madan B K*, 2025 WL 1318417, at *7 (same); *Rodriguez*, 2025 WL 1284722, at *7 (same); *Liu*, 2025 WL 1233892, at *5–7 ("Based on the record before the court at this stage of the litigation, the defendants are unable to" "'articulate a satisfactory explanation . . . including a rational connection between the facts found and the choice made.'" (citation omitted)).

At this stage of proceedings, the Court concludes Plaintiffs have demonstrated a strong likelihood of success on the merits of their Administrative Procedure Act claim in Count I.

## 2. Irreparable harm

Plaintiffs describe disruption to their academic progress, inability to complete their course of study or graduate, inability to pay bills, imminent removal due to loss of legal status, resulting stress and anxiety, and loss of substantial sums already invested in their educations. Kumar Decl. ¶¶ 11–12, 15–17, ECF No. 23-2; Cai Decl. ¶¶ 12–14, ECF No. 23-5; Yang Decl. ¶¶ 6, 11,

ECF No. 23-8; Akondy Decl. ¶¶ 12–14, ECF No. 23-11. In several similar recent cases, courts have found education interruption to be irreparable harm. *See, e.g., Isserdasani v. Noem*, No. 25-cv-283-WMC, 2025 WL 1118626, at *5 (W.D. Wis. Apr. 15, 2025) ("The loss of timely academic pro[gr]ess alone is sufficient to establish irreparable harm." (citing Order 4, *Liu v. Noem*, No. 1:25-cv-00133-SE-TSM (D.N.H. Apr. 10, 2025), ECF No. 13 (granting a motion for a temporary restraining order on an APA claim based on the termination of an F-1 international student's record in SEVIS))).

In addition, the presently alleged violations may result in Plaintiffs' inability to obtain future visas, or increased difficulty in obtaining future visas in that the accrual of too many days of unlawful presence can eliminate the possibility of the discretionary and unreviewable reinstatement of F-1 status. *See Jie Fang*, 935 F.3d at 176 ("Under the reinstatement regulations, a district director in the U.S. Citizenship and Immigration Services . . . 'may consider' reinstating a student who demonstrates that he or she: . . . 'has not been out of [valid F-1] status for more than 5 months at the time of filing the request for reinstatement' . . . . The USCIS's decision to reinstate is discretionary. If the USCIS 'does not reinstate the student, the student may not appeal that decision.'" (alteration in original) (citations omitted)).

The emails from embassies include statements to Plaintiffs, "Remaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation . . . [and] deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin." *See e.g.*, ECF No. 23-4 at 2. The effect of threats of immediate removal on Plaintiffs' educational and career investments, like the effects of removal itself, is extreme. Plaintiffs are "left in an uncertain legal status with the termination of [their] SEVIS record[s], which constitute[] a separate irreparable harm." *Saxena*, 2025 WL 1149498, at *2.

The Court concludes these educational, career, personal, and immigration-related harms are irreparable justifying preliminary relief.

### 3.     Public interest and balance of harms

The Court concludes the final two *Dataphase* factors favor issuance of a temporary restraining order. All four Plaintiffs face irreparable harm outweighing risk of injury to Defendants. The loss of legal status in the United States deprives Plaintiffs of the ability to pursue degrees Plaintiffs have already invested substantial time, effort, and money to obtain. "In contrast, the temporary nature of the requested relief poses minimal harm to defendants." *Id.* at *3 (citing *Nebraska v. Biden*, 52 F.4th 1044, 1047 (8th Cir. 2022) (concluding that "the equities strongly favor an injunction considering the irreversible impact [on Plaintiffs] compared to the lack of harm an injunction would presently impose [on the United States]"). The Court also concludes "[t]here is substantial public interest in ensuring that governmental agencies abide by federal laws as 'there is generally no public interest in the perpetuation of unlawful agency action.'" *Id.* at *3 (quoting *Missouri v. Trump*, 128 F.4th 979, 997 (8th Cir. 2025)).

On balance, the relative hardships and public interest justify granting temporary relief.

### 4.     Mootness and Post-Hearing Evidence

Plaintiffs' hearing evidence included a document entitled "SEVIS Notice — Policy Regarding Termination of Records." Policy Notice at 1, Pls.' Ex. 14 Supp. Mot. Prelim. Inj., ECF No. 23-15. The Notice is marked for internal SEVIS use only and previously was submitted as an exhibit in *Doe v. Trump*, No. 4:25-cv-00175-TUC-AMM (D. Ariz. Apr. 28, 2025). The Notice lists several reasons Homeland Security finds sufficient to terminate status. This list includes several conditions untethered to any identifiable law or regulation, such as "U.S. Department of State Visa Revocation" or the existence of "Evidence of a Failure to Comply with the Terms of Nonimmigration Status" without reference to credibility, quality, quantity, or applicable standards of proof. *Id.*

At the hearing, the Court asked Defendants to explain their compliance with the temporary restraining order, in particular, whether SEVIS record updates were backdated as ordered by the Court to reflect active status without interruption. Defendants provided post-hearing evidence in the form of a declaration. Hicks Declr., ECF No. 30-1. In the Declaration, James Hicks, "Division Chief of External Operations at the Student and Exchange Visitor Program (SEVP) with Homeland Security Investigations (HIS) at U.S. Immigration and Customs Enforcement (ICE)," states information concerning the backdating of reactivation is present in SEVIS but visible only to SEVIS staff due to technical limitations. *Id.* ¶¶ 3–4. Accordingly neither schools, outside agencies, nor Homeland Security staff in the field have access to such notice.

