IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

|  |  |
|---|---|
| PRASOON KUMAR, SONGLI CAI, HAORAN YANG, SRI CHAITANYA, and KRISHNA AKONDY<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department Homeland Security; Department of Homeland Security; and TODD LYONS, Acting Director of the Immigration and Customs Enforcement<br><br>Defendants. | No. 3:25-cv-00042-RGE-WPK<br><br>BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS |

Defendants, Kristi Noem, in her official capacity as Secretary of Homeland Security; the Department of Homeland Security; and Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement (collectively, "Defendants"), by and through their undersigned counsel, respectfully submit this Brief in support of their Motion to Dismiss.

**Table of Contents**

**Introduction** ........................................................................................................... 2
**Relevant Procedural and Factual History** ....................................................... 2
**Plaintiffs' Claims are Moot** ................................................................................ 6
**Conclusion** ........................................................................................................... 12

## Introduction

In their Complaint, Plaintiffs seek retroactive restoration of their records in the Student and Exchange Visitor Information Systems ("SEVIS"). As the record before the Court demonstrates – and as supplemented by additional materials filed as an attachment to this brief – those records have been retroactively restored. Thus, there is no further relief that the Court can grant, so the Complaint must be dismissed as moot.

## Relevant Procedural and Factual History

Plaintiffs filed a Complaint for Declaratory and Injunctive Relief on April 21, 2025. (ECF 1, hereinafter "Complaint.") Plaintiffs, all students or recent graduates of the University of Iowa, alleged that Defendants improperly terminated their SEVIS records in early April 2025. (Complaint, ¶ 3.) Plaintiffs next alleged that three of their visas were thereafter revoked, although they made clear that they were not challenging the revocation of their visas in this action. (Complaint, ¶ 4.) Rather, they said they were challenging Defendants' "termination of their F-1 student *status*." (Complaint ¶ 5, emphasis original.) Claiming their SEVIS record terminations were "without legal justification" (Complaint ¶ 8), Plaintiffs brought five causes of action seeking, as relief, a declaration "that the termination of Plaintiffs' SEVIS status was unlawful;" an order to "[v]acate the set aside [Defendants'] termination of Plaintiffs' SEVIS status;" and an "[o]rder that

Defendants restore Plaintiffs' SEVIS record and status." (Complaint, Prayer for Relief, p. 22.)

Plaintiffs sought both a temporary restraining order and a preliminary injunction along these same lines. (ECF 5.) They clarified that they were seeking a restoration of their records in SEVIS "backdated to the date of termination" and an order prohibiting "Defendants from terminating Plaintiffs' F-1 student status absent a valid ground as set forth in 8 C.F.R. § 214.1(d)-(g), and absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator." (Brief in Support, ECF 5-1, pp. 19-20.) In their resistance, Defendants sought to draw a distinction between the record terminations from SEVIS and Plaintiffs' F-1 student status, arguing that these were not one in the same. (*See* ECF 17, p. 15.)

Initially, on April 24, 2025, the Court granted a temporary restraining order, requiring (among other things) Defendants to "set aside the F-1 student status terminations" and to "restore" Plaintiffs' status in SEVIS, "backdated to the date of termination." (ECF 10, at p. 16.) The Court set a hearing on the Motion for Preliminary Injunction for May 5, 2015. (ECF 11.) Defendants filed a response (ECF 17) and the matter proceeded to hearing (*see* ECF 25). In advance of the hearing, Defendants submitted a declaration from Andre Watson, an official with Homeland Security Investigations, dated April 30, 2025. (ECF 17-1, hereinafter "Watson Declaration."). As pertinent here, Mr. Watson confirmed that each Plaintiff's SEVIS record had been changed to "terminated" on April 10, 2025, based on certain criminal history information. (Watson Declaration, ¶ ¶ 9, 12, 17, 21.)

3

Mr. Watson also verified that each Plaintiff's SEVIS record had been restored to "active," as of either April 24 or April 26. (Watson Declaration, ¶ ¶ 10, 14, 18, 22.)

Relatedly, the Court admitted a transcript of certain statements by Mr. Watson, made during a proceeding in the District of the District of Columbia on April 29, 2025. (Plaintiffs' Exhibit 15.) There, Mr. Watson described a process called the "student criminal alien initiative," which had been designed "to scrub records from SEVIS through NCIC to determine if there were positive criminality hits within NCIC." (Exh. 15, p. 5.) At the end of this process, which involved the exchange of information with the Department of State, approximately 3,000 people were terminated from SEVIS. (Exh. 15, pp. 15-16.)

After the hearing, Defendants filed the declaration of another Homeland Security official, James Hicks. (ECF 30-1, Exh. B.) Mr. Hicks explained that Plaintiffs' SEVIS records had been restored to "active," and that "there are no 'gaps' or 'lapses' in the SEVIS record." (Id., ¶ 3.) Defendants also related to the Court, through counsel, a representation that "ICE will not re-terminate an alien's SEVIS record based solely on the NCIC record that led to the initial termination." (ECF 30.)

On May 15, 2025, the Court granted Plaintiffs' Motion for Preliminary Injunction (ECF 32, hereinafter "Order") and, later, denied a request to amend the Order. (ECF 38.) Among other things, the Court required Defendants to maintain Plaintiffs' SEVIS records as active, "backdated to the date of termination." (Order

4

at 24.)  The Court further ordered Defendants to "set aside the F-1 student status termination decisions as to Plaintiffs … ." (Id.)[1]

Since the Court's initial Order, Defendants submitted a second declaration from Mr. Hicks, confirming the restoration of Plaintiffs' SEVIS records, which (as of May 17) included a notation that the relevant record was "changed per court order and ICE direction, retroactive to the date of termination."  (ECF 33, Exh. A, ¶ ¶ 4, 6, 8, 10.)  Defendants also supplied copies of letters, provided to each Plaintiff, confirming that their SEVIS designations had been restored to active as of the date of termination.  (ECF 33, Exh. B.)  This correspondence, dated June 2, 2025, explicitly stated ICE's position that "termination of your SEVIS designation during this time period will not, by itself, be used as a basis for denial of future immigration benefits or a determination that you did not maintain your nonimmigrant status during that period." (Id.)  In other words, "the effect of this retroactive activation *is as though the termination did not happen*." (Id., emphasis supplied).

To the extent there is any lingering question, Defendants now submit a declaration from another Homeland Security official, Akil Baldwin.  (Attachment A, hereinafter "Baldwin Declaration").  Mr. Baldwin outlines the "Student Criminal Alien Initiative," which led to Plaintiffs' termination from the SEVIS system based

---

[1] While Defendants adhere to their position that termination of designation in SEVIS is separate and apart from Plaintiffs' F-1 status, for purposes of preserving the record, Defendants take the position that the restoration and backdating of their SEVIS records moots any live case or controversy in this matter.

on positive NCIC information. (Baldwin Declaration, ¶ ¶ 6-8.) He reiterates that the reactivated SEVIS records have been "made retroactive to the date of the initial terminations, such that there is no gap or lapse in the affected SEVIS record" and points out that affected persons were notified of this by letters. (Id., ¶¶ 13, 15.) Finally, Mr. Baldwin confirms that "ICE will not re-terminate SEVIS records based solely on the NCIC record that led to the initial termination or solely on any related visa revocation that is effective upon departure." (Id., ¶ 11.)

## Plaintiffs' Claims are Moot

Questions of mootness are ones of subject matter jurisdiction, which a defendant may raise at any time. *Keup v. Hopkins*, 596 F.3d 899, 904 (8th Cir. 2010); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

Questions of subject matter jurisdiction may be either "facial," i.e., based only upon the face of the pleadings, or "factual," where the Court may consider "matters outside the pleadings, such as testimony and affidavits." *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914-15 (8th Cir. 2015) (citation omitted); *see also Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018); *Osborn v. United States*, 918 F.2d 724, 729-30 fn.6 (8th Cir. 1990). In either event, "[t]he plaintiff bears the burden of establishing subject matter jurisdiction." *Hilger v. United States*, 87 F.4th 897, 899 (8th Cir. 2023); *accord V S Ltd. Partnership v. Dept. of Housing and Urban Development*, 235 F.3d 1109, 1112 (8th Cir. 2000); *Moss*, 895 F.3d at 1097 ("the party invoking federal jurisdiction must prove jurisdictional facts by a

preponderance of the evidence."). And it is well-settled that a motion to dismiss based on subject matter jurisdiction, under Rule 12(b)(1), is not converted to a summary judgment motion simply because "the court considers matters outside the pleadings." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990); *accord Moss*, 895 F.3d at 1097. Such motions "may be supported with affidavits or other documents," and the district court may, if necessary, hold an evidentiary hearing. *Osborn*, 918 F.2d at 730. Given that "no statute or rule prescribes format for [such] evidentiary hearings," as the court of appeals explained in *Osborn*, "any rational mode of inquiry will do." *Id.* (quoting *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986)). But as pointed out in *Crawford*, "[t]he jurisdictional issue must be resolved first." 796 F.2d at 928.[2]

The Supreme Court recently discussed the mootness doctrine, which arises from the constitutional limitations on federal courts' jurisdiction to live "cases" or "controversies," in *FBI v. Fikre*, 144 S. Ct. 771 (2024); *see also id.* at 777. As the Court there explained:

> Sometimes, events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it. When that happens, a federal court must dismiss the case as moot.

*Id.* (citing *Already, LLC v. Nike*, 568 U.S. 85, 91 (2013)); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021) (if during litigation "a court finds that is can

---

[2] In a narrow exception to this rule, our court of appeals has indicated that a court retains discretion to defer ruling on the jurisdictional issue if that issue "is so bound up with the merits that a full trial on the merits may be necessary to resolve the [jurisdictional] issue." *Moss,* 895 F.3d at 1097 (citation omitted).

7

no longer provide a plaintiff with any effectual relief, the case generally is moot."). In this case, "events in the world" have overtaken Plaintiffs' claims, in that they have obtained the relief they originally sought. There is nothing more for the Court to do.

Plaintiffs presumably will point out that a defendant who suspends the challenged conduct following the filing of a lawsuit bears a "formidable burden" to demonstrate mootness. *See Fikre*, 144 S. Ct. at 777 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 190 (2000)); *see also Charleston Housing Authority v. United States Dept. of Agriculture*, 419 F.3d 729, 740 (8th Cir. 2005) (similar). Admittedly, this Court rejected a mootness theory in granting the preliminary injunction, concluding that "[a]ctions compelled by Court order are not actions that moot a case … ." (ECF 32, p. 22.) Thus, Defendants acknowledge that they must establish "no reasonable expectation" that the *status quo ante* will return. *Fikre*, 144 S. Ct. at 777 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953)).

This principle is sometimes referred to as the "voluntary cessation doctrine." *See generally Already, LLC v. Nike*, 568 U.S. 85, 92-93 (2013). In such a case, a matter becomes moot "if subsequent events make it absolutely clear that the allegedly wrongful conduct could not reasonably be expected to recur." *Prowse v. Payne*, 984 F.3d 700, 702 (8th Cir. 2021) (quoting *Friends of the Earth, Inc.*, 528 U.S. at 189, cleaned up). Additionally, while a defendant bears a "heavy burden" to establish mootness in these circumstances, *id.* at 703 (citation omitted), "the

8

standard is slightly less onerous when it is the government that has voluntarily ceased the challenged conduct," *id.; see also Let Them Play MN v. Walz*, 556 F. Supp.3d 968, 977-78 (D. Minn. 2021) (citing *Prowse* for this proposition).[3] Here, given the undisputed evidence that Plaintiffs' SEVIS designations have been restored, together with the clear declarations that the agency will not revoke their designations based on the NCIC hits that lead to the initial terminations, Defendants have demonstrated that these events area not reasonably likely to recur.

Relatedly, Defendants acknowledge the existence of "the capable of repetition, yet evading review exception to the mootness doctrine." *Roberts v. Norris*, 415 F.3d 816, 819 (8th Cir. 2005) (cleaned up). Importantly, this is a "narrow exception." *Id.* Again, there must be a "reasonable expectation" or "demonstrated probability" that "the same controversy will recur involving the same complaining party." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982); *see also Minnesota Humane Society v. Clark*, 184 F.3d 795, 797 (8th Cir. 1999) (characterizing this exception to the mootness rule as "extraordinary and narrow," citation omitted). "Certainty is not required to meet this exception to the mootness doctrine, but a 'mere physical or theoretical possibility' is insufficient to satisfy the test." *Roberts*, 415 F.3d at 821 (Colloton, J., concurring) (quoting *Murphy*, *supra*). And as with application of the voluntary cessation doctrine, this narrow exception does not

---

[3] At least one district court in our circuit believes that *Fikre* abrogated this aspect of the holding in *Prowse*. *Jama v. Peters*, 2024 WL 4444710, at *3 fn. 3 (D. Minn. Oct. 7, 2024).

compel continuing with this lawsuit when there is no reasonable likelihood that Plaintiffs' SEVIS designations will be terminated based on the above-noted NCIC information.

*Fikre* and a subsequent decision out of the D.C. Circuit illustrate these principles in practice. Fikre filed a complaint, alleging a due process challenge to the government's decision to place him on a "No Fly List," seeking both declaratory and injunctive relief. 144 S. Ct. at 776. Fikre also contended that he was "placed … on the list for constitutionally impermissible reasons, including his race, national origin, and religious beliefs." *Id.* Fikre was removed from the No Fly List, and the government submitted a declaration in the district court that he would "not be placed on the No Fly list in the future based on currently available information." *Id.* The Supreme Court declined to find the issue moot based on the limited record before it, pointing out that the case was presented "in a preliminary posture, framed only by uncontested allegations, and a terse declaration." *Id.* at 779. But the Court recognized that "different facts may emerge that may call for a different conclusion" "[a]s the case unfolds." *Id.*

Thereafter, the D.C. Circuit applied these principles in another case involving the No Fly List, *Moharam v. Transportation Security Administration*, 134 F.4th 598 (D.C. Cir. 2025), ultimately finding the case moot given Moharam's removal from the No Fly List, *id.* at 603. There, Moharam sought an order removing him from the No Fly List in the district court, together with seeking a declaration that he would not be placed back on the list "based on currently available information." *Id.*

10

at 602.[4]  Eventually, following the Supreme Court's ruling in *Fikre*, Moharam was notified that "he was removed from the No Fly List" and would not be placed on the list "in the future based upon the currently available information." *Id.* at 603. Bluntly, as the D.C. Circuit explained, "[b]ecause he is no longer on the List, he has no need to contest such a designation." *Id.* at 606.  So, too, here.  Because Plaintiffs' SEVIS designations have been restored, and given that the agency has provided assurances that they will not be removed from the system based on their NCIC records, they have no need to contest their earlier removal from the system.

The D.C. Circuit distinguished *Fikre*, pointing out that Fikre claimed that he had been "placed on the No Fly List for constitutionally impermissible reasons." *Id.* (cleaned up).  Specifically, Fikre's claim was that the government was relying "on particular evidence (e.g., attendance at a mosque)." *Id.*  Moharam, in contrast, did not "challenge the legality of the bases the Government used to initially list him." *Id.* at 606-07.[5]  Here again, Plaintiffs do not challenge on constitutionally-protected grounds the decision to remove them from SEVIS, so their situation is much more akin to *Moharam* than to that presented in *Fikre*.  Other post-*Fikre* authority likewise indicates that Plaintiffs' claim should be denied as moot.  *See, e.g., Berge v. School Committee of Gloucester*, 107 F.4th 33, 37, 45 (1st Cir. 2024) (finding claim

---

[4] Notably, a claim for declaratory relief alone will not preserve standing because the Declaratory Judgment Act does not confer jurisdiction. *California v. Texas*, 593 U.S. 659, 672 (2021).

[5] The D.C. Circuit also held that Moharam's claim of "some lingering reputational harm from the now-superseded order" could not overcome application of the mootness doctrine.  Id. at 607.

moot based on post-lawsuit correspondence from adverse party and representations made at oral argument).

Plaintiffs' claims are moot. Their alleged injury stemmed from "the since eradicated effects of procedures and outcomes of a particular agency action," *Moharam*, 134 F.4th at 610, namely the April 2025 termination of their SEVIS records. As of May 17, 2025, ICE has retroactively reinstated Plaintiffs' SEVIS records, and there are no "gaps" or "lapses" in the record. Nor is this situation likely to recur in light of the Defendants' representations that they will not terminate Plaintiffs' SEVIS designations based on the NCIC data that initially lead to the actions underlying this lawsuit. In sum, there is no more relief for this Court to award based on the allegations in the Complaint because the challenged terminations from SEVIS have been reinstated with retroactive effect to the date of the earlier termination.

## Conclusion

For the foregoing reasons, the Court should dismiss the Complaint.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By: */s/Andrew H. Kahl*
Andrew H. Kahl
Assistant United States Attorneys
Neal Smith Federal Building
210 Walnut Street, Ste 455
Des Moines, Iowa 50309
Telephone: (515) 473-9300
Facsimile: (515) 473-9282
Email: andrew.kahl@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2025, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system. I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

\_\_\_\_U.S. Mail  \_\_\_\_\_ Fax  \_\_\_\_\_Hand Delivery

  X  ECF/Electronic filing    \_\_\_\_Other means

UNITED STATES ATTORNEY

By: */s/ S. Irwin*
    Paralegal Specialist