Further, along with Hicks's declaration, Defendants' counsel stated in a notice that "ICE counsel" represented, "ICE will not re-terminate an alien's SEVIS record based solely on the [nonqualifying criminal record] that led to the initial termination." ECF No. 30. Defendants provide no declaration to support this assertion. Further, Defendants do not disavow reliance "in part" on nonqualifying criminal history. Nor do Defendants disavow other factors not provided by law or regulation. The limited Hicks declaration and second-hand representations from counsel provide no assurance that future actions towards nonimmigrant students will be constrained by controlling law or regulations.

Defendants' submission is inadequate to demonstrate the present case, or the need for preliminary relief, is moot. Actions compelled by Court order are not actions that moot a case or demonstrate the absence of a need for the Court's order to continue. *See United States v. Flute*, 951 F.3d 908, 910 (8th Cir. 2020) ("And the event that caused the mootness did not result from 'happenstance'; it was almost certainly driven by our panel opinion."); *see also Moore v. Thurston*, 928 F.3d 753, 758 (8th Cir. 2019) ("[W]e distinguish between a party whose voluntary actions caused the mootness, and a party prevented from seeking relief from the judgment below by, as relevant here, happenstance. Generally, only the latter situations may merit vacatur." (citation

omitted)).

The submission, rather than providing assurance of adherence to regulatory grounds for status termination, highlights a policy Homeland Security purports to follow that rests on factors untethered to applicable the regulations. Homeland Security's use of hedging language stating Defendants will not rely "solely" on overinclusive criminal records gives the Court little confidence Defendants will act consistently with pertinent regulatory factors. *But see Doe v. Noem*, No. 2:25-cv-00633-DGE, 2025 WL 1397007, at *5 (W.D. Wash. May 14, 2025) (denying preliminary injunction, relying on ICE's assertion of "no plans" to terminate F-1 student's SEVIS record for the same reason to find lack of irreparable harm).

### E.    Security

Rule 65(c) states the Court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Eighth Circuit has stated that the bond amount ultimately "rests within the sound discretion of the trial court." *Stockslager v. Carroll Elec. Co-op. Corp.*, 528 F.2d 949, 951 (8th Cir. 1976). Further, the Court may waive entirely the requirement of bond. *See Richland/Wilkin Joint Powers Auth.*, 826 F.3d at 1043. In particular, where the public interest weighs in favor of restraining unlawful federal action and where the restraint causes little hardship to the government, a waiver of bond may be appropriate. *See id.* (concluding it was "permissible for the district court to waive the bond requirement based on its evaluation of public interest in this specific case").

Defendants request a bond but present no argument to support their demand and fail to articulate a suggested bond amount. *See* ECF No. 17 at 29. The Court concludes no bond is required in this matter.

### V.    CONCLUSION

Based on the evidence contained in the record and after considering the *Dataphase* factors, the Court grants Plaintiffs' motion for a preliminary injunction.

**IT IS ORDERED** that Plaintiffs Prasoon Kumar, Songli Cai, Haoran Yang, and Sri Chaitanya Krishna Akondy's Motion for Preliminary Injunction, ECF No. 5, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Kristi Noem, the Department of Homeland Security, and Todd Lyons shall maintain Plaintiffs Prasoon Kumar, Songli Cai, Haoran Yang, and Sri Chaitanya Krishna Akondy's F-1 student status in the Student and Exchange Visitor Information System (SEVIS), including notation of active status backdated to the date of termination.

**IT IS FURTHER ORDERED** that Defendants Kristi Noem, the Department of Homeland Security, and Todd Lyons shall provide to the Court copies of such records or screenshots demonstrating that schools and other agencies may view notations as to backdating and shall through sworn declaration attest to the date of entries made to the SEVIS system.

**IT IS FURTHER ORDERED** that Defendants Kristi Noem, the Department of Homeland Security, and Todd Lyons shall set aside the F-1 student status termination decisions as to Plaintiffs Prasoon Kumar, Songli Cai, Haoran Yang, and Sri Chaitanya Krishna Akondy

**IT IS FURTHER ORDERED** that Defendants Kristi Noem, the Department of Homeland Security, and Todd Lyons shall not terminate Plaintiffs Prasoon Kumar, Songli Cai, Haoran Yang, and Sri Chaitanya Krishna Akondy F-1 student status absent a valid ground as set forth in 8 C.F.R. § 214.1(d)–(g), and an adequate individualized pre-deprivation proceeding before an impartial adjudicator for each Plaintiff, in which they will be entitled to review any adverse evidence and respond to such evidence prior to determining anew that any Plaintiff's F-1 student status should be terminated.

**IT IS FURTHER ORDERED** that Defendants Kristi Noem, the Department of Homeland Security, and Todd Lyons shall not arrest, detain, or transfer Plaintiffs Prasoon Kumar,

Songli Cai, Haoran Yang, and Sri Chaitanya Krishna Akondy out of this Court's jurisdiction, or order the arrest, detention, or transfer of Plaintiffs Prasoon Kumar, Songli Cai, Haoran Yang, and Sri Chaitanya Krishna Akondy out of this Court's jurisdiction, without first providing adequate notice to both this Court and Plaintiffs' counsel as well as time to contest any such action.

**IT IS FURTHER ORDERED** that Defendants Kristi Noem, the Department of Homeland Security, and Todd Lyons shall not initiate removal proceedings against or deport Plaintiffs Prasoon Kumar, Songli Cai, Haoran Yang, and Sri Chaitanya Krishna Akondy on the basis of the termination of their F-1 student status.

**IT IS SO ORDERED**.

Dated this 15th day of May, 2025.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE